ROBERT C. SCHUBERT S.B.N. 62684
WILLEM F. JONCKHEER S.B.N. 178748
KIMBERLY A. KRALOWEC S.B.N. 163158
SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| HAL K. LEVITTE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC., a Delaware corporation,<br><br>Defendant. | Case No. C08 03369<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 ET SEQ. AND 17500 ET SEQ. AND UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff alleges, individually and on behalf of the class described below, and upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge, as follows:

**SUMMARY OF CLAIMS**

1. This is a class action against defendant Google, Inc. ("Google") for violation of Business & Professions Code Sections 17200 and 17500 and unjust enrichment in connection with Google's AdWords program for Internet advertisers. Plaintiff alleges that Google has concealed from and/or misrepresented material information to plaintiff and the class concerning the Google

1.

AdWords program. Google has damaged plaintiff and the class by improperly charging them for advertising placed by Google on low-quality parked domain and error page websites.

## PARTIES

2. Plaintiff Hal K. Levitte is a resident of Suffolk County, Massachusetts and citizen of Massachusetts. Plaintiff is the principal of Levitte Law Group, a law firm located in Boston, Massachusetts. During the class period, plaintiff ran an advertising campaign called "Levitte International" for his law firm, using the Google AdWords advertising service.

3. Defendant Google is a Delaware corporation doing business and headquartered in Mountain View, California.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) in that this is a civil action filed under Federal Rule of Civil Procedure 23 and plaintiff and other members of the class are citizens of a state different from Google, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 class members. 28 U.S.C. § 1332(d)(2), (6).

5. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a) in that: (1) Google resides in this judicial district; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Google is subject to jurisdiction in the Northern District of California.

## FACTS

6. Google's free Internet search engine is the most widely used search engine in the world. In 2007, Google's total revenue was approximately $16.6 billion, 99% of which was derived from advertising services.

7. Google offers two basic advertising and placement programs—Google AdWords and Google AdSense. Google AdWords is for advertisers, such as plaintiff and the class, who wish to place ads on Google and other sites within Google's network. Google AdSense is for website publishers who wish to permit Google AdWords advertisers' ads to appear on their sites.

8. Google describes Google AdWords as follows:

2.

> **Google AdWords** is a quick and simple way to advertise on Google, regardless of your budget. AdWords ads are displayed along with search results on Google, as well as on search and content sites in the growing Google Network, including AOL, EarthLink, HowStuffWorks, & Blogger. With searches on Google and page views on the Google Network each day, your Google AdWords ads reach a vast audience.

9. Under the Google AdWords program, advertisers select and bid on particular internet search terms. When an internet user employs Google to search for that term, Google displays the ads of its customers on the Google webpage that returns the search results. The more an advertiser bids for a particular search term, the better placement that advertiser generally receives. Advertisers pay Google based on the number of Internet users who click on their ads.

10. The Google AdWords program also allows advertisers to have their ads placed on third-party sites through Google's AdSense program. Google describes Google AdSense as follows:

> **Google AdSense** is a fast and easy way for website publishers of all sizes to display relevant, unobtrusive Google ads on their website's content pages and earn money. Because the ads are related to what your users are looking for on your site, you'll finally have a way to both monetize and enhance your content pages. It's also a way for web site publishers to provide Google search to their site users, and to earn money by displaying Google ads on the search results pages.

11. Under the Google AdSense program, website publishers can have subject matter related ads displayed on their websites. Google AdSense is comprised of three separate networks: AdSense for Search, AdSense for Content, and AdSense for Domains.

12. AdSense for Search refers to websites that include the Google search function, and that display ads alongside the results of Google searches conducted on the website. AdSense for Search is also known as Google's "Search Network."

13. AdSense for Content includes third-party websites that display ads alongside their content, as described above. AdSense for Content is also known as Google's "Content Network."

14. AdSense for Domains includes inactive, parked sites with little or no content, but that display ads related to their domain name.

15. AdSense for Domains is only available to domain name registrars and holders of large domain portfolios, and is defined by Google as follows:

3.

