ROBERT C. SCHUBERT S.B.N. 62684
WILLEM F. JONCKHEER S.B.N. 178748
KIMBERLY A. KRALOWEC S.B.N. 163158
SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA  94111
Telephone:  (415) 788-4220
Facsimile:  (415) 788-0161

*Attorneys for Plaintiff Hal K. Levitte*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| HAL K. LEVITTE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC., a Delaware corporation,<br><br>Defendant. | Case No.  C 08-03369 JW<br><br>**DECLARATION OF WILLEM F. JONCKHEER IN SUPPORT OF PLAINTIFF HAL K. LEVITTE'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**<br><br>**Judge: Hon. James Ware** |

I, Willem F. Jonckheer, declare as follows:

1.      I am an attorney duly licensed by the State of California and am admitted to practice before this Court. I am a partner at Schubert Jonckheer Kolbe & Kralowec LLP, attorneys of record for plaintiff in *Levitte v. Google, Inc.*, Case No. C 08-03369 (*"Levitte"*). I make this declaration in support of plaintiff Hal K. Levitte's Administrative Motion to Consider Whether Cases Should Be Related. The matters set forth herein are of my own personal knowledge, and if called and sworn as a witness I could completely testify regarding them.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

2.     Attached hereto as Exhibit A is a true and correct copy of a complaint captioned *RK West, Inc. v. Google, Inc.*, Case No. C 08-03452, pending before Judge Whyte.

3.     Attached hereto as Exhibit B is a true and correct copy of a complaint captioned *Pulaski & Middleman, LLC v. Google Inc.*, Case No. C 08-03888, pending before Judge Illston.

4.     A stipulation pursuant to Civil Local Rule 7-11(a) with defendant Google, Inc. ("Google") could not be obtained. Counsel for Google has proposed that *Levitte*, *RK West*, and *Pulaski* be related to another action involving Google currently pending before Judge Whyte, captioned *Almeida v. Google, Inc.*, No. 08-02088. However, that action is factually and legally distinct from the actions at issue here, and plaintiff does not believe that the cases are related.

5.     Unlike *Almeida*, the three cases at issue in this motion concern Google's inclusion of low-quality parked domain and error page websites within its AdWords advertising program. The lowest filed of these cases is pending before Judge Ware. Therefore, plaintiff Levitte believes that the other two cases should be related to *Levitte*, for proceedings before Judge Ware.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 3rd day of September, 2008 in San Francisco, California.

_____/s/_____

Willem F. Jonckheer

# EXHIBIT A

E-filing

ADR

FILED
JUL 17 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  BRIAN S. KABATECK, SBN 152054
   (bsk@kbklawyers.com)
2  RICHARD L. KELLNER, SBN 171416
   (rlk@kbklawyers.com)
3  ALFREDO TORRIJOS, SBN 222458
   (at@kbklawyers.com)
4  KABATECK BROWN KELLNER LLP
   644 South Figueroa Street
5  Los Angeles, California 90017
   Telephone: (213) 217-5000
6  Facsimile: (213) 217-5010

7  Attorneys for Plaintiff
   RK West, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

FILED
JUL 17 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

11

12  RK West, Inc., a California corporation       CASE NO.
    d/b/a Malibu Wholesale,
13  individually and on Behalf of All Other       C08  03452       RS
    Similarly Situated,
14                                                CLASS ACTION COMPLAINT

15                     Plaintiff,

16          v.                                    JURY TRIAL DEMANDED

17

18  GOOGLE, INC., a Delaware
    Corporation; and DOES 1 through 10,
19  inclusive,

20                     Defendants.

21

22          Plaintiff RK West, Inc. d/b/a Malibu Sales ("Plaintiff"), individually and on behalf

23  of the class described below, by its attorneys, makes the following allegations pursuant to

24  the investigation of its counsel and based upon information and belief except as to

25  allegations specifically pertaining to Plaintiff and its counsel, which are based on

26  personal knowledge. Plaintiff brings this action for damages and injunctive relief against

27  defendant, demanding a trial by jury.

28

                          CLASS ACTION COMPLAINT

## NATURE OF THE ACTION

1.    Plaintiff brings this class action against Google, Inc. ("Google") to recover damages and other relief available at law and in equity on behalf of itself as well as on behalf of the members of the following class:

> All persons or entities located within the United States who created an AdWords campaign and were subsequently charged for clicks from ads placed on parked domains.

2.    This action arises from Google's deceptive, fraudulent and unfair practice of hiding the sources of invalid clicks from advertisers who seek on-line advertising through Google's AdWords.

3.    Google is commonly thought simply as an Internet search engine; in fact Google's business is online advertising. Google's business model is primarily dependent on connecting individuals who are searching the internet with advertisers who pay Google (and others) for each time the linkage occurs. The Google Network is the largest online advertising network in the United States.

4.    AdWords is Google's primary advertising program and is the main source of its revenue. Through AdWords, Google permits would-be advertisers to bid on words or phrases that will trigger the advertisers' ads. AdWords is premised on a pay-per-click ("PPC") model, meaning that advertisers pay only when their ads are clicked. In addition to being displayed on Google.com, the ads from Google's customers can also be placed on Google's "content network" which consists of sites that are not search engines. These content network sites include "parked domains" which are websites with no other content besides ads. This is done through the AdSense for Domains program, the other side of the Google advertising model.

5.    This action arises from the fact that Google does not disclose to its advertisers the web addresses of the parked domains where their ads were placed, clicked on and subsequently charged for. Google does this despite the fact that ads placed on parked domains are a constant source of invalid clicks. By charging for clicks in a single

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

bulk, generic "parked domain" category, advertisers have no way to distinguish between valid and invalid clicks from parked domains. Nonetheless, Google charges for all clicks from parked domains, regardless of validity.

## PARTIES

6.    RK West, Inc. d/b/a Malibu Sales ("Plaintiff") is a California Corporation doing business in the state of California. Plaintiff conducts a substantial predominance of its business in California, where its headquarters are located, thus making California its principal place of business.    Accordingly, Plaintiff is a citizen of California. Plaintiff has previously registered for an AdWords account and has also previously been charged for clicks from ads placed on parked domains as more particularly described herein.

7.    Plaintiff is informed and believes and thereon alleges that defendant Google, Inc. ("Google") is a Delaware Corporation doing business in the state of California. Plaintiff is informed and believes and thereon alleges that there is no one state where Google conducts a substantial predominance of its business, making its principal place of business the state where it is headquartered.  Google's headquarters – and, thus, its principal place of business – are located at 1600 Amphitheatre Parkway, Mountain View, California. Accordingly, Defendant Google is a citizen of Delaware and California.

8.    Plaintiff does not know the true names or capacities of the persons or entities sued herein as DOES 1 to 10, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the DOE defendants is in some manner legally responsible for the damages suffered by Plaintiff and the members of the class as alleged herein. Plaintiff will amend this complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

– 3 –
CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

9.   This Court has diversity subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) in that this is a civil action filed under Rule 23 of the Federal Rules of Civil Procedure and members of the class of plaintiffs are citizens of a State different from defendant Google, and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs. See 28 U.S.C. § 1332(d)(2), (6).

10.   Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a) in that: (1) Google resides in this judicial district; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Google is subject to personal jurisdiction in the Northern District of California.

## FACTUAL BACKGROUND

11.   Google offers advertisers two types of ads. The first is a search ad. When an Internet user uses Google to search for a specific term or term, Google will display the ads of advertisers who have bid for those particular keywords. The second type of ad is contextual based ads, or content ads. These ads are shown on third party websites that have content that matches the keywords bid on by the advertiser. For example, an ad for a hardware store may be shown on a website that has content about home improvement projects.

12.   An internet domain refers to the web address associated with a particular website. For example, the domain associated with the United States District Court in the Northern District of California is "cand.uscourts.gov." Domains are acquired by registering the name with an appropriate internet domain name registrar.

13.   A parked domain refers to a web address pointing to a website which contains no content besides ads. The domain name is registered for the sole purpose of selling the domain name at a later date, or to generate ad revenue. Since the domain name is no longer available for registration, it is commonly referred to as being "parked."

CLASS ACTION COMPLAINT

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, CA 90017
(213) 217-5000

14.    By default Google includes parked domains in its third party network. Domains owners are compensated for clicks that occur in these content-less websites through the Adsense for Domains program.

15.    In order to advertise with Google, advertisers must register with AdWords, Google's advertising program. After registration advertisers are able to change the default option and exclude their ads from being placed on parked domains only after engaging a complicated account settings page.

12.    Plaintiff enrolled in AdWords in or around August 2006. Plaintiff created several advertising campaigns for its online store business.

13.    Plaintiff was charged for several clicks originating from parked domains, with no additional information given by Google as to the nature or specific source of these clicks beyond the designation "parked domain."

