ROBERT C. SCHUBERT S.B.N. 62684
WILLEM F. JONCKHEER S.B.N. 178748
KIMBERLY A. KRALOWEC S.B.N. 163158
SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161

*Lead Counsel for Plaintiffs*
*[Additional Counsel Appear on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ADWORDS LITIGATION | Case No. 08-3369 JW |
| | **AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTIONS 17200 ET SEQ. AND 17500 ET SEQ. AND UNJUST ENRICHMENT** |
| This Document Relates to: | |
| All Actions | **[FILED PURSUANT TO COURT ORDER DATED FEBRUARY 17, 2010]** |
| | **[PLAINTIFFS' FIFTH CLAIM FOR UNJUST ENRICHMENT DISMISSED WITHOUT PREJUDICE, AND PLAINTIFFS' JURY DEMAND STRICKEN, BY STIPULATED ORDER DATED JULY 16, 2009]** |
| | **JURY TRIAL DEMANDED** |

Plaintiffs allege, individually and on behalf of the class described below, and upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge, as follows:

Amended Consolidated Class Action Complaint
No. 08-3369 JW

1.

Dockets.Justia.com

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

## SUMMARY OF CLAIMS

1. This is a class action lawsuit against defendant Google, Inc. ("Google") for violation of California Business & Professions Code Sections 17200 and 17500 and unjust enrichment in connection with Google's AdWords program for Internet advertisers.

2. Google promotes itself as the world's leading Internet search engine. Google's principal source of revenue is the sale of online advertising. Plaintiffs and the class are customers of Google's AdWords program, pursuant to which Google places advertisements on Internet websites. Customers pay Google when Internet users click on their ads.

3. As is the case with any medium, advertisers wish to spend advertising dollars to display ads to consumers who are interested in their products and services. In this regard, Google states that its partnerships with "hundreds of thousands of high-quality websites, news pages and blogs" will help AdWords advertisers "drive conversions." A "conversion" occurs when a click on an advertisement leads directly to user behavior, such as a purchase.

4. Google represents that it places ads on websites that contain content relevant to the advertisers' products or services, and alongside the results of searches of relevant terms on Google's search function. However, Google has concealed from and/or misrepresented material information to plaintiffs and the class concerning the AdWords program. Specifically, Google fails to disclose that it also places AdWords ads on millions of "parked domain" and "error page" websites.

5. These inactive, undeveloped websites generally contain no content, and often include websites that appear in response to malformed or mistaken search inquiries and search typos. Clicks on ads placed on such parked domain and error page websites generate huge revenues for Google, paid by plaintiffs and the class. However, these clicks result in far fewer conversions to advertisers, and therefore far less value, to plaintiffs and the class. Plaintiffs and the class did not agree to pay Google for clicks on ads appearing on these low quality websites.

6. Plaintiffs allege that Google has damaged plaintiffs and the class by improperly charging them for clicks from advertising placed on such websites.

Amended Consolidated Class Action Complaint
No. 08-3369 JW

2.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

## PARTIES

7.      Plaintiff Hal K. Levitte ("Levitte") is a resident of Suffolk County, Massachusetts and citizen of Massachusetts.  Plaintiff is the principal of Levitte Law Group, a law firm located in Boston, Massachusetts.  During the class period, Levitte contracted with Google to place advertising through Google's AdWords program, paid for clicks from ads placed on parked domain and error pages, and was damaged thereby.

8.      Plaintiff Pulaski & Middleman, LLC ("Pulaski") is a Texas limited liability company and a citizen of Texas. Pulaski is a law firm. During the class period, Pulaski contracted with Google to place advertising through Google's AdWords program, paid for clicks from ads placed on parked domain and error pages, and was damaged thereby.

9.      Plaintiff RK West, Inc. d/b/a Malibu Sales ("RK West") is a California corporation and a citizen of California.  RK West is a wholesaler. During the class period, RK West contracted with Google to place advertising through Google's AdWords program, paid for clicks from ads placed on parked domain and error pages, and was damaged thereby.

