**\*\* E-filed November 12, 2010 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE GOOGLE ADWORDS LITIGATION

No. C08-03369 JW (HRL)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GOOGLE, INC.'S MOTION TO COMPEL FURTHER RESPONSES AND PRODUCTION OF DOCUMENTS**

**[Re: Docket No. 92]**

_____/

## BACKGROUND

Through its AdWords program, defendant Google, Inc. ("Google") places the advertisements of its customers on internet web pages and charges those customers when internet users click on them. In this consolidated putative class action, Google customers Pulaski & Middleman, LLC ("Pulaski"), JIT Packaging, Inc. ("JIT Packaging"), RK West, Inc. ("RK West"), West Coast Cameras, Inc. ("West Coast Cameras"), and Richard Oesterling ("Oesterling") (collectively, "Plaintiffs") claim that Google improperly placed advertisements on "parked domains," websites that typically lack content but which display ads related to their registered domain name, and "error page websites," websites with an unregistered domain name or that simply display the results of a malformed search query.

Plaintiffs allege that ads placed on these type of websites have lower "conversion rates" than ads placed on other websites. A conversion rate is a measure of what an internet user does after

1   clicking on an advertisement (such as whether the user makes a purchase, signs up for a newsletter,

2   contacts the advertiser, etc.).  Plaintiffs thus allege that, although parked domains and error page

3   websites are low-quality websites from an advertiser's perspective, Google charged them for

4   displaying advertisements on these sites without revealing to them that they were parked domain

5   and error page websites.

6           With class certification discovery closing on October 4, 2010, Google filed a motion to

7   compel the week prior, seeking an order compelling Plaintiffs to produce documents responsive to

8   five of its requests for production of documents ("RFPs").  (Docket No. 92 ("Motion").)

9                                        **LEGAL STANDARD**

10          Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may

11  obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense

12  — including the existence, description, nature, custody, condition, and location of any documents or

13  other tangible things and the identity and location of persons who know of any discoverable matter."

14  FED. R. CIV. P. 26(b)(1).

15          However, "[o]n motion or on its own, the court must limit the frequency or extent of

16  discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery

17  sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is

18  more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

19  opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the

20  proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in

21  controversy, the parties' resources, the importance of the issues at stake in the action, and the

22  importance of the discovery in resolving the issues."  FED. R. CIV. P. 26(b)(2)(C).

23                                          **DISCUSSION**

24       A.  The Timeliness of Google's Motion to Compel

25          As an initial matter, Plaintiffs argue that Google's motion is untimely because it delayed

26  almost one year before taking issue with Plaintiffs' objections.  (Docket No. 106 ("Opp'n") at 4-6.)

27  Google served these RFPs on July 13, 2009, and Plaintiffs served their responses and objections on

28

*United States District Court*
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1  September 18, 2009.  (Docket Nos. 93-1, 93-2.)[1]  Plaintiffs say that Google did not raise any issue

2  with Plaintiffs' responses until August 2010.  (Opp'n at 3.)  Google, on the other hand, believes

3  Plaintiffs' untimeliness argument is a non-starter because this District's local rules only provide that

4  a motion to compel be filed within 7 days after the discovery cut-off, Civ. L.R. 26-2, and here,

5  Google filed the instant motion to compel on September 28, about a week before the fact discovery

6  deadline on October 4.

7       The Court agrees with Google.[2]  The local rule in this District is clear that a motion to

8  compel may be filed within 7 days after the discovery cut-off, and Google did that.  It would be

9  unfair to deny Google's motion when (presumably) it was relying upon that rule when determining

10  when to file its motion.

