\*\* E-filed December 8, 2010 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ADWORDS LITIGATION _____/ | No. C08-03369 JW (HRL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL SUPPLEMENTAL DISCLOSURES**<br><br>**[Re: Docket No. 171]** |

**BACKGROUND**

Through its AdWords program, defendant Google, Inc. ("Google") places the advertisements of its customers on internet web pages and charges those customers when internet users click on them. In this consolidated putative class action, Google customers Pulaski & Middleman, LLC ("Pulaski"), JIT Packaging, Inc. ("JIT Packaging"), RK West, Inc. ("RK West"), West Coast Cameras, Inc. ("West Coast Cameras"), and Richard Oesterling ("Oesterling") (collectively, "Plaintiffs") claim that Google improperly placed advertisements on "parked domains," websites that typically lack content but which display ads related to their registered domain name, and "error page websites," websites with an unregistered domain name or that simply display the results of a malformed search query.

Plaintiffs allege that ads placed on these type of websites have lower "conversion rates" than ads placed on other websites. A conversion rate is a measure of what an internet user does after clicking on an advertisement (such as whether the user makes a purchase, signs up for a newsletter,

1  contacts the advertiser, etc.). Plaintiffs thus allege that, although parked domains and error page
2  websites are low-quality websites from an advertiser's perspective, Google charged them for
3  displaying advertisements on these sites without revealing to them that they were parked domain
4  and error page websites.

5  On October 4, 2010, Google submitted the written report of one of its experts, Michael
6  Mothner ("Mothner"). Mothner is the CEO and founder of Wpromote, Inc. ("Wpromote"), a
7  consulting firm that advises advertisers about internet marketing. In his report, Mothner states that
8  Plaintiffs' claims are not appropriate for class-wide treatment because (1) a particular ad's
9  performance on a particular website depends on idiosyncratic factors unique to each advertiser and
10 (2) some advertisers' ads have higher conversion rates on parked domain and error page websites
11 than on other websites. (Kolbe Decl., Ex. A ("Expert Report") at 4.) Mothner purportedly based his
12 conclusion on, in part, his review of the aggregate click data for four of Wpromote's clients.
13 Mothner discussed and included in his report the aggregate click data for two of these clients, whose
14 identities were redacted. (Expert Report, Exs. 1, 2.)

15 Google only disclosed the aggregate click data for the two Wpromote clients discussed by
16 Mothner in his report; it did not disclose the aggregate click data for the two other Wpromote
17 clients' data that Mothner considered but did not discuss in his report. Google also did not disclose
18 the identities of any of the four Wpromote clients whose data Mothner considered.

19 Plaintiffs believe that Google's disclosures fall short of the disclosure requirements under
20 Federal Rule of Civil Procedure 26(a)(2)(B)(ii). Accordingly, they filed a motion to compel seeking
21 (1) the identities of the four Wpromote clients whose data Mothner considered; (2) the aggregate
22 click data for the two Wpromote clients whose data Mothner considered but did not discuss in his
23 report; and (3) the underlying click data (including click date, click cost, and identity of click
24 source) upon which the aggregate click data for the four Wpromote clients was based. Google
25 opposes Plaintiffs' motion as to (1) and (3).[1]

---

[1] Google subsequently produced the aggregate click data for the two Wpromote clients whose data Mothner considered but did not discuss in his report, so Plaintiffs' motion is moot as to that data.

2

**LEGAL STANDARD**

Under Rule 26, an expert witness's written report must contain, among other things, "a complete statement of all opinions the will express and the basis and reasons for them" and "the data or other information considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(i), (ii).

**DISCUSSION**

The purpose of Rule 26(a)(2)(B)(ii) is to require the disclosure of "information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." FED. R. CIV. P. 26 Advisory Committee's Note 1993; *see also Mendez v. Unum Provident Corp.*, No. C04-01312 JW (HRL), 2006 WL 167663, at *6 (N.D. Cal. Jan. 20, 2006) ("The purpose of [Rule 26(a)(2)] is to provide the opposing party with notice, in advance of trial, of all of the support for the opinions that the expert will express.")

A. <u>The Identities of the Four Wpromote Clients</u>

Google argues that it should not have to disclose the identities of the four Wpromote clients because they are inconsequential to Mothner's expert opinions: "Mr. Mothner decided to include the aggregate data for a few advertisers whose ads performed better on parked domains and error pages to demonstrate what he already knew based on his experience with advertisers on the Internet. Whether the advertisers were shoe companies, automotive companies, a vacuum cleaner store or any other company was meaningless for purposes of expressing the opinions in the Report. . . . Mr. Mothner's opinion would have been the same had his staff redacted the names of clients in the data prior to his review of those clients' data. That Mr. Mothner actually saw the names of the entities, however, does not mean that he 'considered' those names as part of the Report." (Opp'n at 9.)

