**\*\* E-filed April 1, 2011 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ADWORDS LITIGATION, | No. C08-03369 JW (HRL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO SERVE INTERROGATORIES AND TO COMPEL**<br><br>[Re: Docket No. 222] |

## BACKGROUND

Through its AdWords program, defendant Google, Inc. ("Google") places the advertisements of its customers on internet web pages and charges those customers when internet users click on them. In this consolidated putative class action, Google customers Pulaski & Middleman, LLC ("Pulaski"), JIT Packaging, Inc. ("JIT Packaging"), RK West, Inc. ("RK West"), and Richard Oesterling ("Oesterling") (collectively, "Plaintiffs") claim that Google improperly placed advertisements on "parked domains," websites that typically lack content but which display ads related to their registered domain name, and "error page websites," websites with an unregistered domain name or that simply display the results of a malformed search query.

The pleadings in this case have gone through several iterations. On November 23, 2010, Judge Ware granted Plaintiffs' motion for leave to file a Third Amended Complaint. Docket No. 164. In so ordering, Judge Ware also extended class discovery until February 14, 2011. Id.

Plaintiffs filed their Third Amended Complaint on November 29, 2010. Docket No. 166 ("Third Amended Complaint" or "TAC"). And, with class discovery extended, Plaintiffs served their Sixth Set of Interrogatories on December 14, 2010 and their First Set of Requests for Admission ("RFAs") on December 15, 2010. Docket No. 222-1 ("Jonckheer Decl."), Exs. A, B. Google responded to these interrogatories and RFAs on January 13 and January 14, 2011, respectively, objecting to the discovery at issue here. Id., Exs. C, D.

Plaintiffs now move (1) for leave to serve their Sixth Set of Interrogatories and (2) to compel Google to respond to Interrogatory Nos. 1, 2, 3, 4, 7, 8, and 9 and to RFA No. 13. Docket No. 222 ("MTC"). Google opposed Plaintiffs' motion (Docket No. 211 ("Opp'n")) and oral argument was heard on March 15, 2011.

**DISCUSSION**

A. <u>Whether Plaintiffs' Propounding of Their Sixth Set of Interrogatories Was Proper</u>

As an initial matter, Google argues that Plaintiffs should not have been able to serve their Sixth Set of Interrogatories because they have already served more than 25 interrogatories in this action.

Google first points to Federal Rule of Civil Procedure 33(a)(1), which says that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." It is true that Plaintiffs have exceeded that number. However, it also appears that Plaintiffs were acting consistently with the course of conduct in this large and complicated case. Indeed, Plaintiffs exceeded the 25 interrogatory limit when they served their Third Set of Interrogatories back on March 29, 2010, and Google did not object on this basis then or when Plaintiffs thereafter served their Fourth and Fifth Sets of Interrogatories, either. Under these circumstances, the Court believes it fair to approve of Plaintiffs' service of their Sixth Set of Interrogatories.[1]

---

[1] Google also argues that, in the briefing on their motion for leave to file a Third Amended Complaint, Plaintiffs repeatedly told Judge Ware that there would be no need for additional class discovery, so Plaintiffs should be judicially estopped from conducting further discovery. Google's argument is not compelling because Judge Ware nevertheless <u>extended the class discovery period</u> to February 15, 2011 and Plaintiffs' interrogatories and RFAs were served and required responses well before that deadline.

B. <u>Whether Google Should Be Compelled to Respond to the Discovery Requests at Issue</u>

    1. <u>Interrogatory Nos. 1 and 2</u>

These two interrogatories seek certain click data related to parked domain and error page clicks for Plaintiffs.[2] This data includes the "conversion score," which is a metric Google uses to price clicks from websites contained in its network, and the "smart pricing discount," which is a discount Google applies to the price of a click. "This data," Plaintiffs argue, "is relevant because it further reveals the manner in which Google charged Plaintiffs for the clicks, and bears on Plaintiffs' model for developing a method for calculating class-wide relief, a necessary showing at the class certification stage." MTC at 10. Indeed, Plaintiffs' expert has relied on such conversion-related click data, including conversion scores and smart pricing discounts, in his formulation of a model for class-wide restitution. <u>Id</u>. at 10-11.

