UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| IN RE GOOGLE ADWORDS LITIGATION | ) | Case No.: 5: 08-CV-3369 EJD |
| | ) | |
| | ) | **ORDER[1] DENYING IN PART** |
| | ) | **PLAINTIFFS' MOTION TO STRIKE;** |
| | ) | **DENYING PLAINTIFFS' MOTION** |
| | ) | **TO CERTIFY CLASS** |
| | ) | |
| | ) | |
| | ) | **(Re: Docket Nos. 227, 278)** |
| | ) | |
| ―――――――――――――――――――――― | ) | |

## I.  INTRODUCTION AND BACKGROUND

Presently before the Court are two matters: (1) a Motion for Class Certification filed by Plaintiffs West Coast Cameras (Richard Oesterling), Pulaski and Middleman (Adam Pulaski), JIT Packaging (Michael Hrbacek), and RK West (collectively, "Plaintiffs"); and (2) Plaintiffs' Motion to Strike.

This case involves Plaintiffs' allegations that Google, Inc. ("Defendant" or "Google") allegedly engaged in deceptive advertising and unfair, deceptive and unlawful business practices regarding Google AdWords.  The named Plaintiffs seek to represent a class of former and current

---

[1]      This disposition is not designated for publication in the official reports.

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO
CERTIFY CLASS

**United States District Court**
For the Northern District of California

Google AdWords customers who purchased Google AdWords services.  In order to place the dispute in context, the Court provides a brief background of the Google AdWords product.

Google AdWords is a program that allows advertisers to create online advertisements and display them through various channels on the Internet.  Docket Item No. 272 at 3.  These ads are generally short text ads with hyperlinks that, when clicked, take the user to the advertiser's website.  Id.  Ads placed through the AdWords program are displayed on the Google Network, which includes the Search Network and (during the class period) the Content Network.  Id.  The Google Network also included the parked domains and error pages that are the subject of this lawsuit.  Id.

A parked domain is a webpage that has a registered web address but is relatively undeveloped and consists primarily of ads or links displayed on the page.  Docket Item No. 272 at 3.  Owners of parked domains can participate in Google's AdSense for domains program (AFD) to display ads placed by advertisers through the AdWords program.  Id. at 4.  Parked domains are part of both the Search and Content Networks.  Id.

Error pages are web pages that act as placeholders when a user enters terms into the address bar of the web browser that does not link to a registered URL.  Id.  Rather than returning an error message saying no web site could be found, Google's AdSense for errors program (AFE) may display a webpage that contains ads or links matching the terms entered by the user, similar to the parked domains sites described above.  Id.

Internet users typically arrive at parked domains and error pages (and view ads there) by entering particular terms of interest to them, either in the address bar of a web browser or a search box on a parked domain or error page.  Docket Item No. 272 at 5.  Google's algorithms then attempt to match an advertiser's ads with the terms the user has entered.  Id.  The ads that a user sees when he/she lands on a parked domain or error page are therefore the byproduct of the user's own search actions.  Id.

Plaintiffs allege that, throughout the Class Period, all AdWords customers were given the choice of advertising in Google's Search or Content Networks, yet Google never disclosed that regardless of which network they chose, Google would place their ads on parked domains or error

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS

pages. Docket Item No. 282 at 1. Plaintiffs contend that Google was aware of the negative

reputation of parked domains and error pages, and took numerous steps to purposefully conceal its

involvement with these sites throughout the Class Period. Id. According to Plaintiffs, Google not

only failed to disclose its practice of placing AdWords customers' ads on parked domains and error

pages on its AdWords sign-up and Help Center pages, but purposefully published misleading

AdSense policies which prohibited publishers from putting ads on pages lacking content, and

"rolled up" the URLs of AFD and AFE sites on Google's Placement Performance Reports so that

advertisers could not see the actual sites upon which Google had placed their ads. Docket Item No.

282 at 2. Plaintiffs claim that Google feared the truth being revealed because it would risk losing

the substantial revenue that it earned from its AFD and AFE programs, and also would risk damage

to its own reputation. Docket Item No. 282 at 1.

Google argues that Plaintiffs and their experts fundamentally misunderstand how Google's

AdWords product works. Docket Item No. 262 at 1. For instance, Google contends that Plaintiff's

presume that every single ad that appeared on any parked domain or error page was intrinsically

worthless and harmful, without accounting for the many instances in which advertisers reaped

demonstrable benefits from such ads and without regard to advertisers' actual perceptions of parked

domains and error pages. Docket Item No. 272 at 1. Additionally, Google maintains that,

throughout the class period, it made specific disclosures regarding the AdWords network and the

AdSense for domains program. Id. at 7. Finally, Google argues that it provides a tool that allows

advertisers to self-help and exclude their ads from entire categories of web pages, including parked

domains and error pages. Id. at 8.

In July 2008, Plaintiffs initiated this lawsuit,[2] alleging that Google engaged in deceptive

advertising and unfair, deceptive and unlawful business practices in violation of the California

---

[2]     Plaintiffs filed five separate but related class actions against Defendant. See Levitte v.
Google, Inc., No. C 08-3369 JW (filed Jul. 11, 2008), RK West, Inc. v. Google, Inc., No. C 08-
03452 JW (filed Jul. 14, 2008), Pulaski & Middleman, LLC v. Google, Inc., No. C 08-03888 JW
(filed Aug. 14, 2008), JIT Packing, Inc. v. Google, Inc., No. C 08-04701 JW (filed Oct. 10, 2008),
Olabode v. Google, Inc., No. C 09-3414 JW (filed July 27, 2009). The first four cases were
consolidated by the court on February 25, 2009 (the "Consolidated Cases"). See Order Granting
Motion to Consolidate, Docket Item No. 40. The fifth case, Olabode v. Google, Inc., No. 09-3414
JW, was subsequently filed and consolidated with the Consolidated Cases. See Stipulation and

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO
CERTIFY CLASS

Business and Profession Code Sections 17200 and 17500 by charging AdWords customers for any clicks on their advertisements that Google placed on parked domains or error pages from July 17, 2004 through March 31, 2008.  Docket Item No. 228.

After several amendments to the pleadings,[3] Plaintiffs filed their Motion for Class Certification ("Motion").  Docket Item No. 227.  Google opposed the motion, arguing that litigation of Plaintiffs' claims would require individualized and fact-intensive inquiries that make class treatment inappropriate.  See Defendant's Opposition to Plaintiff's Motion for Class Certification Pursuant to F.R.C.P. 23 ("Opp'n"), Docket Item No. 272.  Plaintiffs replied to the Opposition, submitting expert witness declaration as support.  See Reply Memorandum in Support of Plaintiffs' Motion for Class Certification ("Reply"), Docket Item No. 282; Declaration of Dr Stan V. Smith Regarding Plaintiffs' Motion for Class Certification ("Smith Declaration"), Docket Item No. 283.  After the close of briefing on the class certification motion, Google filed an objection pursuant to Civil Local Rule 7-3(d), raising various objections to the Smith Declaration.  See Objections to Reply Evidence in Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion for Class Certification, Docket Item No. 267.  Plaintiffs filed a motion to strike certain declarations filed by Google in opposition to the class certification motion.  See Motion to Strike ("Mot'n to Strike"), Docket Item No. 278.

