1  ROBERT C. SCHUBERT S.B.N. 62684
   rschubert@schubertlawfirm.com
2  WILLEM F. JONCKHEER S.B.N. 178748
   wjonckheer@schubertlawfirm.com
3  MIRANDA P. KOLBE S.B.N. 214392
   mkolbe@schubertlawfirm.com
4  SCHUBERT JONCKHEER & KOLBE LLP
   Three Embarcadero Center, Suite 1650
5  San Francisco, CA  94111
   Telephone:  (415) 788-4220
6  Facsimile:  (415) 788-0161

7  *Lead Counsel for Plaintiffs*

8  *Additional counsel listed on signature page*

9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12                    **SAN JOSE DIVISION**

13

14  IN RE GOOGLE ADWORDS LITIGATION        Case No.  08-3369 EJD

15

16                                          **MEMORANDUM OF POINTS AND**
                                            **AUTHORITIES IN SUPPORT OF**
17                                          **MOTION FOR LEAVE TO FILE**
                                            **MOTION FOR RECONSIDERATION OF**
18                                          **CLASS CERTIFICATION ORDER**

    This Document Relates to:               [CIVIL L.R. 7-9]
19
    All Actions                            Judge:       Hon. Edward J. Davila
20                                          Courtroom: 1

21

22

23

24

25

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

# <u>TABLE OF CONTENTS</u>

I.    RESTITUTION AWARDS MAY BE CALCULATED ON A COMMON BASIS...................1

      A.    PLAINTIFFS' OUT-OF-POCKET LOSS METHOD OF CALCULATING RESTITUTION REQUIRES VALUING THE ADS PLACED ON PARKED DOMAINS AND ERROR PAGES *AT THE TIME OF PURCHASE* BY REFERENCE TO *OBJECTIVE CRITERIA*. ...................................................................2

      B.    PLAINTIFFS' OUT-OF-POCKET LOSS METHOD FULLY ACCOUNTS FOR THE "BENEFITS RECEIVED" BY CLASS MEMBERS; ANY EARNINGS CLASS MEMBERS MAY HAVE OBTAINED THROUGH GOOGLE'S SERVICE SOLD BY MEANS OF DECEPTIVE ADVERTISING DO NOT NEED TO BE SUBTRACTED FROM OUT-OF-POCKET LOSSES INCURRED. ...................................................................5

      C.    *EWERT V. EBAY, INC.* DEMONSTRATES THAT OUT-OF-POCKET LOSSES MAY BE RELIABLY CALCULATED IN A UCL CASE INVOLVING A COMMERCIAL SERVICE WITHOUT ASSESSING ANY EARNINGS (OR LOSSES) THE CLASS MEMBERS MAY HAVE SUSTAINED. ................................6

      D.    GOOGLE ACKNOWLEDGES THAT SMART PRICING IS A REASONABLE WAY TO ESTIMATE THE MARKET VALUE OF ADVERTISING ON PARTICULAR SITES IN ITS NETWORK AND THAT SMART PRICING REASONABLY ACCOUNTS FOR INDIVIDUAL VARIATIONS IN KEYWORD AUCTIONS. ...................................................................9

II.   EVEN IF THIS COURT DETERMINES THAT CALCULATION OF RESTITUTION REQUIRES INDIVIDUAL INQUIRIES, CLASS CERTIFICATION SHOULD BE GRANTED     13

III.  IF THIS COURT ULTIMATELY DETERMINES THAT CERTIFICATION UNDER RULE 23(B)(3) SHOULD BE DENIED, CERTIFICATION UNDER RULE 23(C)(4) SHOULD BE GRANTED ...........................................................................17

IV.  CONCLUSION...........................................................................................................21

**<u>TABLE OF AUTHORITIES</u>**

Cases

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)......12

*Bagdasarian v. Gragnon*, 31 Cal.2d 744, 192 P.2d 935 (1948) ....................................................4

*Bank of the West v. Superior Court*, 2 Cal.4th 1254 (1992)........................................................13

*Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 9 Cal. Rptr. 3d 544 (2004) ........................10

*Birch v. Ciria*, 205 Cal. App. 2d 1, 22 Cal. Rptr. 798 (1962) ..................................................5, 6

*Campion v. Credit Bureau Services, Inc.*, 206 F.R.D. 663 (E.D. Wash. 2001) ......................6, 18

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) .................................. 18, 19, 20

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993).....................................20

*Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221 (S.D.N.Y. 2010) ..................................18

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36 (2006) .......3

*Ewert v. Ebay, Inc.,* Nos. C-07-02198 RMW, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ...............................................................................................................................passim

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, C 03-1431 SBA, 2006 WL 1390416 (N.D. Cal. May 18, 2006) ...........................................................................4

*Graf v. Sumpter*, 207 Cal. App. 2d 391, 24 Cal. Rptr. 590 (1962) ...............................................4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...........................................................20

*In re Copley Pharm., Inc.*, 158 F.R.D. 485 (D. Wyo. 1994) ................................................17, 18

*In re Flash Memory Antitrust Litig.,* No. C07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010)..............................................................................................................13, 14

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) .....................................................................14, 19

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053 (N.D. Cal. 2007)...19

*Marsu, B.V. v. Walt Disney Co.,* 185 F.3d 932 (9th Cir.1999)...................................................12

*Mazur v. eBay Inc.,* 257 F.R.D. 563 (N.D. Cal. 2009)..........................................................13, 14

*McKenzie v. Eleven Group, Inc.*, C064337, 2011 WL 1435012 (Cal. Ct. App. Apr. 14, 2011).....4

*Messner v. Northshore Univ. HealthSystem,* No. 10-2514 (7th Cir. Jan. 13, 2012) (Slip op.)15, 16

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

*Mola Dev. Corp. v. Orange County Assessment Appeals Bd.*, 80 Cal. App. 4th 309, 95 Cal. Rptr. 2d 546 (2000) ...................................................................................................................4

*Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059 (C.D. Cal. 2003) ...........................................................................................................................................3

*Oracle USA, Inc. v. SAP AG*, C 07-1658 PJH, 2011 WL 3862074 (N.D. Cal. Sept. 1, 2011) *motion to certify appeal denied,* C 07-1658 PJH, 2012 WL 29095 (N.D. Cal. Jan. 6, 2012) ...........................................................................................................................................4

*Pom Wonderful LLC v. Welch Foods, Inc.*, CV 09-567 AHM AGRX, 2009 WL 5184422 (C.D. Cal. Dec. 21, 2009) .....................................................................................................................3

*S. Bay Irr. Dist. v. California-Am. Water Co.*, 61 Cal. App. 3d 944, 133 Cal. Rptr. 166 (1976)....4

