PAGES 1 - 11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE

BALCH ENTERPRISES, INC., )
AND BALCH, LLC., )
                          )
       PLAINTIFF, )
                          )
  VS. )     NO. C 03-1783 CRB
                          )
INSURANCE COMPANY STATE OF )
PENNSYLVANIA, A FOREIGN )
CORPORATION, AND DOES 1 )
THROUGH 10, )     FRIDAY, JANUARY 9, 2004
                          )     SAN FRANCISCO, CALIFORNIA
       DEFENDANTS. )
_____ )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFF          WENDELL, ROSEN, BLACK & DEAN, LLP
                    1111 BROADWAY, 24TH FLOOR
                    OAKLAND, CALIFORNIA 94607
         BY:  CHARLES M. MILLER, ESQUIRE

FOR DEFENDANT         ROPERS, MAJESKI, KOHN & BENTLEY
                    80 NORTH FIRST STREET
                    SAN JOSE, CALIFORNIA 95113
         BY:  STEPHEN C. BARBER, ESQUIRE

REPORTED BY:        JOAN MARIE COLUMBINI, CSR 5435
                   OFFICIAL COURT REPORTER

      COMPUTERIZED TRANSCRIPTION BY ECLIPSE

EXHIBIT A

Dockets.Justia.com

1      PROCEEDINGS; FRIDAY, JANUARY 9, 2004

2

3          **THE CLERK:**  CALLING CASE C 02-1783, BALCH

4    ENTERPRISES, INC. VERSUS INSURANCE COMPANY STATE OF

5    PENNSYLVANIA.

6          APPEARANCES, COUNSEL.

7          **MR. BARBER:**  GOOD MORNING, YOUR HONOR.  STEPHEN

8    BARBER FOR THE DEFENDANT.

9          **MR. MILLER:**  GOOD MORNING, YOUR HONOR.  CHARLES

10   MILLER FOR PLAINTIFF, BALCH ENTERPRISES AND BALCH, LLC.

11         **THE COURT:**  OKAY.  LET ME ASK, WHAT HAS HAPPENED TO

12   AMERICAN INTERNATIONAL GROUP?

13         **MR. MILLER:**  IF I MAY, YOUR HONOR, AIG, AMERICAN

14   INTERNATIONAL GROUP, HAS NOT BEEN SERVED IN THIS MATTER YET.

15   WE MAY NOT PROCEED AGAINST THEM.

16         **THE COURT:**  YOU ARE NOT PROCEEDING AGAINST THEM?

17         **MR. MILLER:**  NOT PRESENTLY, WE HAVEN'T.

18         **THE COURT:**  OKAY.  NOT PROCEEDING AGAINST THEM.

19   ALL RIGHT.

20         ANYBODY WANT TO ADD ANYTHING TO THIS.

21         **MR. MILLER:**  IF I MAY, YOUR HONOR?

22         **THE COURT:**  SURE.

23         **MR. MILLER:**  I THINK WE NEED TO -- COUNSEL AND I

24   WERE JUST CONFERRING JUST TO MAKE SURE THAT IT'S CLEAR.

25         PLAINTIFFS ARE NOT PROCEEDING UNDER THE GENERAL

LIABILITY PORTION OF THE POLICY, THE PORTION OF THE POLICY
THAT PROVIDES COVERAGE FOR PROPERTY DAMAGE AND BODILY INJURY.
WE ARE ONLY PROCEEDING FOR COVERAGE FOR THE DUTY TO DEFEND
UNDER THE PROFESSIONAL LIABILITY POLICY.

I THINK IT'S INSTRUCTED TO TAKE A LOOK AT THE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, AND
PARTICULARLY THEIR REPLY BRIEF, BECAUSE I THINK THE ISSUES
RAISED THERE MAY ACTUALLY RESOLVE THIS MATTER.

IN THAT PARTICULAR MOTION, THE INSURANCE COMPANY
HAS FAILED TO MEET ITS BURDEN OF PROOF HERE IN TWO REGARDS.

