Levitte v. Google Inc. Doc. 570

# NORTHERN CALIFORNIA DRYWALL/LATHING MASTER AGREEMENT

between

## NORTHERN CALIFORNIA DRYWALL CONTRACTORS ASSOCIATION

and

## CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD

of the

## UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA AFL-CIO

AUGUST 1, 1999 to JULY 31, 2004

Dockets.Justia.com

(9) The Association shall each month furnish the Union with a current roster of contractor members. Each Contractor shall notify the California Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc. in writing at least thirty (30) days prior to the cancellation or termination of any Bond or other security established pursuant to this Article.

(10) Union representatives shall be permitted at all times upon any place or location where any work covered by this Agreement is being, has been, or will be performed.

Where there are visitation restrictions imposed at the job site by other than the individual employer, the individual employer will use his best efforts to provide access to the site by the Union representatives.

(11) In order to avoid unfair competition and to prevent the loss of accumulated worker fringe benefits, the Union agrees that each worker must be dispatched for wages, fringe benefits, and trust fund contributions under the terms and conditions of this Agreement to which his local union is signatory. The individual employer shall pay the appropriate wages, fringe benefits, and trust fund contributions as required by such agreements, and each employer shall execute appropriate agreements with such trusts if necessary.

## ARTICLE 9
## GRIEVANCE PROCEDURE

(1) Subject to the exceptions provided for in Article 6 (Strikes, Lockouts) of this Agreement, any dispute, grievance or question concerning the application or interpretation of this Agreement shall be determined in accordance with the provisions of this Article. Disputes concerning the proper payment of trust fund contributions, the amount of trust fund contributions due and owing, the proper payment of wages or any other alleged violation of the Agreement may, at the option of any party hereto, be submitted to the provisions of this Article, provided however, that the Trustees of the respective trust funds referred to in this Agreement shall not be required as a condition of collecting all amounts due such trust funds to submit their claims through the provisions of this Article.

(2) There is hereby established a Joint Adjustment Board for the 46 Northern California Counties.

(a) THIS BOARD shall process all grievances or claims in the 46 Northern California Counties located above the northerly boundary of San Luis Obispo County, the northerly boundary of Kern County, and the westerly boundaries of Inyo and Mono Counties. THE BOARD shall be known as the "Northern California Joint Adjustment Board for the Drywall Industry."

(b) THE BOARD shall be composed of two (2) representatives and their alternates selected by the Association and two (2) representatives and their alternates selected by the Union.

In addition to the employer and employee members, the Board shall have as a member an individual who shall be a permanent neutral arbitrator who shall sit as the chairman of the panel and shall attend meetings of the panel as scheduled. The permanent neutral arbitrator, who shall have no business connection with either party to this Agreement, shall be authorized to participate in the proceedings and if the Joint Adjustment Board is unable to reach a majority vote, the arbitrator shall render the deciding vote. The decision of the Joint Adjustment Board and/or the decision of the arbitrator, as the case may be, shall be final and binding upon all parties to this Agreement and shall have the effect of a legal judgment.

(c) A quorum of the Board shall consist of one (1) employer member and one (1) Union member along with the arbitrator.

All decisions of the Joint Adjustment Board shall be by majority vote, with each party having equal voice and vote.

(d) Any individual employer against whom a grievance or claim has been filed may, upon demand, require that the arbitrator make the decision in the case rather than the Joint Adjustment Board. In the event that any individual employer fails to appear or refuses to participate in the grievance proceedings, the grievance or claim against said individual employer shall be processed and upon submission by the charging party or parties, the Joint Adjustment Board or the arbitrator, as the case may be, shall make a decision concerning said grievance or claim. No decision concerning an individual contractor who fails or refuses to appear shall be made unless the neutral arbitrator issues said decision.

(3) The Joint Adjustment Board and the arbitrator, as the case may be, shall have the power to adjust grievances and disputes, make awards of back pay, levy finds for violations of the Agreement, and assess liquidated damages in accordance with the provisions of this Agreement, which shall be final and binding upon all parties to this Agreement. The Joint Adjustment Board may, as part of a remedy in any case before it, order an increase of the surety requirements specified in this Agreement up to a maximum of $30,000.00, or an amount equivalent to the average of the three (3) highest contributing months within the previous twelve (12) month period, whichever is greater, and may specify the effective date of such surety requirements.