**Google AdSense for Domains** allows domain name registrars and large domain name holders to provide valuable and relevant content on their parked pages. Parked domain pages generally have no content; however, by adding targeted ads, we hope to help users find what they are looking for. Using Google's semantic technology to analyze and understand the meaning of the domain names, AdSense for domains delivers targeted, conceptually related advertisements to parked domain pages to improve the user experience on these pages.

16. Finally, Google has a little-publicized advertising program called AdSense for Errors. AdSense for Errors places ads on unregistered web pages or malformed search queries incorrectly entered into a web browser's address bar instead of a search engine. In place of generating an error page, the resulting web page includes ads that are related to address of the page. Google lumps these error page ads into its Content and Search Networks.

17. Most AdWords and AdSense transactions follow a pay-per-click model. Pursuant to these programs, Google places ads on its own website and on third-party sites. Each time an ad is clicked, the site owner is compensated, and the advertiser is charged. Third-party site owners receive a fraction of the amount advertisers are charged, and Google takes the rest.

18. Google marketed AdWords by emphasizing the high quality of sites on which AdWords ads will be placed, and did not disclose Google's practice of placing ads on parked domains and error pages.

19. Google's AdWords website, which potential customers viewed before clicking the "Start Now" button to sign up for the service, includes the following statement:

**Expand your reach through the content network**
With hundreds of thousands of high-quality websites, news pages, and blogs that partner with Google to display AdWords ads, the Google content network can reach users all over the web to help you drive conversions. Choose from text, image, and video formats to communicate your message.

20. Google hosts an AdWords help page titled "Where will my ads appear?" that states:

**The search network**
Your ads may appear alongside or above search results, as part of a results page as a user navigates through a site's directory, or on other relevant search pages. Our global search network includes Google Product Search and Google Groups and the following entities: AOL, Netscape Netcenter, Earthlink, CompuServe, Shopping.com, AT&T Worldnet, Ask.com.

4.

**The content network partners**
Our extensive content network of websites and products includes these partners: About, Lycos, The New York Times, InfoSpace, Reed Business, howstuffworks.com, business.com, foodnetwork.com, HGTV.

**Ads on the content network**
AdWords ads on content sites are targeted to the content and URL of each page. In the screenshot below you can see how the ads are displayed on a content page and that the ads are directly relevant to the content of the page.

21. Without their knowledge or consent, advertisers who joined Google's AdWords program have had their ads placed on pages contained in AdSense for Domains, or parked sites, and AdSense for Errors, or error pages. The quality of these sites as an advertising medium is substantially lower than sites on the rest of Google's network.

22. Specifically, these websites result in a lower conversion rate than standard search traffic or web sites with actual content on them. The conversion rate is defined as the number of people who take action based on a click (be it placing an item in a shopping cart, signing a petition, or contacting a business), expressed as a percentage of total clicks.

23. Plaintiff used Google AdWords to conduct his "Levitte International" campaign for his law practice. From approximately June 1, 2007 to August 17, 2007 in the "Levitte International" campaign, plaintiff received 202,528 impressions (or times his ad appeared in a web browser in response to a search) from parked domain ads, 668 clicks, and zero conversions. Over the same period, plaintiff received 1,009 impressions from error page ads, 25 clicks, and zero conversions. Domain and error page ads accounted for approximately 16.2% of all clicks on plaintiff's ad during his campaign, yet did not result in a single person completing the online form on the site, or contacting plaintiff by phone or email.

24. Plaintiff spent $136.11 for advertising on parked domains and error pages, or approximately 15.3% of his total campaign costs of $887.67, for which he received no benefit.

25. Google includes millions of parked domains and error pages that have little to no content, and that result in practically zero conversions, in both its Content Network and its Search Network.

5.

26.  Given the low quality of these parked domain and error page ads, advertisers would not want to spend their advertising budgets on these distribution networks. However, Google designed its network in such a way that it was virtually impossible to opt out of the AdSense for Domains and/or AdSense for Errors programs.

27.  Including parked domains and error pages within the Search and Content Networks is the opposite of what AdWords advertisers like plaintiff expected. Google's practice of including parked domain and error pages within the Search Network is misleading, since no actual searches are performed on these pages. Likewise, Google's practice of including parked domains and error pages within the Content Network is also misleading, since most of these sites include little or no content.