14.    Plaintiff examined charges to its Adsense account from unknown domains labeled only as "parked domains." Upon further inspection Plaintiff realized that this traffic was being directed from parked domains which had little relation to its business, yet generated traffic to its site.

15.    Despite indication that some of the clicks from parked domains were invalid, Google failed to disclose to the Plaintiff specific domains names in which these ads were clicked on, making detection of invalid clicks difficult and even worse concealing any evidence of invalid clicks.

16.    Since Google profits from all generated clicks, regardless of validity they benefit by actively hiding sources of invalid clicks being charged to its advertisers. Hiding the source of parked domain clicks launders invalid clicks and makes any claims of invalid clicks from these sites nearly impossible to show.

///
///
///

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

— 5 —

## CLASS ALLEGATIONS

16.    Description of the Class: Plaintiff brings this nationwide class action on behalf of himself and the Class defined as follows:

> All persons or entities located within the United States who created an AdWords campaign and were subsequently charged for clicks from ads placed on parked domains.

17.    Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, co-conspirators, successors, subsidiaries, and assigns.    Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

18.    Plaintiff reserves the right to modify the class description and the class period based on the results of discovery.

19.    Numerosity: The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of class members is at least in the hundreds of thousands and that the members of the Class are numerous and geographically dispersed across the United States.  While the exact number and identities of class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the court.

20.    Common Questions of Law and Fact Predominate:  There are many questions of law and fact common to the representative Plaintiff and the proposed Class, and those questions substantially predominate over any individualized questions that may affect individual class members.  Common questions of fact and law include, but are not limited to, the following:

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

— 6 —
CLASS ACTION COMPLAINT

a. Whether Google committed fraud it failed to disclose sources of clicks from parked domains;

b. Whether or not Plaintiff and the members of the Class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded;

c. Whether Google engaged in unfair, unlawful and/or fraudulent business practices; and

d. Whether Google failed to disclose material facts about the subject Google Adwords program.

21. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since material information pertaining to the source of clicks coming from parked domains was equally withheld from all.

22. **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor its counsel has any interests adverse to those of the proposed Class.

23. **Superiority of a Class Action:** Plaintiff and the members of the Class have suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy as individual joinder of all members of the Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

— 7 —

common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the class member. Furthermore, for many, if not most, Class members, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

24.   Adjudication of individual Class members' claims with respect to the Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other Class members to protect their interests.

## FIRST CAUSE OF ACTION
### UNJUST ENRICHMENT

25.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

26.   Through the actions described above, Google has received money belonging to Plaintiff and the Class through the fees collected ads placed on third party parked domain sites.

27.   Additionally, Google has reaped substantial profit by concealing invalid clicks from parked domains. Ultimately, this resulted in Google's wrongful receipt of profits and injury to Plaintiff and the Class. Google has benefited from the receipt of such money that it would not have received but for its concealment.

28.   As a direct and proximate result of Google's misconduct as set forth above, Google has been unjustly enriched.

29.   Under principles of equity and good conscience, Google should not be permitted to keep the full amount of money belonging to Plaintiff and the Class which Google has unjustly received as a result of its actions.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

— 8 —

## SECOND CAUSE OF ACTION

### FRAUDULENT CONCEALMENT

30.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

31.    Google knew at all material times the source of invalid clicks from parked domains, and that its customers would not be able to distinguish between valid and invalid clicks from parked domains with the limited information that was provided to them.  These facts were not known to Plaintiff and the Class.

32.    Google had a duty to disclose the above known material facts because it knew that these material facts were unknown to Plaintiff and the Class, that Google was in a superior position of knowledge with regard to its own technology, and Google chose to make certain representations that presented only a part of the true story and thus misled its customers.

33.    Google's knowledge that advertisers would be charged for invalid clicks hidden in the bulk AdWords charges from parked domains, combined with Google's knowledge that Plaintiff and the Class relied or relies upon Google to communicate the true state of facts relating to its AdWords program creates a legal obligation on Google's part to disclose the source of clicks originating from parked domains.

34.    Google intentionally concealed and/or suppressed the above facts with the intent to defraud Plaintiff and the Class.

35.    Plaintiff and the Class were unaware of the above facts and would not have acted as they did if they had known of the concealed material facts.

36.    Google's concealment of the above facts has caused damage to Plaintiff and the Class in an amount to be shown at trial.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

///
///
///

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
(213) 217-5010

— 9 —

### THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE
## SECTIONS 17200 ET SEQ.

37.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

38.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as delineated herein.

39.   Class members have suffered injury in fact and have lost money or property as a result of Google's actions as delineated herein.

40.   Google's actions as alleged in this complaint constitute an unfair or deceptive practice within the meaning of California Business and Professions Code sections 17200 *et seq.* in that Google's actions are unfair, unlawful and fraudulent, and because Google has made unfair, deceptive, untrue or misleading statements in advertising media, including the Internet, within the meaning of California Business and Professions Code sections 17500 *et seq.*

41.   Google's business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are not informed of the sources of invalid clicks for which they are charged for.

42.   Google's business practices, as alleged herein, are unlawful because the conduct constitutes fraudulent concealment, as well as the other causes of action herein alleged.

43.   Google's practices, as alleged herein, are fraudulent because they are likely to deceive consumers.

44.   Google's wrongful business acts alleged herein constituted, and constitute, a continuing course of conduct of unfair competition since Google is marketing and selling its products in a manner that is likely to deceive the public.

45.   Google's business acts and practices, as alleged herein, have caused injury

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
Phone (213) 217-5000

— 10 —

**CLASS ACTION COMPLAINT**

1   to Plaintiff, the Class and the public.

2        46.   Pursuant to section 17203 of the California Business and Professions Code,

3   Plaintiffs and the class seek an order of this court enjoining Google from continuing to

4   engage in unlawful, unfair, or deceptive business practices and any other act prohibited

5   by law, including those acts set forth in the complaint.  Plaintiff and the Class also seek

6   an order requiring Google to make full restitution of all moneys it wrongfully obtained

7   from Plaintiff and the Class.

8        WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

9

10                          **PRAYER FOR RELIEF**

11       **WHEREFORE**, Plaintiff and members of the proposed Class request that the

12  court enter an order or judgment against Defendant as follows:

13       1.   Certification of the proposed Class and notice thereto to be paid by

14            Defendant;

15       2.   Adjudge and decree that Defendant has engaged in the conduct alleged

16            herein;

17       3.   For restitution and disgorgement on certain causes of action;

18       4.   For an injunction ordering Defendant to cease and desist from engaging in

19            the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

20       5.   For compensatory and general damages according to proof on certain

21            causes of action;

22       6.   For special damages according to proof on certain causes of action;

23       7.   For both pre and post-judgment interest at the maximum allowable rate on

24            any amounts awarded;

25       8.   Costs of the proceedings herein;

26       9.   Reasonable attorneys fees as allowed by statute; and

27  ///

28  ///

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

— 11 —
**CLASS ACTION COMPLAINT**



10. Any and all such other and further relief that this Court may deem just and proper.

Dated: July 17, 2008

KABATECK BROWN KELLNER, LLP

By

BRIAN S. KABATECK
RICHARD L. KELLNER
ALFREDO TORRIJOS
*Attorneys for Plaintiff and proposed class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
FAX (213) 217-5010

— 12 —

**CLASS ACTION COMPLAINT**



## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in the instant action.

Dated: July 17, 2008

KABATECK BROWN KELLNER, LLP

By

BRIAN S. KABATECK
RICHARD L. KELLNER
ALFREDO TORRIJOS
*Attorneys for Plaintiff and proposed class*

1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17  18  19  20  21  22  23  24  25  26  27  28

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
FAX (213) 217-5010

— 13 —
CLASS ACTION COMPLAINT

# EXHIBIT B

1  GUIDO SAVERI (022349)
   *guido@saveri.com*
2  R. ALEXANDER SAVERI(173102)
   *rick@saveri.com*
3  CADIO ZIRPOLI (179108)
   *cadio@saveri.com*
4  SAVERI & SAVERI, INC.
   111 Pine Street, Suite 1700
5  San Francisco, CA 94111-5619
   Telephone: (415) 217-6810
6  Facsimile: (415) 217-6813

7  TERRY GROSS (103878)
   *terry@gba-law.com*
8  ADAM C. BELSKY (147800)
   *adam@gba-law.com*
9  MONIQUE ALONSO (127078)
   *monique@gba-law.com*
10 GROSS BELSKY ALONSO LLP
   180 Montgomery Street, Suite 2200
11 San Francisco, CA 94104
   Telephone:  (415) 544-0200
12 Facsimile:  (415) 544-0201

**FILED**

AUG 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**E-filing**

13 Attorneys for Pulaski & Middleman, LLC

14

**SC**

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17               SAN FRANCISCO DIVISION

18

CV 08    **3888**

19 Pulaski & Middleman, LLC., individually and )  Case No.:
                                               )
20 on behalf of all others similarly situated,  )  **CLASS ACTION**
                                               )
21            Plaintiff,                        )  **COMPLAINT**
                                               )
22       v.                                     )  **JURY TRIAL DEMANDED**
                                               )
23 GOOGLE INC., a Delaware corporation,         )
                                               )
24            Defendant                         )
   _____ )

25

26

27

28

COMPLAINT                          0

1  Plaintiff, Pulaski & Middleman, LLC, ("Pulaski") alleges, individually and on behalf of
2  the Class described below, and upon information and belief, except as to allegations specifically
3  pertaining to itself, which are based on personal knowledge, as follows:

## SUMMARY OF CLAIMS

5      1.    This case is about Defendant Google's fraudulent, unfair and deceptive
6  business practices in connection with its AdWords advertising program ("AdWords"). Pulaski
7  brings this case both individually, and on behalf of a similarly situated Class, against Defendant
8  Google, Inc. ("Google") for breach of contract, breach of duty of good faith and fair dealing,
9  violations of Business Professions Code Sections 17200 and 17500 and unjust enrichment.