10.     Plaintiff JIT Packaging, Inc. ("JIT") is an Illinois corporation and a citizen of Illinois. JIT provides packaging products and services. During the class period, JIT contracted with Google to place advertising through Google's AdWords program, paid for clicks from ads placed on parked domain and error pages, and was damaged thereby.

10A.    Plaintiff West Coast Cameras, Inc. is an S Corporation organized and existing under the laws of the State of Washington, and is a citizen of the State of Washington.  West Coast Cameras, Inc. sells cameras and camera products.  Plaintiff Richard Oesterling is an individual and a citizen of the State of Washington who, during the class period, was a sole proprietor doing business as KB Cameras, a store that sold cameras and camera products.  During the class period, West Coast Cameras, Inc. and Mr. Oesterling contracted with Google to place advertising through Google's AdWords program, paid for clicks from ads placed on parked domain and error pages, and were damaged thereby.

Amended Consolidated Class Action Complaint
No. 08-3369 JW

11.     Defendant Google is a publicly traded Delaware corporation headquartered in Mountain View, California.

### JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) in that this is a civil action filed under Federal Rule of Civil Procedure 23 and plaintiffs and other members of the class are citizens of a state different from Google, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 class members.  28 U.S.C. § 1332(d)(2), (6).

13.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a) in that:  (1) Google resides in this judicial district;  (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Google is subject to jurisdiction in the Northern District of California.

### FACTS

**A.     Background and Description Of Google's Advertising Programs.**

14.     Google's free Internet search engine is the most widely recognized and broadly used search engine in the world. According to Google, its network reaches 80% of global Internet users, "making it the world's #1 ad network."

15.     While Google is known primarily as an Internet search engine, its income is derived almost entirely from advertising. In 2007, Google's total revenue was approximately $16.6 billion, of which 99% was advertising revenue. In 2008, Google's total revenue was approximately $21.7 billion, of which approximately 97% was advertising revenue.

16.     Google offers two basic advertising services - Google AdWords and Google AdSense.  Google AdWords is for advertisers, such as plaintiffs and the class, who wish to place ads on Google, and on other sites within Google's network. Google AdSense is for website publishers who wish to permit AdWords advertisers' ads to appear on their sites.

17.     Google describes Google AdWords as follows:

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Amended Consolidated Class Action Complaint
No. 08-3369 JW

**Google AdWords** is a quick and simple way to advertise on Google, regardless of your budget. AdWords ads are displayed along with search results on Google, as well as on search and content sites in the growing Google Network, including AOL, EarthLink, HowStuffWorks, & Blogger. With searches on Google and page views on the Google Network each day, your Google AdWords ads reach a vast audience.

18.     Under the Google AdWords program, advertisers select and bid on particular Internet search terms. When an Internet user employs Google to search for that term, Google displays the ads of its customers on the Google webpage that returns the search results. The more an advertiser bids for a particular search term, the better placement that advertiser generally receives.  Advertisers then pay Google based on the number of Internet users who click on their ads.

19.     The Google AdWords program also allows advertisers to have their ads placed on third-party sites through Google's AdSense program. Google describes AdSense as follows:

**Google AdSense** is a fast and easy way for website publishers of all sizes to display relevant, unobtrusive Google ads on their website's content pages and earn money. Because the ads are related to what your users are looking for on your site, you'll finally have a way to both monetize and enhance your content pages. It's also a way for web site publishers to provide Google search to their site users, and to earn money by displaying Google ads on the search results pages.

20.     Google AdSense is implemented through two primary AdSense categories, known as AdSense for Content and AdSense for Search.

21.     AdSense for Content includes third-party websites that display ads alongside their content. AdSense for Content is also known as Google's "Content Network."

22.     According to Google, the Content Network "comprises hundreds of thousands of high-quality websites, news pages, and blogs that partner with Google to display targeted AdWords ads. When you choose to advertise on the content network, you can expand your marketing reach to targeted audiences - and potential customers - visiting these sites every day."

23.     Google reaches these "targeted audiences" through "Contextual Targeting Technology" that matches ads with relevant web pages. According to Google, "for example, an ad for a digital camera may show up next to an article reviewing the latest digital cameras."