11       B.   The Merits of Google's Motion to Compel

12            a.   Request for Production No. 6

13       RFP No. 6 seeks any communications between Plaintiffs and anyone who responded to their

14  ads on any type of webpage, whether it is a parked domain or error page or not.  (Docket No. 93-1 at

15  6.)  But because RFP No. 6, as written, would encompass an incredible number of documents (*e.g.*,

16  every communication with any customer, every invoice for every sale, etc.), Google offered to

17  narrow its request: it says that Plaintiffs may respond by producing documents sufficient to identify

18  any "conversions" based on their own individual definitions of a "conversion."  (Docket No. 109

19  ("Reply") at 5-6.)

20       Plaintiffs argue that Google's narrowed and tailored request serves no purpose because they

21  have already agreed to search for further information in their possession concerning conversions as

---

[1] Google served identical requests on each of the plaintiffs.  For simplicity's sake, the Court will refer only to the requests served upon plaintiff JIT Packaging and RK West's responses thereto. (*See* Docket Nos. 93-1, 93-2.)

[2] A number of cases cited by the parties generally stand for the point that a court has discretion to deny a motion to compel as untimely, but a leading treatise on the subject suggests that a court only has such discretion when there is no local rule providing a clear deadline.  *See* SCHWARZER, TASHIMA & WAGSTAFFE, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Guide 2010) at §11:2355 ("Absent local rules imposing time limits, the matter is left to the court's broad discretion to control discovery."), § 11:2353 ("The FRCP do not set a time limit on filing a motion to compel.  Unless a deadline is set by local rules or a Rule 16(e) scheduling order . . ., timeliness is left to the court's discretion.") (citing this District's Civil Local Rule requiring that motions to compel be filed no later than 7 days after the discovery cut-off).

**United States District Court**
For the Northern District of California

1   requested by RFP No. 7 (RFP No. 7 seeks "[a]ll DOCUMENTS CONCERNING any

2   CONVERSIONS that resulted from any of YOUR AdWords advertisements") and have already

3   testified at their depositions that they do not have further information regarding their conversions

4   from clicks on ads on parked domain and error pages.  (Opp'n at 7.)

5          Plaintiffs reiterated this point at oral argument and agreed to submit amended responses to

6   RFP Nos. 6 and 7, as well as supplemental declarations of Plaintiffs, so stating.  Google indicated

7   that this solution was acceptable.  Accordingly, the Court will grant Google's motion with respect to

8   RFP No. 6, but Plaintiffs need only respond as they agreed at oral argument.

9                    b.   Request for Production No. 34

10         RFP No. 34 seeks "[a]ll DOCUMENTS CONCERNING any other action brought as a class

11  action in which YOUR attorneys are counsel of record (this request is limited to DOCUMENTS that

12  constitute any complaint or amended complaint, relate to any motion for class certification, and any

13  court orders regarding any motion for class certification)."  (Docket No. 93-1 at 11.)  Plaintiffs

14  argue that the documents sought by RFP No. 34 are not relevant to class certification and the burden

15  of producing them would outweigh any value they might have.  They also note that Judge Ware

16  already appointed Plaintiffs' counsel as interim lead counsel based on Plaintiffs' counsel's résumé,

17  which it submitted along with Plaintiffs' motion to consolidate, and they cite several cases in which

18  Judge Ware has based his decision that a class would be adequately represented on the counsel's

19  résumé.  (Opp'n at 8.)[3]  Google replies that "the lack of opposition [in the cases cited by Plaintiffs]

20  does not strip Google of its right to discovery in this case," because "[u]nlike the defendants in those

21  matters, Google intends to press plaintiffs' counsel to offer more than a résumé to meet their burden

22  of proving adequacy of counsel under Rule 23."  (Reply at 7.)

23         After considering the parties' arguments in their briefs and at the hearing, the Court does not

24  believe that copies of class action complaints and motions and orders related to class certification in

25

26  [3] *See*, *e.g.*, *In re Apple & ATTM Antitrust Litigation*, No. C07-05152 JW, 2010 WL 3521965, at *13
    (N.D. Cal. July 8, 2010 ("Here, the Court finds that there is no evidence that Plaintiffs or their
27  counsel have any conflicts of interest with other class members.  Further, upon review of the law
    firm resume of Wolf Haldenstein, the Court finds that counsel has sufficient experience in antitrust
28  and class actions such that they are capable of adequately and vigorously prosecuting this
    litigation.").)