Plaintiffs' argument is simple: Mothner reviewed unredacted aggregate data of the four Wpromote clients, and Rule 26(a)(2)(B)(ii) requires anything considered by an expert — whether he or she ultimately relied on it or not — to be disclosed. *See S.E.C. v. Reyes*, No. C06-04435 CRB, 2007 WL 963422 (N.D. Cal. Mar. 30, 2007) ("When experts serve as testifying witnesses, the discovery rules generally require the materials reviewed or generated by them to be disclosed, regardless of whether the experts actually rely on those materials as a basis for their opinions.")

(citing FED. R. CIV. P. 26(a)(2)(B)(ii); *Reg. Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 715 (6th Cir. 2006); *In re Pioneer Hi-Bred Int'l*, 238 F.3d 1370, 1375 (Fed. Cir. 2001); *United States v. City of Torrance*, 163 F.R.D. 590, 593-94 (C.D. Cal. 1995)).

Plaintiffs believe that *City of Owensboro v. Kentucky Utilities Co.*, a district court case in the Western District of Kentucky, while not binding on this Court, is directly on point. In that case, the defendant utility company's expert's opinion was that the plaintiffs' power plants should have met certain standards if properly operated and maintained. *City of Owensboro v. Kentucky Utilities Co.*, No. 4:04CV-87-M, 2008 WL 4542674, at *1 (W.D. Ky. Oct. 8, 2008). In so opining, the expert relied upon certain data for other non-party power plants. *Id*. The defendant disclosed this data, but it redacted any information to identify the non-party power plants. *Id*. The plaintiffs believed this violated Rule 26(a)(2)(B)(ii) and asked the court to preclude the defendant or its expert from offering testimony relating to the redacted information. *Id*.

The court granted the plaintiffs' motion. *Id*. at *3. The court determined that the redaction of the identifying information deprived the plaintiff of the opportunity to determine whether the unidentified power plants were comparable to plaintiffs' power plants and to test the accuracy and validity of the data for the unidentified power plants. *Id*. at *2. As the court noted, Rule 26(a)(2)(B)(ii) "is 'worded specifically to provide the opposing party with access to all materials reviewed or considered by the expert.'" *Id*. (citing *United States v. Am. Elec. Power Serv. Corp.*, Nos. 2:99-cv-1182, 2:99-cv-1250, 2006 WL 3827509, at * 1 (S.D. Ohio Dec. 28, 2006)).

Google tries to distinguish the reasoning of *City of Owensboro*, but the Court is not persuaded. Google maintains: "The critical distinction between *City of Owensboro* and this case is that the identit[ies] of the power plants [were] important because the expert was using them for comparison purposes in evaluating the performance of the plaintiff's power plant. In doing so, the identities of the power plants were necessary to allow the plaintiff to determine whether the data from those other plants was valid and whether the comparison to their own plants was fair." (Opp'n at 10.) Google contends that Mothner was not comparing the four Wpromote clients to Plaintiffs; "[i]stead, he simply wanted to illustrate the point that certain advertisers do better on parked domain and error pages." (*Id*. at 10-11.)

4

But even if, as Google contends, Mothner is only saying that, in some cases, ads on parked domains or errors pages result in favorable conversion rates and is not saying that Plaintiffs' ads are similar to his illustrative examples (*i.e.*, if he isn't comparing the conversion rates of the four Wpromote clients' ads to those of Plaintiffs), this does not mean that Plaintiffs should not be able to attempt to distinguish those companies or business fields. Indeed, as Plaintiffs' state, "[b]y redacting the identities of the four clients, Mr. Mothner has foreclosed the opportunity for Plaintiffs to obtain additional information relating to those clients' AdWords experiences that would (1) test the accuracy of Mr. Mothner's opinions and (2) might undermine his assumptions regarding, among other things, the 'performance' and 'success' of parked domain and error pages for these clients." (Reply at 3-4.) Indeed, requiring the disclosure of the clients' identities and allowing Plaintiffs to challenge Mothner's opinions in this way is in line with the underlying purpose of Rule 26(a)(2)(B)(ii) to provide a party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses."

Google argues that the reasoning in another district court case is more instructive. In *Doan v. Astrue*, class action plaintiffs alleged that a former Adminstrative Law Judge for the Social Security Administration was biased. *Doan v. Astrue*, No. 04cv2039, 2010 WL 34935, at *1 (S.D. Cal. Jan. 12, 2010). The defendant's expert opined that the difference between the allowance rate of the Administrative Law Judge at issue and other administrative law judges was not statistically significant. *Id*. at *1. In so opining, the expert reviewed a spreadsheet containing the favorable/unfavorable decision rates for all administrative law judges, but the judges' identities were anonymous. *Id*. at 6. The plaintiffs sought the identities of some of the administrative judges listed in the spreadsheet. *Id*. at *7.