Google argues that this information is not necessary. As it points out, Plaintiffs' expert already submitted his report that lays out different models for class-wide relief, and Plaintiffs never indicated previously that the report was lacking because of a shortage of data. Indeed, Plaintiffs' conceded at oral argument that the information sought would add to their expert's models, but it certainly is not a "missing link." Even so, this does not mean that the information is not relevant to class certification. And because it is relevant, it is proper for Plaintiffs' to seek it.

Plaintiffs' motion to compel responses to Interrogatory Nos. 1 and 2 is GRANTED.

    2. <u>Interrogatory Nos. 3, 4, 7, 8, and 9</u>

---

[2] <u>Interrogatory No. 1</u> asks Google to "[s]tate the following information for each parked domain click Google identified in response to plaintiffs' Fifth Set of Interrogatories, Interrogatory No. 1: (a) the Conversion Score value of the Property Code at the time the click was made; (b) the Smart Pricing discount (in dollar terms) that was applied to the click; (c) the high and low ends of the Confidence Interval assigned to the Property Code on the date of the click; (d) the default multiplier for the Property Code on the date of the click; (e) whether the default multiplier identified in response to (d) was applied; (f) if the default multiplier was applied, the reason for applying it. <u>Interrogatory No. 2</u> asks Google to "[s]tate the following information for each error page click Google identified in response to plaintiffs' Fifth Set of Interrogatories, Interrogatory No. 2: (a) the Conversion Score value of the Property Code at the time the click was made; (b) the Smart Pricing discount (in dollar terms) that was applied to the click; (c) the high and low ends of the Confidence Interval assigned to the Property Code on the date of the click; (d) the default multiplier for the Property Code on the date of the click; (e) whether the default multiplier identified in response to (d) was applied; (f) if the default multiplier was applied, the reason for applying it."

3

These interrogatories seek information related to a metric used by Google called "conversions per dollar" or CPD.[3] CPD measures the average cost of a conversion and helps to measure the quality of a website within the Google network. Plaintiffs claim that evidence produced demonstrates that CPD was lower for parked domains and error pages than for other pages. They say that "Google has relied extensively on Conversion Rates [data that] it has produced to argue that parked domain and error pages provide comparable value to Plaintiffs as other pages in its network," and "[c]omparative CPD figures will allow Plaintiffs to evaluate this argument." MTC at 11. Plaintiffs thus contend that the information sought by these interrogatories is relevant to class certification because they bear upon Google's defenses to certification. Id. at 13; Reply at 5.

The Court is satisfied that these interrogatories seek information that is relevant to class certification in this case. While Google argues in its opposition that Plaintiffs have not made any showing that this information is relevant to class certification, it did suggest at oral argument that it intends to oppose class certification in part by arguing that Plaintiffs do not have a valid method to determine the relative performance of advertisements on certain websites. In this regard, Plaintiffs represent that their expert uses a CPD-based damages model and convincingly argue that the information sought by these interrogatories would assist with the presentation of this model.

Plaintiffs' motion to compel responses to Interrogatory Nos. 3, 4, 7, 8, and 9 is GRANTED.