On June 24, 2011, the court heard oral arguments in support of and opposition to the Motion for Class Certification and Motion to Strike.  Docket Item No. 308.  At the court's request following the hearing, the parties submitted supplemental briefs regarding the issue of commonality.  See Plaintiff's Supplemental Memorandum in Support of Their Motion for Class Certification ("Plaintiff's Supp'l Mem."), Docket Item No. 307; Google, Inc.'s Supplemental Brief in Support of Its Opposition to Plaintiff's Motion for Class Certification ("Defendant's Supp'l Mem."), Docket Item No. 306.

---

Order Consolidating Olabode v. Google, Inc., No. 09-3414 JW into In Re Google AdWords Litigation, No. 08-3369 JW, Docket Item No. 67.

[3] See Third Amended Consolidated Class Action Complaint for Violation of California Business and Professions Code Sections 17200 et seq. and 17500 et seq., ("Complaint"), Docket Item No. 166.

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

## II. DISCUSSION

Before addressing Plaintiffs' Motion for Class Certification, the Court considers Plaintiffs'

Motion to Strike certain declarations submitted by Google.

### A.  MOTION TO STRIKE

In support of its Opposition, Defendant submitted declarations of three employees: (1) Hal

Varian, (2) Jonathan Alferness, and (3) William Kunz.  Plaintiffs argue that each of the

declarations should be stricken to the extent they contain expert opinions offered under the guise of

lay witness testimony.  Defendant responds that the testimony is that of lay witness employees and

thus falls outside the scope of the Rule 26 disclosure requirements.

1.  <u>Legal Standards</u>

a.  <u>Federal Rules of Civil Procedure 26 and 37</u>

Under Federal Rule of Civil Procedure 26(a)(2), a party must "disclose to other parties the

identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of

the Federal Rules of Evidence."  Fed. R. Civ. P. 26(a)(2)(A).  In addition, Rule 26(a)(2)(B)

requires:

> [The] disclosure shall, with respect to a witness who is retained or specially
> employed to provide expert testimony in the case or whose duties as an employee
> of the party regularly involve giving expert testimony, be accompanied by a
> written report prepared and signed by the witness. The report shall contain a
> complete statement of all opinions to be expressed and the basis and reasons
> therefor; the data or other information considered by the witness in forming the
> opinions; any exhibits to be used as a summary of or support for the opinions; the
> qualifications of the witness, including a list of all publications authored by the
> witness within the preceding ten years; the compensation to be paid for the study
> and testimony; and a listing of any other cases in which the witness has testified
> as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B).

Pursuant to Federal Rule of Civil Procedure 37(c)(1), "[a] party that without substantial

justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is

harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or

information not so disclosed."  Fed. R. Civ. P. 37(c)(1).

b.     <u>Federal Rules of Evidence 701 and 702</u>

Under Federal Rule of Evidence 701, lay witnesses may provide testimony that goes beyond percipient observations and consists of opinions or inferences:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid.701.

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

While the text of Rule 701 appears to clearly separate lay opinion testimony from that of experts, the advisory committee note regarding subsection (c) makes the distinction less obvious. For instance, a lay witness may testify to the value of property or expected profits without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Fed. R. Evid. 701 Advisory Committee Notes to 2000 Amendment; see, e.g., Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993). Such lay opinion testimony is admissible not because of experience, training or specialized knowledge within the realm of an expert, but because of the "particularized knowledge that the witness has by virtue of his or her position in the business." Id.

Since the 2000 amendment to Rule 701, courts have continued to allow lay opinion testimony based upon particularized knowledge obtained by virtue of the witness's position in the business. For example, several courts have admitted fact and opinion testimony from lay witnesses on a broad range of "technical" or "specialized" subjects without considering those witnesses "experts" under Federal Rule of Evidence 702. See Minority Television Project, Inc. v. FCC, 649

6

F. Supp. 2d 1025, 1032 (N.D. Cal. 2009) (allowed Vice President of large broadcasting station to hypothesize about impact that commercial advertising might have on the operations of other public radio stations because "[m]ost, if not all of [the witness's] testimony" [was] based upon his particularized knowledge gained by virtue of his position in the business); <u>Hynix Semiconductor, Inc. v. Rambus, Inc.</u>, No. CV-00-20905 RMW, 2008 WL 504098, at *5 (N.D. Cal. Feb. 19, 2008) (noting that the business owner/employee exception has survived the 2000 amendments to Rule 701); <u>United States v. Munoz-Franco</u>, 487 F.3d 25, 35-36 (1st Cir. 2007) (allowing bank employee to explain a bank's internal loan procedures and to provide lay opinions on whether the disputed loan classifications were appropriate even though employee was not part of that loan department and had no firsthand knowledge of the loans at issue); <u>Medforms, Inc. v. Healthcare Management Solutions, Inc.</u>, 290 F.3d 98, 110-11 (2d Cir. 2002) (permitted testimony of computer programmer regarding terms contained in copyright registration because programmer had personal knowledge of their meaning, based on his everyday experience as a computer programmer).[4]

The Court finds these cases "persuasive only in the limited context described in the advisory committee note regarding testimony about one's business," and "does not believe they can be read to support a broader 'particularized knowledge' exception to the expert disclosure rules." <u>Hynix Semiconductor</u>, No. CV-00-20905 RMW, 2008 WL 504098, at *4. Although, generally, "lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events,"[5] the rules of evidence "have long permitted a person to testify to opinions about their own business based on their personal knowledge of their business," as illustrated in the cases discussed above. The Court does not believe that the revisions to Rule 701 were intended to exclude that form of personal testimony.

    2.   <u>The Proffered Testimony of Google's Employees</u>

---

[4]    The Ninth Circuit has not addressed the advisory committee note in this specific context. It has, however, favorably relied on a related paragraph of the note regarding admission of lay opinion testimony based upon personal knowledge and familiarity with narcotics. <u>See</u> <u>United States v. Durham</u>, 464 F.3d 976, 982 (9th Cir. 2006).

[5]    <u>United States v. Conn</u>, 297 F.3d 548, 553-54 (7th Cir. 2002) (quoting <u>United States v. Peoples</u>, 250 F.3d 630, 641 (8th Cir. 2001)).