*Simon v. Philip Morris Inc.,* 200 F.R.D. 21 (E.D.N.Y. 2001), *aff'd in part, rev'd in part sub nom. Sepulveda v. Wal-Mart Stores Inc.*, 275 F. App'x 672 (9th Cir. 2008), *opinion vacated on reh'g sub nom. Sepulveda v. Wal-Mart Stores, Inc.*, 06-56090, 2011 WL 6882918 (9th Cir. Dec. 30, 2011) *and aff'd*, 06-56090, 2011 WL 6882918 (9th Cir. Dec. 30, 2011)....18

*Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32 (1st Cir. 2003) ........................................10, 17

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) ........................................ 14, 15, 16

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 51 S.Ct. 248 (1931) .....12

*Stout v. Turney*, 22 Cal. 3d 718, 586 P.2d 1228 (1978) ................................................................3

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).................................................17

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ....................................13

Treatises

6A Fed. Proc., L. Ed. § 12:223 ....................................................................................................13

Rest. Restitution § 151 ..........................................................................................................3, 4, 5

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

This Court manifestly failed to consider material facts and dispositive legal arguments set forth in below, which were presented to the Court in conjunction with Plaintiffs' motion for class certification. *See* Civil Local Rule 7-9(b)(3).

First, contrary to the Court's assumption, upon which its decision to deny class certification was based, restitution can be calculated on a common basis without reference to any earnings obtained by individual class members. As explained below, set-offs of amounts earned subsequent to a transaction consummated as a result of fraud are impermissible when calculating damages using the out-of-pocket method proposed by Plaintiffs in this case. Moreover, *Ewert v. Ebay, Inc.,* Nos. C-07-02198 RMW, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010), makes clear that calculation of restitution in UCL cases involving commercial services does not require assessment of earnings (or losses) individual class members may have sustained after the allegedly deceptive transaction was consummated.

Furthermore, in holding that individual issues regarding the calculation of restitution warranted denial of certification, this Court failed to consider controlling Ninth Circuit authority, including *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) and *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011). Together, those cases make clear that, where, as here, UCL liability can be assessed on a common basis, individual issues with respect to the calculation of restitution do not defeat certification.

Finally, if this Court ultimately determines that certification pursuant to Fed. Rule Civ. Proc. 23(b)(3) should be denied, it should certify the common question of liability raised in this case pursuant to Rule 23(c)(4).

## I.     RESTITUTION AWARDS MAY BE CALCULATED ON A COMMON BASIS

The Court erred in holding that calculation of restitution in this case would require individual assessment of the class members' earnings attributable to each advertising campaign. *See* Order at 24:14-25:2. In reaching this holding, the Court improperly applied a *damages* analysis to Plaintiffs' claims for restitution. As such, the Court manifestly failed to consider the following:

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
No. 08-3369 EJD

1.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

- Plaintiffs' out-of-pocket loss method of calculating restitution requires valuing the ads placed on parked domains and error pages *at the time of purchase* by reference to *objective criteria*;

- Plaintiffs' out-of-pocket loss method fully accounts for the "benefits received" by class members; any earnings class members may have obtained through Google's service sold by means of deceptive advertising do not need to be subtracted from out-of-pocket losses incurred;

- *Ewert v. Ebay, Inc.,* Nos. C-07-02198 RMW, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) demonstrates that out-of-pocket losses may be reliably calculated in a UCL case involving a commercial service without assessing any earnings (or losses) the class members may have sustained; and

- Google itself admits that Smart Pricing is a reasonable way to estimate the market value of advertising on the sites in its Network and that Smart Pricing reasonably accounts for individual variations in keyword auctions.

As discussed below, proper application of the out-of-pocket loss method demonstrates that the amount of restitution to be awarded classwide, as well as to the individual class members, can be reasonably estimated and applied mechanically without need for individual inquiries.

A.   PLAINTIFFS' OUT-OF-POCKET LOSS METHOD OF CALCULATING RESTITUTION REQUIRES VALUING THE ADS PLACED ON PARKED DOMAINS AND ERROR PAGES *AT THE TIME OF PURCHASE* BY REFERENCE TO *OBJECTIVE CRITERIA*.

This Court based its holding that calculating restitution in this case would require individual inquiries upon its assumption that profits earned from advertising on parked domains and error pages would have to be accounted for, and those profits could not be determined without individual inquiries. If this assumption were correct, restitution could virtually never be calculated in cases involving commercial products or services sold by means of deceptive advertising, because in almost every case, each class member would experience different profits based upon their differing business objectives, cost structures, and so forth. Fortunately, the Court's assumption is contrary to California law.

Plaintiffs are bringing UCL claims for *restitution*. In contrast, the amount of profits they would have earned had the product sold been as represented constitute *damages*, which are not

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

available as a remedy for UCL claims.[1]  *See, e.g., Pom Wonderful LLC v. Welch Foods, Inc.*, CV 09-567 AHM AGRX, 2009 WL 5184422 (C.D. Cal. Dec. 21, 2009) ("Plaintiff claims that it is entitled to restitution for 'its profits which are attributable to [Defendant's] wrongful taking of Plaintiff's vested interest in its rightful share of the pomegranate juice market.' … Lost profits are not restitution – they are damages.");  *Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1082 (C.D. Cal. 2003) ("the 'restitution' Plaintiffs seek in this case is based on the profits *Plaintiffs* would have received had they been given access to the extra services… Plaintiffs are essentially seeking damages, not the return of money in which they have an identifiable property interest.") (emphasis in original).

Furthermore, Plaintiffs propose calculating restitution by measuring their out-of-pocket losses.  California courts have consistently endorsed the out-of-pocket loss method as a viable way to calculate restitution awards in UCL cases.  *See, e.g., Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 699, 38 Cal. Rptr. 3d 36, 62 (2006).

Measuring out-of-pocket loss requires subtracting the "actual value" of the product or service from the price paid for that product or service.  *Id., quoting* Rest. Restitution § 151, p. 598 ("'*the measure of recovery for the benefit received by the other is the value of the property at the time of its improper acquisition, retention or disposition*'") (emphasis added).  "[The out-of-pocket loss rule], against which is traditionally contrasted the so-called 'benefit-of-the-bargain' measure, is directed to restoring the plaintiff to the financial position enjoyed by him prior to the fraudulent transaction, and thus awards the difference in actual value at the time of the transaction between what the plaintiff gave and what he received."  *Stout v. Turney*, 22 Cal. 3d 718, 725, 586 P.2d 1228, 1232 (1978).  The

---

[1] Had Plaintiffs sought damages for lost profits, those damages would be calculated by measuring the profits advertisers would have expected to earn if Google had placed their ads on sites that conformed to its representations (i.e., search and/or content sites), and then subtracting the amount of any net profits that advertisers actually earned from those placements.  *See, e.g., Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 884, 116 Cal. Rptr. 2d 158, 169 (2002), citation omitted (explaining that calculation of lost profits requires calculation of prospective profits minus net profits earned from the transaction).