FIRST OF ALL, IT HAS FAILED TO PROVE FACTUALLY THAT
THERE IS NO POSSIBLE BASIS OR POTENTIAL BASIS FOR COVERAGE
UNDER THE POLICY AS REQUIRED BY THE CALIFORNIA SUPREME COURT
IN MONTROSE.

THE ONLY THING IN THE INSURANCE COMPANY'S PAPERS IN
THEIR MOTION WITH REGARD TO THESE FACTUAL ISSUES IS THEIR
STATEMENT THAT THE PROFESSIONAL -- THAT THE PARTIES DID NOT
INTEND THAT PROFESSIONAL LIABILITY COVERAGE TO EXTEND TO THE
TYPE OF FACTS THAT ARE PRESENT HERE.

**THE COURT:** IS THERE A CASE -- IS THERE A
CALIFORNIA CASE WHICH INTERPRETS THE DESIGN PROFESSIONAL
LIABILITY RIDER CONSISTENT WITH YOUR INTERPRETATION?

**MR. MILLER:** NO, THERE ARE NO CASES ON THIS POINT.
I NOTICE THEY HAVEN'T CITED ANY CASES ON IT EITHER. SO I
PRESUME THEY'VE LOOKED, AS WE HAVE, AND HAVEN'T FOUND

1  ANYTHING.  SO WE'RE APPLYING BASIC INSURANCE CONSTRUCTION

2  PRINCIPLES.

3         **THE COURT:**  THIS WILL BE THE GROUND BREAKING CASE.

4         **MR. MILLER:**  POSSIBLY.

5         I'M NOT GOING TO SAY I'M ABSOLUTELY SURE THERE'S

6  NOTHING OUT THERE IN THE 48 CONTIGUOUS STATES OR THE 50

7  STATES.

8         IF I MAY?

9         **THE COURT:**  YES, GO AHEAD.