The parties recognize and acknowledge that compliance with the requirements to pay wages, fringe benefits, and to abide by the provisions of this Agreement are essential for maintenance of this Agreement, the health and safety of workers covered thereunder, the fairness to all parties (including the Union, employees, and employers in the industry) and that it would be extremely difficult if not impracticable to fix the actual expense and damage to the workers, the Union and the industry, for any failure to comply with any of the provisions of this Agreement. Therefore the Joint Adjustment Board shall have the right to assess liquidated damages as deemed necessary to maintain the integrity of the Agreement. Any liquidated damages assessed by the Joint Adjustment Board or the arbitrator shall become due and payable to the Joint Adjustment Board as liquidated damages and not as a penalty. Neither the Joint Adjustment Board nor the impartial arbitrator shall have the authority to modify, vary, change, add to or remove any of the terms and conditions of this Agreement.

(4) In addition to any rules and procedures which the Board may adopt, the Joint Adjustment Board and the permanent neutral arbitrator shall be governed by the following provisions:

(a) All proceedings shall be done in an expedited manner and no briefs, transcripts, or written opinions shall be required unless specifically requested by any parties to the grievance or unless ordered by the permanent neutral arbitrator. The parties specifically agree that the permanent neutral arbitrator shall not be required to render an expanded opinion in any case unless requested prior to the commencement of the proceedings.

(b) The Board shall meet within forty-five (45) days on any item referred to it and shall establish regular monthly meetings for the purposes of hearing all grievances and claims filed therein. The Board shall provide notice of the time and place of hearings to all persons having business before the board and shall establish a regular meeting place and mailing address for all matters. All proceedings of the Northern California Joint Adjustment Board shall be held in the City of Oakland, County of Alameda unless mutually agreed to move to another location.

(c) The expenses of the Joint Adjustment Board and the permanent neutral arbitrator, including all costs of court reporter or otherwise, shall be paid by the Northern Division of the California Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc., provided that all assessments or liquidated damages which are not awarded to individual employees or to the Trust Funds shall be retained by the Joint Adjustment Board to defray expenses. Any surplus funds shall be for the sole and exclusive use by the Training Trust Fund.

(d) Any grievance or dispute to be submitted shall be presented to the Joint Adjustment Board within thirty (30) days after the complaining party has actual knowledge of the facts giving rise to the dispute or, when further discovery is necessary, has made final determination of the facts giving rise to the dispute.

Any employee who claims to have been improperly paid, discharged, or disciplined without just cause shall present his or her grievance to the Union within seven (7) calendar days following the event, and the Union must file its grievance, if any, within five (5) working days.

Whenever possible before submission of the dispute to the Joint Adjustment Board, representatives of the Union and the individual contractor shall attempt to adjust the matter. If after twenty-four (24) hours the matter cannot be adjusted between the respective parties, either party may submit the matter to the Joint Adjustment Board which shall render a decision within the limits and subject to the provisions of this Article and applicable rules and regulations.

Repeated violators of this Agreement shall lose the rights of the twenty-four (24) hour adjustment provisions of this Article.

(e) The Joint Adjustment Board or Arbitrator may, as part of a remedy, require a contractor to submit weekly reports of workers and hours worked to the Northern Division of the California Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc.

(f) In any grievance in which the arbitrator is requested to issue an expanded opinion, the arbitrator shall not be required to render such an opinion unless the party requesting the same guarantees to pay any additional charges or expenses of such services. The decision of the Arbitrator or the Joint Adjustment Board shall be issued within thirty (30) days following completion of the proceedings.

(g) Charges and expenses incurred as the result of a special hearing or hearings on days other than the regular scheduled meeting date of the Joint Adjustment Board shall be payable by the party requesting such special hearings and shall not be the responsibility of the Northern Division of the California Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc.