28.  Furthermore, even if an advertiser discovered that the parked domain and error pages were included within these other networks, the advertiser would have to opt out of both the Search Network and the Content Network to prevent its ads from being placed on low-quality parked domains and error pages. However, doing so would also prevent the ads from being displayed on the websites of any of Google's high-quality partners, such as AOL and The New York Times.

29.  For each advertising campaign, Google provides a settings page that allows advertisers to decide which networks on which to show their ads. Choices include Google Search, Search Network, and Content Network. There is no setting on this screen to allow advertisers to opt-out of the domains or error networks, and until March 2008, there was no method anywhere in Google's user interface to opt out of the domains or errors networks.

30.  When customers complained to Google that their ads were being shown on low-quality parked domains and error pages, Google dismissed these complaints, claimed the clicks were legitimate, and refused to refund customers for the charges.

31.  For example, in response to plaintiff's demand for a refund for amounts charged in connection with parked domain and error page clicks, Google declined to refund plaintiff for clicks originating from parked domains or error pages, which accounted for 16.4% of the total clicks during plaintiff's campaign. In an email from AdWords support to plaintiff, Google wrote, "My

6.

team verified that the clicks you have been charged for appear to fit a pattern of normal activity." The email went on to explain that clicks on the Content and Search Networks were all normal.

32. On March 6, 2008, Google posted a message on its AdWords blog announcing a change to its policy. Prior to that announcement, Google offered a "Site Exclusion Tool" that allowed advertisers to identify websites on which they did not wish Google to place their ads. However, the "Site Exclusion Tool" did not allow advertisers to opt out of parked domains or error pages. Their only options were to opt out of the entire Content Network or the entire Search Network. The site exclusion tool was later updated and renamed the "Site and Category exclusion tool."

33. After this change in Google's policy, by clicking on a well-hidden "page types" tab within the tool, advertisers could now see summarized click data for "Error Pages" and "Parked Domains," and for the first time, exclude their ads from appearing on these sites. However, instead of including this option on the main settings page for each campaign, Google instead placed this opt-out button four clicks deep within its interface, where many advertisers would not notice it.

34. On its marketing pages, which are shown to prospective customers prior to signing up for AdWords, Google states the following under "Reach More Customers":

> **Measure and optimize your results**
> With the Placement Performance Report, you have visibility into where all your ads appear. Review your ad's performance on a site-by-site basis to see impression, click, cost, and conversion data, and use this data to identify well-performing sites to target more aggressively and low-value placements that require content optimization or exclusion.

35. Google's Placement Performance Reports provided limited information only on sites included in Google's Content Network. No such reports have ever been available for Google's Search Network. What's more, Google did not automatically provide these reports to its AdWords customers. Rather, the reports would be generated only for AdWords customers who made a special effort to locate the appropriate page on Google's site and have the report generated. Moreover, while the reports did provide an incomplete list of some of the sites where an ad appeared, it concealed the domain names, IP addresses, and associated performance data of parked domains and

7.

error pages on which an ad was placed by aggregating this data into two lump-sum line items, among hundreds of line items on a typical report, called "Domain ads" and "Error page ads." The meaning of those line-items was not explained in the report, nor did Google disclose the low quality of those pages or the low conversion rates of advertising placed on those pages. Before June 12, 2007, when Google first made the Placement Performance Report tool available for its Content Network, not even this limited, aggregated data on "Domain ads" and "Error page ads" was available to AdWords customers. At no time did Google ever disclose to customers contemplating an AdWords purchase that low-quality parked domain and error pages were included in both its Content Network and its Search Network.

36. In addition to failing to disclose that ads would be placed on parked domains and error pages, and preventing advertisers from opting out of placement on these pages prior to March 2008, Google also concealed the individual addresses of the parked sites and error pages on which it placed AdWords ads. This policy was at odds with Google's marketing claims about what data it makes available to its users.

37. When Google originally launched the Placement Performance Report tool on June 12, 2007, it posted a message to its official AdWords blog stating: "Currently, AdSense for domains statistics are collectively reported, but we are working to give you site-by-site level statistics soon."

38. Without a site-by-site listing of which parked domains and error pages their ad was placed on, advertisers could not adjust their advertising budgets on these sites or exclude some or all parked domains and error pages from receiving ad placement. By aggregating this information, Google effectively prohibited advertisers from utilizing another means of opting out of domain or error page ads using the AdWords interface.