## PARTIES

11      2.    Plaintiff, Pulaski & Middleman, LLC, is Texas limited liability company
12  engaged in the practice of law. Pulaski's offices are located at 6800 West Loop South, Suite
13  200, Bellaire, Texas 77401. During the relevant time set forth herein, Plaintiff contracted with
14  Google to place advertisements through AdWords. Pulaski has contracted with Google and
15  participated in the AdWords program since on or about May 6, 2006.

16      3.    Defendant Google Inc. ("Google") is a publicly held corporation that was
17  incorporated in California in September 1998 and reincorporated in Delaware in August 2003.
18  Google's headquarters are located at 1600 Amphitheatre Parkway, Mountain View, California
19  94043. Defendant Google's website is located at www.Google.com. In 2007, Google's total
20  revenue was approximately 16.6 billion, 99% of which was derived from Internet based
21  advertising services offered through AdWords.

## JURISDICTION AND VENUE

23      4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
24  §1332(d) in that this is a civil action filed under Federal Rule of Civil Procedure 23 and Plaintiff
25  and other members of the Class are citizens of a state different from Google, the aggregate
26  amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and there are more
27  than 100 Class members 28 U.S.C. §1332(d)(2), (6).

28

COMPLAINT             1

1        5.    Venue is proper in the Northern District of California Pursuant to 28 U.S.C. §

2    1391(a) in that: (1) Google resides in this judicial district; (2) a substantial part of the events or

3    omissions giving rise to the claims asserted herein occurred in this judicial district; and (3)

4    Google is subject to jurisdiction in the Northern District of California.

5        6.    No other forum would be more convenient for the parties and witnesses to

6    litigate this action. Defendant Google is a resident of this judicial district and a substantial

7    amount of the evidence and witnesses are located in this judicial district.

8    **FACTS**

9    **A.    General Background**

10        7.    Google is the world's single largest online marketing/advertising business

11    in the world. According to Google: "There's no larger network for contextual advertising in the

12    world." https://adwords.google.com/select/afc.html.

13        8.    The "AdWords Advertising Program" ("AdWords") is Google's primary

14    advertising program and the source of over 98% of its annual revenue. In 2004, 2005, 2006, and

15    2007 Defendant Google generated approximately 99% of its annual revenue from its AdWords

16    advertisers.

17        9.    Google's advertising network ("Google Network") reaches over 86% of

18    Internet users worldwide. http://adwords.google.com/support/bin/answer.py?answer=6119. In

19    attracting AdWords advertisers to contract for participation in AdWords, Defendant Google

20    represents its "reach" as follows:

| Country | Unique Reach |
| --- | --- |
| Germany | 89% |
| Japan | 86% |
| France | 79% |
| United Kingdom | 75% |
| United States | 76% |
| Global | 75% |

Source: comScore Networks machine-based panel

https://adwords.google.com/select/afc.html

COMPLAINT                2

10.    Pulaski and the Class are "Adwords advertisers" that have contracted with Google to participate in the AdWords advertising program and display their advertisements on the Google Network.

**B.    Google Network**

11.    The Google Network, also referred to as the Google AdSense Network, is the association of individuals/entities that collectively provide the internet locations where AdWords advertisements are displayed and monetized.  The Google Network consists of: (1) Google; (2) Google Search Network participants (America Online, CompuServe, Netscape, AT&T Worldnet, EarthLink, Sympatico, and others); (3) Google Content Network participants (New York Post Online Edition, Mac Publishing (includes Macworld.com, JavaWorld, LinuxWorld), HowStuffWorks, and others); (4)  Google Domain Network participants (Sedo.com, Oversee.net and others); and (5) Google AdSense Network participants.

12.    The Google AdSense program pays participants for AdWords ads monetized on their sites.  Google AdSense consists of the following different programs:  AdSense for Content, AdSense for Search, AdSense for Mobile, AdSense for Video, AdSense for Domains, and AdSense for Errors.

13.    ***AdSense For Content:***  AdSense Network partners that contract with Google to allow AdWords Advertisements to be placed/displayed on content based webpages under their ownership, license, registration, and or other control. As explained by Google on its website: "The Google content network comprises hundreds of thousands of high-quality websites, news pages, and blogs that partner with Google to display targeted AdWords ads. When you choose to advertise on the content network, you can expand your marketing reach to targeted audiences--and potential customers--visiting these sites every day. There's no larger network for contextual advertising in the world."  It includes, but is not limited to the following individuals/entities:





https://adwords.google.com/select/afc.html

COMPLAINT                                    3

14.    **_AdSense for Search:_** AdSense Network partners that contract with Google to place a Google search box on their websites to allow a website's users to perform search queries using keywords from a website they have visited.  Based on the search query typed into the search box, Google will display Google search results along with related Adwords advertisements and Google shares the revenue with the site owner.

15.    As Google states:  "**__AdSense for search__** allows website publishers to provide Google web and site search to their visitors, and to earn money by displaying Google ads on the search results pages."



https://www.google.com/adsense/login/en_US/?hl=en_US&sourceid=aso&subid=ww-en_US-et-ads-r3_b_top&medium=link&gsessionid=jjUuHkGH_dk

16.    Defendant Google explains on its website, the:  "(g)lobal search network which includes, but is not limited to, Google Product Search and Google Groups and the following entities:



http://adwords.google.com/support/bin/answer.py?answer=6119

17.    This is how Google defines a "search":

**The Essentials of Google Search**

Doing a search on Google [or a site in the Search Network] is easy. Simply type one or more search terms (the words or phrase that best describe the

COMPLAINT                                4

1    information you want to find) into the search box and hit the 'Enter' key or click

2    on the Google Search button.

3    | Haw aii | Google Search |

4

5    In response, Google produces a results page: a list of web pages related to your

6    search terms, with the most relevant page appearing first, then the next, and so

7    on. http://www.google.com/support/bin/static.py?page=searchguides.html&ctx=basis

8    18.    *AdSense for Mobile:* AdSense Network partners that contract with Google to

9    allow AdWords Advertisements to be placed/displayed on mobile webpages under their

10   ownership, license, registration, and or other control.

11   19.    *AdSense for Video:* AdSense Network partners that contract with Google to

12   allow AdWords Advertisements to be placed/displayed within video streams under their

13   ownership, license, registration, and or other control.

14   20.    *AdSense for Domains:*  AdSense Network partners that contract with Google to

15   allow AdWords Advertisements to be placed/displayed on parked domains enterd into the

16   address bar under their ownership, license, registration, and or other control, based on the

17   meaning of the "domain names". Google explains on its website: AdSense for domains allows

18   domain name registrars and large domain name holders to unlock the value in their parked page

19   inventory.  AdSense for domains delivers targeted, conceptually related advertisements to parked

20   domain pages by using Google's semantic technology to analyze and understand the meaning of

21   the domain names.  Our program uses ads from the Google AdWords network, which is

22   comprised of thousands of advertisers worldwide and is growing larger everyday.  Google

23   AdSense for domains targets web sites in over 25 languages, and has fully localized

24   segmentation technology in over 10 languages.  http://www.google.com/domainpark/index.html

25   21.    *AdSense for Errors:* AdSense for Errors program serves AdWords

26   Advertisements when an internet user enters an unregistered URL or search query in their

27   browser's address bar.

28

COMPLAINT                                    5

**C. Google AdWords Program**

22.    The Google AdWords program, launched in 2000, is Google's primary advertising program. It offers participants an opportunity to place advertisements through Google's expansive network that reaches up to 86% of worldwide Internet users.