Amended Consolidated Class Action Complaint
No. 08-3369 JW

Schubert Jonckheer Kolbe & Kralowec LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

24.     In connection with the Content Network, Google claims that it "continually scans the millions of pages from the content network to look for relevant matches with your keywords and other campaign data. When we find a match, your ad becomes eligible to run on that page.  Google's extensive web search and linguistic processing technology can decipher the meaning of virtually any content network page to ensure we're showing the most relevant ads."

25.     AdSense for Search refers to websites that include the Google search function, and that display ads alongside the results of Google searches conducted on the participating website. AdSense for Search is also known as Google's "Search Network."

26.     Google also maintains a program for website publishers called AdSense for Domains. This program includes inactive, parked sites with little or no content, but that display ads related to their domain name. Parked domain sites often appear when Internet users incorrectly enter a domain name, and, for example, often consist of web addresses that are confusingly similar to familiar brands, thereby seeking to capture Internet traffic intended for other sites.

27.     At relevant times, AdSense for Domains was only available to domain name registrars and holders of large domain portfolios, and was defined by Google as follows:

> **Google AdSense for Domains** allows domain name registrars and large domain name holders to provide valuable and relevant content on their parked pages. Parked domain pages generally have no content; however, by adding targeted ads, we hope to help users find what they are looking for. Using Google's semantic technology to analyze and understand the meaning of the domain names, AdSense for domains delivers targeted, conceptually related advertisements to parked domain pages to improve the user experience on these pages.

28.     Google also has a little-publicized advertising program called AdSense for Errors. AdSense for Errors places ads on unregistered web pages or malformed search queries incorrectly entered into a web browser's address bar instead of a search engine. Instead of generating an error page, the resulting page includes ads that are related to the address of the page.

29.     Although error pages contain neither content nor a search function, Google lumps these pages into its Content and Search Networks. As a result, the ads of AdWords advertisers who signed up for these networks also appear on error pages with neither content nor a search function.

Schubert Jonckheer Kolbe & Kralowec LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Amended Consolidated Class Action Complaint
No. 08-3369 JW

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

30.     AdSense for Content and AdSense for Search are promoted by Google as comprising the Google Network, or the association of entities that collectively provide the Internet locations where AdWords advertisements are displayed, and then monetized, as described below.

**B.     Google's Monetization of AdWords Advertisements.**

31.     Google monetizes AdWords advertisements by displaying them throughout the Google Network, and then charging AdWords advertisers through one of its two primary pricing regimes: pay per click or cost per impressions.

32.     Under the pay per click regime, Google places ads throughout the Google Network and the AdWords advertiser is charged "per click," meaning each time an ad is clicked.

33.     Under the cost per impressions regime, an advertiser pays Google a set fee for a set number of impressions (for example, 1000) that are displayed on the Google Network.

34.     Most AdWords and AdSense transactions follow the pay per click model.  Pursuant to these programs, Google places ads on its own website or on third-party sites.  Each time an ad is clicked, the site owner is compensated, and the advertiser is charged.

35.     Third-party site owners receive a fraction of the amount advertisers are charged for clicks, and Google takes the rest.

36.     Because more clicks mean more revenue for Google, Google is motivated to (1) increase and maximize the number of AdSense partner websites on which AdWords customers' ads can be displayed, and (2)  maximize the number of clicks generated in connection with its advertising programs, without regard to the value of these clicks to its advertisers.

**C.     Google's Unlawful Conduct.**

37.     Google exclusively controls the location and placement of all AdWords advertisements on the Google Network.

38.     Google has marketed AdWords to advertisers by repeatedly emphasizing the "high quality" of websites on which AdWords ads will be placed.

Amended Consolidated Class Action Complaint
No. 08-3369 JW

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

39.     In addition, Google represents that "all web sites and products are reviewed and monitored according to Google's rigorous standards, so as the network grows, your AdWords ads will continue to appear only on high quality sites and products."

40.     According to Google, ads "appear on sites that are highly relevant to your products and services. As a result, you're already aligned with the interests of people visiting those sites."

41.     Furthermore, Google represents that the AdWords program helps advertisers "target" new customers "at the precise moment they are searching what you offer." Google has also represented that its programs will "drive traffic to your website."