**United States District Court**
For the Northern District of California

1   cases in which Plaintiffs' counsel was involved are relevant in this action.  Perhaps the types of

2   documents Google requests *might* be relevant to a court's class certification decision if, for instance,

3   legitimate concerns about unethical or sanctionable conduct have been raised and those documents

4   bore upon that conduct, but there are no such concerns here.

5           Even if they were relevant, the burden or expense of searching for and producing the

6   requested documents outweighs their likely benefit, especially since the documents that Google says

7   it wants (complaints and motions/orders related to class certification) are available in electronic

8   databases within which Google can easily search (*e.g.*, PACER, Westlaw, LEXIS).  While Google is

9   correct that a party does not get out of producing discoverable information just because information

10  is available from another source, a court can limit discovery if it determines that the discovery

11  sought "can be obtained from some other source that is more convenient, less burdensome, or less

12  expensive."  FED. R. CIV. P. 26(b)(1)(C)(i).  Here, the Court believes that would be more

13  convenient, less burdensome, and less expensive for Google to search for these publicly-available

14  documents on any of the available electronic databases than to require Plaintiffs to comb through

15  their entire collection of past case files (RFP No. 34 is not limited to any particular jurisdiction or

16  defined time period, after all) for documents of doubtful relevance.

17          Google's motion as to RFP No. 34 shall therefore be denied.

18                  c.   Request for Production Nos. 35-37

19          Plaintiffs object to producing their engagement letters with Plaintiffs' counsel as requested

20  by RFP No. 35 and documents concerning the payment of any fees or costs or the funding of this

21  action as requested by RFP Nos. 36 and 37 because they believe that they simply are not relevant to

22  class certification.[4]  In so arguing, Plaintiffs cite a leading treatise on class actions for the assertion

23  _____

24  [4] In their original objections, Plaintiffs also objected to RFP Nos. 35-37 on the basis that the
    information was protected by the attorney-client privilege and work-product doctrine. (Docket No.

25  93-2 at 17-18.)  However, it is clear that the fee arrangement between an attorney and his or her
    client generally is not privileged.  *In re Grand Jury Subpoenas*, 803 F.2d 493, 496 (9th Cir. 1986)

26  ("Generally, the identity of an attorney's client and the nature of the fee arrangement between an
    attorney and his client are not privileged.") (citing *In re Osterhoudt,* 722 F.2d 591, 592 (9th

27  Cir.1983); *Schofield,* 721 F.2d at 1222; *Lahodny,* 695 F.2d at 365; *United States v. Sherman,* 627
    F.2d 189, 190 (9th Cir.1980); *United States v. Hodge & Zweig,* 548 F.2d 1347, 1353 (9th

28  Cir.1977)).  This is because "[t]he fact of representation and the associated fee arrangement are
    preliminary, by their own nature, establishing only the existence of the relation between client and
    counsel, and therefore, normally do not involve the disclosure of any communication arising from

**United States District Court**
For the Northern District of California

1    that "[d]efendants often request discovery regarding fee arrangements between the plaintiffs and

2    their counsel, but courts usually find such discovery to be irrelevant to the issue of certification."  7

3    ALBA CONTE, ET AL., NEWBERG ON CLASS ACTIONS, § 22.79 (4th ed. 2002).  *See also Stanich v.*

4    *Travelers Indem. Co.*, 259 F.R.D. 294, 322 (N.D. Ohio 2009); *Mitchell-Tracey v. United Gen. Title*

5    *Ins. Co.*, No. Civ. AMD-05-1428, 2006 WL 149105, at *1-3 (D. Md. Jan. 9, 2006).