The court denied the plaintiffs' motion. First, the expert never knew or reviewed a spreadsheet with the judges' identities revealed; instead, the expert reviewed a spreadsheet wherein the judges' identities remained anonymous. *Id*. In other words, the defendant produced exactly what the expert considered. *Id*. Second, several other facts made the plaintiffs' request dubious, including that the plaintiffs' only sought the identities of judges in San Diego (which was not the comparison pool used by the expert) and made the request after the discovery cut-off. *Id*. Taken

5

1  together, this Court believes that the facts of *Doan* distinguish it from the instant one, where
2  Mothner reviewed unredacted aggregate data but disclosed only redacted data and where Plaintiffs
3  have made a timely request.

4  Google, therefore, should have to disclose the identities of the four Wpromote clients whose
5  click data Mothner considered because (1) he reviewed unredacted copies of their aggregate click
6  data and (2) Plaintiffs should be able to challenge the validity of using these particular
7  companies/business areas as illustrative examples.

8  In the event the Court requires Google to disclose the names of the four Wpromote clients
9  (which it has), Google requests that the Court first review the confidentiality provisions of
10 agreements between Wpromote and its four clients to determine whether Mothner is contractually
11 prohibited from disclosing their identities. (Opp'n at 11.) It also requests that the Court provide the
12 Wpromote clients an opportunity to assert their contractual rights. (*Id*.)

13 The Court declines to do so. It was Google (or Mothner) who put the Wpromote clients'
14 identities at issue in the first place, so it cannot use confidentiality provisions to shield itself from
15 disclosing their identities now, especially when Rule 26(a)(2)(B)(ii) requires this disclosure.

16 B.  The Underlying Click Data of the Four Wpromote Clients

17 As for the rest of Plaintiffs' motion, Google argues, quite simply, that Mothner did not
18 consider, or even view, the underlying click data for the four Wpromote clients in forming his expert
19 opinions. Rather, he only considered and viewed the aggregate click data for these Wpromote
20 clients. Google produced all of this aggregate click data, and that is all Plaintiffs' should get.

21 Plaintiffs argue that Mothner considered a more expansive amount of information in forming
22 his expert opinions. They point out that Mothner stated that he based his opinions "on [his]
23 experience in the field of Internet marketing, as well as [his] review of Wpromote client conversion
24 data." (Motion at 7 (citing Expert Report at ¶ 59).) This, Plaintiffs say, "implicates" the underlying
25 click data for all of Wpromote's clients — not just the four clients whose aggregate click data
26 Mothner considered for his Expert Report. (*Id*.) To make it simple, though, Plaintiffs have
27 "limited" their demand to the underlying click data for the four clients only. (*Id*.)
28

6

While Mothner's opinion is, naturally, influenced by his basic experience in the field of internet marketing, the Court does not think that this implicates all underlying click data for all of Wpromote's clients. Where, then, would a court draw the line as to what is required to be disclosed under Rule 26(a)(2)(B)(ii)? In this case, since Mothner did not specifically review, generate, or rely upon any underlying click data, Google need not disclose this data to Plaintiffs.

## CONCLUSION

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion to compel supplemental disclosures. Within 14 days of the date of this order, Google shall disclose to Plaintiffs the identities of the four Wpromote clients whose click data Mothner considered with respect to his expert report. Google need not produce the underlying click data requested by Plaintiffs.

**IT IS SO ORDERED.**

Dated: December 8, 2010



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

7

Case 5:08-cv-03369-EJD Document 174 Filed 12/08/10 Page 8 of 8

**C08-03369 JW (HRL) Notice will be electronically mailed to:**

| | |
|---|---|
| Claudia Edith Candelas | cc@kbklawyers.com |
| Donald Chidi Amamgbo , Esq | donald@amamgbolaw.com, ndudi@amamgbolaw.com |
| Dustin Lamm Schubert | dschubert@schubertlawfirm.com |
| Guido Saveri | guido@saveri.com, cadio@saveri.com, william@saveri.com |
| Kimberly Ann Kralowec | kkralowec@kraloweclaw.com, enewman@kraloweclaw.com, ggray@kraloweclaw.com |
| Leo Patrick Norton | lnorton@cooley.com, maraujo@cooley.com, swarren@cooley.com, wsomvichian@cooley.com |
| Michael Graham Rhodes | rhodesmg@cooley.com, lopezre@cooley.com, moyespe@cooley.com |
| Miranda Kolbe | mkolbe@schubert-reed.com |
| Reginald Von Terrell | reggiet2@aol.com |
| Robert C. Schubert | rschubert@schubertlawfirm.com |
| Sarah Ruth Boot | sboot@cooley.com, llange@cooley.com, mhittle@cooley.com |
| Whitty Somvichian | wsomvichian@cooley.com, swarren@cooley.com |
| Willem F. Jonckheer | wjonckheer@schubertlawfirm.com, sstrickland@schubertlawfirm.com |

**5:08-cv-03369-JW Please see [General Order 45 Section IX C.2 and D](#); Notice has NOT been electronically mailed to:**

Peter Joel Willsey
Cooley Godward Kronish LLP
777 6th Street, N.W.
11th Floor
Washington, DC 20001

Reginald Von Terrell
The Terrell Law Group
223 25th Street
Richmond, CA 94804

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

8