3. RFA No. 13

---

[3] Interrogatory No. 3 asks Google to "[s]eparately state the mean and median CPD for ads placed on AFD sites contained in the Search Network for July 11, 2004 through December 31, 2004, calendar years 2005, 2006, 2007, and January 1, 2008 through March 31, 2008, respectively." Interrogatory No. 4 asks Google to "[s]eparately state the mean and median CPD for ads placed on AFD sites contained in the Content Network for July 11, 2004 through December 31, 2004, calendar years 2005, 2006, 2007, and January 1, 2008 through March 31, 2008, respectively." Interrogatory No. 7 asks Google to "[s]eparately state the mean and median CPD for ads placed on Google.com for July 11, 2004 through December 31, 2004, calendar years 2005, 2006, 2007, and January 1, 2008 through March 31, 2008, respectively." Interrogatory No. 8 asks Google to "[s]eparately state the mean and median CPD for ads placed on AFS sites, excluding AFD and AFE sites, for July 11, 2004 through December 31, 2004, calendar years 2005, 2006, 2007, and January 1, 2008 through March 31, 2008, respectively." Interrogatory No. 9 asks Google to "[s]eparately state the mean and median CPD for ads placed on AFC sites, excluding AFD and AFE sites, for July 11, 2004 through December 31, 2004, calendar years 2005, 2006, 2007, and January 1, 2008 through March 31, 2008, respectively."

4

RFA No. 13 seeks an admission that Google prohibited parked domain publishers in its network from including any Google-related labeling, branding, or attribution on their websites.[4] While the information sought by RFA No. 13 may be, as Plaintiffs stated at oral argument, a "central piece" of Plaintiffs' underlying claims, the Court is not convinced that it relates to class certification. As Google points out, RFA No. 13 "does not actually ask whether Google applied a uniform practice as to the class (a question that could conceivably be relevant to assessing commonality) and instead goes to the substantive, merits-based question of what Google's actual business practice was." Opp'n at 8.

Plaintiffs' motion to compel a response to RFA No. 13 is DENIED.

## CONCLUSION

Based on the foregoing, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART. Google shall respond to Interrogatory Nos. 1, 2, 3, 4, 7, 8, and 9 within 14 days from the date of this order.

**IT IS SO ORDERED.**

Dated: April 1, 2011

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[4] RFA No. 13 asks Google to "[a]dmit that at all times during the CLASS PERIOD, GOOGLE prohibited participants in Google's AdSense for Domains program from including any 'GOOGLE labeling, branding or attribution' on AFD SITES."

**C08-03369 JW (HRL) Notice will be electronically mailed to:**

| | |
|---|---|
| Claudia Edith Candelas | cc@kbklawyers.com |
| Dustin Lamm Schubert | dschubert@schubertlawfirm.com |
| Guido Saveri | guido@saveri.com, cadio@saveri.com, william@saveri.com |
| Kimberly Kralowec | kkralowec@kraloweclaw.com |
| Kimberly Ann Kralowec | kkralowec@kraloweclaw.com, enewman@kraloweclaw.com, ggray@kraloweclaw.com |
| Kyle Christopher Wong | kwong@cooley.com, ccornell@cooley.com |
| Leo Patrick Norton | lnorton@cooley.com, maraujo@cooley.com, swarren@cooley.com, wsomvichian@cooley.com |
| Michael Graham Rhodes | rhodesmg@cooley.com, lopezre@cooley.com, moyespe@cooley.com |
| Miranda Kolbe | mkolbe@schubert-reed.com |
| Robert C. Schubert | rschubert@schubertlawfirm.com |
| Sarah Ruth Boot | sboot@cooley.com, llange@cooley.com, mhittle@cooley.com |
| Terry Gross | terry@gba-law.com, adam@gba-law.com, joann@grossbelsky.com, monique@gba-law.com, sarah@gba-law.com |
| Whitty Somvichian | wsomvichian@cooley.com, ccornell@cooley.com, jmcarthur@cooley.com, kquerubin@cooley.com, swarren@cooley.com |
| Willem F. Jonckheer | wjonckheer@schubertlawfirm.com, jdang@schubertlawfirm.com |

**Please see General Order 45 Section IX C.2 and D; Notice has NOT been electronically mailed to:**

Peter Joel Willsey
Cooley Godward Kronish LLP
777 6th Street, N.W.
11th Floor
Washington, DC 20001

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**