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS

**United States District Court**
For the Northern District of California

a.    Declaration of Hal Varian

Hal Varian is Google's Chief Economist.  Opp'n to Mot'n to Strike at 2.  The majority of Dr. Varian's declaration provides a factual description of how the AdWords pricing system works, based directly from Dr. Varian's personal knowledge and experience.  See Declaration of Hal Varian in support of Google's Opposition to Class Certification ("Varian Decl."), ¶¶ 1-4; 7-23. These facts are relevant and necessary for the Court to have a basic understanding of a key issue posed in Plaintiff's Motion for Class Certification as to how the cost of advertising is determined in the AdWords System.  Opp'n to Mot'n to Strike at 2.  Plaintiffs do not contend that Dr. Varian lacks the personal knowledge or experience to testify about these underlying facts.  Mot'n to Strike at 7-11.  In fact, Plaintiff's counsel conceded at oral argument that the factual testimony of Google's employees is admissible.  See Transcript of Proceedings Held on June 24, 2011 ("Hearing Transcript") at 19:24-20:5; 21:24-25; 27:14-18.

Plaintiffs contend, however, that Dr. Varian's declaration also contains opinions that should be stricken as expert testimony in violation of Rule 26 disclosures.  Mot'n to Strike at 8-11. According to Plaintiffs, Dr. Varian should not be permitted to opine, among other things, that there is "no 'overall' or 'set price' that could be applied uniformly across hundreds of thousands of advertisers in the class."  Varian Decl. at ¶ 16.  Plaintiffs argue that this and similar assertions constitute expert rebuttal testimony on the viability of determining class-wide restitution.  Mot'n to Strike at 7.

Defendant responds that the primary purpose of Varian's Declaration is to explain to the Court how advertisers are charged for the advertisements placed through Google AdWords, the subject matter of this litigation.  Id.  Additionally, Defendants argue that Dr. Varian's personal knowledge and experience permits him to make certain assertions as a lay witness under Rule 701. Opp'n to Mot'n to Strike at 4.

The Court will admit Dr. Varian's testimony regarding his knowledge of how the AdWords system works and his experience in applying economic modeling to study the AdWords System. As Google's Chief Economist, Dr. Varian is qualified to explain, as a lay witness, what Google's

8

**United States District Court**
For the Northern District of California

AdWords system does, how it behaves, and what it does when certain variables are changed.  Here, just because the underlying facts and data are technical in nature does not transform the information into "expert testimony" when those facts are within the personal knowledge and experience of the company's employee.  Dr. Varian may offer lay witness opinions regarding Google's business, so long as those opinions are based on his own personal, particularized knowledge and experience relating to his employment at Google.  See Lightning Lube, Inc., 4 F.3d 1153 (3d Cir. 1993); Minority Television Project, Inc., 649 F. Supp. 2d at 1032 (N.D. Cal. 2009); Hynix Semiconductor, Inc., 2008 WL 504098, at *5 (N.D. Cal. Feb. 19, 2008); Munoz-Franco, 487 F.3d at 35-36 (1st Cir. 2007; Medforms, Inc., 290 F.3d at 110-11 (2d Cir. 2002).  To the extent that Dr. Varian opines on the merits of the case, such as the viability of classwide restitution, his testimony will be disregarded.  Accordingly, the Court DENIES IN PART Plaintiffs' motion to strike the Declaration of Hal Varian.

     b.  Declaration of Jonathan Alferness

  Jonathan Alferness is a senior Google employee who has worked extensively on AdWords for nearly seven years.  Opp'n to Mot'n to Strike at 4.  During Plaintiffs' proposed class period, Mr. Alferness had primary responsibility for Google's AdSense for search and AdSense for errors program.  Id.  Mr. Alferness has extensive personal knowledge of and experience in how Google's AdWord program operates, including the data that is created in the process.  Id.

  Plaintiffs do not contend that Dr. Varian lacks the personal knowledge or experience to testify about facts underlying Google's AdWords or AdSense programs.  Mot'n to Strike at 11-13; see Transcript of Proceedings Held on June 24, 2011 at 19:24-20:5; 21:24-25; 27:14-18.   Instead, Plaintiffs rely on Funai Elec. Co. v. Daewoo Elecs. Corp., No. C 04-1830 CRB, 2007 WL 1089702 (N.D. Cal. Apr. 11, 2007) and move to strike the Alferness Declaration on the basis that he reviewed and analyzed data of a named plaintiff "for the purpose of assisting Google in this litigation."  Mot'n to Strike at 11.  Plaintiffs' reliance is misplaced.  In Funai, the court focused on whether an already disclosed expert, who was an employee of the defendant, had to draft a written report.  There, the court determined that the employee had to disclose expert testimony on "matters

9

that are outside the scope of his employment." Id at 1.  Here, in contrast, the Alferness Declaration sets forth facts that are within the scope of Mr. Alferness' employment and concern data analysis with which he is personally familiar.  The fact that he reviewed the data after Plaintiffs' lawsuit was filed does not preclude his testimony under Rule 701.  See Lightening Lube, Inc., 4 F.3d at 1174-75 (allowing business owner to provide lay opinion testimony that relied on facts developed for purposes of litigation).

Additionally, Plaintiffs argue that Mr. Alferness's testimony should be excluded because the underlying facts in the Alferness Declaration overlap with certain facts contained in the report of an expert previously retained by Defendant.  Mot'n to Strike at 11-13.  The Court is not persuaded by this argument and finds that Mr. Alferness personal knowledge of and day-to-day experience with AdWords are sufficient to allow his testimony independent of any previous factual recitation by Defendant's prior expert.[6]  Accordingly, the Court DENIES Plaintiffs' motion to strike the Declaration of Jonathan Alferness.

     c.     Declaration of William Kunz

William Kunz is a manager in Goolge's Partners Solutions Organization, which serves as a technical/engineering arm of the "publisher" side of Google's business.  As part of Mr. Kunz's daily job responsibilities, he routinely pulls and analyzes data related to the AdWords and AdSense products and reports these matters to fellow Google employees.  Opp'n to Mot'n to Strike at 6.

Plaintiffs do not contest that Mr. Kunz has the personal knowledge and experience to testify about the data described in his declaration.  Motion to Strike at 14; see Hearing Transcript at 19:24-20:5; 21:24-25; 27:14-18.  Rather, Plaintiffs argue that Mr. Kunz did not review the data until after the instant lawsuit was filed and contend they are "prejudiced" by Defendant's presentation of the data analysis testimony at this point in the litigation.  Mot'n to Strike at 14.