"benefit received" or "value" is determined by estimating its market value.[2]  The Restatement of Restitution explains, "The value of property is its exchange value measured in money, or the amount for which it could be exchanged if there was an open market with a wide opportunity for buyers." Rest. Restitution § 151, com. B. pp. 599-600; *see also Bagdasarian v. Gragnon*, 31 Cal.2d 744, 753, 192 P.2d 935, 940 (1948) ("actual value" generally means "market value" in legal cases); *McKenzie v. Eleven Group, Inc.*, C064337, 2011 WL 1435012 (Cal. Ct. App. Apr. 14, 2011) ("actual value" as used in Civ. Code § 3343 means "market value").

As courts in California and throughout the Ninth Circuit have explained in a variety of contexts, the market value of a product or service is assessed by applying an *objective measure* that reflects the price a *hypothetical buyer* would have paid in an arms-length transaction to a willing seller.  *See S. Bay Irr. Dist. v. California-Am. Water Co.*, 61 Cal. App. 3d 944, 996, 133 Cal. Rptr. 166, 201 (1976); *Mola Dev. Corp. v. Orange County Assessment Appeals Bd.*, 80 Cal. App. 4th 309, 326, 95 Cal. Rptr. 2d 546, 558 (2000) ("property tax appraisal is based on a hypothetical market transaction with a hypothetical buyer, not the taxpayer's peculiar benefits or predicaments unrelated to the market"); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, C 03-1431 SBA, 2006 WL 1390416 (N.D. Cal. May 18, 2006) ("When an established royalty does not exist, a court may determine a reasonable royalty based on 'hypothetical negotiations between willing licensor and willing licensee'"); *Oracle USA, Inc. v. SAP AG*, C 07-1658 PJH, 2011 WL 3862074 (N.D. Cal. Sept. 1, 2011) *motion to certify appeal denied,* C 07-1658 PJH, 2012 WL 29095 (N.D. Cal. Jan. 6, 2012) ("Determining a hypothetical license price requires an "objective, not a subjective" analysis.").  Furthermore, the value that assessed is the value *at the time of the sale*.  *See* Rest. Restitution § 151; *Graf v. Sumpter*, 207 Cal. App. 2d 391, 393, 24 Cal. Rptr. 590 (1962) (out-of-pocket damages for fraud are to be assessed as of the date of the fraudulent transaction).

---

[2] In its order, the Court opined that Plaintiffs' proposed methods of measuring restitution were deficient, because Plaintiffs failed to account for the "benefit received" from advertising on parked domains and error pages.  Order at 24:22-24.  The Court failed to consider Plaintiffs' dispositive legal argument that their proposed method of calculating restitution does account for the benefit received – the "actual value" ("market value") of the advertising at the time of purchase *is* that benefit.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Because the value that is being assessed is the value to a hypothetical, reasonable consumer at the time of sale, purchasers' *aggregate* views of that value are of great relevance.  In the case of advertising, advertisers' aggregate expectations regarding the profitability of advertising in the particular forum being offered are of great importance in assessing its market value.  Supp. Econ. Report of Stan V. Smith ¶ 13.  Additionally, advertisers' aggregate impressions of how advertising in that particular media would affect their brands could also affect the market value.  *Id*.  In contrast, the actual profits (or losses) that happened to be realized by a particular purchaser would not be known at the time of purchase and, thus, would be unimportant in establishing its market value.  *Id.*

B.   PLAINTIFFS' OUT-OF-POCKET LOSS METHOD FULLY ACCOUNTS FOR THE "BENEFITS RECEIVED" BY CLASS MEMBERS; ANY EARNINGS CLASS MEMBERS MAY HAVE OBTAINED THROUGH GOOGLE'S SERVICE SOLD BY MEANS OF DECEPTIVE ADVERTISING DO NOT NEED TO BE SUBTRACTED FROM OUT-OF-POCKET LOSSES INCURRED.

The Court also failed to consider that, when calculating out-of-pocket losses, post-purchase earnings do not need to be subtracted from – or even considered in – determining the amount of those losses.  Instead, all that needs to be considered is whether the price paid was greater than the market value of the product or service at issue, and, if so, by how much. By awarding the plaintiff only the difference between the price paid and the market value of the product or service at issue, the plaintiff is adequately accounting for the "benefits received."  *See* Rest. of Restitution § 151 ("the measure of recovery for the *benefit received* … is the value of the property at the time of its improper acquisition, retention or disposition") (emphasis added).

This point was made abundantly clear in *Birch v. Ciria*, 205 Cal. App. 2d 1, 8, 22 Cal. Rptr. 798, 802 (1962).  There, the plaintiffs purchased property from the defendants' predecessors-in-interest in 1950, subject to the representation that the property contained a legal rental unit.  *Id*. at 3. In 1958, the plaintiffs learned that the unit could not, in fact, be legally rented.  *Id.*  They sued for fraud and were ultimately awarded damages of $3,900 calculated using the out-of-pocket loss method (i.e., by subtracting the market value of the property at the time of sale from the amount paid for the property).  *Id*. at 7. The defendants sought to mitigate the $3,900 damage award by the amount that the plaintiffs had earned from renting the unit between 1950 and 1958.  *Id*. at 8.  The

1    Court held that mitigation was impermissible:  "the rentals actually received by [the plaintiffs] had

2    no bearing on the measure of damages."  *Id.* at 9.

3         In reaching its holding, the *Birch* court contrasted a claim for rescission, where such

4    mitigation would be allowed.  *Birch,* 205 Cal. App. 2d at 9.  Tellingly, during the hearing on

5    Plaintiffs' class certification motion, Google's counsel relied upon California Civil Code § 1691(b),

6    cited in *Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D. 517, 530 (S.D. Cal. 2011)

7    *reconsideration denied*, 09-CV-748-JMA NLS, 2011 WL 1935967 (S.D. Cal. May 20, 2011), in

8    support of Google's contention that class members' earnings would need to be accounted for before

9    an award of restitution could issue.  Cal. Civ. Code § 1691 governs the procedure to be followed

10   when a party seeks rescission of a contract, a remedy which was sought in *Campion*, *supra,* but

11   which Plaintiffs are not seeking here.  The only remedy that Plaintiffs seek in this case is restitution

12   of their out-of-pocket losses.  As *Birch* makes clear, a set-off of amounts earned after the

13   consummation of the fraudulent transaction is not permissible when calculating out-of-pocket losses.