10        **MR. MILLER:**  WHAT THE INSURANCE COMPANY CONTENDS IS

11 THAT IN THIS PROVISION PROFESSIONAL LIABILITY POLICY WAS NOT

12 INTENDED TO COVER THIS PARTICULAR SET OF FACTS.  THEY OFFER NO

13 FACTS IN SUPPORT OF THAT, NO EVIDENCE IN SUPPORT OF THAT.  IT

14 IS MERELY A STATEMENT OF WISHFUL THINKING.

15        AND, IN FACT, IN FIREMAN'S FUND, THE CALIFORNIA

16 APPELLATE COURT DECISION THAT THEY CITE IN THEIR PAPERS, A

17 SIMILAR ARGUMENT WAS MADE AND REJECTED BY THE COURT THERE

18 BECAUSE, AGAIN, THERE WERE NO FACTS OR EVIDENCE OFFERED TO

19 SUPPORT THAT INTENT.

20        YOU KNOW, IT'S INTERESTING BECAUSE IN THEIR

21 ARGUMENT ON THIS FACTUAL ISSUE THE INSURANCE COMPANY STATES

22 THERE IS NO INTENT TO HAVE THIS PARTICULAR KIND OF POLICY, THE

23 PROFESSIONAL LIABILITY POLICY, COVER THIS TYPE OF OCCURRENCE.

24        IT'S NOT AN OCCURRENCE POLICY.  THIS IS A DAMAGES

25 POLICY BASED ON A NEGLIGENT ERROR, OMISSION OF A PROFESSIONAL.

1  IT IS NOT AN OCCURRENCE POLICY.

2          SO THEY'VE GOT THE TERMS OF THE POLICY WRONG, AND

3  THEY DO NOT HAVE ANY FACTUAL SUPPORT FOR THEIR POSITION.  THEY

4  HAVE, THEREFORE, FAILED TO MEET THE MONTROSE BURDEN TO SHOW

5  THERE IS NO POTENTIAL FOR COVERAGE UNDER THE POLICY.

6          THEN THE SECOND ISSUE IS WHETHER THEY HAVE

7  ESTABLISHED ANY LEGAL BASIS FOR THE COURT TO DETERMINE AS A

8  MATTER OF LAW THAT THERE IS NO COVERAGE.  IN THIS CASE THEY

9  CITE ONE DECISION, THE FIREMAN'S FUND DECISION, THE CALIFORNIA

10 APPELLATE COURT DECISION.  IN THAT CASE, ACTUALLY, THE COURT

11 FOUND COVERAGE FOR THE ADDITIONAL INSURED, SO IT IS SOMEWHAT

12 ANOMALOUS.  THEY CITE THAT IN SUPPORT OF THEIR POSITION WHERE

13 THEY WANT THE OPPOSITE TO PREVAIL.

14         WHAT THEY CONTEND IS THAT THERE LACKS HERE THAT

15 MINIMAL RELATIONSHIP BETWEEN INSURED AND THE ADDITIONAL

16 INSURED AND THE INCIDENT THAT IS REQUIRED UNDER CALIFORNIA

17 LAW, ONLY THAT MINIMAL CONNECTION.  THEY MERELY STATE IT

18 DOESN'T EXIST.  THAT'S ALL THEY STATE.  IT'S CONCLUSIONARY.

19         IT IGNORES THE FACTS THAT THE ONLY REASON THAT

20 BALCH HAD TO FILE AND POST THE NOTICE WAS BECAUSE OF ITS

21 CONTRACTUAL RELATIONSHIPS IN THE LEASE FOR THE IMPROVEMENTS TO

22 THE BUILDING AND THE SUBSEQUENT LEASE BETWEEN THE LESSEE AND

23 THE CONTRACTOR FOR THE CONSTRUCTION OF THOSE IMPROVEMENTS.  IN

24 OTHER WORDS, IT IS ALL TIED UP TOGETHER, AND THERE IS THAT

25 MINIMAL CAUSAL CONNECTION.

1    BUT IT'S NOT EVEN NECESSARY BECAUSE UNDER

2    CALIFORNIA LAW BALCH'S LIABILITY, BALCH'S COVERAGE IS NOT

3    DEPENDENT ON THE NAMED INSURED'S COVERAGE UNDER THE POLICY.

4    IT'S NOT DEPENDENT ON A VICARIOUS RELATIONSHIP.

5         UNDER CALIFORNIA LAW THIS TYPE OF ENDORSEMENT

6    PROVIDES COVERAGE FOR BALCH INDEPENDENTLY, AND, THEREFORE, IT

7    MAKES NO DIFFERENCE, AS THE INSURANCE COMPANY CONTENDS, THAT

8    THE INSURED, 360, HAD NO OBLIGATION TO POST THE NOTICE BECAUSE

9    THAT'S NOT DETERMINATIVE OF BALCH'S COVERAGE.

10        WHAT IS DETERMINATIVE IS THE LANGUAGE IN THE POLICY

11   ON THE ADDITIONAL INSURED ENDORSEMENT, WHICH, UNDER CALIFORNIA