(5) A decision of the Joint Adjustment Board or the decision of the permanent neutral Arbitrator shall be enforceable by petition to confirm an arbitration award filed in the Superior Court of the City and County of San Francisco for all proceedings of the Northern California Joint Adjustment Board. Alternatively such petition may be filed or tried in the United States District Court for the Northern District of California.

Any party who fails or refuses to comply with the decisions of the Joint Adjustment Board or an award of the permanent neutral Arbitrator, as the case may be, shall be responsible for attorney's fees for the filing and trial of any petition to confirm and enforce said decision or award in addition to all other remedies available through law.

(6) If any party hereto fails to comply with the decision of the Joint Adjustment Board or the permanent neutral arbitrator, the Union may withdraw employees or strike the individual employer, and such action shall not be a violation of this Agreement so long as such noncompliance continues. Said right to withdraw employees or strike shall be in addition to all other remedies available herein.

Whenever the Union has the right pursuant to the terms of this Agreement to withdraw or refuse to refer workers, such rights shall coexist with the right to proceed under any stage provided for under the provisions of this Article.

Awards involving application or enforcement of Article 2 (Subcontracting) shall not be enforced by strike action.

## ARTICLE 10
## STEWARDS

(1) A steward shall be a working journeyman employee appointed by the Union who shall, in addition to his work as a journeyman, be permitted to perform during working hours such of his Union duties as cannot be performed at other times. The Union agrees that such duties shall be performed as expeditiously as possible, and the Employer agrees that stewards shall be allowed a reasonable amount of time for the performance of such duties. The Union shall notify the individual employer of the appointment of such steward. Unless notified to the contrary, the first journeyman on the job shall act as job steward until the Union appoints a successor. In no case shall a foreman be a steward.

(2) No steward shall be discharged or laid off except for just cause. In the event of layoff or discharge of a steward, the Union shall be given notice in writing at least two (2) working days prior to the effective date of such discharge or layoff. Such notice shall contain the reasons for layoff or discharge.

(3) The steward shall be the last employee other than the foreman to be laid off for lack of work but may be transferred to another job providing the Union is given prior notice of the transfer.

## ARTICLE 11
## EXISTING AND OTHER AGREEMENTS

(1) All existing labor agreements between the Employers and the Union covering the type of work covered by this Agreement are automatically canceled and superseded by this Agreement.

(2) It is agreed that any Employer accepted for membership in the Northern California Drywall Contractors Association shall become a party to this Agreement and, after becoming a party, shall be entitled to the benefits and be subject to the obligations hereof in lieu of any individual agreements he may have with the Union at that time with respect to work covered by this Agreement.

(3) In the event the Union enters into any other agreement exclusively for the Drywall/Lathing Industry with other employers or employer associations in the 46 Northern California Counties which shall have terms more favorable

to encourage the payment of overtime to a greater extent than that which is being paid at the time a change is made in the workday and work week; provided, however, the Union will not request the Employers, parties hereto, to provide a shorter workday until the shorter workday is generally established in the building and construction industry.

(2) Notwithstanding any other provisions of this Agreement, the workday and work week shall comply with the provisions of the Carpenters 46 Northern California Counties Master Agreement.

## ARTICLE 15
## TRUST FUNDS

(1) Each individual Employer shall make hourly contributions in accordance with the terms and provisions of the Collective Bargaining Agreement and Trust Agreements. Each individual Employer shall be required to contribute and be bound by each of the below listed trust funds or plans or such other trust fund or plans as the regional area bargaining parties may require.

(a) For all work performed in the area known as the 46 Northern California Counties contributions shall be made to the Carpenters Health and Welfare Trust Fund for California, the Carpenters Pension Trust Fund for Northern California, the Northern California Carpenters Vacation and Holiday Plan, the 46 Northern California Counties Drywall/Lathing Apprenticeship Training Trust Fund, the Carpenters Annuity Trust Fund for Northern California, the Carpenters Contract Work Preservation Trust Fund, The Drywall Information Trust Fund and the California Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc.

(b) The parties hereto agree to exercise their best efforts to implement the merger and/or consolidation of the various Carpenter and Lather Trust Funds now existing consistent with applicable laws, fiduciary obligations of trustees, good accounting and actuarial practices.