39. On May 2, 2008, Google posted a message titled "Where did I park?" on its AdWords Agency Blog announcing that it had finally changed the policy and was providing site-by-site data for parked domains.

40. Katharine Allan of Google's Agency Team wrote: "We recently added a new level of detail to Placement Performance reports to answer this question. Placement Performance reports give site-by-site performance metrics for the sites where your ads appeared within Google's content

network. Now, rather than seeing one consolidated entry for all parked domains in your reports, you'll see separate rows displaying performance statistics for individual parked domains."

41. Prior to May 2, 2008, Google failed to disclose domain names, IP addresses, and associated performance data of parked domain and error pages included in its Content Network. Google has never disclosed this data for parked domain and error pages included in its Search Network.

## CLASS ALLEGATIONS

42. Plaintiff brings this nationwide class action on behalf of himself and the class defined as follows:

> All persons or entities located within the United States who, within four years of the filing of this complaint, had an AdWords account with Google and who were charged for advertisements appearing on parked domain and/or error page websites.

43. Excluded from the class are governmental entities, defendant, any entity in which defendant has a controlling interest, and defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

44. Also excluded from the class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

45. Upon information and belief, plaintiff alleges that the total number of class members is at least in the hundreds of thousands and that the members of the class are geographically dispersed across the United States. Consequently, joinder of the individual class members would be impracticable.

46. There are many questions of law and fact common to the representative plaintiff and the proposed class, and those questions substantially predominate over any individualized questions that may affect individual class members. Common questions of fact and law include, but are not limited to, the following:

- Whether Google's representations regarding AdWords were false or misleading.
- Whether Google, in violation of applicable law and its own stated policy, charged plaintiff and the members of the class for ads that were placed on parked domain and error page websites;

9.

- Whether Google engaged in unfair, unlawful and/or deceptive business practices;
- Whether Google failed to disclose material facts about its Adwords program; and
- Whether or not plaintiff and the members of the class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be provided.

47. Plaintiff's claims are typical of the claims of the members of the class. Plaintiff and all class members have been similarly affected by defendant's common course of conduct.

48. Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interests adverse to those of the proposed class.

49. Plaintiff and the members of the class have suffered, and will continue to suffer, harm as a result of defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy, because joinder of all members of the class would be impractical.

50. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation would cause delay and undue expense to all parties affected by defendant's common course of conduct.

51. The class action device will allow a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action will conserve the resources of the parties and of the judicial system, and will protect the rights of the class members.

52. Furthermore, for many, if not most, class members, a class action is the only feasible mechanism for legal redress for the harm alleged.

10.

53. Adjudication of individual class members' claims against the defendant would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

**FIRST CLAIM FOR RELIEF
(VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE
SECTION 17200 ET SEQ. — UNFAIR CONDUCT)**

54. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

55. Plaintiff has standing to pursue this claim as plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

56. Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

57. Google's actions as alleged in this complaint constitute "unfair" conduct within the meaning of California Business and Professions Code sections 17200 *et seq.*

58. Google's business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers. Google's conduct is "unfair" because Google fails to disclose that customers' ads are placed on parked domain and error page sites, and Google does not provide an effective means for customers to exclude their ads from appearing on these sites. In fact, until March 2008, Google provided no means at all for customers to exclude their ads from appearing on these sites.

59. As a result of Google's "unfair" conduct, plaintiff and members of the class expended money on advertising that they would not otherwise have spent, and received less value for their advertising dollars than they should have received.

60. Google's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since Google continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers

11.

61.     Pursuant to Cal. Bus. & Prof. Code section 17203, plaintiff and the class seek an order of this court enjoining Google from continuing to engage in unlawful, unfair, and/or deceptive business practices and any other act prohibited by law, including those acts set forth in this complaint.