23.    AdWords advertisements appear throughout the Google Network alongside or above search results, on web pages, in e-mail, blogs, in video, and/or otherwise on Google or the Google Network (collectively referred to herein as "Advertising Properties").

24.    AdWords advertisements are offered in a variety of formats including, but not limited to, text ads, image ads (banner ads), flash ads, and video ads.

25.    Google states that advertisements are displayed throughout the Google Network based on factors such as: how much an advertiser bids, the quality of the advertiser's ad, and how many other people want to bid on a particular keyword.

26.    AdWords ads can be displayed on the: (1) Search Network and/or (2) Content Network.

27.    Search Network Ads are targeted and displayed based on a user's exact search query terms and keywords. Content Network Ads are targeted and displayed based on content themes.

28.    Google defines its "Content Network" as follows:

> The Google content network comprises hundreds of thousands of high-quality websites, news pages, and blogs that partner with Google to display targeted AdWords ads. When you choose to advertise on the content network, you can expand your marketing reach to targeted audiences--and potential customers-- visiting these sites every day. There's no larger network for contextual advertising in the world.

   

> As an AdWords advertiser, you can hand-pick sites from the content network or simply let Google's proven ad targeting display your ads on the website pages most relevant to your products and services.

https://adwords.google.com/select/afc.html

29.     Google, at https://adwords.google.com/support/bin/answer.py?answer=6119&topic=82, provides the following representations about, and example of, ad placement on the content network:

**Ads on the content network**

AdWords ads on <u>content sites</u> are targeted to the content and URL of each page. In the screenshot below you can see how the ads are displayed on a content page and that the ads are directly relevant to the content of the page.



30.     Google partners participating in the AdSense program are required to adhere to the following policies. "No Google ad may be placed on any non-content-based pages." In addition, no Google ad is allowed to be placed on web pages generated "specifically for the purpose of showing ads, whether or not the page content is relevant." https://www.google.com/adsense/support/bin/answer.py?answer=48182&sourceid=aso&subid= ww-ww-et-asui&medium=link

31.     Google states the following about the "Search Network":

**The search network**

Your ads may appear alongside or above search results, as part of a results page as a user navigates through a site's directory, or on other relevant search

pages. Our global search network includes Google Product Search and Google Groups and the following entities:

 

 

https://adwords.google.com/support/bin/answer.py?answer=6119

32.     Regarding the Search Network, Google tells advertisers: "Ads are targeted based on a user's search terms. For example, if you search for 'Italian coffee' on Google, you'll see related coffee ads next to the search results."

http://adwords.google.com/support/bin/answer.py?hl=en&answer=6104

33.     All new keyword campaigns are automatically included into both the Search and Content networks.

34.     An AdWords advertiser can exclude an ad campaign from the Search and/or Content Networks, however until May 2008, there was no way to categorically exclude "parked sites" or AdSense for Errors pages from a campaign.

35.     In fact, until May 2008, Google actively concealed the identity of parked pages and error pages that displayed AdWords advertisements.

**D.  Inclusion of Low –Quality Parked Domains and Error Pages in the Google Networks**

36.     Google includes millions of low-quality parked/undeveloped websites ("sham sites") in the Google Search and Content Networks, despite the fact that said sites do not contain any content and are not search sites.

37.     Until May 2008, Google actively concealed the monetization, with AdWords advertisements, of low-quality, parked and error pages.

38.     Google includes web pages displayed through the AdWords for Errors program in the "Content Network," despite the fact that the pages contain no content.  Google displays

1   AdWords ads on its AdSense for Errors web pages when an Internet user enters an unregistered

2   URL in their browser's address bar.

3        39.    AdWords advertisers in the Google "Content Network" may have their ads

4   displayed not only on "content sites," but also on parked/non-content sites, AdSense for

5   Domains, and AdSense for Error pages.

6        40.    AdWords advertisers in the Google "Search Network" may have their ads

7   displayed not only on "search sites," but also on parked/non-content sites and AdSense for

8   Domains pages, where someone only typed in a domain name into the address bar and/or no

9   search query from a search box occurred.

10        41.    Google intentionally includes the low-quality parked/undeveloped sites, Google

11   AdSense for domains and error pages in the Google Search and Content Networks in order to

12   inflate its reported search statistics, as well as to maximize revenue from internet traffic by

13   providing substantially more advertising venues (Internet locations) and more billed "clicks" or

14   "impressions" for AdWords advertisements.

15        42.    Google actively misleads AdWords advertisers and otherwise conceals the fact

16   that many of its AdWords advertisements appear on low–quality parked/non-content sites and

17   Error pages, by among other things:

18        a.    Repeatedly affirmatively representing on its website, and in other

19   communications, that AdWords advertisements appear on "High-quality" sites;

20        b.    Failing to reference the AdSense for Domains and AdSense for Errors pages in its

21   definition of the Google Network or on the main AdSense Pages;

22        c.    Until May 2008, failing to provide any specific identification of low-quality,

23   parked/non-content, AdSense for Domains and Error pages in its Content Network performance

24   reports;

25        d.    Even through the present, failing to identify the specific parked/undeveloped and

26   other AdSense for Domains sites monetized through its "Search Network" on its AdWords

27   advertisers' performance reports;

28

COMPLAINT              9

1    e.    After it commenced reporting in May 2008, Google recharacterized many of the

2    parked/undeveloped sites and AdSense for Domains pages as "Search Network" sites to avoid

3    specifically reporting monetization of those sites and further conceal their conduct from

4    AdWords advertisers;

5    f.    Misrepresenting to AdWords advertisers the real reason that parked/undeveloped

6    sites and AdSense for Domains have equal or better click through rates than traditional content

7    and search sites.  Google fails to disclose such pages and only shows ads on the

8    parked/undeveloped sites.  In doing this, Google violates its own terms and conditions of how

9    ads can be displayed on the Search and Content Networks, further misleading advertisers;

10    g.    Knowingly provided AdWords advertisers false defintions of the AdSense for

11    Domains Network, and mispresented to advertisers what the AdSense for Domains Nework

12    consists of and how an internet user gets to a parked page in the AdSense for Domains Network.

13    h.    Otherwise making affirmative misrepresentations, fraudulent statements, and

14    omissions of material fact to AdWords advertisers and the general public regarding the AdWords

15    and AdSense programs.

16    43.    Google induces advertiser participation in AdWords by emphasizing the "high-

17    quality" of sites on which AdWords ads will be placed, and intentionally concealed and omitted

18    Google's practice of placing ads on low-quality parked AdSense for Domains sites or on

19    AdSense for Errors sites, as well as on sites that it knows violates cybersquatting, trademark,

20    copyright, and other intellectual property laws.

21    44.    Google's AdWords website, which potential customers view before clicking the

22    "Start Now" button to sign up for the program, includes the following statement:

23

24    Expand your reach through the content network with hundreds of thousands of
     high-quality websites, news pages, and blogs that partner with Google to display
25    AdWords ads, the Google content network can reach users all over the web to
     help you drive conversions. Choose from text, image, and video formats to
26    communicate your message.

27

28

COMPLAINT                    10

45.    Google intends to and has affirmatively mislead AdWords advertisers, and otherwise omitted material facts, regarding the composition of the Content and Search networks.

46.    Google makes numerous affirmative representations and promises, to AdWords advertisers about participation in the AdWords program, including but not limited to the following:

a.    By advertising on sites in the Google "Content Network": "Your ads appear on sites that are highly relevant to your products and services. As a result, you're already aligned with the interests of people visiting those sites."

https://adwords.google.com/select/afc/cycle.html

b.    All web sites and products are reviewed and monitored according to Google's rigorous standards, so as the network grows, your AdWords ads will continue to appear only on high quality sites and products.

https://adwords.google.com/support/bin/answer.py?answer=6104&query=Google+Network&topic=&type=f&%20onclick= Similarly, Google states: "To ensure overall quality, all sites are carefully reviewed before being allowed in the Google Network."

http://adwords.google.com/support/bin/answer.py?hl=en&answer=6104

c.    Google represents that a number of "tools" offer automated optimization of an Adwords ad campaign and will save the AdWords advertiser money, including but not limited to: AdWords Budget Optimizer, Site exclusion tool, performance reporting tools contextual targeting tools, and AdWords Discounter.

47.    Google, despite its representations to AdWords advertisers, uses its automated tools to maximize its own revenue and for its own financial gain. Google misleads AdWords advertisers to utilize the tools with false promises that the tools will benefit the Adwords Advertiser.

48.    For example, Google offers the "AdWords Budget Optimizer" tool that promises to get AdWords advertisers the most clicks for their advertising dollars. In fact, Google uses that tool to maximize its own revenue by displaying AdWords ads on many low-quality sites that generate costly low-quality clicks, such as AdSense for Domains pages.