42.     In addition, according to Google, AdWords advertisers can "let Google's proven ad targeting display your ads on the website pages most relevant to your products and services."

43.     However, Google does not adequately disclose its practice of placing its customers' ads on parked domains and error pages, or its inclusion of such pages within the AdSense for Search or AdSense for Content programs.

44.     Google's AdWords website, which potential customers viewed before clicking the "Start Now" button to sign up for service, includes the following statement:

**Expand your reach through the content network**
With hundreds of thousands of high-quality websites, news pages, and blogs that partner with Google to display AdWords ads, the Google content network can reach users all over the web to help you drive conversions. Choose from text, image, and video formats to communicate your message.

45.     Google hosts an AdWords help page titled "Where will my ads appear?" that states:

**The search network**
Your ads may appear alongside or above search results, as part of a results page as a user navigates through a site's directory, or on other relevant search pages. Our global search network includes Google Product Search and Google Groups and the following entities: AOL, Netscape Netcenter, Earthlink, CompuServe, Shopping.com, AT&T Worldnet, Ask.com.

**The content network partners**
Our extensive content network of websites and products includes these partners: About, Lycos, The New York Times, InfoSpace, Reed Business, howstuffworks.com, business.com, foodnetwork.com, HGTV.

Amended Consolidated Class Action Complaint
No. 08-3369 JW

Schubert Jonckheer Kolbe & Kralowec LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Ads on the content network**

AdWords ads on content sites are targeted to the content and URL of each page. In the screenshot below you can see how the ads are displayed on a content page and that the ads are directly relevant to the content of the page.

46.     Without their knowledge or consent, advertisers who joined Google's AdWords program have had their ads placed on parked sites contained in AdSense for Domains and error pages contained in AdSense for Errors.  The quality of these sites as an advertising medium is substantially lower than sites on the rest of Google's network.

47.     Specifically, these websites result in a lower conversion rate than standard search traffic or web sites with actual content on them.  The conversion rate is defined as the number of people who take action based on a click (be it placing an item in a shopping cart, signing a petition, or contacting a business), expressed as a percentage of total clicks.

48.     Google includes millions of parked domains and error pages that have little to no content, and that result in far fewer conversions, in its Content Network and its Search Network. Google earns huge revenues off clicks from these pages, while AdWords advertisers unwittingly pay for clicks that provide them with a substantially lower return.

49.     Given the low quality of these parked domain and error page ads, and Google's representations that advertisements were being placed by Google on "high quality" websites with "targeted" user audiences, advertisers would not want to spend their advertising budgets on these distribution networks.  However, Google designed its programs in such a way that it was virtually impossible to opt out of the AdSense for Domains or AdSense for Errors programs.

50.     Including random parked domains and error pages within the Search and Content Networks is the opposite of what AdWords advertisers like plaintiffs expected, particularly in light of Google's representations that ads would be placed on "high quality" websites and directed to "targeted" audiences which would "drive conversions."

51.     The random placement of customers' ads on parked domain and error pages contradicts Google's marketing representations that AdWords helps advertisers "target" new customers "at the precise moment they are searching what you offer."

Amended Consolidated Class Action Complaint
No. 08-3369 JW

52.     Furthermore, Google's practice of including parked domain and error pages within the Search Network is misleading, since no actual searches are performed on these pages.  Likewise, Google's practice of including parked domains and error pages within the Content Network is misleading, since most of these sites include little or no content.

53.     Even if an advertiser discovered that parked domain and error pages were included within these networks, the advertiser would have to opt out of both the Search Network and the Content Network to prevent ad placement on low-quality parked domains and error pages.

54.     For each advertising campaign, Google provides a settings page that allows advertisers to decide which networks on which to show their ads. At relevant times, choices included Google Search (for searches on Google.com), Search Network, and Content Network. There is no setting on this screen to allow advertisers to opt-out of the domains or error networks, and until March 2008, there was no method anywhere in Google's user interface to opt out of the domains or errors networks.

55.     When customers complained to Google that their ads were being shown on low-quality parked domains and error pages, Google dismissed these complaints, claimed the clicks were legitimate, and refused to refund customers for the charges.