6         Yet it appears that this general rule is not always followed, as Google cites several cases of

7    its own in which courts have compelled the production of such information in class actions on the

8    basis that it is relevant to whether the named plaintiffs would adequately protect the interests of the

9    class.  *See, e.g., Armour v. Network Assoc., Inc.*, 171 F.Supp.2d 1044, 1048-49 (N.D. Cal. 2001)

10   ("[I]n order to determine whether a prospective lead plaintiff satisfies the requirements of Rule 23 . .

11   . a court should consider the manner in which the prospective lead plaintiff retained counsel and

12   negotiated an attorney's fee for the class."); *In re Quintus Sec. Litig.*, 148 F.Supp.2d 967, 972 (N.D.

13   Cal. 2001) ("'[B]oth lead plaintiff and lead counsel have an obligation to enter into a fair fee

14   arrangement.  It is the court's independent obligation under F.R.C.P. 23 to ensure that this occurs.'")

15   (internal citations omitted).

16        Google also relies upon the Ninth Circuit case *Rodriguez v. West Publishing Corp.*, 563 F.3d

17   948 (9th Cir. 2009).  In *Rodriguez*, the district court discovered at settlement that the named

18   plaintiffs' had entered into incentive agreements with the plaintiffs' counsel which obligated the

19   plaintiffs' counsel to seek payment for the named plaintiffs in an amount that increased (but which

20   was capped at $75,000 each) as did the settlement or verdict amount.  *Id*. at 957.  Because these

21   agreements could have potentially affected the named plaintiffs' prosecution of the action and thus

22   created an conflict between them and the rest of the class, the Ninth Circuit (as well as the district

23   court below) determined that these agreements should have been disclosed.  *Id*. at 959-60.  Despite

24   this determination, the Ninth Circuit concluded that the district court did not abuse its discretion in

25   finding that the settlement was fair.  *Id*. at 961.

26

27

28   that relation after it was created."  *In re Grand Jury Subpoenas*, 803 F.2d at 496 (citing *Osterhoudt*,
     722 F.2d at 593).

**United States District Court**
For the Northern District of California

1    As Google points out, the Ninth Circuit noted that the incentive agreement in *Rodriguez*

2  "was not disclosed when it should have been and where it was plainly relevant, at the class

3  certification stage," and "[h]ad it been, the district court would certainly have considered its effect"

4  in determining whether the named plaintiffs adequacy represented the class. *Id*. at 959.  The court

5  explained that "[a]n absence of material conflicts of interest between the named plaintiffs and their

6  counsel with other class members is central to adequacy and, in turn, to due process for absent class

7  members." *Id*. at 959 (citing *Hanlon v. Chrystler Corp*., 150 F.2d 1011, 1020 (9th Cir. 1998)).

8    Google uses this language to argue that *Rodriguez* "held that incentive agreements between

9  counsel and class representatives are relevant to assessing conflict issues" and "therefore makes

10  clear that financial arrangements that potentially bear on conflict and adequacy issues should be

11  disclosed as a standard part of class certification discovery.  (Reply at 9 n.11.)   While *Rodriguez*

12  does state that the existence of an incentive agreement would be relevant at the class certification

13  stage, the Court does not believe that it can be read to stand for the broad proposition that the fee

14  arrangements between named plaintiffs and plaintiffs' counsel should be discoverable without any

15  reason to think there is a potential conflict.