---

[6]     Mr. Alferness may offer lay witness opinions regarding Google's business, so long as those opinions are based on his own personal, particularized knowledge and experience relating to his employment at Google.  See Lightning Lube, Inc., 4 F.3d 1153 (3d Cir. 1993); Minority Television Project, Inc., 649 F. Supp. 2d at 1032 (N.D. Cal. 2009); Hynix Semiconductor, Inc., 2008 WL 504098, at *5 (N.D. Cal. Feb. 19, 2008); Munoz-Franco, 487 F.3d at 35-36 (1st Cir. 2007; Medforms, Inc., 290 F.3d at 110-11 (2d Cir. 2002). The Court will disregard Mr. Alferness' testimony to the extent that he opines on the merits of the case.

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO
CERTIFY CLASS

United States District Court
For the Northern District of California

As previously discussed, the fact that Mr. Kunz reviewed the data after Plaintiffs' lawsuit was filed does not preclude his testimony under Rule 701.  See Lightening Lube, Inc., 4 F.3d at 1174-75 (allowing business owner to provide lay opinion testimony that relied on facts developed for purposes of litigation).  Mr. Kunz routinely runs data pulls related to Google's AdWords and AdSense programs as part of his daily job responsibilities.  See Declaration of William Kunz in support of Google's Opposition to Class Certification ("Kunz Decl."), ¶ 2.  Given this day-to-day experience, Mr. Kunz is permitted to explain, in the form of lay witness testimony, the data that he pulled relating to the number of advertisers who "opted out" of placing their ads on parked domains and error pages through those programs.  Additionally, Mr. Kunz may offer lay witness opinions regarding Google's business, so long as those opinions are based on his own personal, particularized knowledge and experience relating to his employment at Google.  See Lightning Lube, Inc., 4 F.3d 1153 (3d Cir. 1993); Minority Television Project, Inc., 649 F. Supp. 2d at 1032 (N.D. Cal. 2009); Hynix Semiconductor, Inc., 2008 WL 504098, at *5 (N.D. Cal. Feb. 19, 2008); Munoz-Franco, 487 F.3d at 35-36 (1st Cir. 2007); Medforms, Inc., 290 F.3d at 110-11 (2d Cir. 2002).  Mr. Kunz may not, however, opine on the merits of the case, and any such testimony will be disregarded by the Court.

Plaintiffs lack support for their allegation of prejudice due to Mr. Kunz's opt-out data analysis.  First, Mr. Kunz is not an expert witness and the Court will not permit him to testify as one.  See supra.  Second, Defendant contends that Plaintiffs failed to serve written discovery or ask deposition questions about opt-out rates during class certification discovery.  Any prejudice Plaintiffs suffer as a result is not grounds for excluding Mr. Kunz's lay witness testimony that is based on personal, particularized knowledge and experience relating to his employment at Google.  Accordingly, the Court DENIES Plaintiffs' motion to strike the Declaration of William Kunz.

///

///

///

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS

United States District Court
For the Northern District of California

**B.     MOTION TO CERTIFY CLASS**

Plaintiffs move to certify the following class:

> All Google AdWords Customers who, during the period July 17, 2004 through March 31, 2008 (the "Class Period"), were charged by Google for clicks on their advertisements that Google placed on parked domains or error pages.

Docket Item No. 228.  Plaintiffs assert the proposed class satisfies the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3).  Defendant questions whether the class includes plaintiffs who lack Article III standing, and disputes that Plaintiffs have met the requirements for class certification.

**1.     Defendant's Objections to Reply Evidence**

As a threshold matter, the Court addresses Defendant's "Objections to Reply Evidence" pursuant to Civil Local Rule 7-3(d), which was filed after the close of briefing on Plaintiffs' Motion for Class Certification.  See Objections to Reply Evidence ("Objection"), Docket Item No. 267.  In the Objection, Defendant asks the Court to strike the Smith Declaration on the basis that the declaration constitutes "new evidence," a previously undisclosed expert opinion, and a regurgitation of prior reports.  Objection at 2.  Plaintiffs argue that the Smith Declaration simply responds to and rebuts the opinions asserted by Defendant's witnesses in the Opposition.  See Plaintiff's Response to Google's Objections to Reply Evidence, Docket Item No. 290-1.

Having read the parties' arguments, the Court finds that the Smith Declaration does not contain additional expert opinions or evidence, but instead responds to the criticisms and evidence presented by Defendant's Opposition, drawing upon Dr. Smith's previously disclosed expert reports and documents that Defendant produced during discovery.  Accordingly, the Court DENIES Defendant's request to strike the Smith Declaration and any references to it in the Reply Brief.

**2.     Standing**

Before considering whether Plaintiffs' proposed classes meet the requirements of Federal Rule of Civil Procedure 23, the Court will determine whether Plaintiffs and members of the proposed class have Article III standing.  See Easter v. Am. West Fin., 381 F.3d 948, 962 (9th Cir.

12

1       2004).  Defendant expresses doubts as to whether some of the named Plaintiffs have standing,

2       Opp'n at 11, and challenges the standing of the potential members of the proposed class.  Opp'n at

3       13-15.

4                       *a.*       *Standing of Class Representatives*

5               The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus.

6       & Prof. Code § 17200.  California's FAL also prohibits any "unfair, deceptive, untrue, or

7       misleading advertising."  Cal. Bus. & Prof. Code § 17500.  "Any violation of the false advertising

8       law" necessarily violates the UCL.  Williams v. Gerber Products Company, 552 F.3d 934 (9th Cir.

9       2008).

10              In 2004, Proposition 64 amended the standing requirements under the UCL and FAL so that

11      a private plaintiff has standing to bring a UCL or FAL action if the plaintiff "has suffered injury in

12      fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof.Code

13      §§ 17204, 17535.  The California Supreme Court has held that the phrase "['as a result of']

14      imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under

15      the UCL's fraud prong."  In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009).  A plaintiff can

16      prove reliance "by showing that the defendant's misrepresentation or nondisclosure was an

17      immediate cause of the plaintiff's injury-producing conduct."  Id. (internal quotation marks and

18      citation omitted).  One way for a plaintiff to prove that the omission was "an immediate cause" of

19      the plaintiff's injury-producing conduct is by showing that, in the absence of the omission, the

20      named plaintiff "in all reasonable probability would not have engaged in the injury-producing

21      conduct."  Id. (internal quotation marks and citation omitted).  "Moreover, a presumption, or at

22      least an inference, of reliance arises wherever there is a showing that a misrepresentation was

23      material."  Id. at 326-327 (citation omitted).  Under California law, a misrepresentation is

24      considered material "if a reasonable man would attach importance to its existence or nonexistence

25      in determining his choice of action in the transaction in question . . . ."  Id. (internal quotation

26      marks and citation omitted).