14   *Id.* at 9;  *see also Graf v. Sumpter*, 207 Cal. App. 2d 391, 393, 24 Cal. Rptr. 590 (1962) ("without

15   any infringement upon the "out-of-pocket" rule established by section 3343, plaintiffs are entitled to

16   the benefit of any increase in the value of the land after they became its equitable owners");  *Hayes*

17   *v. Arthur Young & Co.*, 34 F.3d 1072 (9th Cir. 1994) ("there is no obligation to offset the out-of-

18   pocket loss with any 'value received").

19       C.    *EWERT V. EBAY, INC.* DEMONSTRATES THAT OUT-OF-POCKET
20             LOSSES MAY BE RELIABLY CALCULATED IN A UCL CASE
               INVOLVING A COMMERCIAL SERVICE WITHOUT ASSESSING ANY
21             EARNINGS (OR LOSSES) THE CLASS MEMBERS MAY HAVE
               SUSTAINED.

22       *Ewert v. Ebay, Inc.*, cited by the Court with approval in its Order, demonstrates that out-of-

23   pocket losses may be reliably calculated in UCL cases involving commercial services without

24   assessing any profits or losses sustained by the class members who purchased those services.  *See*

25   2010 WL 4269259 at *11-12.

26       *Ewert* involved eBay sellers' claims that they were shortchanged by eBay, because eBay did

27   not hold auctions of their products for the promised length of time.  2010 WL 4269259 at *1.  In

28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

*Ewert*, the district court rejected the plaintiffs' first proposed method of calculating restitution, namely, valuing the auction service at zero and awarding the class members a full refund of their fees paid to eBay.  *Id.*  In holding that this method was not viable, the Court reasoned that at least some eBay sellers were able to sell their products despite the abbreviated length of the auctions, and thus those profits would need to be accounted for in assessing how much restitution should be awarded to each individual class member.  *Id.*  Implicit in this holding was *Ewert*'s determination that the market value of eBay's auction service could not be reasonably assessed at zero, because at least some eBay sellers generated profits through those auctions.[3]  *See id.* at *11 ("If plaintiffs were to seek return of the entire purchase price as restitution, then it would be necessary to determine the amount of profit, if any, realized from listings since a party seeking restitution must return the benefit that it has received.").

However, and most significantly, *Ewert* accepted the plaintiffs' other proposed method of calculating restitution – that is, calculating the class members' out-of-pocket losses by reference to the percentage of time by which their auctions had been shortened.  *Id.* at *12.  In *Ewert*, the market value of the auction service was calculated by multiplying the fee charged for that service by the amount of time promised divided by the amount of time actually provided for each auction.  *Id.*  For example, if eBay charged a fee of ten dollars and promised that an auction would last 24 hours, but instead the auction lasted only 16 hours, the market value of that auction would be calculated as $10 X 16/24 = $6.67.  The restitution award would then be calculated as follows: $10 (price paid) - $6.67 (market value) = $3.33 (restitution award).  **The earnings (or losses) that the class members may have derived from the auctions were not factored in to the calculation.**  *Id. at* *11-12.

Implicit in *Ewert*'s endorsement of the plaintiffs' second proposed method of calculating restitution was the district court's recognition that it was unnecessary to assess the class members'

---

    [3]  Plaintiffs concede that this aspect of *Ewert*'s holding could apply to their proposed full refund method, but it does not impact the viability of their Smart Pricing method of assessing restitution, discussed below.

earnings in order to estimate the market value of the auction service, and that application of the out-of-pocket loss method adequately accounted for any "benefit received" by the eBay sellers.  *See id*. at *11-12.  Put differently, that each individual eBay seller may have experienced differing amounts of profits (or losses) from each auction did not affect the calculation of the market value of the abbreviated auction service that was provided.  *Id.*  Furthermore, even eBay sellers who happened to earn more from a particular abbreviated auction than they may have earned from full length auctions would be entitled to restitution, because those sellers – like all eBay sellers – paid more than the market price for the service.  Again, by subtracting the reasonably estimated market value of the abbreviated auctions from the price paid, the method adequately accounted for the "benefits received" by the class members.  *See id*. at *11-12.

Thus, *Ewert* demonstrates the applicability of the out-of-pocket loss method of calculating restitution in UCL cases involving commercial services, such as Google's AdWords program. Furthermore, it shows that the amount of those losses can be calculated without need to assess earnings derived from the use of those services.

*Ewert* also demonstrates why the Court erred when it concluded that class members who happened to experience higher conversion rates on parked domains and error pages than they did on Google's search or content sites were not injured by Google's deception.  As long as those advertisers paid more for advertising on parked domains and error pages than the market value of such advertising, they suffered out-of-pocket losses for which they can recover restitution.  Google will be adequately compensated for any benefit received, because the value of that benefit (i.e., the market value) will be subtracted from the full price advertisers paid to Google before restitution is awarded.

Consistent with Plaintiffs' out-of-pocket loss approach, Dr. Smith has shown that RK West – like all class members – will be entitled to restitution, because the price he paid for advertising on parked domains and error pages was above the reasonably estimated market price for that advertising.  *See* Economic Expert Report of Stan Smith, ¶¶ 126-128 and Appendices IV & V;  *see also* Supplemental Economic Expert Report of Stan V. Smith, Ph.D., fn. 42 (explaining that Google

SCHUBERT JONCKHEER & KOLBE LLP

Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1  has not yet produced any data regarding RK West's advertising placed on parked domains in

2  Google's Search Network sites during the Class Period).

3      D.      GOOGLE ACKNOWLEDGES THAT SMART PRICING IS A REASONABLE
               WAY TO ESTIMATE THE MARKET VALUE OF ADVERTISING ON
4              PARTICULAR SITES IN ITS NETWORK AND THAT SMART PRICING
               REASONABLY ACCOUNTS FOR INDIVIDUAL VARIATIONS IN
5              KEYWORD AUCTIONS.

6      This Court determined that Smart Pricing was not a viable method of calculating restitution,

7  because it incorrectly concluded that Smart Pricing failed to account for benefits received by

8  AdWords customers from advertising on parked domains and error pages, and that individual

9  variations in the keyword auctions precluded employing a common method of estimating restitution.

10     As discussed above, the Court erroneously concluded that any earnings obtained by the class

11  members would have to be accounted for in assessing the amount of restitution to be awarded.

12  Furthermore, the Court manifestly failed to consider Google's admissions that Smart Pricing is a

13  reasonable way of estimating the market value of advertising on particular sites in the Google

14  Network, and accounts for much of the variation in its keyword auctions.  As explained below, had

15  the Court considered these facts and legal principles, it would necessarily have concluded that Smart

16  Pricing is a reasonable way to estimate the market value of advertising on the parked domains and

17  error pages in Google's Network during the Class Period.