12   LAW, IS VERY BROAD.  IT ENCOMPASSES THE KIND OF CIRCUMSTANCES

13   WE HAVE HERE.

14        **MR. BARBER:**  GOOD MORNING, YOUR HONOR.  STEPHEN

15   BARBER FOR THE INSURANCE COMPANY.

16        YOUR HONOR, BALCH IS NOT EVEN INSURED UNDER THE

17   DESIGN LIABILITY ENDORSEMENT.  IF YOU'LL LOOK AT THE -- FIRST

18   OF ALL, THE LEASE BETWEEN BALCH AND 360, IN SECTION 8 OF THE

19   LEASE IT STATES THAT 360 WILL SUPPLY INSURANCE FOR BODILY

20   INJURY, PERSONAL INJURY AND PROPERTY DAMAGE.  IT DOESN'T SAY

21   ANYTHING ABOUT PROVIDING DESIGN LIABILITY INSURANCE.  THAT'S

22   EXHIBIT B.

23        MORE IMPORTANTLY, IN EXHIBIT A TO THE STATEMENT OF

24   UNDISPUTED FACTS, THE ADDITIONAL INSURED ENDORSEMENT WHICH

25   APPLIES TO BALCH IS THE FIRST PAGE OF THAT EXHIBIT.  IT SAYS

1  THAT BALCH IS AN ADDITIONAL INSURED UNDER THE COMMERCIAL

2  GENERAL LIABILITY COVERAGE PART, AND IN THE UPPER LEFT-HAND

3  CORNER IT SAYS, FOR POLICY NUMBER GL 933-13-20 RA.

4          IF YOU TURN TO THE NEXT PAGE OF EXHIBIT A, THEN

5  YOU'LL SEE THE CERTIFICATE OF INSURANCE, WHICH ALSO STATES

6  THAT BALCH -- THE TWO BALCH ENTITIES ARE MADE AN ADDITIONAL

7  INSURED UNDER THE CGL POLICY OF THE SAME NUMBER THAT I JUST

8  GAVE YOU.

9          IF YOU TURN TO EXHIBIT E ATTACHED TO THE STATEMENT

10  OF UNDISPUTED FACTS, THERE'S A BATES STAMP NUMBER OF A

11  DOCUMENT ALMOST AT THE BOTTOM OF THE EXHIBIT, BBGS 00232,

12  THAT'S THE FIRST PAGE OF THE DESIGN LIABILITY ENDORSEMENT, OR

13  DESIGN PROFESSIONAL LIABILITY -- EXCUSE ME.  AND YOU'LL SEE

14  THE POLICY NUMBER THERE IS DIFFERENT.  IT'S A DIFFERENT

15  POLICY.  IT'S GL 267-69-87 RA.

16          BALCH IS NOT EVEN INSURED UNDER THE DESIGN

17  PROFESSIONAL LIABILITY POLICY, AND THERE WOULD BE NO REASON

18  FOR 360 TO GIVE IT THAT COVERAGE BECAUSE IT WASN'T

19  CONTRACTURALLY OBLIGATED TO, AND BALCH WASN'T DESIGNING

20  ANYTHING OR ACTING AS A CONSTRUCTION MANAGER FOR 360.

21          SO, BASICALLY, THE PLAINTIFFS ARE JUST TRYING TO

22  GET COVERAGE UNDER A POLICY UNDER WHICH THEY ARE NOT INSUREDS.

23  IF THEY'RE NOT INSUREDS, THEY CAN'T BE COVERED.

24          SO THE WHOLE CASE FAILS, ESPECIALLY SINCE THEY

25  CLAIM THAT THERE IS NO COVERAGE UNDER THE CGL POLICY WHICH

1  THEY ARE CLEARLY INSURED UNDER.

2           YOUR HONOR, ALSO, EVEN IF THEY ARE INSURED UNDER

3  THE DESIGN PROFESSIONAL LIABILITY POLICY, WHICH THEY'RE NOT,

4  THEY CAN'T MEET THE THRESHOLD REQUIREMENT, AND THAT POLICY

5  ONLY APPLIES TO DAMAGES ARISING OUT OF CONSTRUCTION MANAGEMENT

6  ACTIVITIES PERFORMED BY OTHERS PURSUANT TO A CONTRACT.

7           360 -- EXCUSE ME -- BALCH HAS ADMITTED THEY WEREN'T

8  A PARTY TO THE RIGHT 360 CONTRACT; THEY WEREN'T PERFORMING ANY

9  DUTIES AT ALL WITH RESPECT TO THE IMPROVEMENTS TO THE SHELL.

10          THE ALLEGED FAILURE TO FILE A NOTICE OF

11 NON-RESPONSIBILITY, THAT'S JUST THEIR DEFENSE.  THERE'S NO

12 CLAIM THEY DID SOMETHING WRONG THAT AFFECTED THE BUILDING, OR

13 DAMAGED IT, OR DIDN'T DESIGN IT PROPERLY, OR SUPERVISE THE

14 CONSTRUCTION, LIKE THAT, BECAUSE THEY WEREN'T DOING ANY OF

15 THOSE THINGS.

16          **THE COURT:**  OKAY.  THANK YOU.