Until such merger or consolidation occurs, each individual Employer shall contribute all amounts required for all employees hired to perform work covered by this Agreement to those trust funds designated by the Local Union which dispatches such employee or from which the worker should have been dispatched.

(2) (a) The individual Employer subject to this Agreement agrees to accept, assume and be bound to all of the obligations of each of the Trust Agreements, Plan or Rules governing the Trusts referred to in Section (1) of this Article and/or any amendments, modifications, or changes thereof made by the parties thereto, as are now or may hereafter be

28

mposed upon any individual employer by or pursuant to any such Trust, Trust Fund or Plan as set forth in this Agreement or any Trust Agreement referred to herein.

The individual Employer subject to this Agreement further agrees that he does irrevocably designate and appoint the employer members of said Trust Funds and Plans as his attorneys in fact for the selection, removal and substitution of Trustees or Board members as provided in the Trust Agreements or Plans and as may be hereafter provided by or pursuant to said Trust Agreements or Plans.

(b) Until such merger and/or consolidation of the Carpenters and Lathers Trust Funds occurs, each individual Employer who contributes (or is obligated to contribute) to any such Trust Fund as required herein shall be bound to such other Trusts or Plans to the same extent as he or it may be bound to the Trusts referred to in Section 1(a), 1(b), of this Article.

## ARTICLE 16
## CALIFORNIA DRYWALL/LATHING INDUSTRY LABOR-MANAGEMENT COOPERATION COMMITTEE, INC.

(1) Each Employer shall contribute for each hour paid for or worked by employees performing work covered by this Agreement to the California Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc., on behalf of the Northern Division of the California Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc., (hereinafter referred to as the Northern Division). Such contributing Employer agrees to be bound by all of the provisions of the Articles of Incorporation dated November 18, 1983, establishing the California Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc., and the Bylaws of the Corporation dated December 7, 1983, and amended as such may from time to time be amended or supplemented.

(2) The Northern Division shall endeavor to employ persons in the capacity of field investigators who have extensive knowledge in the scope of work covered by this Agreement. Such field investigators shall be authorized and shall be provided with special credentials authorizing them to visit and/or investigate any job site within the coverage of this Agreement and gather information from any employee, Employer, Union representative, or employer association, or representative covered by this Agreement.

The Field Investigators shall assist in the enforcement of the job registration requirements including the verification

of registered and non-registered job sites with footage and man hour estimates in connection therewith. Field Investigators of the Corporation shall also investigate complaints arising in connection with the Incentive Pay Provisions of this Agreement and report such complaints to the Corporation.

(3) The Northern Division is authorized to assist the Union and the Association in any program or programs instituted by those organizations similar to the purposes and objectives of the Corporation. Further, the Corporation shall be authorized to cooperate with and exchange information with other construction industry craft programs whose purposes and objectives are similar to those specified therein.

(4) In addition to the above specified areas of responsibility, the Northern Division Field Investigators shall record any evidence of alleged violations discovered as set forth in Section (2) of this Article. Such evidence of violation shall immediately be forwarded in writing to the appropriate parties of this Agreement. The Northern Division shall file charges with the Joint Adjustment Board of Northern California in connection with the evidence of alleged violations of the Agreement with respect to job registration requirements, reporting of hours, payment of proper wages and Trust Fund contributions, and Grievance Obligation Trust Fund requirements.

## ARTICLE 17
## AUDIT AND CONTRACT ENFORCEMENT

(1) Each individual Employer shall maintain and make available upon written request by the Northern Division of the California Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc., to auditors designated by said Corporation all records of all firms believed to be compensating Drywall employees covered by this Agreement in which he/she has a financial interest. Said auditors shall be permitted to review and copy any and all records relevant to the enforcement of the provisions of this Agreement and to enter upon the premises of such individual Employer during business hours at a reasonable time or times to examine and copy such books, records, papers, or reports of such individual Employer as may be necessary to determine whether or not the individual Employer is making full and prompt payment of all sums required by this Agreement. Said records shall include, but not necessarily be limited to, all job cost records, general check register and check stubs, bank statements and canceled checks, general

ledger, worker compensation insurance reports, financial statements, business income tax returns, employer time cards, payroll journals, individual earning records for all employees, forms W-2 and 1099 remitted to the U. S. Government, health and welfare and pension reports for all other trades, cash receipts journal, copies of all contracts, and all material invoices.