62.     Plaintiff and the class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from plaintiff and the class, along with all other relief allowable under Cal. Bus. & Prof. Code sections 17200 *et seq.*

## SECOND CLAIM FOR RELIEF
## (VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 ET SEQ. — FRAUDULENT CONDUCT)

63.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

64.     Plaintiff has standing to pursue this claim as plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

65.     Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

66.     Google's actions as alleged in this complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code sections 17200 *et seq.*

67.     Google's business practices, as alleged herein, are "fraudulent" because they are likely to deceive consumers, including plaintiff and members of the class. Google fails to disclose all material information to AdWords advertisers concerning the types of sites on which their ads will be displayed, and affirmatively conceals the fact that low-quality parked domains and error pages are included in both its Content Network and its Search Network. Google failed to disclose to advertisers, including plaintiff and the class, that, until March 2008, they would have no way to exclude their ads from appearing on these sites. Google continues to fail to provide an effective and adequate method of excluding ads from these sites, or to adequately disclose that any method of excluding ads from these sites exists at all.

68.  As a result of Google's "fraudulent" conduct, plaintiff and members of the class expended money on advertising that they would not otherwise have spent, and received less value for their advertising dollars than they should have received.

69.  Google's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since Google continues to market and sell its products in a manner that is likely to deceive customers.

70.  Pursuant to Cal. Bus. & Prof. Code section 17203, plaintiff and the class seek an order of this court enjoining Google from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this complaint.

71.  Plaintiff and the class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from plaintiff and the class, along with all other relief allowable under Cal. Bus. & Prof. Code sections 17200 *et seq.*

### THIRD CLAIM FOR RELIEF
### (VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 ET SEQ. — UNLAWFUL CONDUCT)

72.  Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

73.  Plaintiff has standing to pursue this claim as plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

74.  Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

75.  Google's actions as alleged in this complaint constitute an "unlawful" practice within the meaning of California Business and Professions Code sections 17200 *et seq.* because Google's actions are "unfair" and "fraudulent," as alleged above, and because they violate California Business and Professions Code sections 17500 *et seq.*, which proscribe false advertising, as alleged below.

76.  As a result of Google's "unlawful" conduct, plaintiff and members of the class expended money on advertising that they would not otherwise have spent, and received less value for their advertising dollars than they would have received.

13.

77. Pursuant to Cal. Bus. & Prof. Code section 17203, plaintiff and the class seek an order of this court enjoining Google from continuing to engage in unlawful business practices, including those acts set forth in this complaint.

78. Plaintiff and the class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from plaintiff and the class, along with all other relief allowable under Cal. Bus. & Prof. Code sections 17200 *et seq.*

### FOURTH CLAIM FOR RELIEF
### (VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17500 ET SEQ.)

79. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

80. Plaintiff brings this claim for relief on behalf of himself and the class.

81. Google engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

82. Google engaged in the advertising and marketing alleged herein with an intent to directly or indirectly induce the sale of advertising services to customers like plaintiff.

83. Google's advertisements and marketing representations regarding the characteristics of AdWords and the placement of its customers' ads were false, misleading and deceptive as set forth more fully above.

84. At the time it made and disseminated the statements alleged herein, Google knew or should have known that the statements were untrue or misleading, and acted in violation of Cal. Bus. & Prof. Code §§ 17500 *et seq.*

85. Plaintiff seeks restitution, injunctive relief, and all other relief allowable under Cal. Bus. & Prof. Code §§ 17500 *et seq.*

### FIFTH CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

86. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

14.

87. Through the actions described above, Google has received money belonging to plaintiff and the class through fees collected from ads placed on parked domains and error websites, even though reasonable customers would have believed that they were not paying for and would not be charged for ads placed on such websites.

88. Google has also reaped substantial profit by collecting and retaining revenue from plaintiff and the class generated through clicks generated through ads that were displayed on such websites.

89. Google has received money belonging to plaintiff and the class resulting from clicks on these ads.

90. As a direct and proximate result of Google's misconduct as set forth above, Google has been unjustly enriched.

91. Google should not be permitted to keep sums that Google has unjustly received as a result of its actions.

WHEREFORE, plaintiff and the class pray for relief as set forth below.