COMPLAINT                                    11

1    **E.        Monetization of AdWords Advertisements**

2            49.    Google generates money when it "monetizes" AdWords advertisements by

3    displaying them throughout the Google Network and then charging AdWords advertisers through

4    one of its two primary pricing regimes: Cost Per Click ("CPC") and Cost per Thousand

5    Impressions ("CPM").

6            50.    Google generates revenue under the CPC regime when:

7                    a.    Google displays the AdWords advertisement on the Google Network;

8                    b.    An Internet user "clicks" on the advertisement; and

9                    c.    Google charges the corresponding AdWords advertiser a "click fee."

10           51.    Google generates revenue under the CPM regime by charging advertisers a flat

11   rate based on display of impressions, regardless of whether an Internet user "clicks" on any

12   impression.

13           52.    Under the CPC pricing regime, Google places ads through the Google Network

14   and the AdWords advertiser is charged "per click," each time an ad is clicked.

15           53.    Under the CPM pricing regime, an Advertiser pays Google a set fee per 1000

16   impressions displayed.

17           54.    CPC or CPM pricing is available on placement targeted ads.  Only CPC pricing

18   is offered for contextually targeted ads.

19           55.    CPC advertisements are displayed when an Internet user enters search terms

20   into the Google Search engine.  The order in which the AdWords advertisements appear depends

21   on the amount of the bid and the "quality score" of all ads shown for a given search.

22           56.    AdWords advertisers can choose to pay a different price when ads appears on

23   the content network versus when it appears on Google or a Google search network site ("content

24   bidding").

25           57.    Google represents to AdWords advertisers that the "AdWords smart pricing

26   feature" will optimize their advertising dollars, because it: "(w)ill adjust the cost of your content

27   network click based on the content network site's relevance to your own site. For example, if our

28   data shows that a particular click from a content network page is less likely to turn into a sale,

COMPLAINT                            12

1  registration, or other desired behavior, we'll automatically reduce the price you pay for that

2  click." https://adwords.google.com/select/afc/pricing.html

3      58.    AdWords advertisers can set a maximum price that they are willing to pay per

4  click, a maximum daily budget, and/or use the "AdWords Budget Optimizer" that Google

5  promises will "(t)ry and find you the most clicks possible within your budget."

6      59.    Google represents that it is always actively working for AdWords advertisers to

7  get them the lowest advertising rates, with tools such as  the "AdWords Discounter" which

8  Google affirmatively represents "(a)utomatically reduces the actual cost-per-click (or CPC) you

9  pay to the lowest cost needed to maintain your ad's position.  The AdWords Discounter keeps

10  working no matter which method of display or bidding you choose."

11  https://adwords.google.com/support/bin/answer.py?answer=6084&topic=115

12      60.    Aggregate paid clicks on Google Network sites increased by 65% from year-

13  end 2005 through year end 2006 (*See* 2006 Google 10K at 43).

14  **F.    AdWords Contracts, Guidelines, and Policies**

15      61.    In order to participate in AdWords, advertisers must electronically accept the

16  following contracts:  https://adwords.google.com/select/tsandcsfinder. ("AdWords Contract")

17  and  http://www.google.com/accounts/TOS  ("Google Universal Contract"), as well as all

18  general and Google policies, procedures and regulations such as:  Editorial Guidelines

19  (adwords.google.com/select/guidelines.html), Google Privacy Policy

20  (www.google.com/privacy.html) and Trademark Guidelines

21  (www.google.com/permissions/guidelines.html), and Google and Partner ad specification

22  requirements (collectively, **"Policies"**). Pulaski and each member of the Class has entered into

23  said contracts with Google. ***See AdWords Contracts, attached hereto as Exhibit "A."***

24      62.    Google is contractually obligated to act in good faith and deal fairly with

25  AdWords advertisers.

26      63.    Google is further obligated to act in good faith and deal fairly with AdWords

27  advertisers in implementing and enforcing its self proscribed policies and guidelines.

28

COMPLAINT                13

1       64.     Google is obligated to discharge its contractual obligations without violating

2    California, United States, and International cybersquatting, typosquatting, cyberpiracy,

3    trademark, copyright, and other intellectual property laws.

4       65.     Google controls the Internet advertising market through restrictive agreements

5    with many of its Google Network participants that forbid those participants from displaying any

6    advertisements on their sites other than Google advertisements.  Therefore, in order to gain

7    access to millions of Internet advertising properties, Pulaski and the Class were left with no

8    choice but to contract with Google for participation in the Google AdWords advertising program.

9       66.     Google requires, as a condition for participation in the AdWords advertising

10   program, and to gain access to the Google Network properties that purportedly reaches 86% + of

11   world-wide internet users, that AdWords advertisers consent to and enter into electronic

12   contracts with Google that are displayed on Google's website.

13      67.     AdWords advertisers are required to agree to comply with Google's rules,

14   regulations, guidelines, and other policies.  In fact, several of the policies are explicitly

15   incorporated into the contracts.

16      68.     Pulaski and the Class have all entered into the same standard contracts with

17   Defendant Google, as a condition of participation in Google's AdWords advertising program.

18   Pulaski and the Class are subject to the same, standard written policies, procedures, and

19   guidelines published by Google on its website.

20      69.     Google unilaterally drafts all contracts, policies, procedures, and guidelines

21   governing the relationship between Google and AdWords advertisers, as well as any and all

22   amendments and modifications.

23      70.     Google places all AdWords advertisements on the Google Network.

24      71.     Pursuant to ¶2 of the Google Inc. Advertising Program Terms:

25        "Google Customer understands and agrees that ads may be placed on (y) any
           content or property provided by Google (**"Google Property"**), and, unless
26        Customer opts out of such placement in the manner specified by Google, (z) any
           other content or property provided by a third party (**"Partner"**) upon which
27        Google places ads (**"Partner Property"**).  Customer authorizes and consents to
           all such placements."
28

COMPLAINT              14

1    72.    Google is obligated pursuant to the terms of ¶2, to act in good faith and deal

2  fairly with Google AdWords advertisers in discharging the placement of AdWords

3  Advertisements.

4    73.    Specifically, Google has an obligation to display advertisements on legitimate

5  sites that Google and/or its "partners" are legally entitled to utilize and monetize.

6    74.    Google breaches its contractual obligations to Pulaski and the Class when it

7  displays and/or charges them for their AdWords advertisements displayed on sites that Google is

8  not legally entitled to use, sites that violate trademark law, sites that violate cybersquatting law,

9  sites that violate cyberpiracy laws, sites that violate copyright laws, and sites that violate other

10  California, United States and/or International laws.

11    75.    Google breaches its contractual obligations to Pulaski and the Class when it

12  displays and/or charges them for their AdWords advertisements displayed on sites that violate

13  Google's own written and published guidelines, policies, and rules.

14    76.    Google breaches its contractual obligations to Pulaski and the Class when it

15  overcharges them for AdWords advertisements.

16    77.    Google breaches its contractual obligations to Pulaski and the Class when it

17  includes millions of low-quality sites and Error pages in its "Content" and "Search" Networks.

18    78.    Google breaches its contractual obligations to Pulaski and the Class when it

19  utilizes its tools and technologies for their own pecuniary gain and to the detriment of Pulaski

20  and the Class, while inducing Pulaski and the Class to utilize those tools with false

21  representations that the tools will optimize/maximize the value of their participation in

22  AdWords.

23    79.    Google knowingly and intentionally displays, and charges Pulaski and the

24  Class, for AdWords advertisements on:

25        a.    Low-quality parked/non-content sites and Error pages;

26        b.    Sites that it "knows" violates cybersquatting, typosquatting, cyberpiracy,

27        trademark, copyright and other intellectual property laws;

28

COMPLAINT                    15

       c.    Sites that it knows violates Google's own written and published policies, guidelines, and rules, such as gambling sites and pornography related sites;

       d.    Sites that it knows it is not legally entitled to use; and

       e.    Sites that neither itself nor its partners are legally entitled to use or monetize, and in fact whose use is in violation of United States and International cybersquatting, trademark, copyright and other laws ("illegal sites").