56.     For example, in response to plaintiff Levitte's demand for a refund for amounts charged in connection with parked domain and error page clicks, Google declined to refund him for clicks originating from parked domains or error pages, which accounted for 16.4% of the total clicks during plaintiff Levitte's AdWords advertising campaign.

57.     In an email from AdWords support to Levitte, Google wrote, "My team verified that the clicks you have been charged for appear to fit a pattern of normal activity." The email went on to explain that clicks on the Content and Search Networks were all normal.

58.     On March 6, 2008, Google posted a message on its AdWords blog announcing a change to its policy.  Prior to that date, Google offered a "Site Exclusion Tool" that allowed advertisers to identify websites on which they did not wish Google to place their ads.

Amended Consolidated Class Action Complaint
No. 08-3369 JW

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

59.     However, the "Site Exclusion Tool" did not allow advertisers to opt out of parked domains or error pages.  Their only options were to opt out of the entire Content Network or the entire Search Network.  The site exclusion tool was later updated and renamed the "Site and Category exclusion tool."

60.     After this change in Google's policy, by clicking on a well-hidden "page types" tab within the tool, advertisers could now see summarized click data for "Error Pages" and "Parked Domains," and for the first time, exclude their ads from appearing on these sites.

61.     However, instead of including this option on the main settings page for each campaign, Google instead placed the opt-out button four clicks deep within its interface, where many advertisers would not notice it.

62.     Without a site-by-site listing of which parked domains and error pages their ad was placed on, advertisers could not adjust their advertising budgets on these sites. Nor could they exclude some or all parked domains and error pages from receiving ad placement. By aggregating this information, Google effectively prohibited advertisers from utilizing means of opting out of domain or error page ads using the AdWords interface.

63.     On its marketing pages, which are shown to prospective customers prior to signing up for AdWords, under "Reach More Customers" Google states the following:

> **Measure and optimize your results**
> With the Placement Performance Report, you have visibility into where all your ads appear. Review your ad's performance on a site-by-site basis to see impression, click, cost, and conversion data, and use this data to identify well-performing sites to target more aggressively and low-value placements that require content optimization or exclusion.

64.     Google's Placement Performance Reports provided limited information only on sites included in Google's Content Network.  No such reports have ever been available for Google's Search Network.  What is more, Google did not automatically provide these reports to its AdWords customers.  Rather, the reports would be generated only for AdWords customers who made a special effort to locate the appropriate page on Google's site and have the report generated.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Amended Consolidated Class Action Complaint
No. 08-3369 JW

65.     In addition, while the reports did provide an incomplete list of some of the sites where an ad appeared, it concealed the domain names, IP addresses, and associated performance data of parked domains and error pages on which an ad was placed by aggregating this data into two lump-sum line items, among hundreds of line items on a typical report, called "Domain ads" and "Error page ads."  The meaning of those line-items was not explained, nor did Google disclose the low quality of those pages or the low conversion rates of advertising placed on those pages.

66.     Before June 12, 2007, when Google first made the Placement Performance Report tool available for its Content Network, not even this limited, aggregated data on "Domain ads" and "Error page ads" was available to AdWords customers.  At no time did Google ever disclose to customers contemplating an AdWords purchase that low-quality parked domain and error pages were included in both its Content Network and its Search Network.

67.     In addition to failing to disclose that ads would be placed on parked domains and error pages, and preventing advertisers from opting out of placement on these pages prior to March 2008, Google also concealed the individual addresses of the parked sites and error pages on which it placed AdWords ads.  This policy was at odds with Google's marketing claims about what data it makes available to its users.

68.     When Google originally launched the Placement Performance Report tool on June 12, 2007, it posted a message to its official AdWords blog stating: "Currently, AdSense for domains statistics are collectively reported, but we are working to give you site-by-site level statistics soon."

69.     Without a site-by-site listing of which parked domains and error pages their ad was placed on, advertisers could not adjust their advertising budgets on these sites or exclude some or all parked domains and error pages from receiving ad placement.  By aggregating this information, Google effectively prohibited advertisers from utilizing another means of opting out of domain or error page ads using the AdWords interface.