16    Even so, Google says that it should get this information because some of the plaintiffs'

17  deposition testimony suggests potential conflict issues.  It cites two examples: (1) it says that

18  plaintiff Pulaski and the law firm of Foote, Myers, Mielke & Flowers LLC (the "Foote law firm")

19  (counsel for plaintiff JIT Packaging) have had a longstanding relationship and refer clients to each

20  other and share the attorneys' fees in those cases; and (2) it says that Michael Hrbacek, principal of

21  plaintiff JIT Packaging, testified that he also has had a longstanding professional relationship with

22  the Foote law firm and is friends with one of its attorneys.  (Reply at 9 n.9 (citing Supp. Norton

23  Decl., ¶ 10, Ex. B).)

24    The Court is not convinced that there is any conflict here.  At oral argument, Google failed

25  to articulate how the relationships it cited are problematic.  Indeed, after conceding that there is not

26  a conflict simply because a plaintiff knows another plaintiff's counsel, Google said that it

27  nevertheless should have the opportunity to check and see if there was a *Rodriguez*-type of situation

28  here.  But aside from the apparent friendship and professional relationships of some of the plaintiffs

1  with one of the plaintiff's counsel, there is nothing to suggest that such a situation exists.  The Court

2  does not agree that Google's purely speculative inquiry serves to turn otherwise irrelevant

3  documents into relevant ones.  And if that were not enough, Google's contention is also belied by

4  the fact that it never followed up on these relationships when deposing Plaintiffs or asked about the

5  terms of Plaintiffs' legal representation.  Were it truly concerned with the relationships disclosed by

6  Plaintiffs, presumably it would have asked Plaintiffs to elaborate on these topics then. Without

7  more, this Court does not believe that the documents requested by Google have any bearing on the

8  certification of the class in this action.

9       Google's motion as to RFP Nos. 35-37 shall be denied.

10  **CONCLUSION**

11       Based on the foregoing, Google's motion is GRANTED IN PART and DENIED IN PART.

12  Google's motion as to RFP No. 6 is granted, and Plaintiff shall provide submit amended responses

13  to RFP Nos. 6 and 7, as well as supplemental declarations of Plaintiffs in support thereof, as agreed

14  at oral argument.  Google's motion is denied as to RFP Nos. 34 and 35-37.

15  **IT IS SO ORDERED.**

16  Dated: November 12, 2010

17                      HOWARD R. LLOYD
                    UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1   **C08-03369 JW (HRL) Notice will be electronically mailed to:**

2   Claudia Edith Candelas          cc@kbklawyers.com
    Donald Chidi Amamgbo , Esq      donald@amamgbolaw.com, ndudi@amamgbolaw.com
3   Dustin Lamm Schubert            dschubert@schubertlawfirm.com
    Guido Saveri                    guido@saveri.com, cadio@saveri.com, william@saveri.com
4   Kimberly Ann Kralowec           kkralowec@kraloweclaw.com, enewman@kraloweclaw.com,
                                    ggray@kraloweclaw.com
5   Leo Patrick Norton              lnorton@cooley.com, maraujo@cooley.com,
                                    swarren@cooley.com, wsomvichian@cooley.com
6   Michael Graham Rhodes           rhodesmg@cooley.com, lopezre@cooley.com,
                                    moyespe@cooley.com
7   Reginald Von Terrell            reggiet2@aol.com
    Robert C. Schubert              rschubert@schubertlawfirm.com
8   Sarah Ruth Boot                 sboot@cooley.com, llange@cooley.com, mhittle@cooley.com
    Whitty Somvichian               wsomvichian@cooley.com, swarren@cooley.com
9   Willem F. Jonckheer             wjonckheer@schubertlawfirm.com,
                                    sstrickland@schubertlawfirm.com

10

11  **5:08-cv-03369-JW Please see General Order 45 Section IX C.2 and D; Notice has NOT been
    electronically mailed to:**

12  Peter Joel Willsey
    Cooley Godward Kronish LLP
13  777 6th Street, N.W.
    11th Floor
14  Washington, DC 20001

15  Reginald Von Terrell
    The Terrell Law Group
16  223 25th Street
    Richmond, CA 94804

17

18  **Counsel are responsible for distributing copies of this document to co-counsel who have not
    registered for e-filing under the court's CM/ECF program.**

19

20

21

22

23

24

25

26

27

28