27

28

**United States District Court**
For the Northern District of California

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO
CERTIFY CLASS

1   Here, named Plaintiff Pulaski & Middleman, LLC ("Pulaski & Middleman") alleges that

2   (1) it viewed parked domain and error pages as "low quality" websites upon which it did not want

3   to advertise, and (2) Google knew Pulaski & Middleman was likely to regard its placement of its

4   ads on parked domains and error pages "as important in determining [its] chose of action."  Motion

5   at 4-5, 17.  Pulaski & Middleman further assert that it was misled by Google's omissions, and that

6   Google's omissions caused it to purchase advertising that it would not otherwise have bought and

7   to overpay for clicks on ads on parked domains and error pages.  Motion at 18.  Additionally,

8   Pulaski & Middleman contends that, "in all reasonable probability," had Google adequately

9   disclosed the truth, it would not have acted as it did.  Motion at 18; Tobacco II, 46 Cal. 4th at 326.

10  In other words, Pulaski & Middleman alleges that Defendant's omissions concerning its AdWords

11  system were material.  The Court finds that these allegations are sufficient to establish reliance.

12  To establish standing under Article III, a plaintiff must also demonstrate "concrete and

13  particularized" injury.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  The injury

14  here meets both of those requirements.  Pulaski & Middleman has submitted evidence in support of

15  its allegation that, as a result of Google's deception and unfair business practices, it purchased

16  advertising that it otherwise would not have.  Motion at 4-5; see Ex. 20, Pulaski Second Suppl.

17  Resp. to Interrog. No. 7; see Ex.12, Pulaski Suppl. Resp. to Interrog. No. 8.  By this evidence,

18  Pulaski & Middleman has sufficiently shown that it has "lost money or property" so as to confer

19  standing.  See e.g., Tobacco II, 46 Cal. 4th 298; Kwikset v. Superior Court, 51 Cal. 4th 310, 319-

20  325 (in UCL action, one of the "innumerable ways" in which economic injury can be shown is

21  purchasing more products or services than the plaintiff otherwise would have purchased).  For the

22  foregoing reasons, the court finds that the named Plaintiff Pulaski & Middleman has met the

23  injury-in-fact requirement for standing under the UCL and FAL, and under Article III.

24  In UCL and FAL class actions, Article III standing is satisfied if at least one of the named

25  plaintiffs meets the requirements.   Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1021 (9th Cir.

26  2011) (citing Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007) (en banc);

27  Fleming v. Pickard, 581 F.3d 922, 924 n. 3 (9th Cir. 2009); and Casey v. Lewis, 4 F.3d 1516 (9th

28

14

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO
CERTIFY CLASS

1    Cir. 1993)).  Thus, the court need not examine whether the other named Plaintiffs satisfy the

2    requirements of Article III.

3                    b.      *Standing of Unnamed Class Members*

4              Defendant argues that even in UCL cases, absent class members must satisfy Article III

5    standing, and, as a result, the question of whether each member has suffered a concrete injury

6    requires a fact intensive individualized inquiry.  Opp'n at 13-15.  Plaintiffs disagree, arguing that

7    only the named class representatives must meet standing requirements after the California Supreme

8    Court's decision in In re Tobacco II Cases, 46 Cal. 4th 298.  Reply at 3-5.

9              The requirements of Article III turn on the nature of the claim that is asserted.  See Warth v.

10   Seldin, 422 U.S. 490, 500 (1975).  In California, relief under the UCL and FAL[7] "is available

11   without individualized proof of deception, reliance, and injury."  In re Tobacco II Cases, 46 Cal.

12   4th at 320.  Claims under the UCL and FAL are subject to an objective test that requires a plaintiff

13   only "show that members of the public are likely to be deceived" by a defendant's representations

14   about its product.  Stearns, 655 F.3d at 1020 (quoting In re Tobacco II Cases, 46 Cal. 4th at 320).

15   However, as noted above in Section II.B.2.a., the UCL and FAL still require that plaintiffs suffer

16   injury in fact.  Cal. Bus. & Prof. Code §§ 17204, 17535.  The requirement of concrete injury is

17   satisfied when the Plaintiffs and class members in UCL and FAL actions suffer an economic loss

18   caused by the defendant, namely the purchase of defendant's product containing

19   misrepresentations.  Bruno v. Quten Research Institute, LLC, ---F.R.D. ---, No. SACV 11–00173

20   DOC(Ex), 2011 WL 5592880, at *4 (C.D. Cal. Nov. 14, 2011); Stearns, 655 F.3d at 1020-21.

21   Moreover, a showing of concrete injury under the UCL and FAL is sufficient to establish Article

22   III standing.  Bruno, ---F.R.D. ---, 2011 WL 5592880, at *4; Stearns, 655 F.3d at 1020-21.  Thus,

23   any inquiry into whether the unnamed class members satisfy Article III standing depends upon an

24   objective test, not a fact-intensive inquiry as Defendants contend.

25             Here, the court need not analyze unnamed class members' Article III standing because

26   Pulaski & Middleman's Article III standing has already been established.  "[T]he majority of

27   ─────────────────────

28   [7]      Claims under the FAL and UCL rely on the same objective test, In re Tobacco II Cases, 46
     Cal. 4th at 312, and thus the court addresses them together in this analysis.

                                                    15

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

authority indicates that it is improper for [the court] to analyze unnamed class members' Article III

standing where . . . Defendants do not successfully challenge the putative class representative's

standing."  Bruno v. Quten Research Institute, LLC, ---F.R.D. ---, No. SACV 11–00173 DOC(Ex),

2011 WL 5592880, at *5 (C.D. Cal. Nov. 14, 2011) (citing Lewis v. Casey, 518 U.S. 343, 395

(1996) (Souter, J., concurring) (class certification "does not require a demonstration that some or

all of the unnamed class could themselves satisfy the standing requirements for named

plaintiffs.")).  As the Ninth Circuit observed in Stearns, this Circuit has repeatedly held that "[i]n a

class action, standing is satisfied if at least one named plaintiff meets the requirements . . . . Thus,

we consider only whether at least one named plaintiff satisfies the standing requirements."  Id.

(citing Stearns, 655 F.3d at 1021).  Numerous district courts in California have reached the same

conclusion, that standing "is assessed solely with respect to class representatives, not unnamed

members of the class." [8]  There are, however, numerous district courts in California that have found

just the opposite: that even absent class members must establish Article III standing.[9]  The Central

District of California recently examined this paradox and concluded that, in UCL or FAL cases, the

court need not analyze the standing of unnamed class members where Article III standing has been

established for at least one named plaintiff.  Bruno, ---F.R.D. ---, 2011 WL 5592880, at *4-5.  The

court in Bruno also adopted a rule that, "where the class representative has established standing and

---

[8]     See Aho v. AmeriCredit Financial Services, Inc., ––– F.R.D. ––––, Case No. 10-CV-1373 DMS (BLM), 2011 WL 5401799, at *9 (S.D. Cal. Nov. 8, 2011) (limiting the court's inquiry to the representative party, who met the standing requirements of Article III); Zeisel v. Diamond Foods, Inc., Case No. No. C 10–01192 JSW, 2011 WL 2221113, at *4 (N.D. Cal. June 7, 2011) ("in general, standing in a class action is assessed solely with respect to class representatives, not unnamed members of the class") (internal citation omitted); Greenwood v. Compucredit Corp., Case No. 08–04878 CW, 2010 WL 4807095, at * 3 (N.D. Cal. Nov. 19, 2010) (holding that "Plaintiffs are not required to establish absent class members' individual reliance and personal standing"); Chavez v. Blue Sky Natural Bev. Co., 268 F.R.D. 365, 376 (N.D. Cal. 2010) ("unnamed class members in an action under the [California] Unfair Competition Law ("UCL") . . . are not required to establish standing.").