18     As previously discussed, Plaintiffs' economic expert has explained that the market price of

19  advertising on parked domains and error pages would depend, not on the actual earnings of each

20  class member from advertisements placed by Google on parked domains and error pages, but rather

21  upon the aggregate expectations of advertisers at the time of the purchase regarding the value of

22  such placements.  Supp. Econ. Report of Stan V. Smith ¶ 13.   Of most relevance would be

23  expectations regarding how profitable advertising on parked domains and error pages would be.  *Id.*

24  As Dr. Smith explains (and as Google's documents amply show), those expectations were relatively

25  low, as compared to their expectations of the performance of ads on contextually relevant "search"

26  and "content" sites.  *Id.* ¶¶ 14 & 132-136 and documents cited therein.  In addition, advertisers'

27  aggregate expectations regarding how such advertising would affect their brands would influence

28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

the amounts that advertisers would be willing to pay for advertising on parked domains and error pages. *Id.* ¶ 13. Dr. Smith explains that advertisers' desire to be associated with parked domains and error pages also would have been relatively low, as compared to their desire to be associated with contextually relevant "search" and "content" sites, and, again, Google's documents provide ample support for this conclusion. *Id.* ¶ 14 & 137-139 and documents cited therein.

Plaintiffs' proposed Smart Pricing method of assessing restitution applies Google's own Smart Pricing method to reasonably estimate the market price of advertising on parked domains and error pages. Economic Expert Report of Stan Smith ¶¶ 115-124. Smart Pricing incorporates data that Google collects regarding how well advertisements have previously performed on particular AdSense properties, and then discounts advertising on properties where ads have historically underperformed. *Id.* at ¶ 115. As Plaintiffs explained in their papers submitted in support of class certification, Google did not apply Smart Pricing to most parked domains and error pages during the Class Period, and the version of Smart Pricing that it did apply was later abandoned on the ground that it did not sufficiently discount the advertising to reflect its market value. *Id.* at ¶¶ 117, 121 & 129-131. After the Class Period, Google altered its Smart Pricing method so as to more accurately reflect the actual value of the clicks. *Id.* Plaintiffs refer to this version of Smart Pricing as the "revised Smart Pricing" method, and this is this method that Plaintiffs propose employing to calculate restitution for all class members. *Id.* at ¶ 129.

Dr. Smith has shown that Smart Pricing may be applied mechanically to assess the market value of advertising on parked domains and error pages for the class as a whole, as well as its members. *Id.* at ¶¶ 119-124. Because calculation of restitution is a mechanical task that can be readily accomplished using data regularly maintained by Google, individual issues with respect to the calculation of restitution will not predominate in this case. *See Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40-41 (1st Cir. 2003) ("Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria – thus rendering unnecessary an evidentiary hearing on each claim.").

Google has itself acknowledged that Smart Pricing is a reasonable method of estimating the

market value of clicks, and in fact promotes Smart Pricing on this very basis.  Google states:

"**SmartPricing . . . aims to adjust the advertiser's bids to set them to the same levels that a rational advertiser would set them to itself if it had sufficient data about the performance of each site in which its ads show**."[4]  In other words, Smart Pricing simulates applying the aggregate, reasonable expectations of advertisers at the time of purchase regarding how profitable they would have expected advertising on particular properties to be in order to reasonably estimate the price that a hypothetical advertiser would pay for that placement.

Ironically, Google has used and continues to use its expert and Chief Economist, Dr. Hal Varian, to publicly promote Smart Pricing, on the ground that Smart Pricing ensures that the prices Google charges its AdWords customers reflect the actual value that those advertisers are likely to obtain from each advertising campaign.  For example, Google has an educational video on You Tube, which is directed at Google's AdWord customers, in which Dr. Varian describes Smart Pricing and states, "**Smart Pricing is a way to adjust advertiser bids to reflect the value they provide on different publisher sites**."[5]  Further, according to Dr. Varian, Google's use of Smart Pricing allows the advertiser to "…confidently bid the maximum they are willing to pay across all sites and leave it to our system to take care of the rest."[6]

---

[4] *See* Economic Expert Report of Stan Smith, fn. 42, citing GOOG 00022668.

[5] See http://www.youtube.com/watch?v=O1BaOMqcyQY accessed on April 15, 2011 (hereafter *Smart Pricing Video*).

[6] See *Smart Pricing Video*.  Dr. Varian's only mention of Smart Pricing in his declaration submitted in opposition to Plaintiffs' motion for class certification further demonstrates that Plaintiffs' Smart Pricing method is a reasonable way of estimating the market price of advertising on parked domains and error pages:

> Google's Smart Pricing feature automatically reduces maximum CPC bids for certain pages in the Google Network. If Google's data shows that a click from a Google Network page is less likely to result in a conversion, Google may reduce the maximum CPC bid for that site. For more information about this important concept, see http://adwords.google.com/support/aw/bin/answer.py?hl= en&answer=134761.

Varian Decl. fn. 2.  The webpage, http://adwords.google.com/support/aw/bin/answer.py?hl= en&answer=134761, referenced by Dr. Varian provides,

> If [Google's] data shows that a click from a Google Network page is less likely to turn into an actionable business result – such as an online sale, registration, phone call, or newsletter signup – we may reduce the bid for that site.  … **Google saves you time and hassle by**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Furthermore, Smart Pricing adequately accounts for individual variation in keyword auctions by taking into account the experiences of actual AdWords customers applying the same keywords on the same properties in the past.  As Google explains,

> We take into account many factors such as what keyword lists or concepts triggered the ad as well as the type of site on which the ad was served.  For example, let's say that you advertise digital cameras.  You ad appears on two different pages – a Google web search page for the keyword 'digital cameras' and a Google Network page about digital cameras.  If Google determines that your ads are not likely to perform as well on the Google network page as on Google web search, the AdWords system may reduce the maximum CPC bid for that site.

http://adwords.google.com/support/aw/bin/answer.py?hl= en&answer=134761.

In sum, the Smart Pricing method provides a reasonable approximation of the amount of restitution that is owed.  Plaintiffs need not show more.  *See, e.g., Marsu, B.V. v. Walt Disney Co.,* 185 F.3d 932, 938-39 (9th Cir.1999) ("The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation."); *see also Ewert*, 2010 WL 4269259 at *10 ("Though these estimates may not perfectly capture the exact delay time for each individual listing, plaintiffs have shown that there is sufficient data to reasonably estimate damages without resorting to individualized proof"), citing *Story Parchment Co. v. Paterson Parchment Paper Co*., 282 U.S. 555, 564-65, 51 S.Ct. 248 (1931) (juries should be permitted to form a "reasonable and probable estimate" of damages when the precise amount of damages is uncertain); *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 688, 66 S. Ct. 1187, 1193, 90 L. Ed. 1515 (1946) (where the fact of damage has been established, "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts") (internal citation omitted).