17          **MR. BARBER:**  THANK YOU, YOUR HONOR.

18          **MR. MILLER:**  YOUR HONOR, IF I MAY?

19          **THE COURT:**  SURE.

20          **MR. MILLER:**  THANK YOU.

21          I WANT TO QUOTE ONE OF THE FAMOUS LINES FROM

22 CASABLANCA.  I'M SHOCKED, ABSOLUTELY SHOCKED AT THIS ARGUMENT

23 THAT'S BEING RAISED FOR THE FIRST TIME, AND THAT IS THAT BALCH

24 IS NOT AN INSURED.

25          IN THEIR REPLY BRIEF THE INSURANCE COMPANY STATES

1   THE FACT THAT BALCH IS AN ADDITIONAL INSURED IS NOT IN DISPUTE

2   UNDER THE POLICY.  THE PROFESSIONAL LIABILITY COVERAGE IS AN

3   ENDORSEMENT TO THAT POLICY.  THIS ISSUE HAS NEVER BEEN RAISED

4   BEFORE.  NOW, A YEAR AND A HALF OR TWO YEARS INTO THE CASE FOR

5   THE FIRST TIME WE HEAR THIS ARGUMENT.  I SUGGEST THIS IS AN

6   APPROPRIATE TIME TO FINALLY APPLY THE WAIVER RULE.

7           THE COURT:  WELL, WAIT.  WAIT, WAIT.  I DON'T KNOW

8   WHETHER IT IS OR NOT.

9           OBVIOUSLY, AN ARGUMENT, WHICH IS THEY ARE NOT EVEN

10  INSURED UNDER THIS POLICY, IS AN IMPORTANT ARGUMENT, OF SOME

11  SIGNIFICANCE.  IS IT TOO LATE FOR THEM TO SAY IT?  I DON'T

12  KNOW THAT IT IS OR ISN'T, BUT THIS IS HITTING YOU FOR THE

13  FIRST TIME.  I THINK THAT'S FAIR TO SAY.

14          MR. BARBER:  I DON'T THINK IT IS HITTING HIM THE

15  FIRST TIME.  IT'S IN THE STATEMENT OF UNDISPUTED FACTS.  THESE

16  DOCUMENTS ARE ATTACHED AS EXHIBIT.  IT'S IN THE FACTS.  THERE

17  ARE TWO DIFFERENT POLICY NUMBERS.

18          THE COURT:  WELL --

19          MR. BARBER:  IN THE ATTACHMENTS OF MR. WRIGHT'S

20  OFFICE --

21          THE COURT:  I THINK IN FAIRNESS TO MR. MILLER, I

22  WOULD ALLOW HIM TO SUPPLEMENT.  IF YOU WANT TO ADDRESS IT IN A

23  BRIEF, THAT ISSUE, I WILL ALLOW YOU TO DO IT.  IS THAT YOUR

24  DESIRE?

25          MR. MILLER:  WELL, IF THE COURT IS GOING TO

1    ENTERTAIN THE ISSUE, I WOULD CERTAINLY --

2             **THE COURT:**  YES, I'M ENTERTAINING THE ISSUE.

3             **MR. MILLER:**  OKAY.