(2) In case an individual Employer audited by the Northern Division is found to have materially breached the Agreement in the amount or manner of making contributions to the Trust Funds required under this Agreement, such individual Employer shall be liable for the expense of such audit, all expenses of collection as well as reasonable attorney's fees, in addition to any other liabilities and expenses set forth under this Agreement, or the agreement and declaration of trusts establishing the fringe benefit procedures and obligations herein.

(3) In case an individual Employer fails or refuses to submit to audit or fails or refuses to confirm an audit appointment within seven (7) days following demand, the Northern Division or any of the parties hereto may file an action to compel audit entry without regard to the grievance and arbitration procedures set forth in Article 9 (Grievance Procedure) of this Agreement. Any action to secure compliance with the provisions of this Article, or to secure audit entry in order to perform such audits as may be required or requested pursuant to this Agreement shall be brought and tried in a court of competent jurisdiction located in the City and County of San Francisco, and each party to such action expressly waives any right to change venue of such action to any other county or any other place. If any individual employer refuses entry as required by this Agreement, and if an action is filed to compel audit entry, the individual Employer shall be required to pay reasonable attorney's fees and costs incurred by such failure in addition to any other relief which may be ordered by a court of competent jurisdiction.

(4) In addition the Union shall have the right to withdraw employees and refuse to dispatch workers to any individual Employer who refuses audit entry seven (7) calendar days or who refuses to make available relevant records necessary for the completion of the audit.

(5) The Northern Division shall submit evidence of any alleged violation of this Agreement to the Northern California Drywall Contractors Association and the Carpenters 46 Northern California Counties Conference Board. The Northern Division shall then submit the matter

to the Joint Adjustment Board for adjudication as though the complaint or grievance were filed by a Local Union, an individual Employer, or an individual worker.

(6) In case the auditors designated by the Corporation conduct an audit and determine that an Employer has violated the provisions of this Agreement for hours worked (or paid for) in that the gross compensation, including any remuneration or compensation not required or permitted by this Agreement divided by hours reported exceeds the employee's base rate plus one dollar ($1.00) per hour or if adequate records are not made available to allow the auditor to make his determination in that regard or if hours worked for each payroll period are not recorded on payroll records, then the auditors shall calculate or estimate gross compensation not permitted in this Agreement from whatever information is available. This amount determined to be the gross compensation, when divided by the appropriate hourly wage exclusive of vacation and other fringe benefits and then multiplied by the appropriate hourly fringe benefit contribution rate accordingly to this Agreement, shall be considered due to the respective Trust Funds.

The failure to register footage on jobs as required by Article 12 (Job Registration) of this Agreement and/or the failure to report accurately all hours worked in a given period to the respective Trust Funds and/or to pay fully the required amounts to said Trust Funds as required by Article 15 (Trust Funds) and 19 (Drywall Information Trust Fund) of this Agreement shall constitute prima facie evidence of intent to violate this Agreement and shall require the auditors to apply the above-stated formula to determine the amount due the respective Trust Funds. The amount determined to be due by the application of the above formula shall be paid by the individual Employer to the respective Trust Funds unless challenged through the grievance procedure within ten (10) days from the date of receipt of the demand for payment.

If the Employer fails to pay the said amount and if a grievance is filed, the Joint Adjustment Board or Arbitrator shall be authorized to assess damages in addition to any other remedies deemed appropriate by the Joint Adjustment Board or the Arbitrator.

(7) The failure to register and/or accurately report hours on jobs as required by this Agreement shall entitle all of the Trusts to assess fringe benefits based upon the reports of the Northern Division field personnel as to their estimate of the hours that should have been paid on the particular job or jobs. Such estimates shall be conclusive evidence of the amount due and owing unless the estimate is found by the Joint Adjustment Board and/or the arbitrator to be arbitrary and capricious.