## **PRAYER FOR RELIEF**

Plaintiff requests that the Court enter an order or judgment against defendant as follows:

1. Certification of the proposed class pursuant to Fed. R. Civ. P. 23;
2. A declaration that defendant has engaged in the conduct alleged herein;
3. An injunction ordering defendant to cease and desist from engaging in the unfair, unlawful, and/or deceptive practices alleged in this complaint;
4. Restitution and disgorgement on certain causes of action;
5. Compensatory and general damages according to proof on certain causes of action;
6. Special damages according to proof on certain causes of action;
7. Both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;
8. Costs of the proceedings herein;
9. Reasonable attorneys' fees; and
10. Any and all such other and further relief that this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: July 11, 2008

SCHUBERT JONCKHEER KOLBE &
KRALOWEC LLP

*[signature]*

ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
KIMBERLY A. KRALOWEC
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161

*Attorneys for Plaintiff*

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
Hal K. Levitte, Individually and on Behalf of All Others Similarly Situated

**DEFENDANTS**
Google, Inc.

(b) County of Residence of First Listed Plaintiff  Suffolk County, Mass.
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Kimberly A. Kralowec, Esq.
Schubert Jonckheer Kolbe & Kralowec LLP
3 Embarcadero Center, Suite 1650, San Francisco CA 94111
415-788-4220

Attorneys (If Known)

C08 03369 JW PS

E-FILING  ADR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS |  | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
|  | PERSONAL INJURY | PERSONAL INJURY |  |  |  |
| 110 Insurance | 310 Airplane | 362 Personal Injury— Med. Malpractice | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 315 Airplane Product Liability |  | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act |  | 365 Personal Injury — Product Liability | 625 Drug Related Seizure of Property 21 USC 881 |  | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander |  | 630 Liquor Laws | **PROPERTY RIGHTS** | 450 Commerce |
| 150 Recovery of Overpayment & Enforcement of Judgment |  | 368 Asbestos Personal Injury Product Liability | 640 R.R. & Truck | 820 Copyrights | 460 Deportation |
| 151 Medicare Act | 330 Federal Employers' Liability |  | 650 Airline Regs. | 830 Patent | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 340 Marine | **PERSONAL PROPERTY** | 660 Occupational Safety/Health | 840 Trademark | 480 Consumer Credit |
|  | 345 Marine Product Liability | 370 Other Fraud | 690 Other |  | 490 Cable/Sat TV |
| 153 Recovery of Overpayment of Veteran's Benefits |  | 371 Truth in Lending |  |  | 810 Selective Service |
| 160 Stockholders' Suits | 350 Motor Vehicle | 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | 850 Securities/Commodities/Exchange |
| 190 Other Contract | 355 Motor Vehicle Product Liability |  | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 875 Customer Challenge 12 USC 3410 |
| 195 Contract Product Liability | 360 Other Personal Injury | 385 Property Damage Product Liability |  | 862 Black Lung (923) | [X] 890 Other Statutory Actions |
| 196 Franchise |  |  | 720 Labor/Mgmt. Relations | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
|  |  | **PRISONER PETITIONS** | 730 Labor/Mgmt.Reporting & Disclosure Act | 864 SSID Title XVI | 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** |  | 740 Railway Labor Act | 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence | 790 Other Labor Litigation |  | 894 Energy Allocation Act |
| 220 Foreclosure | 442 Employment | **Habeas Corpus:** | 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 530 General |  | 870 Taxes (U.S. Plaintiff or Defendant) | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 240 Torts to Land | 444 Welfare | 535 Death Penalty |  |  |  |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 540 Mandamus & Other | **IMMIGRATION** | 871 IRS—Third Party 26 USC 7609 |  |
| 290 All Other Real Property |  | 550 Civil Rights | 462 Naturalization Application |  | 950 Constitutionality of State Statutes |
|  | 446 Amer. w/Disabilities - Other | 555 Prison Condition | 463 Habeas Corpus - Alien Detainee |  |  |
|  | 440 Other Civil Rights |  | 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332(d)
Brief description of cause:
Unfair competition and false advertising under Cal. Bus. & Prof. Code §§ 17200 and 17500

## VII. REQUESTED IN COMPLAINT:
[X] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ According to proof
CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
[ ] SAN FRANCISCO/OAKLAND    [X] SAN JOSE

DATE 7/11/08

SIGNATURE OF ATTORNEY OF RECORD  *[signature]* Kimberly A. Kralowec

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**   Example:   U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.