**G.**    **Google Representations, Promises, and Communications**

80.    Google makes specific affirmative written representations and promises to Plaintiff, the putative Class, and the general public which are located on its website, www.google.com, as well as, specifically contained in the following documents:

| | |
|---|---|
| Google's Universal Terms of Service | http://www.google.com/accounts/TOS |
| Google's Copyright and Trademark policies | http://www.google.com/tm_complaint.html.<br>http://www.google.com/dmca.html. |
| **Google AdSense™ Online Standard Terms and Conditions** | https://www.google.com/adsense/localized-terms |
| Google AdSense Program Policies | https://www.google.com/adsense/support/bin/answer.py?answer=48182 |
| Google Webmaster Guidelines | http://www.google.com/webmasters/guidelines.html. |
| Google Landing Page and Site Quality Guidelines | https://adwords.google.com/support/bin/answer.py?answer=46675&hl=en |
| AdSense For Video Program Policies | https://www.google.com/AdSense/support/bin/answer.py?answer=73987 |
| AdSense for Mobile Content Program Policies | https://www.google.com/AdSense/support/bin/answer.py?answer=71600 |

81.    Google knowingly and intentionally uses the written representations to induce AdWords advertisers to contract with Google for participation in the AdWords advertising program. Google intends Plaintiff, the Class, and the public to rely upon and act in reliance upon its representations on www.google.com and other publicly available documents and

COMPLAINT           16

1  communications. Plaintiff and the Class reasonably expect Google to act in accordance with

2  these representations.

3      82.    Google knows that its website, and other public communications are false,

4  misleading, and/or omit material facts and information.

5      83.    Google intentionally and knowingly continuously violates its written policies,

6  guidelines, policies and rules in operating the AdWords and AdSense programs.  It does so for its

7  own ill-gotten commercial gain, in ways such as but not limited to:

8      a.    Intentionally displays and charges Plaintiff and the Class for "clicks" on

9  advertisements placed on websites that violate Google's written contracts, guidelines, policies,

10  and public representations, such as sites generated solely for the purpose of displaying AdWords

11  Advertisements and sites violating trademark and copyright law.

12      b.    Intentionally displaying and charging Plaintiff and the Class for "clicks" on

13  advertisements placed on low-quality and undisclosed websites participating in the AdSense for

14  Domains and Adsense for Errors programs;

15      c.    Overcharging Plaintiff and the Class for advertising through the AdWords

16  program;

17      d.    Intentionally hijacking and diverting Plaintiff and the Class Member's legitimate

18  internet traffic to sham infringement websites, and then requiring Plaintiff and the Class to pay

19  "click" ransoms to get their own internet traffic back.  For example, a user intending to visit the

20  retailer Target's legitimate website might mistype as "www.wwwtarget.com."  At the "www"

21  infringing site, the internet user sees a list of ads provided by Google, including an ad for the

22  legitimate Target site.  If the user clicks the legitimate Target ad, the user is taken to the true

23  Target website, but Target has to pay a "ransom".in the form of a "PPC" click fee in order to get

24  their intended internet traffic back from Google;

25      e.    Displaying, and charging for,  AdWords advertisements in spyware programs; and

26      f.    Failing to utilize targeting technology to ensure that AdWords ads are "highly

27  targeted," but rather placing and displaying AdWords ads in a random fashion.

28

COMPLAINT                    17

1    84.    Without their knowledge or consent, advertisers who joined Google's AdWords

2    program have had their ads placed on pages contained in AdSense for Domains, or parked sites,

3    and AdSense for Errors, or error pages. The quality of these sites as an advertising medium is

4    substantially lower than sites on the rest of Google's network, and many of the sites directly

5    violate United States and International trademark, copyright, and other intellectual property laws.

6    85.    For example, Google routinely and intentionally charges Plaintiff and Class

7    members for clicks on advertisements improperly displayed on parked domains that infringe

8    distinctive and valuable marks, for example "www" , "http" and "com.com" domains,  such as:

9    bedbathandbeyondcom.com; chevycom.com; chryslercom.com; cocacolacom.com;

10    discovercreditcardcom.com; disneylandcom.com; disneyworldcom.com;

11    ebaumsworldcom.com; espncom.com; fordmotorscom.com; geicocom.com;

12    homedepotcom.com; ibmcom.com; ikeacom.com; jetbluecom.com; jcpennycom.com;

13    kohlscom.com; kmartcom.com; mcdonaldscom.com; musiciansfriendcom.com;

14    nascarcom.com; oldnavycom.com; pizzahutcom.com; randcom.com; saabcom.com;

15    scottradecom.com; travelocitycom.com; usairwayscom.com; volkswagencom.com;

16    xangacom.com.  httpaarp.com, httpabc.com; httpabcgames.com; httpabckids.com;

17    httpabcnews.com; httpamericanexpress.com; httpamsouthbank.com; httpautotrader.com;

18    httpbankofamerica.com; httpbellsouth.com; httpbestbuy.com; httpblackplanet.com;

19    httpbordersbooks.com; httpbratz.com; httpcareerbuilder.com; httpcapitalone.com;

20    httpcapitolone.com; httpcarmax.com; httpcartonnetwork.com; httpcartoonetwork.com;

21    httpcartoonnetwork.com; httpchevrolet.com; httpchevy.com;  httpcircuitcity.com;

22    httpcisco.com;  httpciti.com;  httpcitibank.com; httpciticard.com and httpciticards.com.

23    "WWWAMERICANAERLINES.COM";

24    "WWWAMERICANAIRLINESARENA.COM";

25    "WWWAMERICANANIAGARA.COM"; "WWWAMERICANARLINES.COM";

26    WWWAMERICANCRAFTSMANWIN.COM"; "WWWAMERICANCURVES.COM";

27    "WWWAMERICANFUND.COM"; "WWWAMERICANFUNDS.COM";

28    "WWWAMERICANGREEETING.COM"; "WWWAMERICANHEARTASSO

COMPLAINT               18

1  CIATION.COM"; "WWWAMERICANHOMEPARTNERS.COM";

2  "WWWAMERICANMEADOWS.COM"; "WWWAMERICANTRANSAIR.COM";

3  "WWWAMERICASFIRSTHOME.NET"; "WWWAMERIJET.COM";

4  "WWWAMIGOSADVENTISTAS.ORG"; "WWWAMIN.ORG"; "WWWAMITI.COM";

5  "WWWAMORPOSTALES.COM"; "WWWAMOUR.COM";

6  "WWWAMROKHALED.COM"; "WWWAMTRACT.COM";

7  "WWWAMWAYINDIA.COM", "WWWANALOG.COM"; "WWWAND.COM";

8  "WWWANGELPIN.NET"; "WWWANGONOTICIAS.COM".

9       86.    Google includes millions of parked domains and error pages that have little to

10  no content, and that result in practically zero conversions, in both its Content Network and its

11  Search Network.

12       87.    Given the illegality and/or low quality of these parked domain and error page

13  sites, Plaintiff and the Class would not agree to spend their advertising budgets on these

14  distribution networks. However, Google designed its network in such a way that it was

15  impossible to opt out of the AdSense for Domains and/or AdSense for Errors programs.

16       88.    Even after providing limited ability to opt-out of the AdSense for Domains and

17  AdSense for Errors programs, Google still continues to conceal from the Plaintiff and the Class

18  that those networks contain millions of illegal sites that infringe trademark, copyrights and

19  intellectual property laws.

20       89.    Google's practice of including parked domains within the Search Network is

21  misleading, since no actual searches are performed on these pages. Likewise, Google's practice

22  of including parked domains and error pages within the Content Network is also misleading,

23  since most of these sites include little or no content.

24       90.    Google violates its promise and duty to not place ads in pernicious spyware

25  programs. Google has done just that, and has charged AdWords advertisers for every click made

26  on spyware pop-up ads.

27

28

COMPLAINT                              19

91.     Google also represented that its advertisement would be "highly targeted." When, in fact, Google enters into syndication agreements with companies that show random ads that are the opposite of "highly targeted."

92.     Google has otherwise acted unfairly, in bad faith, and in a manner that is directly contrary to the interests of AdWords advertisers, and in its own pecuniary interest, in discharging its duties and obligations to AdWords advertisers.

**H.     Contextual Targeting Technology**

93.     Google promises AdWords advertisers that it has sophisticated "Contextual Targeting Tehchnology" that: "(c)an automatically match your ads to webpages in our content network that are most relevant to your business. For example, an ad for a digital camera may show up next to an article reviewing the latest digital cameras." https://adwords.google.com/select/Login.

94.     Google provides the following explanation and example of how "contextual targeting" technology is used to maximize an AdWords ad placement:

Google continually scans the millions of pages from the content network to look for relevant matches with your keywords and other campaign data. When we find a match, your ad becomes eligible to run on that page. Google's extensive web search and linguistic processing technology can decipher the meaning of virtually any content network page to ensure we're showing the most relevant ads.

Consider the following example:



If you have a page about Java the coffee, our technology knows that it's not about Java the programming language. And you get ads about coffee.