70.     On May 2, 2008, Google posted a message titled "Where did I park?" on its AdWords Agency Blog announcing that it had finally changed the policy and was providing site-by-site data for parked domains.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP

Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Amended Consolidated Class Action Complaint
No. 08-3369 JW

71.   Katharine Allan of Google's Agency Team wrote: "We recently added a new level of detail to Placement Performance reports to answer this question. Placement Performance reports give site-by-site performance metrics for the sites where your ads appeared within Google's content network. Now, rather than seeing one consolidated entry for all parked domains in your reports, you'll see separate rows displaying performance statistics for individual parked domains."

72.   Prior to May 2, 2008, Google failed to disclose domain names, IP addresses, and performance data of parked domain and error pages included in its Content Network.  Google has never disclosed this data for parked domain and error pages included in its Search Network.

73.   Google misleads AdWords advertisers and otherwise conceals that many ads appear on low quality, non-content parked sites and error pages, by among other things:

a.   Repeatedly representing on its website, and in other communications, that AdWords advertisements appear only on "high quality" web sites;

b.   Failing to reference the AdSense for Domains and AdSense for Errors pages in its definition of the Google Network, or as sites where AdWords ads are displayed;

c.   Until May 2008, failing to provide any specific identification of low-quality, AdSense for Domains and AdSense for Error pages in its performance reports;

d.   Even through the present, failing to identify the specific parked domain sites monetized through its Search Network on its AdWords advertisers' performance reports.

## CLASS ALLEGATIONS

74.   Plaintiffs bring this nationwide class action on behalf of themselves and the class defined as follows:

> All persons or entities located within the United States who, from July 11, 2004 through the present, had an AdWords account with Google and who were charged for advertisements appearing on parked domain and/or error page websites.

75.   Excluded from the class are governmental entities, defendant, any entity in which defendant has a controlling interest, and defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

76.    Also excluded from the class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

77.    Upon information and belief, plaintiffs allege that the total number of class members is at least in the hundreds of thousands and that the members of the class are geographically dispersed across the United States.  Consequently, joinder of the individual class members would be impracticable.

78.    There are many questions of law and fact common to the representative plaintiffs and the proposed class, and those questions substantially predominate over any individualized questions that may affect individual class members.  Common questions of fact and law include, but are not limited to, the following:

- Whether Google's representations regarding AdWords were false or misleading.
- Whether Google, in violation of applicable law and its own stated policy, charged plaintiffs and the members of the class for ads that were placed on parked domain and error page websites;
- Whether Google engaged in unfair, unlawful and/or deceptive business practices;
- Whether Google failed to disclose material facts about its Adwords program; and
- Whether plaintiffs and the members of the class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be provided.

79.    Plaintiffs' claims are typical of the claims of the members of the class.  Plaintiffs and all class members have been similarly affected by defendant's common course of conduct.

80.    Plaintiffs will fairly and adequately represent and protect the interests of the class. Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class, and have the financial resources to do so.  Neither plaintiffs nor their counsel has any interests adverse to those of the proposed class.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

81.     Plaintiffs and the members of the class have suffered, and will continue to suffer, harm as a result of defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy, because joinder of all members of the class would be impractical.

82.     Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation would cause delay and undue expense to all parties affected by defendant's common course of conduct.

83.     The class action device will allow a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum.  The conduct of this action as a class action will conserve the resources of the parties and of the judicial system, and will protect the rights of the class members.

84.     Furthermore, for many, if not most, class members, a class action is the only feasible mechanism for legal redress for the harm alleged.

85.     Adjudication of individual class members' claims against the defendant would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## FIRST CLAIM FOR RELIEF
## (VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 ET SEQ. — "UNFAIR" CONDUCT)

86.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

87.     Plaintiffs have standing to pursue this claim as plaintiffs have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

88.     Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

89.     Google's actions as alleged in this complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Sections 17200 *et seq*.

Amended Consolidated Class Action Complaint
No. 08-3369 JW

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

90.     Google's business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.  Google's conduct is also "unfair" because Google fails to disclose that customers' ads are placed on parked domain and error page sites, and Google does not provide an effective means for customers to exclude their ads from appearing on these sites.