[9]     See O'Shea v. Epson Am., Inc., 2011 U.S. Dist. LEXIS 105504, at *28–31 (C.D. Cal. Sept. 19, 2011) (holding that absent class members must satisfy the requirements of Article III); Sanders v. Apple Inc., 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (Fogel, J.) (same); Webb v. Carter's Inc., 272 F.R.D. 489 (C.D. Cal. 2011) (holding absent class members in UCL action must satisfy Article III standing requirements); In re Light Cigarettes Mktg. Sales Practices Litig., 271 F.R.D. 402, 416-20 (D. Me. 2010) (same); Burdick v. Union Sec. Ins. Co., No. CV 07-4028 ABC, 2009 WL 4798873, at *3 (C.D. Cal. Dec. 9, 2009) (same).

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO
CERTIFY CLASS

**United States District Court**
For the Northern District of California

defendants argue that class certification is inappropriate because unnamed class members' claims would require individualized analysis of injury or differ too greatly from the plaintiff's, a court should analyze these arguments through Rule 23 and not by examining the Article III standing of the class representative or unnamed class members." Id.  This court is persuaded by the well-reasoned analysis in <u>Bruno</u> and concludes that where one class representative in a UCL or FAL class action has already established Article III standing, the court need not analyze the standing of unnamed class members.[10]  Additionally, this court finds it more appropriate to address Defendants' argument regarding the fact-intensive, highly individualized analysis of injury under Rule 23(b) in section II.B.3.c., below.

### 3.    Legal Standard for Class Action Certification

A party seeking class certification must provide facts sufficient to satisfy the requirements of Federal Rule of Civil Procedure 23.  <u>Doninger v. Pacific Northwest Bell, Inc.</u>, 564 F.2d 1304, 1308-09 (9th Cir. 1977).  Under Rule 23(a), a class may only be certified if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In addition, the party seeking certification must show that the action falls within one of the three subsections of Rule 23(b).

In this case, Plaintiffs seek certification pursuant to 23(b)(3), which permits certification of cases where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiffs bear the burden of demonstrating that they have met the four requirements of Rule 23(a) as well as the predominance and superiority requirements of Rule

---

[10]    In any event, the proposed class here meets the standing requirements of Article III. Consumers who purchased the Google AdWords product have Article III standing, as they were relieved of money in the transactions.  <u>See, e.g.</u>, <u>Kwikset Corp. v. Superior Court</u>, 51 Cal. 4th 310, 329 (2011); <u>Stearns</u>, 655 F.3d at 1021.

23(b)(3).  See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001).

A trial court has broad discretion in making the decision to grant or deny a motion for class certification.  Bateman v. American Multi–Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010).  A party seeking class certification must affirmatively demonstrate compliance with Rule 23 and be prepared to prove that the requirements of Rule 23 are met.  Wal–Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2550-51 (2011).  This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  Id.

### a.    Ascertainability

Defendant argues that this case presents a problem of whether the class is ascertainable.  According to Defendant, even if the court would approve a class of AdWords customers entitled to restitution, Plaintiffs have not offered an appropriate mechanism for determining who those customers might be.  As explained below, in Section II.B.3.c., there is no systematic way to identify and exclude from Plaintiffs' proposed class the many advertisers who have no legal claim to restitution because they derived direct economic benefits from ads placed on parked domains and error pages. [11]  See Opp'n at 6.   However, given the class definition proposed by Plaintiffs, the court views this as an issue regarding entitlement to restitution, not ascertainability.

### b.    Rule 23(a) Requirements

#### 1.  Numerosity

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "'[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40,' the numerosity requirement is satisfied."  Miletak v. Allstate Ins. Co., 2010 WL 809579, at *10 (N.D. Cal. Mar. 5, 2010) (citation omitted); see also

---

[11]     Defendant contends that ascertainability of all class members who are not entitled to restitution is impossible.  The vast majority of advertisers in the proposed class did not elect to use Google's tool to calculate conversion rates.  Varian Decl. at ¶ 21.  As such, there is no class-wide method to determine the benefits that advertisers may have received from sales or other conversion events.  Even if all AdWords accounts were opted into conversion tracking, conversion rates alone may not be a satisfactory measure of the overall benefits achieved from ads placed on parked domains and error pages.  See Bucklin Expert Report (Docket Item No. 281-1) and Rebuttal Expert Rpt. of Randolph E. Bucklin (Docket Item No. 281-2).

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

O'Shea, 2011 WL 4352458 at *2.  Plaintiffs seek to certify a class consisting of hundreds of thousands of Google AdWords customers.  Mot'n at 19.  Although Defendant contests other Rule 23 requirements, it does not dispute that Plaintiffs' proposed class satisfies the numerosity requirement.  See Hearing Transcript at 48:17-19.  Thus, the numerosity requirement is met here.

### 2. Commonality

To prevail under Rule 23(a)(2)'s commonality standard, the plaintiff must establish common questions of law and fact among class members.  This requirement is met through the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution[.]"  Walmart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011).  As the Supreme Court explained in Dukes, the key consideration in assessing commonality is "not the raising of common questions—even in droves—but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Id. (internal citations and quotation omitted).

Not surprisingly, the parties in this case ask different questions, and thus disagree about whether class proceedings will generate common answers.  Plaintiffs present the following question which they claim is a capable of classwide resolution:  "whether Google's alleged omissions were misleading to a reasonable AdWords customer."  Plaintiff's Supp'l Mem. at 5-6.  Defendant, in contrast, characterizes the question as "whether the advertiser is entitled to restitution."  Defendant's Supp'l Mem. at 5.

In the court's opinion, both parties' proposed questions are central to and will drive the litigation.  Plaintiffs' question focuses on liability; Defendant's question focuses on restitution.  Defendant may be correct that the question of "whether the advertiser is entitled to restitution" will generate individual answers.  But because Plaintiffs present a valid common question, the commonality requirement is satisfied.  See Dukes, 131 S.Ct. at 2556 ("We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do.") (internal quotations and citations omitted); see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) ("All questions of fact and law need not be common to satisfy [Rule 23].").