In light of the UCL's broad remedial purpose of deterring "future violations of the unfair trade practice statute and [foreclosing] retention by the violator of its ill-gotten gains," § 17203's specific mandate that restitution may be awarded, "to restore to any person in interest any money or

---

**estimating the value of clicks and adjusting bids on an ongoing basis**.  With no extra effort from you, **Google technology helps you realize consistent value across Google and the Google Network**.

(Emphasis added.)

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

property .... which *may have been acquired*" by means of the deceptive practice, courts are "authorized to order restitution without individualized proof of deception, reliance and injury if necessary to prevent the use or employment of an unfair practice." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992) (emphasis added).  Given this broad mandate, it is evident that an overly strict level of proof as to the amount of damages should not be applied so as to preclude recovery in this case.

II.     EVEN IF THIS COURT DETERMINES THAT CALCULATION OF RESTITUTION REQUIRES INDIVIDUAL INQUIRIES, CLASS CERTIFICATION SHOULD BE GRANTED

Controlling Ninth Circuit law provides that individual issues regarding the calculation of restitution in a UCL case do not, by themselves, warrant denial of certification.  *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("In this circuit, … damage calculations alone cannot defeat certification.").  The only exception to this rule arises in cases where "the liability issues are so closely linked to the damage issues that severability is not practicable."  6A Fed. Proc., L. Ed. § 12:223[7]  Here, there is no doubt that liability can be proven on a common basis, as this Court acknowledges in its Order.  *See* Order at 20:6-9 ("[A] central inquiry in this case is 'whether Google's alleged omissions were misleading to a reasonable AdWords customer.'  This question is common to all members of the putative class and, when answered, will be dispositive of the issue of liability.").  Therefore, the general rule that individual issues regarding calculation of damages do not preclude certification applies to this case.[8]

_____

[7] *See also* 1 McLaughlin on Class Actions § 4:19 (8th ed.) ("The overwhelming majority of cases addressing the effect of variations in the amount of damages recoverable by class members on the certification analysis have concluded that if there is a sufficient nucleus of common questions concerning liability, the fact that damages will need to be calculated on an individual basis does not defeat typicality or otherwise bar class certification."); issues."); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977) ("it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate"); *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 796, 798 (10th Cir.1970) ("where the question of basic liability can be established readily by common issues ... [t]he fact that there may have to be individual examinations on the issue of damages has never been held, however, a bar to class actions").

[8] The two district court cases cited by the Court in support of its holding to the contrary – *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) and *In re Flash Memory Antitrust Litig.*, No. C07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) – both involved individual issues

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

In its Order, the Court justified its denial of certification on the ground that individual issues arose with respect to both "entitlement to restitution" and the amount of restitution to be awarded. In so holding, the Court improperly conflated the concept of injury under the UCL with the question of whether each class member will ultimately be entitled to an award of restitution. *See* Order at 22:9-14. As explained below, these are separate concepts. Moreover, the question of whether particular class members will ultimately be entitled to restitution is irrelevant to the class certification issue. *See Messner v. Northshore Univ. HealthSystem,* No. 10-2514 (7th Cir. Jan. 13, 2012) (Slip op.) at pp. 37-38.

In *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011), published after the parties submitted their briefs regarding class certification in this case, the Ninth Circuit decisively held that, if liability is found, all class members will have been harmed within the meaning of the UCL and, moreover, that those class members will have a right to monetary relief:

> [California's UCL], as already noted, keys on the wrongdoing of Appellees and is designed to protect the public (including the proposed class members). *Tobacco II,* 46 Cal.4th at 312, 207 P.3d at 30, 93 Cal.Rptr.3d at 570. In other words, this is not a case, as was possible under California's UCL before it was amended, where the representative plaintiff need not even show any connection to a defendant's conduct; it is plainly a case where Appellants' claim is that they came, saw, were conquered by stealth, and were relieved of their money. Basically, **Appellees' real objection is that state law gives a right to "monetary relief to a citizen suing under it" (restitution) without a more particularized proof of injury and causation.**[FN]
>
> [FN] **One might even say that, in effect, California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury; restitution is the remedy.**

655 F.3d at 1021 & fn. 13 (emphasis added).

As Plaintiffs showed in their papers filed in support of their class certification motion, Google uniformly failed to inform class members that, regardless of whether they chose to advertise

---

with respect to both liability and damages. In *Mazur,* the district court denied certification of the plaintiffs' claims upon numerous grounds: the class definition was inadequate; the class representatives were atypical; the class representatives were inadequate; and plaintiffs had failed to show that common issues predominated. *Mazur,* 257 F.R.D. at 567-72. Of most significance with respect to predominance, the Court found that *both liability and damages* would need to be determined on an individual basis. *Id.* at 570. Similarly, in *Flash Memory,* the Court found that individual issues arose with respect to both liability (whether the plaintiffs had suffered an antitrust injury) and damages. *Flash Memory,* 2010 WL 2332081 at *8-13.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

on "Search" or "Content" sites or both, Google would place their ads on parked domains and error

pages; and all class members were charged for ads on parked domains and error pages.  *See*

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class Certification, pp.

5-11.  In other words, all class members were "relieved of their money" and their losses are "fairly

traceable" to Google's actions.  *See Stearns*, 655 F.3d  at 1021.  Thus, in line with *Stearns*' holding,

if this Court ultimately determines that a reasonable consumer would be likely to be misled by

Google's omissions, the class members will have been injured within the meaning of the UCL and

will have a right to seek restitution.  *See id.* at 1021 & fn. 13.  The only remaining question will be

how much each class member will ultimately be awarded in restitution.

The distinction between the concept of injury under the UCL and the question of whether

each class member will ultimately be entitled to an award of restitution matters.  Last week, in an

antitrust case involving the merger of two hospitals. *Messner v. Northshore Univ. HealthSystem,* No.

10-2514 (7th Cir. Jan. 13, 2012) (Slip op.), the Seventh Circuit explained why.

The defendants in *Messner* argued that the class could not be certified, because some

individuals in the proposed class could not have been harmed by post-merger price increases,

because they had already reached their health plans' maximum limits or had contracts that protected

against price increases.  *Messner* at p. 40.  In considering this argument, the Court distinguished

between putative class members who "were not harmed" (i.e., were not entitled to a specific award

of restitution) and those who "could not have been harmed" (i.e., were not entitled to seek an award

of restitution).  *Id.* at pp. 41-42.  It explained:

> [I]f a proposed class consists largely (or entirely, for that matter) of members who are
> ultimately shown to have suffered no harm, that may not mean that the class was improperly
> certified but only that the class failed to meet its burden of proof on the merits. *See
> Schleicher*, 618 F.3d at 686 ("Rule 23 allows certification of classes that are fated to lose as
> well as classes that are sure to win").  If, however, a class is defined so broadly as to include
> a great number of members who for some reason could not have been harmed by the
> defendant's allegedly unlawful conduct, the class is defined too broadly to permit
> certification.