4             **THE COURT:**  I THINK IT'S IMPORTANT.  I DON'T WANT

5    IT TO GO UP AND NEVER HAD A -- OR RULE ON IT, NEVER HAVING

6    ENTERTAINED IT.  I'LL ENTERTAIN IT.

7             YOU SAY, LOOK, THEY'RE WRONG OR RIGHT ABOUT THAT,

8    BUT THIS IS AN APPROPRIATE TIME TO FIND A WAIVER, AND HERE ARE

9    THE THREE ARGUMENTS WHY, SURE, I'LL CONSIDER IT.  I DON'T WANT

10   TO CUT ANYBODY OFF ON THIS THING.  IT SEEMS UNFAIR TO DO THAT.

11            WELL, WHAT'S FAIR AND WHAT ISN'T FAIR, WHO KNOWS?

12   BUT I LIKE THE IDEA OF HAVING A FAIRLY FULL EXPOSITION OF

13   POSITIONS IN THE DISTRICT COURT SO THAT WHEN IT GOES UP TO AN

14   APPELLATE COURT, IF THAT'S WHERE IT GOES, THEY AT LEAST HAVE

15   THE ADVANTAGE OF SEEING THE RANGE OF ISSUES.  AND, ALSO, IT

16   INFORMS THE BUSINESS JUDGMENTS OF HOW TO HANDLE LITIGATION.

17            DO YOU WANT TO SUPPLEMENT?  I WILL ALLOW YOU TO

18   FILE A SUPPLEMENTAL BRIEF.

19            **MR. MILLER:**  YES, YOUR HONOR, I DO.

20            **THE COURT:**  HOW SOON COULD YOU GET THAT ON FILE?

21            **MR. MILLER:**  THREE OR FOUR WEEKS, I GUESS.

22            ONE THING I'M CONCERNED ABOUT HERE, THIS MAY RAISE

23   FACTUAL ISSUES AS TO THE SCOPE OF THE COVERAGE.  I DON'T KNOW

24   IF IT REQUIRES DISCOVERY OR NOT.

25            **THE COURT:**  I DON'T KNOW EITHER.  YOU ARE GOING TO

1    WRITE YOUR BRIEF.

2              **MR. MILLER:**  OKAY.

3              **THE COURT:**  AND YOU ARE GOING TO SAY WHATEVER YOU

4    WANT TO SAY IN YOUR BRIEF, AND THEN THEY'RE GOING TO SAY

5    SOMETHING, TOO, AND I'LL EITHER ORDER A FURTHER HEARING ON IT,

6    OR I'LL TAKE IT UNDER SUBMISSION.

7              **MR. MILLER:**  OKAY.  FAIR ENOUGH.

8              **THE COURT:**  SO LET'S PICK SOME DAYS.  YOU NEED A

9    MONTH?

10             **MR. MILLER:**  YES.

11             **THE COURT:**  WHY DON'T YOU GET YOUR BRIEF FILED BY

12   FEBRUARY 6TH?

13             **MR. MILLER:**  OKAY.

14             **THE COURT:**  ANY RESPONSE WOULD BE FILED BY FEBRUARY

15   20TH.  AND IT WILL BE DEEMED SUBMITTED AT THAT POINT.

16   HOWEVER, I WILL RESERVE THE RIGHT TO INVITE YOU PEOPLE IN TO

17   ARGUE IT IF I NEED TO.

18             **MR. MILLER:**  OKAY.  YOU RESERVE ORAL ARGUMENT?

19             **THE COURT:**  YES.  OKAY.

20             **MR. MILLER:**  THANK YOU, YOUR HONOR.

21             **THE COURT:**  THANKS A LOT.

22             **MR. BARBER:**  THANK YOU, YOUR HONOR.

23             (PROCEEDINGS ADJOURNED.)

24

25

<u>CERTIFICATE OF REPORTER</u>

I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE
UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY
CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 03-1783 CRB, BALCH
ENTERPRISES, INC. V. INSURANCE COMPANY STATE OF PENNSYLVANIA,
ET AL, PAGES NUMBERED 1 THROUGH 11, WERE REPORTED BY ME, A
CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED
UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A
FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AT THE TIME
OF FILING.

**THE INTEGRITY OF THE REPORTER'S CERTIFICATION OF
SAID TRANSCRIPT MAY BE VOID UPON REMOVAL FROM THE COURT FILE.**

_____

JOAN MARIE COLUMBINI, CSR 5435