COMPLAINT                                      20

Here's another example of an AdWords ad on a content network page:



I.      **Google Site Exclusion Tool**

95.     Until March 2008, Google's "Site Exclusion Tool" only allowed an advertiser to  exclude an advertising campaign from: (1) specific websites, (2) the entire "Search Network," and/or (3) the entire "Content Network."  It could not categorically exclude "parked" AdSense for Domains and/or AdSense for Errors pages.  Rather, in order to avoid placement on illegal and/or low quality sites, an advertiser would have to entirely opt-out of <u>both</u> the Search Network and the Content Network.  But, doing so would also prevent its ads from being displayed on the websites of any of Google's high-quality partners, such as AOL and The New York Times.

96.     On March 6, 2008, Google posted a message on its AdWords blog announcing a change to its exclusion policy.

97.     After this change in Google's policy, by clicking on a well-hidden "page types" tab within the tool, AdWords advertisers can now see summarized click data for "Error Pages" and "Parked Domains," and for the first time, exclude their ads from appearing on these sites. However, instead of including this option on the main settings page for each campaign, Google placed this opt-out button four (4) clicks deep within its interface, where many advertisers would not notice it.

98.    The site exclusion tool still does not provide a mechanism by which AdWords advertisers can "exclude" illegal sites from a campaign, such as those that infringe trademarks, copyrights, and other intellectual property laws.

99.    The site exclusion tool still does not provide a mechanism by which AdWords advertisers can "exclude" sites and pages that fail to meet Google's published guidelines, policies, and procedures (i.e., gambling sites, pornography sites, etc.).

**J.    Performance Reporting**

100.    On Google's AdWords promotional/marketing pages, which are shown to prospective customers prior to signing up for AdWords, Google states the following under "Reach More Customers":

> Measure and optimize your results With the Placement Performance Report, you have visibility into where all your ads appear. Review your ad's performance on a site-by-site basis to see impression, click, cost, and conversion data, and use this data to identify well-performing sites to target more aggressively and low-value placements that require content optimization or exclusion.

https://adwords.google.com/select/Login

101.    Google's Placement Performance Reports provide limited information only on sites included in Google's Content Network. No such reports have ever been available for Google's Search Network.

102.    Google does not automatically provide these reports to its AdWords customers. Rather, the reports are generated only for AdWords advertisers that locate the appropriate page on Google's website and have the report generated.

103.    In June 2007, Google first began offering limited data on the placement of AdWords ads on parked and error pages. However, until May 2008, the reports did not provide a specific (site-by-site) list of the parked and error pages where an ad appeared, rather the report simply aggregated the data into two lump-sum line items, called "Domain ads" and "Error page ads."

COMPLAINT                                        22

104.    At no time prior to June 12, 2007, did Google ever disclose to AdWords advertisers that low-quality parked domain and error pages were included in both its Content and Search Networks.

105.    Without a site-by-site listing of which parked domains and error pages their ad was placed on, advertisers could not adjust their advertising budgets on these sites. Nor could they exclude some or all parked domains and error pages from receiving ad placement. By aggregating this information, Google effectively prohibited advertisers from utilizing means of opting out of domain or error page ads using the AdWords interface.

106.    In response to complaints by advertisers, on May 2, 2008, Google posted a message titled "Where did I park?" on its AdWords Agency Blog announcing that it had finally changed the policy and was providing site-by site data for parked domains.

107.    Katharine Allan of Google's Agency Team wrote: "We recently added a new level of detail to Placement Performance reports to answer this question. Placement Performance reports give site-by-site performance metrics for the sites where your ads appeared within Google's content network. Now, rather than seeing one consolidated entry for all parked domains in your reports, you'll see separate rows displaying performance statistics for individual parked domains."

108.    Prior to May 2, 2008, Google completely failed to disclose domain names, IP addresses, and associated performance data of parked domain and error pages included in its Content Network. Google has never, and still does not disclose this data for parked domain and error pages included in its Search Network.

109.    Google's conduct, as alleged herein, has injured the general public and contravene well-established public policy.

110.    Google's conduct, as alleged herein, has distorted the Internet search system for public Internet users and has made it more difficult and time-consuming for Internet users to locate legitimate websites on the Internet, as they are repeatedly diverted through parked advertising pages that simply provide Google with "click" revenue.

111.    As a direct and proximate result of Defendant's conduct alleged herein, Plaintiff and the Class were and continue to be unlawfully charged for services that Defendant did not provide or that Plaintiffs and the Class did not agree to pay for.

112.    As a direct and proximate result of Defendant's conduct alleged herein, Plaintiff and the Class were and continue to be charged grossly inflated amounts for advertising through the AdWords program.

113.    As a direct and proximate result of the inclusion of illegal and low-quality sites in the Google Network, Pulaski and the Class paid more for advertising and the cost of participation in the AdWords program.

114.    As a direct and proximate result of Defendant's conduct alleged herein, Pulaski and the Class have otherwise suffered injury and damage to their business and property.

## CLASS ALLEGATIONS

115.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(c) and (b)(3) on behalf of himself and the following Class ("the Class"):

> All persons or entities located within the United States who, within four years preceding the filing of this Complaint, contracted for and participated in Google's AdWords program.

116.    Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

117.    Also excluded from the Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

118.    Upon information and belief, Plaintiff alleges that the total number of Class members is at least in the hundreds of thousands and that the members of the Class are geographically dispersed across the United States. Consequently, joinder of the individual Class members would be impracticable.

119.    There are many questions of law and fact common to the representative Plaintiff and the proposed Class, and those questions substantially predominate over any

COMPLAINT                                    24

individualized questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

- Whether Google's representations regarding AdWords were false or misleading;

- Whether Google's breached its Contracts with Plaintiff and the Class;

- Whether Google, in violation of applicable law and its own stated policy, charged Plaintiff and the members of the Class for ads that were placed on parked domain and error page websites;

- Whether Google engaged in unfair, unlawful and/or deceptive business practices;

- Whether Google failed to disclose material facts about its AdWords program; and

- Whether or not Plaintiff and the members of the Class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be provided.

120.    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all Class members have been similarly affected by Defendant's common course of conduct.

121.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex and Class action litigation.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class.  Neither Plaintiff nor his counsel has any interests adverse to those of the proposed Class.

122.    Plaintiff and the members of the Class have suffered, and will continue to suffer, as a result of Defendant's unlawful and wrongful conduct.  A Class action is superior to other available methods for the fair and efficient adjudication of the present controversy, because joinder of all members of the Class would be impractical.

123.    Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation would cause delay and undue expense to all parties affected by Defendant's common course of conduct.

COMPLAINT                                25

124.    The Class action device will allow a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum.  The maintenance of this action as a Class action will conserve the resources of the parties and of the judicial system, and will protect the rights of the Class members.

125.    Furthermore, for many, if not most, Class members, a Class action is the only feasible mechanism for legal redress for the harm alleged.

126.    Adjudication of individual Class members' claims against the Defendant would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudication and could substantially impair or impede the ability of other Class members to protect their interests.

## FIRST CLAIM OF RELIEF
### (Breach of Contract)

127.    Plaintiff realleges the preceding paragraphs as if fully set forth herein.

128.    Plaintiff and the class have standing to pursue this claim as Plaintiff and the Class have suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

129.    Plaintiff and Class members entered into the AdWords Contract and the Google Universal Contract with Defendant Google.  Plaintiff and Class member have performed all of their obligations under said contracts.

130.    In breach of said Contracts, Google: (1) placed advertisements, and charged Plaintiff and Class members for associated clicks, on its AdSense for Domains and AdSense for Errors sites; (2) placed Plaintiff's and Class members' advertisements, and charged Plaintiff and Class members for associated clicks, on domains/sites that infringe upon Plaintiff's and Class members' own trademarks; (3) placed advertisements, and charged Plaintiff and Class members for associated clicks, on domains/sites that violate trademark, copyright and intellectual property law, (4) overcharged Plaintiff and Class members for advertisements displayed through the AdWords program, and (5) charged Plaintiff and Class members for services they did not agree to pay for by hiding such charges for clicks on low-quality sites, illegal sites, or sites that violate

COMPLAINT                                    26

Google's publicly disseminated written policies, procedures and guidelines (i.e, gambling sites, pornography sites, etc.)

131.    Google knowingly and intentionally violates United States and international trademark, copyright, and intellectual property laws, for its own commercial gain, in the course of administering its AdWords program.

132.    Google actively conceals its illegal conduct from Plaintiff and the putative Class.

133.    As a direct and proximate result of Google's breach of contract as set forth above Plaintiff and Class members have been damaged.

## SECOND CLAIM FOR RELIEF

### (Breach of Covenant of Good Faith and Fair Dealing)

134.    Plaintiff realleges the preceding paragraphs as if fully set forth herein, and to the extent necessary is plead in the alternative.

135.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

136.    Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

137.    Google had a duty to act in good faith and deal fairly with Plaintiff and the Class in connection with said contracts and its obligations in administering the AdWords program.