91.     In fact, until March 2008, Google provided no means at all for customers to exclude their ads from appearing on these sites.

92.     As a result of Google's "unfair" conduct, plaintiffs and members of the class expended money on advertising that they would not otherwise have spent, and received low quality ad placements and clicks that were worth less than Google represented and less than plaintiffs and members of the class paid for them.

93.     Google's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since Google continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers

94.     Pursuant to Business and Professions Code Section 17203, plaintiffs and the class seek an order of this court enjoining Google from continuing to engage in "unfair" business practices and any other act prohibited by law, including those acts set forth in this complaint.

95.     Plaintiffs and the class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from plaintiffs and the class, along with all other relief allowable under Business and Professions Code Section 17200 *et seq.*

**SECOND CLAIM FOR RELIEF**
**(VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 ET SEQ. — "FRAUDULENT" CONDUCT)**

96.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

97.     Plaintiffs have standing to pursue this claim as plaintiffs have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

Amended Consolidated Class Action Complaint
No. 08-3369 JW

98.     Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

99.     Google's actions as alleged in this complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code sections 17200 *et seq*.

100.    Google's business practices, as alleged herein, are "fraudulent" because they are likely to deceive consumers, including plaintiffs and members of the class.

101.    Google fails to disclose all material information to AdWords advertisers concerning the types of sites on which their ads will be displayed, and affirmatively conceals the fact that low-quality parked domains and error pages are included in both its Content Network and its Search Network.  Google failed to disclose to advertisers, including plaintiffs and the class, that, until March 2008, they would have no way to exclude their ads from appearing on these sites.  Google continues to fail to provide an effective and adequate method of excluding ads from these sites, or to adequately disclose that any method of excluding ads from these sites exists at all.

102.    As a result of Google's "fraudulent" conduct, plaintiffs and members of the class expended money on advertising that they would not otherwise have spent, and received low quality ad placements and clicks that were worth less than Google represented and less than plaintiffs and members of the class paid for them.

103.    Google's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since Google continues to market and sell its products in a manner that is likely to deceive customers.

104.    Pursuant to Business and Professions Code Section 17203, plaintiffs and the class seek an order of this court enjoining Google from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this complaint.

105.    Plaintiffs and the class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from plaintiffs and the class, along with all other relief allowable under Business and Professions Code Section 17200 *et seq*.

Amended Consolidated Class Action Complaint
No. 08-3369 JW

17.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

### THIRD CLAIM FOR RELIEF
### (VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 ET SEQ. — "UNLAWFUL" CONDUCT)

106.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

107.    Plaintiffs have standing to pursue this claim as plaintiffs have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

108.    Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

109.    Google's actions as alleged in this complaint constitute an "unlawful" practice within the meaning of Business and Professions Code Section 17200 *et seq*. because Google's actions are "unfair" and "fraudulent," as alleged above, and because they violate Business and Professions Code sections 17500 *et seq*., which proscribe false advertising, as alleged below.

110.    As a result of Google's "unlawful" conduct, plaintiffs and members of the class expended money on advertising that they would not otherwise have spent, and received low quality ad placements and clicks that were worth less than Google represented and less than plaintiffs and members of the class paid for them.

111.    Pursuant to Business and Professions Code Section 17203, plaintiffs and the class seek an order of this court enjoining Google from continuing to engage in unlawful business practices, including those acts set forth in this complaint.

112.    Plaintiffs and the class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from plaintiffs and the class, along with all other relief allowable under Business and Professions Code Section 17200 *et seq*.

### FOURTH CLAIM FOR RELIEF
### (VIOLATION OF CALIFORNIA BUSINESS  & PROFESSIONS CODE SECTION 17500 ET SEQ.)

113.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

114.    Plaintiffs bring this claim for relief on behalf of themselves and the class.

Amended Consolidated Class Action Complaint
No. 08-3369 JW

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

115. Google engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

116. Google engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of advertising services to customers like plaintiffs.