19

United States District Court
For the Northern District of California

As previously noted, Plaintiffs assert a claim under the UCL's "fraudulent" prong and a claim under California's FAL.  For liability to attach under either of these statutes based on false or deceptive advertising, it is necessary only to show that members of the public are "likely to be deceived" by the omissions.  See O'Shea, 2011 WL 4352458 at *3; In re Tobacco II Cases, 46 Cal. 4th at 312 n. 8, ("A violation of the UCL's fraud prong is also a violation of the false advertising law")).  Accordingly, a central inquiry in this case is "whether Google's alleged omissions were misleading to a reasonable AdWords customer."  This question is common to all members of the putative class and, when answered, will be dispositive of the issue of liability.  See, e.g., O'Shea, 2011 WL 4352458 at *3.  The Court therefore holds that the commonality requirement set forth in Rule 23(a)(2) is met.  See Dukes, 131 S.Ct. at 2556.

### 3.  Typicality

Plaintiffs' claims are sufficiently typical to satisfy Rule 23(a)(3). Under the requirement's "permissive standards," claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).  Here, Plaintiffs' claims arise out of the same alleged omissions as do the claims of all class members:  Google failed to disclose that, regardless of whether a particular AdWords customer chose to be placed in Google's "Search" or "Content" network, Google would place their ads on parked domains and error pages, and charge them for clicks on those sites. Because Plaintiffs' claims involve the same legal claim based upon the same course of events as do the claims of all class members, the typicality requirement is met here.

### 4.  Adequacy

Under Rule 23(a)(4)'s adequacy requirement, Plaintiffs must establish that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In determining whether a proposed class representative will fairly and adequately protect the interests of the class, the Court asks two questions.  First, do the proposed class representatives and their counsel "have any conflicts of interest with other class members"?  Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir.

United States District Court
For the Northern District of California

2003) (citing <u>Hanlon</u>, 150 F.3d at 1020).  Second, will the proposed class representatives and their counsel "prosecute the action vigorously on behalf of the class?"  <u>Id.</u>

Defendant briefly argues that named Plaintiff Pulaski & Middleman has a professional relationship with plaintiff's counsel, Foote Meyers, which creates a financial entanglement that renders Pulaski & Middleman an inappropriate class representative.  Opp'n at 10.  However, a close examination of Adam Pulaski's deposition testimony reveals that the nature of the relationship was purely professional, involving shared work on two cases, as well as a few referrals which did not involve referral fees.  This relationship is quite different from the long-standing personal friendship *and* financial ties that the Eleventh Circuit found inappropriate in <u>London v. Wal-Mart Stores, Inc.</u>, 340 F.3d 1246, 1255 (11th Cir. 2003) (plaintiff and class counsel had a very close friendship, class counsel had been plaintiff's stock broker for many years, and plaintiff's recovery would vastly exceed what any of the class members would receive).  As such, the court finds no evidence that Plaintiffs or their counsel have any conflicts of interest with proposed class members.

Plaintiffs' claims, as explained with respect to the typicality requirement, are aligned with the claims of proposed class members.  Moreover, Plaintiffs are represented by attorneys that have significant class action experience–including class action experience, including experience in UCL actions–that are capable of fairly and adequately representing Plaintiffs and the proposed class.  Accordingly, the adequacy requirement is also met here.

### c.  Rule 23(b)(3) Requirements

In this case, Plaintiffs seek certification pursuant to 23(b)(3).  Thus, to certify a class action, Plaintiffs must also satisfy the predominance and superiority requirements of that rule.  The test under Rule 23(b)(3) evaluates whether "adjudication of common issues will help achieve judicial economy."  <u>Aho</u>, 2011 WL 5401799 at *9 (quoting <u>Vinole v. Countrywide Home Loans, Inc.</u>, 571 F.3d 935, 944 (9th Cir. 2009) (internal citation omitted)).  To this end, it requires courts to determine whether "the actual interests of the parties can be served best by settling their differences in a single action."  <u>Hanlon</u>, 150 F.3d at 1022 (internal quotations omitted).  A plaintiff must show

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS

1    more than the mere existence of a common question of law or fact to satisfy the predominance

2    inquiry under Rule 23(b)(3); he or she must show that the common question of law or fact

3    predominates.  Dukes, 131 S.Ct. at 2556.  For the reasons explained below, Plaintiffs do not meet

4    this requirement.

5           In this case, there is a common question to resolve the issue of liability:  whether Google's

6    alleged omissions were misleading to a reasonable AdWords customer.[12]  See supra at 18-19.

7    While this question may weigh in Plaintiffs' favor, the court is unconvinced that such

8    commonalities predominate over questions affecting individual members of the putative class.

9    Indeed, as mentioned above in Section II.B.3.a., the question of which advertisers among the

10   hundreds of thousands of proposed class members are even entitled to restitution would require

11   individual inquiries.  See Mazur, 257 F.R.D. at 567 (refusing to certify a class that included "non-

12   harmed" members); In re Flash Memory Antitrust Litig., No. C 07-0086 SBA, 2010 WL 2332081,

13   at *12 (N.D. Cal. June 9, 2010) (denying certification where damages methodology "would . . .

14   sweep in an unacceptable number of uninjured plaintiffs").

15          Another obstacle to a finding that common issues predominate is the individual nature of

16   the restitutionary relief sought, as class members each paid different sums for each particular ad

17   campaign and for each instance in which an ad was clicked.  Varian Decl. at ¶ 6.  While it is often

18   true that "[d]amages calculations alone . . . cannot defeat certification," Yokoyama v. Midland

19   Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir.  2010), that principle does not apply to the facts

20   here.[13]  The amount that advertisers pay to use AdWords is determined through an auction process

21

22   ───────────────────────
     [12]    The court rejects Defendant's argument that individualized questions of reliance and
23   materiality must be proved here.  Opp'n at 14-17.  As previously explained, Plaintiffs' UCL and
     FAL claims are governed by the "reasonable consumer" test, which requires Plaintiffs to "show
24   that members of the public are likely to be deceived."  Williams v. Gerber Products Co., 523 F.3d
     934, 938 (9th Cir. 2008) (internal citations omitted).
25   [13]    In Yokoyama, the Ninth Circuit based its statement on two decisions that confirm that
     certification is inappropriate where plaintiffs cannot demonstrate a workable method for
26   calculating monetary recovery.  See Smilow v. Sw. Bell Mobile Sys., 323 F.3d 32, 40 n.8 (1st Cir.
     2003) (noting in its discussion of damages that "[c]ourts have denied class certification where these
27   individual issues are especially complex or burdensome" (citing 5 J.W. Moore, Moore's Federal
     Prac. § 23.46[2][b] at 23-209 & n. 17)); Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975)
28   (affirming certification but noting that given the particular facts of that case, "the process of
     computing individual damages will be virtually a mechanical task").