*Id.* at 40-41.

In its Order, this Court referenced *Mazur v. eBay* in support of the proposition that class

certification may be denied where the class includes "non-harmed members."  Order at 22:9-14.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

*Mazur* concerned claims made by purchasers of products through an online auction service that the defendants deceptively advertised as "live."  257 F.R.D. at 564-65.  Instead, plaintiffs alleged, the auctions included "shill" floor bidders who artificially increased perceived demand for the products, and consequently artificially inflated their prices.  *Id*. at 565.  The class, defined as "all persons who won auctions managed by the Seller Defendants and operated through eBay Live Auctions during the class period" was deemed overly broad, because it included members who necessarily could not have been harmed.  257 F.R.D. at 567.  The Court explained:  "[i]f there were no floor bids for a particular auction item, then the winner of that item would not be harmed because of an inflated price.  An auction could be won by either a bid from a single eBay bidder or by bids between only two eBay bidders."  *Id*.  Thus, the proposed class included persons who were *necessarily unaffected* by the alleged wrongdoing.  Put differently, participants in auctions lacking any shill bidders could not have been harmed by defendants' misrepresentations that the auctions were "live," because the auctions in which they participated were, in fact, live.

Here, in contrast, the proposed class is strictly defined so as to exclude any AdWords customers who were necessarily unharmed by Google's alleged omissions:  instead, the class includes only those Adwords customers who were charged for clicks on ads placed on parked domains and error pages.  All class members were "relieved of their money" and their losses are "fairly traceable" to Google's actions.  *See Stearns*, 655 F.3d at 1021 & fn. 13.  Thus, if Google's alleged omission is deemed "likely to mislead" a reasonable AdWords customer, all class members will have been injured within the meaning of the UCL and will have the right to seek restitution.  *See* Order at 15:16-22; *see also Stearns*, 655 F.3d at 1020-21.[9]  At that point, the only question that will remain to be resolved is how much restitution should be awarded.

Furthermore, *Messner* makes clear that, even if application of Plaintiffs' proposed Smart Pricing methodology ultimately shows that class members are entitled to differing amounts of restitution – and that some are not entitled to any restitution at all – certification would still be

---

[9] Moreover, as *Messner* instructs, any potential overbreadth issues could be resolved by "refining the class definition, rather than flatly denying certification."  *Messner* at p. 41.

warranted.  In *Messner*, the defendants argued that, because the proposed class included many individuals who were not overcharged as a result of Northshore's exercise of market power, plaintiffs could not satisfy Rule 23(b)(3)'s predominance requirement. *Id.* at pp. 35-36. The Seventh Circuit rejected this argument, noting that whether an individual can prove damages, while relevant to the merits of a case, is "generally irrelevant to the district court's decision on class certification." *Id.* at p. 37. It explained:

> A class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability does not preclude class certification . . . .

*Id.* at p. 38 (internal citation omitted); *see also O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 320 (C.D. Cal. 1998) ("Plaintiffs need not prove that class members have been injured for purposes of defining the Class").

Because the only individual issues in this case relate to the calculation of restitution, class certification under Fed. Rule Civ. Proc. 23(b)(3) should be granted.

III.   **IF THIS COURT ULTIMATELY DETERMINES THAT CERTIFICATION UNDER RULE 23(B)(3) SHOULD BE DENIED, CERTIFICATION UNDER RULE 23(C)(4) SHOULD BE GRANTED**

Furthermore, even if this Court were to find that individual issues regarding the calculation of restitution precluded certification under Rule 23(b)(3), the Court would still be authorized under Rule 23(c)(4) to certify and maintain the class action with respect to the particular issues concerning Google's liability for violating the UCL.  *See Smilow*, 323 F.3d at 41; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Rule 23(c)(4)(A) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4)(A).  This provision is based on the rationale that "class certification on common issues should not be lost just because vital issues remain individual."  *In re Copley Pharm., Inc.*, 158 F.R.D. 485, 491 (D. Wyo. 1994) (*citing* Wright & Miller, *Federal Practice and Procedure:* Civil § 1790 (1986)).  For particular issues to be certified for class treatment pursuant to Rule 23(c)(4), the requirements of Rules 23(a) and (b) must be satisfied only with respect to those isolated issues.  *Charron v. Pinnacle Group N.Y. LLC*, 269

SCHUBERT JONCKHEER & KOLBE LLP

Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

F.R.D. 221, 239 (S.D.N.Y. 2010) (certifying a Rule 23(b)(3) class, limited to certain common liability issues pursuant to Rule 23(c)(4)).[10]  As Judge Weinstein noted in *Simon v. Philip Morris, Inc.*, certification under Rule 23(c)(4) is not only permissible, but preferred in appropriate cases:

> [T]he language and spirit of the Federal Rules of Civil Procedure not only permit trial judges to sever issues for trial, they encourage them to employ the procedure where it would facilitate Rule 23's purpose of "achieving economies of time, effort, and expense, and promot[ing] uniformity of decision as to persons similarly situated" as well as Rule 1's overarching goal of ensuring a fair and efficient remedy for every wrong.

*Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 29 (E.D.N.Y. 2001).

In determining the "appropriateness" of certifying a class action as to particular issues, courts have focused on whether the individualized issues that prevent the certification of the entire action "are confined to damages, or also affect liability."  *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 250 (C.D. Cal. 2006) (citing illustrative cases and finding that because "individualized questions are essential to [determining] liability," certifying a class would not be appropriate in the Sepulveda action under Rule 23(c)(4)(A)).[11]  When individualized issues are confined to damages, as is the case here, courts have used Rule 23(c)(4)(A) to certify a class for the purpose of resolving common questions pertaining to the defendants' liability.  *See, e.g.*, *Charron*, 269 F.R.D. at 239; *In re Copley Pharm., Inc.*, 158 F.R.D. at 491; *see also Campion*, 206 F.R.D. at 677  (certifying common liability issues under Rule 23(c)(4)(A), even though causation and damage issues would need to be determined by individual trials); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) (holding that individualized issues pertaining to whether particular members of the class were entitled to relief would not bar certification of the common question of whether the defendants violated RICO).

These cases are in keeping with the Advisory Committee's Note to the 1966 amendment to

---

[10] It is unnecessary to bring a formal motion under Rule 23(c)(4)(A); a court may act on its own initiative in certifying a class as to particular issues.  *See In re Copley Pharm*, 158 F.R.D. at 491 (noting that the court will look to its authority under Rule 23(c)(4)(A) to grant class certification for particular issues, which the court may do *sua sponte*).

[11] *Aff'd in part, rev'd in part sub nom. Sepulveda v. Wal-*Mart *Stores Inc.*, 275 F. App'x 672 (9th Cir. 2008), *opinion vacated on reh'g sub nom. Sepulveda v. Wal-Mart Stores, Inc.*, 06-56090, 2011 WL 6882918 (9th Cir. Dec. 30, 2011) *and aff'd*, 06-56090, 2011 WL 6882918 (9th Cir. Dec. 30, 2011).

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   Rule 23, which added subdivision (c)(4) to the Rule.  The Advisory Committee explained that Rule

2   23(c)(4)(A) would be particularly appropriate where the class action would adjudicate common

3   issues of liability, leaving only the amount of individual damages to be later determined:

> This provision recognizes that an action may be maintained as a class action as to particular issues only. For example, in a fraud or similar case the action may retain its "class" character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims.

7   Fed. R. Civ. P. 23 Advisory Committee's Note.

8       This Court has properly determined that Google's liability for violations of the UCL does not

9   implicate individualized questions pertaining to deception, reliance, and injury.  *See* Order at 15

10  (*citing In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009)).  As in *Carnegie v. Household Int'l*, the

11  Court has determined that the only issues that will require individualized proof are whether

12  particular class members are entitled to restitution and the specific amount they are owed.  *See id.* at

13  22-24.  While Plaintiffs believe that the Court's conclusion rests on a manifest failure to consider

14  Plaintiffs' Smart Pricing methodology, controlling Ninth Circuit authority holding that under the

15  circumstances presented here, all of the class members are "entitled to" restitution, and dispositive

16  legal arguments regarding the measurement of restitution, should the Court not reconsider its denial

17  of class certification for the entire action, Plaintiffs respectfully request that the Court use the

18  flexibility provided by Rule 23(c)(4)(A) to certify the class on the particular common issues

19  concerning Google's liability.  Applying Rule 23(c)(4) would ensure, as it was intended to do, that a

20  potential wrongdoer does not escape a finding of liability based on the purported complexity of the

21  class members' damages.

22      Additionally, resolving Google's liability for violations of the UCL in a class action would

23  be superior to alternative methods of adjudication, both for putative class members and the Court.

24  *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1070 (N.D. Cal.

25  2007) ("The question of whether partial certification is appropriate under Rule 23(c)(4)(A) is closely

26  linked to the question of whether a class action is superior to other available methods for the fair and

27  efficient adjudication of the controversy.").  First, because Google purposely concealed any record

28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1  of the parked domains and error pages upon which AdWords customers' ads were placed, the vast

2  majority of class members would never be aware of Google's potential liability to them unless a

3  class is certified and notice is disseminated, and as a result would be precluded from bringing an

4  individual claim for relief.  Second, even if some class members somehow became aware of

5  Google's practices, the cost of bringing individual actions would be prohibitively high in relation to

6  the amount of expected recovery, and the realistic alternative to a class action would be no action at

7  all.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998).  Third, even if class

8  members could afford to bring separate lawsuits, this would unduly burden the courts.  Certifying a

9  class to resolve Google's liability under the UCL would serve the interest of judicial economy and

10  efficiency by having these issues determined in one action, rather than having repetitious and

11  wasteful presentations of proof by individuals in successive cases.[12]  *See Cent. Wesleyan Coll. v.

12  W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (holding that maintenance of a class to resolve

13  particular common issues satisfied superiority requirement of Rule 23).

14      In sum, because a class action narrowed to determining Google's liability for violations of

15  the UCL would not implicate any individual questions, and because a class action is a superior

16  method than any realistic alternative for resolving Google's liability under the UCL, to the extent

17  that a class is not certified as to the entire action, this Court should certify a class as to the particular

18  issues concerning Google's liability, pursuant to Rule 23(c)(4)(A).

19  //

20  //

21  //

22

23

24

---

25      [12] Judge Posner noted in *Carnegie* that the class-wide resolution of the defendant's liability
    for violations of RICO may result in a global settlement that would obviate the need for individual
26  class members to prove their entitlement to damages.  376 F.3d 656.  Similarly, if Google is found at
    trial to have violated the UCL, that class-wide finding of liability might result in a settlement that
27  would provide relief to the class without having to burden the court with individual determinations
    as to restitution.

28

IV.     CONCLUSION

For the reasons set forth above, this Court should grant Plaintiffs' motion for class certification pursuant to Rule 23(b)(3) or (c)(4) .

Dated:  January 19, 2012

SCHUBERT JONCKHEER & KOLBE LLP

By_____/s/_____
            MIRANDA P. KOLBE
ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
Three Embarcadero Center, Suite 1650
San Francisco, CA  94111
Telephone:  (415) 788-4220
Facsimile:  (415) 788-0161
*Lead Counsel for Plaintiffs*

ROBERT FOOTE
MATTHEW J. HERMAN
CRAIG MIELKE
FOOTE, MEYERS, MIELKE AND FLOWERS, LLC.
28 North First St., Suite 2
Geneva, IL 60134
Telephone: (630) 232-6333
Fax: (630) 845-8982

KATHLEEN C. CHAVEZ
CHAVEZ LAW FIRM P.C.
28 North First St., Suite 2
Geneva, IL 60134
Telephone: (630) 232-4480
Fax: (630) 845-8982

PETER A. LAGORIO
LAW OFFICE OF PETER A. LAGORIO
63 Atlantic Avenue
Boston, MA 02110
Telephone: (617) 367-4200
Facsimile: (617) 227-3384

TERRY GROSS
ADAM C. BELSKY
MONIQUE ALONSO
GROSS BELSKY ALONSO LLP
180 Montgomery Street, Suite 2200
San Francisco, California 94104
Telephone: (415) 544-0200

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1

Facsimile:   (415) 544-0201

2

3     KIMBERLY A. KRALOWEC
      THE KRALOWEC LAW GROUP
4     188 The Embarcadero, Suite 800
      San Francisco, CA  94105
5     Telephone: (415)_546-6800
      Facsimile: (415) 546-6801

6     BRIAN S. KABATECK
      KABATECK BROWN KELLNER LLP
7     644 South Figueroa Street
      Los Angeles, CA 90017
8     Telephone: (213) 217-5000
      Facsimile: (213) 217-5010

9

10    R. ALEXANDER SAVERI
      CADIO ZIRPOLI
11    SAVERI & SAVERI, INC.
      706 Sansome Street
12    San Francisco, CA 94111-5619
      Telephone: (415) 217-6810
13    Facsimile:  (415) 217-6813

14    PETER L. CURRIE
      THE LAW FIRM OF PETER L. CURRIE, P.C.
15    536 Wing Lane
      St. Charles, IL 60174
16    Telephone: (630) 862-1130
      Fax: (630) 845-8982

17    *Counsel for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220