138.    Google breached its duty of good faith and fair dealing to Plaintiff and the Class through its actions as alleged herein.

139.    As a direct and proximate result of Googles' breach of the covenant of good faith and fair dealing as set forth above Plaintiff and Class members have been damaged.

COMPLAINT                    27

### THIRD CLAIM FOR RELIEF

**(Violation of California Business & Professions Code
Section 17200 Et Seq. -Unfair Conduct)**

140.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

141.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

142.    Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above

143.    Google's actions as alleged in this complaint constitute "unfair" conduct within the meaning of California Business and Professions Code sections 17200 *et seq.*

144.    Google's business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.  Google's conduct is "unfair" because Google fails to disclose that customers' ads are placed on parked domain and error page sites, and Google does not provide an effective means for customers to exclude their ads from appearing on these sites. In fact, until March 2008, Google provided no means at all for customers to exclude their ads from appearing on these sites.

145.    As a result of Google's "unfair" conduct, Plaintiff and members of the Class expended money on advertising that they would not otherwise have spent, and received less value for their advertising dollars than they should have received.

146.    As a result of Google's "unfair" conduct, Plaintiff and members of the Class have unknowingly been charged and paid for advertising on sites that actually infringe upon the Class members' own trademarks.

147.    Google's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since Google continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

COMPLAINT                    28

148.    Pursuant to Cal. Bus. & Prof. Code §17203, Plaintiff and the Class seek an order of this court enjoining Google from continuing to engage in unlawful, unfair, and/or deceptive business practices and any other act prohibited by law, including those acts set forth in this complaint.

149.    Plaintiff and the Class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under Cal. Bus. & Prof. Code §17200 *et seq.*

## FOURTH CLAIM FOR RELIEF

### (Violation of California Business & Professions Code Section 17200 Et Seq.-Fraudulent Conduct)

150.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

151.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

152.    Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

153.    Google's actions as alleged in this complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code §17200 *et seq.*

154.    Google's business practices, as alleged herein, are "fraudulent" because they are likely to deceive consumers, including Plaintiff and members of the Class. Google fails to disclose all material information to AdWords advertisers concerning the types of sites on which their ads will be displayed, and affirmatively conceals the fact that low-quality parked domains and error pages are included in both its Content Network and its Search Network. Google failed to disclose Class members advertisements would also appear on deceptive domains that would violate the Class members own trademarks resulting in them paying for "advertising" to receive traffic from a user who intended to reach the Class member.  Google failed to disclose to advertisers, including Plaintiff and the Class, that, until March 2008, they would have no way to exclude their ads from appearing on these sites. Google continues to fail to provide an effective

COMPLAINT                                    29

1  and adequate method of excluding ads from these sites, or to adequately disclose that any method

2  of excluding ads from these sites exists at all.

3      155.    As a result of Google's "fraudulent" conduct, Plaintiff and members of the Class

4  expended money on advertising that they would not otherwise have spent, and received less

5  value for their advertising dollars than they should have received.

6      156.    Google's wrongful business practices alleged herein constituted, and continue to

7  constitute, a continuing course of unfair competition since Google continues to market and sell

8  its products in a manner that is likely to deceive customers.

9      157.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Class seek an

10  order of this court enjoining Google from continuing to engage in "fraudulent" business practices

11  and any other act prohibited by law, including those acts set forth in this complaint.

12      158.    Plaintiff and the Class also seek an order requiring Google to make full

13  restitution of all moneys it has wrongfully obtained from Plaintiff and the Class, along with all

14  other relief allowable under Cal. Bus. & Prof. Code §17200 *et seq.*

15  ### FIFTH CLAIM FOR RELIEF

16  ### (Violation of California Business & Professions
17  ### Code § 17200 Et Seq.-Unlawful Conduct)

18      159.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to

19  the extent necessary, pleads this cause of action in the alternative.

20      160.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact

21  and has lost money or property as a result of Google's actions as set forth above.

22      161.    Class members have suffered injury in fact and have lost money or property as

23  a result of Google's actions as set forth above.

24      162.    Google's actions as alleged in this complaint constitute an "unlawful" practice

25  within the meaning of California Business and Professions Code §17200 *et seq.* because

26  Google's actions are "unfair" and "fraudulent," as alleged above, and because they violate

27  California Business and Professions Code §17500 *et seq.,* which proscribe false advertising, as

28  alleged below.

COMPLAINT                                30

1    163.    As a result of Google's "unlawful" conduct, Plaintiff and members of the Class

2    expended money on advertising that they would not otherwise have spent, and received less

3    value for their advertising dollars than they would have received.

4    164.    Pursuant to Cal. Bus. & Prof. Code section 17203, Plaintiff and the Class seek

5    an order of this court enjoining Google from continuing to engage in unlawful business practices,

6    including those acts set forth in this complaint.

7    165.    Plaintiff and the Class also seek an order requiring Google to make full

8    restitution of all moneys it has wrongfully obtained from Plaintiff and the Class, along with all

9    other relief allowable under Cal. Bus. & Prof. Code §17200 *et seq.*

10    ### SIXTH CLAIM FOR RELIEF

11    **(Violation of California Business & Professions**
**Code § 17500 Et Seq.)**

12

13    166.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to

14    the extent necessary, pleads this cause of action in the alternative.

15    167.    Google engaged in advertising and marketing to the public and offered for sale

16    advertising services on a nationwide basis, including in California.

17    168.    Google engaged in the advertising and marketing alleged herein with intent to

18    directly or indirectly induce the sale of advertising services to customers like Plaintiff.

19    169.    Google's advertisements and marketing representations regarding the

20    characteristics of AdWords and the placement of its customers' ads were false, misleading and

21    deceptive as set forth more fully above.

22    170.    At the time it made and disseminated the statements alleged herein, Google

23    knew or should have known that the statements were untrue or misleading, and acted in violation

24    of Cal. Bus. & Prof. Code §17500 *et seq.*

25    171.    Plaintiff seeks restitution, injunctive relief, and all other relief allowable under

26    Cal. Bus. & Prof. Code §17500 *et seq.*

27

28

COMPLAINT                    31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### SEVENTH CLAIM FOR RELIEF

**(Unjust Enrichment)**

172.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

173.    Through the actions described above, Google has received money belonging to Plaintiff and the Class through fees collected from ads placed on parked domains and error websites, even though reasonable customers would have believed that they were not paying for and would not be charged for ads placed on such websites.

174.    Google has also reaped substantial profit by collecting and retaining revenue from Plaintiff and the Class generated through clicks generated through ads that were displayed on such websites.

175.    Google has received money belonging to Plaintiff and the Class resulting from clicks on these ads.

176.    As a direct and proximate result of Google's misconduct as set forth above, Google has been unjustly enriched.

177.    Google should not be permitted to keep sums that Google has unjustly received as a result of its actions.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Adam Pulaski and the Class pray for relief as follows:

a.    That the Court determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure;

b.    That the Court adjudge and decree that the Defendant has engaged in the conduct alleged herein;

c.    That the defendant be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining, or engaging in the unfair, unlawful, and/or deceptive practices alleged herein;

d.    That plaintiff and the class members be awarded restitution, including disgorgement of profits obtained by defendant as a result of their acts of unfair, unlawful or

COMPLAINT                                32

1  deceptive practices and acts of unjust enrichment and breach of the covenant of good faith and

2  fair dealing;

3      e.    That the plaintiff and class members be awarded compensatory damages and/or

4  all other available monetary and equitable remedies for the breach of contract claims identified

5  above;

6      f.    That plaintiff and the class members be awarded both pre-and post-judgment

7  interest at the maximum allowable rate on any amounts awarded;

8      g.    That plaintiff and the class members recover their costs of suit, including

9  reasonable attorneys' fees as provided by law;

10     h.    That plaintiff and the class members be awarded such other and further relief as

11  may be necessary and appropriate.

12                              **JURY DEMAND**

13     Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Constitution of the

14  United States, Plaintiff and the Class members demand a trial by jury for all issues so triable.

15

16

17  Dated: August 14, 2008

GUIDO SAVERI (022349)
18  R. ALEXANDER SAVERI (SBN 173102)
19  CADIO ZIRPOLI (SBN 179108)
SAVERI & SAVERI, INC.
20  111 Pine Street, Suite 1700
San Francisco, CA 94111-5619
21  Telephone: (415) 217-6810

22
TERRY GROSS (103878)
23  ADAM C. BELSKY (147800)
MONIQUE ALONSO (127078)
24  GROSS BELSKY ALONSO LLP
180 Montgomery Street, Suite 2200
25  San Francisco, CA 94104
Telephone: (415) 544-0200
26

27  Counsel for Pulaski & Middleman, LLC

28

COMPLAINT                              33