117. Google's advertisements and marketing representations regarding the characteristics of AdWords and the placement of its customers' ads were false, misleading and deceptive as set forth more fully above.

118. At the time it made and disseminated the statements alleged herein, Google knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500 *et seq*.

119. Plaintiffs seek restitution, injunctive relief, and all other relief allowable under Business and Professions Code Section 17500 *et seq*.

### FIFTH CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

120. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

121. Through the actions described above, Google has received money belonging to plaintiffs and the class through fees collected from ads placed on parked domains and error websites, even though reasonable customers would have believed that they were not paying for and would not be charged for ads placed on such websites.

122. Google has also reaped substantial profit by collecting and retaining revenue from plaintiffs and the class generated through clicks generated through ads that were displayed on such websites.

123. As a direct and proximate result of Google's misconduct as set forth above, Google has been unjustly enriched.

124. Google should not be permitted to keep sums that Google has unjustly received as a result of its actions.

WHEREFORE, plaintiffs and the class pray for relief as set forth below.

Amended Consolidated Class Action Complaint
No. 08-3369 JW

19.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

## PRAYER FOR RELIEF

Plaintiffs request that the Court enter an order or judgment against defendant as follows:

1.       Certification of the proposed class pursuant to Fed. R. Civ. P. 23;

2.       A declaration that defendant has engaged in the conduct alleged herein;

3.       An injunction ordering defendant to cease and desist from engaging in the unfair, unlawful, and/or deceptive practices alleged in this complaint;

4.       Restitution and disgorgement on certain causes of action;

5.       Compensatory and general damages according to proof on certain causes of action;

6.       Special damages according to proof on certain causes of action;

7.       Both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

8.       Costs of the proceedings herein;

9.       Reasonable attorneys' fees; and

10.      Any and all such other and further relief that this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated:  February 22, 2010                              SCHUBERT JONCKHEER KOLBE &
                                                        KRALOWEC LLP


                                                        _____/s/_____
                                                        ROBERT C. SCHUBERT
                                                        WILLEM F. JONCKHEER
                                                        KIMBERLY A. KRALOWEC
                                                        Three Embarcadero Center, Suite 1650
                                                        San Francisco, CA  94111
                                                        Telephone:  (415) 788-4220
                                                        Facsimile:  (415) 788-0161

                                                        *Lead Counsel for Plaintiffs*

                                                        R. ALEXANDER SAVERI
                                                        CADIO ZIRPOLI
                                                        SAVERI & SAVERI, INC.
                                                        706 Sansome Street
                                                        San Francisco, CA 94111-5619

Amended Consolidated Class Action Complaint
No. 08-3369 JW

Telephone: (415) 217-6810
Facsimile:  (415) 217-6813

ROBERT FOOTE
MATTHEW J. HERMAN
CRAIG MIELKE
FOOTE, MEYERS, MIELKE AND FLOWERS, LLC.
28 North First St., Suite 2
Geneva, IL 60134
Telephone: (630) 232-6333
Fax: (630) 845-8982

KATHLEEN C. CHAVEZ
CHAVEZ LAW FIRM P.C.
28 North First St., Suite 2
Geneva, IL 60134
Telephone: (630) 232-4480
Fax: (630) 845-8982

PETER L. CURRIE
THE LAW FIRM OF PETER L. CURRIE, P.C.
536 Wing Lane
St. Charles, IL 60174
Telephone: (630) 862-1130
Fax: (630) 845-8982

BRIAN S. KABATECK  S.B.N. 152054
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

PETER A. LAGORIO
LAW OFFICE OF PETER A. LAGORIO
63 Atlantic Avenue
Boston, MA 02110
Telephone: (617) 367-4200
Facsimile: (617) 227-3384

TERRY GROSS S.B.N. 103878
ADAM C. BELSKY S.B.N. 147800
MONIQUE ALONSO S.B.N. 127078
GROSS BELSKY ALONSO LLP
180 Montgomery Street, Suite 2200
San Francisco, California 94104
Telephone: (415) 544-0200
Facsimile:  (415) 544-0201

*Counsel for Plaintiffs*

Amended Consolidated Class Action Complaint
No. 08-3369 JW

21.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220