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO
CERTIFY CLASS

**United States District Court**
For the Northern District of California

1    that generates a separate cost for *each* advertiser for *each* ad and for *each* click, with the specific

2    amounts determined by the interplay of the bidding strategies of the participating advertisers in a

3    given auction.  See Opposition at 24-25.  These intricacies make it more difficult to calculate what

4    AdWords customers would have paid "but for" the alleged misstatements or omissions.  For

5    instance, "every ad placed on AdWords is priced differently, and the ultimate amount Google

6    charges for each ad depends on dozens of factors that are unique to each ad placement, unique to

7    each individual advertiser, and dependent on the unique attributes of each of the other advertisers

8    who also wished to place ads on the particular web page at issue."  Varian Decl. at ¶ 6.

9    Furthermore, under the AdWords auction system, "there is no 'set' price per click paid by all

10   advertisers that is knowable ahead of time; instead all advertisers pay a different price that is

11   determined based on the interplay between all of the differing maximum cost-per-clicks (i.e.,

12   'bids') from all of the advertisers participating in the auction."  Id.  This suggests that Plaintiffs

13   cannot simply assume that a reduction in the demand for advertising on AdWords among some

14   undefined group of advertisers would lead to a lower "but for" price for all advertisers.   See

15   Rebuttal Expert Report of Randolph E. Bucklin.  Thus, any effort to determine what advertisers

16   "would have paid" under a different set of circumstances requires a complex and highly

17   individualized analysis of advertiser behavior for each particular ad that was placed.   See Bucklin

18   Expert Report and Rebuttal Expert Rpt. of Randolph E. Bucklin.

19          To further complicate matters, advertisers have widely varying goals, which makes it

20   difficult to calculate the actual value of what advertisers received for their payments to Google. [14]

21   See Bucklin Expert Report at ¶¶ 81-82.  While the advertiser account data maintained by Google

22

23

---

24   [14]       One way to measure the performance of an online ad is based on "conversions."  Opp'n at
     5; Alferness Decl. at ¶19.  A conversion occurs when a user clicks on an ad, arrives at the
25   advertiser's designated web page, and completes some further action to the benefit of the
     advertiser.  Id.  In 2009, only a small percentage of active AdWords accounts were opted in to
26   conversion tracking.  Opp'n at 6 (citing Bucklin Expert Report (Docket Item No. 281-1) at 38).
     Even if all AdWords accounts were opted into conversion tracking, conversion rates alone may not
27   be a satisfactory measure of the overall benefits achieved from ads placed on parked domains and
     error pages.  See Bucklin Expert Report (Docket Item No. 281-1) and Rebuttal Expert Rpt. of
28   Randolph E. Bucklin (Docket Item No. 281-2) ("Bucklin Rebuttal Report").

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO
CERTIFY CLASS

United States District Court
For the Northern District of California

tracks the cost of advertising on parked domain and error pages, it provides limited information on the value advertisers receive as a result of that advertising.  Id. at 83.

Although it is true that restitution need not be determined with exact precision, it "must be based on a specific amount found owing, and this measureable amount of restitution due must be supported by substantial evidence."  Ewert v. eBay, Inc., Case Nos. C-07-02198 RMW, C-07-04487 RMW, 2010 WL 4269259, at *11 (N.D. Cal. Oct. 25, 2010) (internal citation omitted).  The court is not persuaded that, in this case, with these parties and facts, restitution can be reliably measured using common methods.  Plaintiffs' Full Refund Approach, Smart Pricing Approach, and the Content Pricing Approach do not sufficiently take into account the unique circumstances surrounding the AdWords auctions.  For example, the "Full Refund Method" would award full restitution of all fees paid to Google, without taking into account the benefits those members received or the fact that some actively sought to have their ads placed on parked domains and error pages.  See Expert Report of Stan V. Smith, Docket Item No. 228, ("Smith Report") at 10; See Bucklin Rebuttal Report, ¶¶ 58-61.  Similarly, the "Smart Pricing Method" would apply a uniform discount for all ads placed on a parked domain – even if an individual advertiser's ads on that web page outperformed ads appearing on other types of websites (as was the case for named Plaintiff RK West).  See Bucklin Rebuttal Report, ¶¶ 35-40.  Along the same lines, the Content Pricing Method would award restitution to advertisers based on a blanket assumption that all ads in Google's Search Network outperform ads on the Content Network, despite evidence that the opposite is true in many cases, including the named Plaintiffs' own experiences.[15]  See Smith Report at 63; see Bucklin Rebuttal Report at ¶¶ 44-57.

Since the purpose of restitution is to return class members to status quo, the amount of restitution due must account for the benefits received from ads placed on parked domains and error pages.  Here, in many instances, individual proof would show that advertisers received significant

---

[15]    For example, named Plaintiff RK West experienced an average conversion rate on the Search Network (5%) that exceeded its performance on the Content Network (.7%).  Bucklin Rebuttal Report ¶ 52.

24

**United States District Court**
For the Northern District of California

revenues and other benefits from ads placed on parked domains and error pages – benefits that would need to be individually accounted for in any restitution calculation.

Plaintiffs have not "affirmatively demonstrated" that restitution can be calculated by methods of common proof.  See Dukes, at 10.  While Plaintiffs present a hypothetical "but for" price for advertising on parked domains and error pages absent Google's alleged "deception," they overlook the reality of how advertising costs are actually determined in the AdWords system. Where, as here, proof of restitution due each class member cannot be proved with relative ease, the court finds good reason to deny class certification.

Based on the foregoing, the court finds that individualized issues of restitution permeate the class claims.  In light of such, it concludes that the proposed class is not "sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  Plaintiff therefore fails to satisfy Rule 23(b)(3)'s requirement that common issues predominate.[16]

### III.  CONCLUSION

Thus, for the foregoing reasons, the Court DENIES Plaintiffs' motion for class certification. The Court sets this matter for a Case Management Conference to be held on **February 17, 2012 at 10:00 a.m.**  The parties shall file a Joint Case Management Statement on or before **February 10, 2012.**

**IT IS SO ORDERED.**

Dated: January 5, 2012

EDWARD J. DAVILA
United States District Judge

---

[16]     Because the Court finds that individualized issues of restitution preclude satisfaction of the predominance requirement set forth in Rule 23(b)(3), it does not reach the remaining inquiry of whether the proposed class action is "superior" to the other methods available for adjudicating the controversy.   Fed. R. Civ. P.  23(b)(3).

Case No.: 5: 08-CV-3369 EJD
ORDER DENYING IN PART PLAINTIFFS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS