1  Marc Van Der Hout (California Bar #80778)
   Stacy Tolchin (California Bar #217431)
2  Van Der Hout, Brigagliano & Nightingale, LLP
   180 Sutter Street, Fifth Floor
3  San Francisco, California 94104
   Telephone: (415) 981-3000
4  Facsimile: (415) 981-3003

5  Attorneys for Plaintiff
   Javier LOPEZ-URENDA

6

7                UNITED STATES DISTRICT COURT FOR THE

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10  LOPEZ-URENDA, Javier              )   Case No.: C 04 2014 (EDL)
                                      )
11         Petitioner,                )
                                      )
12         v.                         )   **POINTS AND AUTHORITIES**
                                      )   **IN SUPPORT OF EX PARTE**
13                                    )   **MOTION FOR TEMPORARY**
    Nancy ALCANTAR, in her Official Capacity, )   **RESTRAINING ORDER AND**
14  Director San Francisco Office of Detention )   **MOTION FOR PRELIMINARY**
    and Removal, U.S. Immigration and Customs )   **INJUNCTION**
15  Enforcement; Tom RIDGE, in his Official Capacity, )
    Secretary, Department of Homeland Security; John )
16  ASHCROFT, Attorney General, in his Official )
    Capacity, Department of Justice; UNITED STATES )
17  OF AMERICA.                       )
                                      )
18         Respondents.               )
                                      )
19  ─────────────────────────────────

20

21

22

23

24

25

26

27

28

P & A in Support of TRO & Prelim. Inj.          No. C 04 2014 (EDL)

Dockets.Justia.com

1

**TABLE OF CONTENTS**

2   I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3   II.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4   III.   STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5   IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6          A.     PETITIONER CLEARLY RAISES SERIOUS LEGAL QUESTIONS IN HIS
                  PETITION FOR WRIT OF HABEAS CORPUS BEFORE THIS COURT . . . . . 8
7

8                 1.     Whether Petitioner is Statutorily Eligible for Adjustment of Status is a
                         Serious Legal Question . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
9
                         a.     Whether the Filing of a "Deferred Action" Request Tolls the
10                              Period of Voluntary Departure is a Serious Legal Question . . . . 11

11                       b.     Whether Denying Petitioner Adjustment of Status Would Be
                                Fundamentally Unfair, or a Manifest Injustice and , therefore, a
12                              Due Process Violation, Is a Serious Legal Question   . . . . . . . . . 12

13                2.     Whether the San Francisco U.S. ICE Has Failed To Utilize Its
                         Discretionary Authority and Grant Deferred Action Status Since the
14                       Transition to DHS is a Serious Legal Question . . . . . . . . . . . . . . . . . . . 18

15         B.     THE BALANCE OF HARDSHIPS TIPS SHARPLY IN PETITIONER'S
                  FAVOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
16

17  IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

<u>Aoun v. INS</u>, 342 F.3d 503 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 16

<u>Apple Computer Inc v. Formula International, Inc.</u>, 725 F.2d 521 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

<u>Benda v. Grand Lodge of International Association of Machinists & Aerospace Workers</u>, 584 F.2d 308 (9th Cir. 1978) <u>cert. dismissed</u> 441 U.S. 937, 60 L. Ed. 2d 667 (1979)  2, 20

<u>Bridges v. Wixon</u>, 326 U.S. 135, 65 S.Ct. 1443 (1945)  . . . . . . . . . . . . . . . . . . . . . . .  20

<u>Castillo-Perez v. INS</u>, 212 F.3d 518 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . .  18

<u>Contreras-Aragon v. INS</u>, 852 F.2d 1088 (9th  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

<u>Corniel-Rodriguez v. INS</u>, 532 F.2d 301 (2nd Cir. 1976) . . . . . . . . . . . . . . . . . . . . . .  17

<u>De Cardenas v. Reno</u>, 278 F. Supp. 2d 284 (D. Conn. 2003)  . . . . . . . . . . . . . . . . .  15, 18

<u>Desta v. Ashcroft</u>, __ F.3d __  2004 U.S. App. LEXIS 7204 (Apr. 14, 2004)  . . . . . . .  12

<u>Dumas v. Gommerman</u>, 865 F.2d 1093 (9th Cir. 1989)  . . . . . . . . . . . . . . . . . . . . . . . .  2

<u>Gilder v. PGA Tour, Inc.</u>, 936 F.2d 417 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . .  2

<u>Guadalupe-Cruz v. INS</u>, 250 F.3d 1271 (9th Cir. 2001)  . . . . . . . . . . . . . . . . . . . . . . .  18

<u>Gutierrez-Chavez v. INS</u>, 298 F.3d 824 (9th Cir. 2002) <u>amended by</u> 337 F.3d 1023, 1024 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

<u>Johns v. Department of Justice</u>, 653 F.2d 884 (5th Cir. 1981)  . . . . . . . . . . . . . . . . . .  19

<u>Los Angeles Memorial Coliseum Commission v. National Football League</u>, 634 F.2d 1197 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

<u>Mathews v. Diaz</u>, 426 U.S. 67, 96 S.Ct. 1883 (1976) . . . . . . . . . . . . . . . . . . . . . . . . .  18

<u>National Ctr. for Immigrants Rights v. INS</u>, 743 F.2d 1365 (9th Cir. 1984)  . . . . . . . .  2

<u>Ng Fung Ho v. White</u>, 259 U.S. 276, 42 S.Ct. 492 (1927)  . . . . . . . . . . . . . . . . . . . . .  20

<u>Nicholas v INS</u>, 590 F.2d 802 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

<u>Otarola v. INS</u>, 270 F.3d 1272 (9th Cir. 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 16

<u>Plyler v. Doe</u>, 457 U.S. 202, 102 S.Ct. 2382 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . .  18

<u>Reno v. American-Arab Anti-Discrimination Committee</u>, 525 U.S. 471, 119 S. Ct. 936 (1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

<u>Tejeda v. INS</u>, 346 F.2d 389 (9th Cir. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 17

United States ex. rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S. Ct.
499 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Yamataya v. Fisher, 189 U.S. 86, 23 S.Ct. 611 (1903) . . . . . . . . . . . . . . . . . . . . . . . . . .   18

Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491 (2001) . . . . . . . . . . . . . . . . . . . . . .   18

Zazueta-Carrillo v. Ashcroft, 322 F.3d 1166 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . .   13

## AGENCY DECISIONS

Matter of Chouliaris, 16 I. & N. Dec. 168 (BIA 1977)....................................................13

Matter of J-J-, 21 I. & N. Dec. 976 (BIA 1997)................................................................14

Matter of Shaar, 21 I. & N. Dec. 541 (BIA 1996)........................................................9, 11

## FEDERAL STATUTES

Illegal Immigration Reform and Immigrant Responsibility Act of 1996
("IIRIRA") Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996) . . . . . . . . . . . . . . . . .   5, 17

"Homeland Security Act of 2002" ("HSA") § 471,107 Pub. L. 296, 116 Stat.
2135 (Nov. 25, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2,19

"LIFE Act Amendments of 2000" Pub. L. No.106-554, 114 Stat. 2763 (Dec. 21, 2000) .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8, 14

8 U.S.C. § 1153(b)(3)(C), INA § 203(b)(3)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

8 U.S.C. § 1182(a)(5)(A), INA §212(a)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 13

8 U.S.C. § 1182(a)(6)(A), INA § 212(a)(6)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

8 U.S.C. §1182(a)(9)(B)(i)(II), INA § 212(a)(9)(B)(i)(II) . . . . . . . . . . . . . . . . . .   passim

8 U.S.C. § 1182(a)(9)(B)(v), INA § 212(a)(9)(B)(v) . . . . . . . . . . . . . . . . . . . . . . .   passim

8 U.S.C. § 1182(c), INA § 212(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

8 U.S.C. § 1229a(d)(1), INA § 240(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

8 U.S.C. §1229c(b), INA §240B(b)...................................................................................9

8 U.S.C. § 1229c(d), INA §240B(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

8 U.S.C. §1254, INA § 244 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 15, 16

8 U.S.C. § 1255, INA § 245 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

8 U.S.C. § 1255(c)(2), INA §245(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

U.S.C. § 1255(i), INA § 245(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8,9,14

# FEDERAL REGULATIONS

"Allowing in Certain Circumstances for the Filing of Form I-140 Visa Petition
Concurrently With a Form I-485 Application" 67 Fed. Reg. 49561 (July
31, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

"Powers and Authority of Officers and Employees," 68 Fed. Reg. 35273
(Jun. 13, 2003) <u>codified</u> <u>at</u> 8 C.F.R. § 1.1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

8 C.F.R. § 2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

8 C.F.R. § 204.5(n) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

8 C.F.R. § 1003.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 14

8 C.F.R. § 1003.2(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 14

8 C.F.R. § 1003.2(c)(3)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

8 C.F.R. § 1003.2(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 8

8 C.F.R. § 1240.26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

I.       INTRODUCTION

         Petitioner Javier LOPEZ-URENDA ("Petitioner"), by and through his undersigned counsel, hereby files this motion for temporary restraining order and preliminary injunction to stop his removal to Mexico. Petitioner is scheduled to be removed to Mexico today, May 24, 2004. See Declaration of Marc Van Der Hout in Support of Petition for Writ of Habeas Corpus ("Dec MVDH") at Exh.12.[1] Petitioner will suffer irreparable harm if this Court does not stay his removal. See Fed. R. Civ. P. 65(b).

         A motion for temporary restraining order should be issued if "immediate and irreparable injury, loss, or irreversible damage will result to the applicant" if the order does not issue. Fed. R. Civ. P. 65(b). Petitioner has been trying for eight years to regularize his status in this country. He now has the ability to become a lawful permanent resident through his work at FullBloom Bakery due to the March 19, 2004 approval of the application for labor certification filed by Fullbloom. Dec MVDH at Exh. 9.  Respondents assert that his approval came too late and that he now is not eligible to immigrate–despite the fact that it was Respondents who delayed three years in adjudicating the application.

         Denial of the motion here would result in Petitioner's permanent banishment to Mexico and  his permanent separation from his three U.S. Citizen children, his employer FullBloom Bakery, and his community. If Petitioner is physically removed from the United States the Board of Immigration Appeals ("BIA") will lose jurisdiction over his pending motion to reopen for

---

[1]      Petitioner submitted the Declaration of Marc Van Der Hout in Support of Petitioner's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief on May 21, 2004.  That Declaration consists of numerous exhibits, among them Petitioner's Motion to Reopen to the Board of Immigration Appeals (Exhibit 15) and his request for Deferred Action to the U.S. ICE (Exhibit 5).  Exhibits 15 and 5 have internal exhibit lists corresponding to the substantive motion and request for deferred action.  Petitioner refers to these internal exhibits as "(Exhibit * - *)" throughout the Points and Authorities.

         In addition, Petitioner submitted the Authenticating Declaration of Marc Van Der Hout in Support of Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction.  That Declaration was submitted today, May 24, 2004.  Petitioner refers to that Declaration as "Auth. Dec. MVDH in Support of TRO" throughout the Points and Authorities.

1  adjustment of status.  See 8 C.F.R. § 1003.2(d).  Finally, if Petitioner is physically removed from

2  the U.S. he will be ineligible for permanent residency for at least ten year which will, in reality,

3  permanently deprive three United States citizen children of their father. See 8 U.S.C. §

4  1182(a)(9)(B)(i)(II), INA § 212(a)(9)(B)(i)(II) ( ground of inadmissibility for those individuals

5  who were unlawfully present in the United states for a period of one year or more).

6         The standard for granting a temporary restraining order requires the moving party to

7  show either (1) a probability of success on the merits and the possibility of irreparable harm, or

8  (2) that serious legal questions are raised and the balance of hardships tips sharply in the

9  movant's favor. Gilder v. PGA Tour, Inc., 936 F.2d 417 (9th Cir. 1991);  Dumas v. Gommerman,

10  865 F.2d 1093, 1095 (9th Cir. 1989); Apple Computer Inc v. Formula Int'l, Inc., 725 F.2d 521,

11  525 (9th Cir. 1984).  These two alternatives represent extremes of a single continuum, rather

12  than two separate tests.  Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace

13  Workers, 584 F.2d 308, 315 (9th Cir. 1978) cert. dismissed, 441 U.S. 937, 60 L. Ed. 2d 667

14  (1979).  Thus, the greater the relative hardship to the moving party, the less probability of

15  success must be shown. National Ctr. for Immigrants Rights v. INS, 743 F.2d 1365, 1369 (9th

16  Cir. 1984)).

17         As discussed thoroughly below, Petitioner warrants a temporary restraining order and

18  preliminary injunction to prevent Respondents from removing Petitioner to Mexico until his

19  petition and writ can be fully heard by this Court. Petitioner raises serious legal questions

20  regarding his eligibility for adjustment of status to become a lawful permanent resident, and

21  regarding whether the San Francisco U.S. Immigration and Customs Enforcement ("U.S. ICE")

22  has failed to exercise discretion in granting "deferred action" since the abolishment of the

23  Immigration and Naturalization Service ("INS") and the creation of the Department of

24  Homeland Security ("DHS") on March 1, 2003.  See "Homeland Security Act of 2002" 107 Pub.

25  L. 296, 116 Stat. 2135 (Nov. 25, 2002).  Because the BIA will lose jurisdiction over his motion

26  to reopen if he is deported and would, thus, deny the motion, and because Petitioner would be

27  ineligible to return to the United States for a minimum of ten years if forced to leave the country,

28  the balance of hardships clearly tips sharply in his favor.

## II.     STATEMENT OF FACTS

Petitioner is a 36-year-old native and citizen of Mexico.  As the oldest of nine children, Petitioner came to the United States in March of 1990 at the age of 23, with the hope of finding a way to support his family in Mexico. Dec. MVDH at Exh.15 (Exhibits I-A).  Petitioner currently owns a home in Fremont, California with his wife and their three United States citizen children, Bryan, Ashley and Nancy, ages eleven years, six years and one year. Id. at Exh. 15 (Exhibits V-AS; V-AT; V-AU; IV-AR).  Petitioner has been gainfully employed at the FullBloom Baking Company in Menlo Park since 1990, where he has worked his way up from a Baker's Assistant to the Senior Director of Production and Facilities.  Id. at Exh. 15 (Exhibits I-A; II-J; III-O). With Petitioner's hard work and dedication, FullBloom has become one of the largest commercial bakeries in the San Francisco Bay Area.  Id. at Exh. 15 (Exhibit II-J; III-O). Petitioner is highly admired and respected by his supervisors and co-workers as well as clients and professional acquaintances. Id. at Exh. 15 (Exhibits III-O through III-AE).  In addition to a competitive salary, Petitioner receives 401k benefits as well as health insurance for his entire family. Id. at Exh. 15 (Exhibit V-AV).

Having spent their entire lives in the United States, a forced relocation to Mexico would be an insurmountable hardship for Petitioner's three United States citizen children. Id. at Exh. 15 (Exhibits V-AS through V-BO).  Both Bryan and Ashley are attending school at Patterson Elementary School in Fremont, where they have consistently received good grades and praise from their teachers, as well as academic awards and recognition.  Id. at Exh. 15 (Exhibits V-AS through V-BF; V-BO).  Bryan has also been a member of the East Bay Swim League since 2001, which practices weekly in Fremont, and in which Petitioner has been involved as a volunteer coach.  Id. at Exh. 15 (Exhibit V-BG).

In the process of receiving his many awards for academic achievement, Bryan has had to combat his Attention Deficit Hyperactivity Disorder (ADHD), and has received specialized resources to help him overcome the disorder. Id. at Exh. 15 (Exhibit V-BH).  ADHD is a learning and behavior disorder that affects between 4% and 6% of the U.S. population.  Id. at Exh. 15 (Exhibits V-BJ; V-BK). Because of the careful maintenance and monitoring of his

1   condition by both his parents and his teachers, Bryan has continued to excel in school.  Id. at

2   Exh. 15 (Exhibit V-BH). Petitioner himself takes classes for parents of children with ADHD.

3   Bryan would not be able to receive the hands-on approach his teachers take in order to assist him

4   with his academics if he were attending school in Mexico, as this kind of therapy is unavailable

5   to approximately 99% of people with similar disabilities in Mexico.  Id. at Exh. 15 (Exhibit V-

6   BI).

7           Several members of Petitioner's extended family also reside in the United States.  Among

8   them are 20 aunts, uncles and cousins living in the U.S. who spend holidays and hold family

9   celebrations with Petitioner and his wife and children.  Id. at Exh. 15 (Exhibit I-A).

10          Petitioner has absolutely no criminal history in the U.S. or any other country.  Petitioner

11  has, over the past 8 years, attempted to legalize his status through all available, lawful means.

12  Petitioner is deeply involved in his community in the United States.  Congresswoman Anna

13  Eshoo, Congressman Pete Stark, Congressman Tom Lantos, Congressman Sam Farr, Senator

14  Barbara Boxer, President Pro Tempore of the California State Senate John Burton, San Francisco

15  City and County Treasurer Susan Leal, Senior Management of FullBloom Baking Company and

16  Starbucks Coffee Company, employees of FullBloom, representatives of FullBloom's clients,

17  directors of professional organizations, foundation leaders, local colleges, Petitioner's priest and

18  many friends have all written letters on Petitioner's behalf.  Id. at Exh. 15 (Exhibits III-M

19  through IV-AO); Auth. Dec. MVDH in Support of TRO at Exh. 6.

20          Petitioner is deeply involved in community and charitable work.  He is actively involved

21  with his community at large, both on his own, as well as in conjunction with his employer,

22  FullBloom Baking Company.  FullBloom employees support more than 25 local and national

23  charities and give as much as $1 million in charitable contributions per year.  Dec. MVDH at

24  Exh. 15 (Exhibits II-J; III-M).  Petitioner has been integral in helping FullBloom launch parent

25  education and college scholarship programs, which have helped numerous families.  Id at Exh.

26  15 (Exhibit II-J).  Petitioner participates in the annual California AIDS Ride, a 500+ mile bicycle

27  ride, the participants of which have raised more than $9.5 million for AIDS research and care.  Id

28  at Exh. 15 (Exhibit IV-AQ) Petitioner has participated in this ride for several years, raising the

required $2,500 in donations for the event. Id.  Petitioner also volunteers for the Women's

1   Foundation of California, an advocacy group for women and girls that has made nearly 1,000

2   grants totaling more than $9 million to over 600 organizations and awarded over $200,000 worth

3   of scholarships. Id at Exh. 15(Exhibits IV-AM; IV-AN).  Additionally, Petitioner is active in his

4   church, Our Lady of the Rosary Church, where his son Bryan recently completed his First

5   Communion exercises and in which all three of his children have been baptized.  Id at Exh. 15

6   (Exhibit V-BM).

7   III.    STATEMENT OF THE CASE

8          Petitioner submitted an affirmative application for asylum on September 6, 1996 with the

9   understanding that he would be eligible for suspension of deportation under former 8 U.S.C. §

10  1254, INA § 244 (1995), if his asylum application was not approved. However, on September

11  30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of

12  1996 ("IIRIRA") Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996), eliminating suspension of

13  deportation, the form of relief for which Petitioner would have been eligible had his asylum

14  application not been approved and he had been placed in deportation proceedings prior to April

15  1, 1997, IIRIRA's effective date.  The Asylum Office referred Petitioner's application to the

16  Immigration Court after the April 1, 1997 change in law, however, and a Notice to Appear

17  ("NTA") was issued on September 8, 1997.  The NTA charged Petitioner with being removable

18  under 8 U.S.C. § 1182(a)(6)(A), INA § 212(a)(6)(A) as an alien present in the United States

19  without having been admitted or paroled. Because of the issuance of the NTA under the post

20  April 1, 1997 new scheme, Petitioner was deemed to have been rendered ineligible to apply for

21  suspension of deportation, a relief for which he was clearly eligible and qualified prior to April

22  1, 1997.

23         A hearing on the merits of Petitioner's case was set for January 29, 1999, at which time

24  Petitioner appeared with his attorney, who moved to terminate removal proceedings and institute

25  deportation proceedings, based on the fact that Petitioner's asylum application was filed before

26  IIRIRA's enactment and he was, thus, "in proceedings" prior to the new law going into effect.

27  Petitioner's then-attorney argued that Petitioner should be able to apply for suspension of

28  deportation. The Immigration Judge ("IJ") denied Petitioner's motion to terminate but in so

1   ruling stated that, had Petitioner been eligible for suspension of deportation, she would have

2   considered him a good candidate for such relief.  Dec. MVDH at Exh. 15 (Exhibit I-B).

3       Petitioner appealed his case to the Board of Immigration Appeals ("BIA" or "Board") on

4   March 1, 1999, arguing that he should have been allowed to apply for suspension of deportation

5   and that it was impermissible to apply IIRIRA retroactively to Petitioner.

6       Meanwhile, on April 26, 2001, while Petitioner's appeal was still pending before the

7   Board, Petitioner's employer, FullBloom Baking Company, filed an Application for Alien Labor

8   Certification with the Employment Development Department.  Dec. MVDH at Exh. 8.  In the

9   application, FullBloom offered evidence of its extensive, but unsuccessful, efforts to recruit

10   American workers who could fill Petitioner's position as well as the important role that

11   Petitioner continued to play in FullBloom's daily operations and overall ability to function

12   successfully and profitably.  The U.S. Department of Labor delayed three years in adjudicating

13   the application and, as a result, the labor certification was not granted until March 2004, despite

14   Petitioner's attempts to "expedite" the adjudication.  Dec. MVDH at Exhs. 9, 22.

15       On February 14, 2002, a single Board member affirmed the IJ's decision without opinion

16   and dismissed Petitioner's appeal.  Petitioner then timely filed a Petition for Review on March

17   13, 2002, with the Ninth Circuit Court of Appeals through office of undersigned counsel.

18   Petitioner argued that he should have been allowed to apply for suspension based on the fact that

19   he gave up several rights in applying for asylum and had filed for asylum under the specific

20   impression that, if the application were denied or otherwise not granted, he would have been

21   eligible, under the law in effect at the time, to pursue an application for suspension.  However,

22   on October 3, 2003,  the Ninth Circuit denied Petitioner's petition for review.  On November 17,

23   2003, Petitioner timely filed a Petition for Rehearing En Banc.  On January 2, 2004, the Ninth

24   Circuit denied the petition for rehearing en banc and on January 9, 2004, the mandate issued.  Id.

25   at Exh. 4.

26       On December 4, 2003, while the petition for review was still pending, Petitioner

27   submitted a request for Deferred Action to the Department of Homeland Security, Immigration

28   and Customs Enforcement.  Dec. MVDH at Exh. 5.  However, on April 13, 2004, Nancy

1   Alcantar, the Field Office Director of the Office of Removal and Detention ("DRO") denied

2   Petitioner's deferred action request. Id. at Exh. 7.

3        While the deferred action request was pending, on March 19, 2004, the Department of

4   Labor approved the Labor Certification application.   Id. at Exh. 9.  The Labor Certification

5   application grandfathered Petitioner under section 245(i) of the Immigration and Nationality Act

6   ("INA") making Petitioner immediately eligible to apply for Adjustment of Status to permanent

7   residency in conjunction with the filing of an I-140 Petition for Alien Worker which was

8   submitted to the USCIS California Service Center on April 6, 2004.  Id. at Exh. 23.

9        On May 10, 2004, counsel for Petitioner received a surrender notice dated April 24,

10   2004, notifying Petitioner that arrangements had been made for his deportation and ordering that

11   he report to an Immigration Officer in San Francisco on May 24, 2004, ready for deportation.

12   Dec. MVDH at Exh. 12.

13        On May 12, 2004, Petitioner went to U.S. ICE and requested a stay of the voluntary

14   departure period and that U.S. ICE rescind the surrender notice.  Dec. MVDH at Exh. 13.  U.S.

15   ICE denied Petitioner's request the same day.  Id. at Exh. 14.  On May 13, 2004, Petitioner filed

16   a Motion to Reopen and Motion to Stay Deportation and Motion to Stay Voluntary Departure

17   with the BIA.  Dec. MVDH at Exh. 15.

18        On May 17, 2004, counsel for Petitioner filed a request for a stay of removal with U.S.

19   ICE based on the pending motion to reopen pending with the Board.  Dec. MVDH at Exh. 16.  A

20   supervising immigration officer requested that Petitioner come to the office to be interviewed.

21   Dec. MVDH at Exh. 24.  On May 18, 2004, Petitioner went to U.S. ICE and requested to be

22   interviewed. However, Immigration Officer Nancy Boswell stated that she was unwilling to

23   interview Petitioner or adjudicate his request for a stay until the surrender date, Monday May 24,

24   2004.  Id.

25        On May 18, 2004, Petitioner's counsel contacted the BIA, requesting that Petitioner's

26   stay request be adjudicated immediately.  Counsel was informed that the BIA would not

27   adjudicate the stay on an emergency or expedited basis until Petitioner is in custody and travel

28   plans for his removal have been arranged.  Petitioner reiterated his request in writing on May 21,

2004. Id. at Exh. 21.

1    The U.S. ICE filed an opposition to Petitioner's motion to reopen, which was received by

2    Petitioner on May 20, 2004. Dec. MVDH at Exh. 17. The US ICE opposed the motion on the

3    asserted grounds that it was untimely and that Petitioner had overstayed his voluntary departure

4    period. Id. On May 21, 2004, Petitioner filed a supplement to his motion to reopen with the

5    BIA. Dec. MVDH at Exh. 18. Petitioner's motion to reopen remains pending. If Petitioner is

6    forced to depart the United States, the Board of Immigration Appeals will dismiss his motion to

7    reopen for lack of jurisdiction. See 8 C.F.R. §1003.2(d).

8    On May 21, 2004, Petitioner filed his petition for writ of habeas corpus and complaint for

9    declaratory and injunctive relief with this Court. Petitioner now seeks a temporary restraining

10   order and preliminary injunction so that he is not physically removed during the pendency of this

11   case before the Court.

12   IV.   ARGUMENT

13        A.   PETITIONER CLEARLY RAISES SERIOUS LEGAL QUESTIONS IN HIS
             PETITION FOR WRIT OF HABEAS CORPUS BEFORE THIS COURT

14           1.   Whether Petitioner is Statutorily Eligible for Adjustment of Status is a
15                Serious Legal Question

16        A non-citizen in the United States may gain permanent residency through "adjustment of

17   status." 8 U.S.C. § 1255, INA § 245. Adjustment of status is normally available only to those

18   non-citizens who have been "inspected and admitted or paroled" upon entry into the United

19   States. 8 U.S.C. § 1255(a), INA § 245(a), and, with some exceptions, for individuals who were

20   in lawful immigration status upon the filing for their application. 8 U.S.C. § 1255(c)(2), INA §

21   245(c)(2). However, Congress has exempted these requirements for non-citizens who were the

22   beneficiaries of labor certifications, or petitions made on their behalf by family members, which

23   were filed prior to April 30, 2001. See See 8 U.S.C. §§ 1255(i)(A)(B) & (C), INA §§

24   245(i)(A)(B) & (C), as amended by "LIFE Act Amendments of 2000" Pub. L. No.106-554, 114

25   Stat. 2763 (Dec. 21, 2000); Dec. MVDH at Exh. 23 (recognizing eligibility for adjustment of

26   status under 8 U.S.C. § 1255(i), INA § 245(i) for individuals who were the beneficiaries of labor

27   certifications filed on or before April 30, 2001). Thus, individuals who entered the United States

28   without legal authorization and who are not in valid immigration status can become permanent

residents through adjustment of status if the labor certification or visa petition was filed on or

1    before April 30, 2001.  Here, the labor certification application was filed on April 26, 2001.

2         There are multiple ways to qualify for adjustment of status.  Once of these ways is as the

3    beneficiary of an approved labor certification from the Department of Labor ("DOL").  By

4    granting a Labor Certification, the DOL has determined that there are no qualified legal

5    permanent residents or U.S. citizens to do Petitioner's job.  See 8 U.S.C. § 1182(a)(5)(A), INA §

6    212(a)(5)(A).  Upon approval of a labor certification, an I-140 petition for alien worker must be

7    filed by the non-citizens employer.  8 U.S.C. § 1153(b)(3)(C), INA § 203(b)(3)(C).  However,

8    once the labor certification is approved an immigrant visa is considered to be immediately

9    available to the beneficiary because there is no waiting period for the immigrant visa.  See 8

10   C.F.R. § 204.5(n), Dec. MVDH at Exh. 15 (Exhibit II-K).  Thus, once a labor certification is

11   approved the beneficiary can immediately apply for adjustment of status to become a permanent

12   resident.

13        An individual is not generally eligible for adjustment of status if he has overstayed a

14   period of voluntary departure.  See 8 U.S.C. § 1229c(d), INA §240B(d); Matter of Shaar, 21 I. &

15   N. Dec. 541 (BIA 1996).  Voluntary departure is a grant of a limited period of stay in which a

16   non-citizen is entitled to remain in the United States after being found removable.  8 U.S.C. §

17   1229c(b), INA §240B(b).  Voluntary departure is given in lieu of a removal order.  Id.  If the

18   non-citizen overstays that period of time, the voluntary departure grant converts into a removal

19   order. Dec. MVDH at Exh. 1.  In order to avoid overstaying voluntary departure, some non-

20   citizens who are eligible for an immigrant visa may process abroad at a United States consulate.

21   However, such a procedure is not available for those in the class of aliens, like Petitioner, for

22   whom 8 U.S.C. § 1255(i), INA § 245(i) was enacted.  If a non-citizen was unlawfully present in

23   the U.S. for a period of one year or more, and then he departs the U.S., he is not eligible to seek

24   admission to the U.S. for a period of ten years.  8 U.S.C. § 1182(a)(9)(B)(i)(II), INA §

25   212(a)(9)(B)(i)(II).  The reason section 245(i) was enacted was to prevent those who would be

26   ineligible for a visa if they traveled, to have a means of immigrating based on their approved

27   labor certification or family visa petition. If forced to depart the U.S., the bar to admission may

28   only be waived if the non-citizen is the spouse or son or daughter of a U.S. citizen or lawful

     permanent resident, and it would cause extreme hardship to that relative if the non-citizen were

1   to be denied admission.  8 U.S.C. § 1182(a)(9)(B)(v), INA § 212(a)(9)(B)(v).  Petitioner is not

2   eligible for that waiver due to the lack of qualifying relatives since U.S. citizen children do not

3   count.

4        Petitioner is the beneficiary of an approved labor certification.  The approval affords him

5   the right to apply for permanent residency pursuant to 8 U.S.C. § 1255, INA § 245.  He was

6   found removable and granted voluntary departure in his removal proceeding but would have

7   been able to file a timely motion to reopen or motion to remand his case so that he could file for

8   adjustment of status had Respondents adjudicated the labor certification application in any

9   reasonable period of time, including up to over one year.  But the Department of Labor took

10  almost three years and that unreasonable delay prejudiced Petitioner in two important ways.

11       First, Executive Office for Immigration Review ("EOIR") regulations require a motion to

12  reopen be brought, generally, within 90 days of a final BIA order.  8 C.F.R. § 1003.2(c)(2).[2]

13  But the delay in adjudicating the labor certification application, prevented him from filing the

14  motion within that time period. Second, if Petitioner overstayed his grant of voluntary departure,

15  according to 8 U.S.C. § 1229c(d), INA §240B(d), it would render him ineligible for adjustment

16  of status for a period of ten years.  Yet, if he departed the U.S. prior to the expiration of his

17  voluntary departure period, he would also be ineligible for admission for ten years and would not

18  meet the requirements for a waiver of unlawful presence, as he has no U.S. citizen or lawful

19  permanent resident spouse or parent.  See 8 U.S.C. § 1182(a)(9)(B)(v), INA § 212(a)(9)(B)(v).

20       As discussed below, Petitioner asserts that the statutory bar to adjustment of status for

21  overstaying voluntary departure, does not apply to him because he filed a request for "deferred

22  action" which tolled his voluntary departure period.  Alternatively, even if he did overstay

23  voluntary departure, it would be fundamentally unfair and a manifest injustice to deny him the

24  opportunity to apply for adjustment of status, as the Department of Labor's unreasonable delay

25  in the adjudication of the labor certification was the cause of his overstay-- the only way he

26  could become a permanent resident and, thus, remain with his three U.S. citizen children, was to

27

28  [2]     The Board may also reopen sua sponte beyond the 90 day period but whether to
     do so is in the pure discretion of the Board. 8 C.F.R. § 1003.2(a). On addition, the 90 day
     period does not apply if the government joins in the motion.  Id.

1   remain in the U.S.  If he had left according to the terms of voluntary departure, he would have

2   been ineligible for admission for ten years.

3        Petitioner asserts that it was the government which put him in this Catch-22.  He asserts

4    that but for the government's delay in adjudicating and approving the labor certification

5   application, there would be no question that he would not be barred from having his motion to

6   reopen granted,  by either the BIA's 90 day  rule nor the statutory provision regarding the

7   consequences of overstaying a period of voluntary departure.  At a minimum, however,

8   Petitioner raises serious legal questions regarding his eligibility for adjustment of status.

9

10              a.   Whether the Filing of a "Deferred Action" Request Tolls the
                      Period of Voluntary Departure is a Serious Legal Question
11

12       Respondent has asserted that Petitioner is ineligible for adjustment of status because,

13   inter alia,  he overstayed his period of voluntary departure.  Dec. MVDH at Exh. 17.  Under 8

14   U.S.C. § 1229c(d), INA §240B(d) if an alien is granted voluntarily departure and fails to so

15   depart within the time period specified, the alien shall be ineligible for adjustment of status and

16   other enumerated forms of relief for ten years.  See also Matter of Shaar, 21 I. & N. Dec. 541

17   (BIA 1996).

18       However, Petitioner remains statutorily eligible for adjustment of status pursuant to 8

19   U.S.C. § 1255(a), INA § 245(a) because his request for "deferred action" tolled his period of

20   voluntary departure.  On December 4, 2003, before the Ninth Circuit mandate issued,

21   Respondent filed an Urgent Request for Deferred Action to District Director Mark Riordan. Dec.

22   MVDH at Exh. 5. The mandate in Petitioner's case issued on January 12, 2004.  Petitioner's 30-

23   day period for voluntary departure would have begun then had Petitioner not filed his request for

24   deferred action.

25       Petitioner's request to the District Director for deferred action tolled the period for

26   voluntary departure because the authority to extend the time within which to depart voluntarily,

27   set forth initially by an immigration judge or the Board, is within the sole jurisdiction of the

28   district director, the Deputy Executive Associate Commissioner for Detention and Removal, or

   the Director of the Office of Juvenile Affairs. 8 C.F.R. § 1240.26(f).  Thus, the District Director

1   had the authority to extend the voluntary departure period and grant Petitioner's request for

2   deferred action.  By way of his request for deferred action, Petitioner requested the District

3   Director to exercise his authority to grant deferred action thereby extending the voluntary

4   departure period.

5       By the very nature of the relief sought, a request for deferred action is a request for stay

6   of voluntary departure, and therefore tolls the voluntary departure period.  See e.g. Desta v.

7   Ashcroft, __ F.3d __ 2004 U.S. App. LEXIS 7204 *22 (Apr. 14, 2004) (noting that the voluntary

8   departure period is subject to tolling).  Indeed, granting deferred action merely creates a

9   renewable period of voluntary departure.  See Nicholas v INS, 590 F.2d 802 (9th Cir. 1979) (if

10  the deferred action is approved, an alien's departure from the United States has been deferred

11  indefinitely).  Therefore, a timely request to the District Director for deferred action tolls the

12  period of voluntary departure which, in this case, had not yet begun to run when the deferred

13  action request was filed.

14      It was essential for Petitioner to remain in the United States pending the decision of the

15  District Director on the deferred action request.  Had Petitioner voluntarily departed after the

16  Ninth Circuit issued its mandate in his case, Petitioner would have abandoned any possibility of

17  deferred action. A granted request for deferred action does not confer substantive rights, such as

18  the ability to travel to the United States. Id. at Exh. 6(Meissner Memo). Had Petitioner departed

19  the United States prior to the District Director's decision, and had the District Director granted

20  deferred action, Petitioner would have had no legal right to reenter the country.  Petitioner would

21  have received permission to remain in the United States but been denied the legal ability to

22  renter and reunite with his family.  Such a result would be contrary to the nature and purpose of

23  deferred action, which at its core serves to alleviate the harsh results that would occur if

24  Petitioner were to be forced to depart the United States prior to the District Director's decision.

25  Therefore, Petitioner's request for deferred action tolled the period of voluntary departure

26  pending the decision by the District Director.  The denial of the stay based on a theory that

27  voluntary departure has expired is contrary to law.

28              b.      Whether Denying Petitioner Adjustment of Status Would Be
                        Fundamentally Unfair, or a Manifest Injustice and , therefore, a
                        Due Process Violation, Is a Serious Legal Question

1

2    Denial of the stay request on the ground that Petitioner is not statutorily eligible for relief

3    because he overstayed his voluntary departure or that he cannot have his motion to reopen

4    granted because it is beyond the normally applicable 90 period to do so under the regulations,

5    would be fundamentally unfair and a manifest injustice on the facts of ths case, because

6    Petitioner only faces these bars due to the Department of Labor's almost three year delay in

7    adjudicating the Labor Certification Application filed on his behalf.

8    As discussed above, Petitioner's employer, FullBloom Baking Company, applied for a

9    Department of Labor ("DOL") certification for Petitioner on April 26, 2001. Dec. MVDH at

10   Exh. 8. While his Labor Certification was still pending unadjudicated, on February 14, 2002, the

11   BIA issued its decision summarily affirming the IJ's finding of removability and grant of

12   voluntary departure. Dec. MVDH at Exh. 1. On March 13, 2002, Petitioner  filed a petition for

13   review with the Ninth Circuit Court of Appeals of the BIA's decision.  The petition for review

14   was denied on October 3, 2003.  Dec. MVDH at Exh. 3.  Petitioner filed a petition for rehearing

15   en banc on November 17, 2003 which was denied on January 2, 2004. Dec. MVDH at Exh. 4.

16   At that time, Petitioner's 30-day period of voluntary departure, granted by the BIA,

17   commenced.[3] Yet, there was still no decision on the pending labor certification.

18   The labor certification application filed on behalf of Petitioner was finally adjudicated

19   and granted on March 19, 2004, 69 days after the Ninth Circuit Court of Appeals denied his

20   petition for rehearing in his underlying removal proceedings and almost three full years after

21   FullBloom had initially applied for it.  Dec. MVDH at Exh. 9.

22   Petitioner has a statutory right to apply for adjustment of status.  By granting the Labor

23   Certification, the DOL has determined that there are no qualified legal permanent residents or

24

25   [3]    Under the existing law at that time, Contreras-Aragon v. INS, 852 F. 2d 1088 (9th
Cir. 1988)(en banc), the 30-day period of voluntary departure given by the BIA would
26   start again under Matter of Chouliaris, 16 I. & N. Dec. 168 (BIA 1977) once the mandate
issued.  Subsequently, the Ninth Circuit issued its decision in Zazueta-Carrillo v.
27   Ashcroft, 322 F.3d 1166 (9th Cir. 2003), which changed the prior rule and held that after
Congress's recent changes to immigration law, the voluntary departure period began
28   when the BIA entered its order granting voluntary departure.

1    U.S. citizens to do Petitioner's job.  See 8 U.S.C. § 1182(a)(5)(A), INA §212(a)(5)(A).

2    Moreover, Congress has explicitly provided for the statutory adjustment of status to that of a

3    lawful permanent resident ("LPR") for aliens who entered the United States without inspection,

4    who were physically present in the United States on December 21, 2000,  and who were

5    beneficiaries of an application for labor certification filed before April 30, 2001.  See 8 U.S.C.

6    §§ 1255(i)(A)(B) & (c), INA §§ 245(i)(A)(B) & (C), as amended by "LIFE Act Amendments of

7    2000" Pub. L. No.106-554, 114 Stat. 2763 (Dec. 21, 2000).  Thus, had Petitioner's labor

8    certification been approved at any time prior to 30-days after the Ninth Circuit denied

9    Petitioner's petition for rehearing en banc, Petitioner would have been unequivocally eligible to

10   apply for relief from removal in the form of adjustment of status under 8 U.S.C. § 1255,  INA §

11   245, since the Labor Certification application "grandfathered"[4] him under INA § 245(i), 8 U.S.C.

12   § 1255(i).[5]   Accordingly, he could have filed a motion to remand or reopen with the Board of

13   Immigration Appeals for that relief.  Such a motion to reopen could have been cognizable in

14   spite of the general time limitation (i.e., 90 days after the entry of a final administrative order) on

15   motions to reopen contained under 8 C.F.R. § 1003.2(c)(2), because it could have been granted

16

17

18   _____

19   [4]      The DHS has interpreted 8 U.S.C. § 1255, INA §245(i) to allow the filing of an
     application prior to April 30, 2001 to "grandfather" an alien under the provision as long
20   as the original petition was "approvable at the time of filing", regardless of whether the
     petition or labor certification was later denied, withdrawn, or revoked, except in cases of
21   fraud.  Dec. MVDH at Exh. 24 (Cronin Memo).

22   [5]      Petitioner is the derivative beneficiary of a pending third preference
     employment-based (I-140) visa petition. Dec. MVDH at Exh. 15 (Exhibit II.I).
23   Regulations now allow concurrent filings of I-140 petitions and applications for
     adjustment of status.  See "Allowing in Certain Circumstances for the Filing of Form I-
24   140 Visa Petition Concurrently With a Form I-485 Application" 67 Fed. Reg. 49561
     (July 31, 2002). Dec. MVDH at Exh. 6. Thus, once a labor certification is approved, an
25   individual is prima facie eligible for an immigrant visa, even when an I-140 petition for
     alien worker has not yet been approved.
26

27

28          In addition, even if a motion to reopen was filed more than 90 days after the BIA
     decision, which was one of the grounds for U.S. ICE's opposition to Petitioner's motion
     to reopen, the motion still could have been granted by the BIA sua sponte, or if the DHS
     joined in the motion.  See 8 C.F.R. § 1003.2(a).

1   by the Board *sua sponte* or joined by the Government, and thus exempt from the 90-day limit.

2   See 8 C.F.R. § 1003.2(c)(3)(iii); Matter of J-J-, 21 I. & N. Dec. 976, 984 (BIA 1997).[6]

3        Nonetheless, the Government alleges that because Petitioner has overstayed his period of

4   voluntary departure and because he filed his motion to reopen more than 90 days after the BIA

5   decision in his case, Petitioner is barred from becoming a permanent resident of the United

6   States. Petitioner's departure would trigger the inadmissibility ground, 8 U.S.C. §

7   1182(a)(9)(B)(i)(II), INA § 212(a)(9)(B)(i)(II), for being unlawfully present in the United States

8   for one year or more.[7]

9        Courts have recognized, based on principles of fundamental fairness and manifest justice,

10  that individuals should be eligible for relief from deportation and removal, irrespective of their

11  apparent statutory ineligibility, where that ineligibility was acquired as the direct result of the

12  administrative agency's delay in adjudicating their applications or through other agency

13  misfeasance. See, e.g., Otarola v. INS, 270 F.3d 1272 (9th Cir. 2001) (alien eligible to apply for

14  relief from deportation in the form of "suspension of deportation" under former 8 U.S.C. 1254

15  (a), INA § 244(a) (1995), in spite of intervening statutory bar, where adjudication of application

16  was delayed due to INS' frivolous appeal); Aoun v. INS, 342 F.3d 503 (6th Cir. 2003) (alien

17  eligible to apply for suspension of deportation notwithstanding intervening statutory bar because

18  delay in adjudication of application attributable solely to administrative closure of case); Tejeda

19  v. INS, 346 F.2d 389 (9th Cir. 1965) (" . . .deportation of petitioner would be manifestly unjust

20  where he possessed the statutory authority to reenter the United States . . . if in fact he did not

21  pursue that right because of justifiable reliance upon a misstatement of a U.S. Government

22

23  [6]   As set forth above, the 90-day period must also be found to be inapplicable as
    Petitioner only became subject to it due to the inordinate delay because of DOL.

24

25  [7]   Petitioner does not have a lawful permanent resident or United States citizen
    parent or spouse for a waiver under INA § 212(a)(9)(B)(v), 8 U.S.C. § 1182(a)(9)(B)(v).

26  Thus, he would not be able to reenter the United States for ten years at the earliest.
    Again, this would be a consequence of the unreasonable delay of Respondents in

27  adjudicating the labor certification application because, had the application been
    adjudicated in a timely manner, Petitioner would have been able to adjust status in the

28  U.S. through the timely filing of a motion to reopen.

1  official"); De Cardenas v. Reno, 278 F.Supp. 2d 284 (D. Conn. 2003) (alien could not be barred

2  from relief from deportation under former 8 U.S.C. § 1182(c), INA § 212(c) (1994) due to

3  intervening change in law where failure to adjudicate application due to unnecessary

4  administrative delay).

5       In Aoun v. INS, 342 F.3d at 504, the petitioner appealed a BIA decision denying his

6  application for relief from deportation in the form of suspension of deportation under former 8

7  U.S.C. § 1254, INA § 244(a) (1995).   The petitioner had entered the United States on a student

8  visa in October 18, 1978 and had been placed in deportation proceedings on August 15, 1985,

9  less than seven years after he had entered.  Id. at 505-06. He filed his application for suspension

10  of deportation in December of 1987.  At that time, he had accumulated seven years of continuous

11  physical presence in the United States, as was required by the statute.  However, his proceedings

12  were administratively closed and were not reinstated until June 9, 2000.  Id.  In the interim,

13  Congress enacted IIRIRA on September 30, 1996.   IIRIRA changed the law such that aliens

14  who had not accrued seven years of continuous physical presence prior to the issuance of their

15  orders to show cause could no longer apply for suspension of deportation.  Id. 506-07.

16       When it reopened petitioner's proceedings on June 9, 2000, the Board issued a decision

17  denying his application for suspension on the grounds that he had not accumulated seven years

18  of continuous physical presence prior to the issuance of his order to show cause on August 15,

19  1985.   However, the Court of Appeals for the Sixth Circuit reversed, noting that the petitioner's

20  application for suspension of deportation would have been adjudicated on the merits well before

21  the effective date of the IIRIRA had it not been for the delay caused by the administrative

22  closure. Id. at 507.  The Court reasoned that it would be entirely unfair to deny the petitioner the

23  opportunity to apply for relief from deportation solely because of an administrative delay.

24  Specifically, the Court noted:

25

26       Because the "administrative closure" of his proceeding was not the
         fault of Aoun, he should not suffer the extremely adverse results
27       that flowed from that decision.  Considering the unfairness that
         would result from applying the stop-time rule retroactively in this
28       case, we reverse the Board's decision and remand for further
         proceedings that allow Aoun's application for suspension of
         deportation to be considered on the merits.

1

2    Id.

3         Similarly, in <u>Otarola</u>, 270 F.3d at 1277 , the Ninth Circuit held that the "stop-time rule"

4    under 8 U.S.C. § 1229a(d)(1), INA § 240(d)(1) could not be applied to render petitioners

5    ineligible for suspension of deportation where the INS had frivolously filed an appeal and thus

6    delayed the case so that it remained pending at the time of IIRIRA's effective date. The Ninth

7    Circuit found that the stop-time rule did not apply to the petitioners because of the frivolous

8    nature of the INS' appeal, and held that the petitioners remained eligible for suspension of

9    deportation despite IIRIRA § 309(c)(5). In particular, the Court noted that: "Allowing the INS

10   to appeal a correct IJ decision on a frivolous, non-discretionary procedural ground in order to

11   avail itself of the stop-time rule would undermine clear Congressional intent to enact a 180-day

12   delay period." <u>Id</u>. at 1276.

13        In <u>Corniel-Rodriguez v. INS</u>, 532 F.2d 301 (2nd Cir. 1976), the Second Circuit considered

14   a case where a non-citizen was the beneficiary of an immigrant visa and a consular official failed

15   to warn her that her visa would become automatically invalid if she married, as he was required

16   to do by regulation. She married her spouse three days before immigrating to the U.S., after the

17   consulate issued an immigrant visa. Her status as an immigrant was unavailable if she was

18   married at the time of her admission to the U.S. <u>Id</u>. at 303. Once she arrived, the INS initiated

19   deportation proceedings and was she ordered deported by the immigration judge. In her

20   proceedings before the judge, she explained that she would have waited 3 days to get married

21   until after her admission had she known that she would be ineligible to immigrate to the US as a

22   married woman. The Second Circuit found that "the Government's improper actions may

23   preclude it from deporting an alien, even if the language read <i>in vacuo</i>, might suggest a different

24   result." <u>Id</u>. at 306. She was therefore eligible for an immigrant visa.

25        Finally, in <u>Tejeda v. INS</u>, 346 F.2d 389 (9th Cir. 1965), the Ninth Circuit case considered

26   a situation where a non-citizen was statutorily eligible to immigrate, but was misadvised by the

27   American consul that he was ineligible to do so. The Court remanded the case back for a factual

28   determination on this issue because the "deportation of petitioner would be manifestly unjust

where he possessed the statutory authority to reenter the United States . . . if in fact he did not

1    pursue that right because of justifiable reliance upon a misstatement of a U.S. Government

2    official." Id. at 394.

3         Similarly, in Petitioner's case, allowing the Labor Department's delay in adjudicating the

4    Labor Certification to render him ineligible for relief from removal in the form of adjustment of

5    status would be fundamentally unfair and manifestly unjust.  Petitioner is eligible for relief from

6    removal in the form of adjustment of status under 8 U.S.C. § 1255, INA § 245  but for the DOL's

7    delay in adjudicating the Labor Certification. The only remedy which would make him whole

8    would be to allow him to apply for that relief at this time. See e.g., Cardenas, 278 F.Supp.2d at

9    295 ("[W]here, as here, administrative oversights and procedural defects have resulted in the

10   denial of important statutory relief to an alien defendant, traditional remedies will not suffice.").

11   See also  Guadalupe-Cruz v. INS, 250 F.3d 1271 (9th Cir. 2001); Castillo-Perez v. INS, 212 F.3d

12   518, 528 (9th Cir. 2000).

13

14              2.    Whether the San Francisco U.S. ICE Has Failed To Utilize Its
                     Discretionary Authority and Grant Deferred Action Status Since the
15                   Transition to DHS is a Serious Legal Question

16

17        All persons residing in the United States, and in particular, lawful permanent residents,

     are protected by the Due Process Clause of the Fifth Amendment.  See Zadvydas v. Davis, 533
18
     U.S. 678, 692, 121 S. Ct. 2491 (2001); Plyler v. Doe, 457 U.S. 202, 210, 102 S.Ct. 2382 (1987);
19
     Mathews v. Diaz, 426 U.S. 67, 96 S.Ct. 1883 (1976); Yamataya v. Fisher, 189 U.S. 86, 23 S.Ct.
20
     611 (1903).  Even when an issue is left to the discretion of an agency, the agency's failure to
21
     utilize its discretionary authority constitutes a due process violation.  United States ex. rel.
22
     Accardi v. Shaughnessy, 347 U.S. 260, 268, 74 S. Ct. 499 (1954) (noting that due process
23
     requires adherence to agency regulations, even when Congress has purely delegated a decision to
24

25

26

27

28

1   the discretion of the agency).[8]   Petitioner's challenge is not a challenge to the <u>manner</u> in which

2   the discretion was exercised, but the <u>failure to exercise discretion</u> at all. <u>Id.</u>[9]

3        Deferred action permits the government to decline to execute a removal order. <u>Reno v.</u>

4   <u>American-Arab Anti-Discrimination Comm.,</u> 525 U.S. 471, 484 119 S. Ct. 936 (1999); <u>Johns v.</u>

5   <u>Department of Justice,</u> 653 F.2d 884, 890 (5th Cir. 1981).   Although there is no right to deferred

6   action, it is a legitimate request for relief (and even encouraged by Congress). <u>See</u> 77 Interpreter

7   Releases 204 (Feb. 14, 2000)). The U.S. ICE has the authority to grant requests for deferred

8   action. <u>See</u> Dec. MVDH at Exh. 6.   On November 17, 2000, Doris Meissner, Commissioner of

9   the, then, Immigration and Naturalization Service ("INS"), issued a memorandum explicitly

10   stating that the INS is "not only authorized by law but expected to exercise discretion in a

11   judicious manner at all stages of the enforcement process." Dec. MVDH at Exh. 6 at 1

12   ("Meissner Memo").   This includes deferred action requests. <u>Id.</u> at Exh. 2.   The memorandum

13   sets out clear guidelines for how discretion shall be exercised, including the individual's length

14   of stay in the United States, criminal history, humanitarian concerns, immigration history,

15   whether the alien is eligible or likely to become eligible for other forms of relief, the effect a

16   physical removal would have on future admissibility, and community attention.  <u>Id.</u> at Exh. 7-8.

17        On March 1, 2003, the INS was abolished and the Department of Homeland Security was

18   created. <u>See</u> "Homeland Security Act of 2002" ("HSA") § 471,107 Pub. L. 296, 116 Stat. 2135

19   (Nov. 25, 2002).   Pursuant to the Homeland Security Act, the Directorate of Border and

---

20

21   [8]   In <u>United States ex. rel. Accardi v. Shaughnessy,</u> 347 U.S. at 267, the Supreme

22   Court considered regulations of the Attorney General which delegated certain of his
discretionary powers to the Board of Immigration Appeals and required that Board to

23   exercise its own discretion on appeals in deportation cases.  The Attorney General failed
to follow these regulations because he identified the petitioner as an "unsavory"

24   individual who he wished to be deported.  <u>Id.</u> at 264.  By doing this, the Supreme Court
found that the Board was unable to fairly consider the petitioner's case, and thus the

25   Attorney General had violated the regulations which required the Board to exercise its
own judgement when considering appeals. <u>Id.</u> at 267.  The Court held that so long as the

26   Attorney General's regulations remained operative, <u>even if this ultimate authority was</u>
<u>delegated to his discretion,</u> he denied himself the "right to sidestep the Board or dictate

27   its decision in any manner." <u>Id.</u> at 267.

28   [9]   This Court has jurisdiction to review such a claim.  <u>See</u> <u>Gutierrez-Chavez v. INS,</u>
298 F.3d 824 (9th Cir. 2002) <u>amended by</u> 337 F.3d 1023, 1024  (9th Cir. 2003)

1   Transportation Security assumed the enforcement functions of the INS.  HSA § § 402(3), 441.

2   The Department of Homeland Security amended the INS regulations to provide that "[u]nless

3   otherwise specified, references to the Service after that date mean the Bureau of Citizenship and

4   Immigration Services, the Bureau of Customs and Border Protection, and the Bureau of

5   Immigration and Customs Enforcement."  "Powers and Authority of Officers and Employees,"

6   68 Fed. Reg. 35273 (Jun. 13, 2003) codified at 8 C.F.R. § 1.1(c).  The Secretary of the

7   Department of Homeland Security has the power to delegate his authority by "regulation,

8   directive, memorandum, or other means as deemed appropriate by the Secretary in the exercise

9   of the Secretary's discretion."  8 C.F.R. § 2.1.  Because the U.S. ICE has assumed the authority

10  of the former INS, the "Meissner Memo" is still in effect after the transition to DHS and the

11  abolishment of INS.  Even if that memo is no longer in effect, the legal authority that existed to

12  grant deferred action prior to March 1, 2003, the date of the transition to DHS, remains effective

13  because U.S. ICE assumed the same enforcement functions that INS held previously.

14      Upon information and belief, the San Francisco U.S. ICE has failed to exercise the

15  authority granted to it by law because it has failed to grant any deferred action request since

16  March 1, 2003.  See Dec. MVDH at Exh. 19 and 20; Auth. Dec. MVDH in Support of TRO at

17  Exh. 7.  Such a complete failure to exercise discretion  constitutes a denial of due process and

18  manifest injustice.  At a minimum,  Petitioner raises a serious legal issue regarding this issue.

19

20      B.   THE BALANCE OF HARDSHIPS TIPS SHARPLY IN PETITIONER'S
             FAVOR
21
22      In balancing the hardships, this Court must identify the harms that the relief might cause

23  the non-moving party, and weigh them against the threatened injury to the movant.  Los Angeles

    Memorial Coliseum Commission v. National Football League, 634 F.2d 1197, 1203 (9th Cir.
24
    1980).  The movant is required to show that the balance of harms tips decidedly towards him for
25
    an exercise of discretion on his behalf. Benda v. Grand Lodge of Int'l Ass'n of Machinists &
26
    Aerospace Workers, 584 F.2d at 315.
27
        There is no question that removal would cause severe hardship to Petitioner, for it would
28
    "result in the loss 'of all that makes life worth living'."  Bridges v. Wixon, 326 U.S. 135, 147, 65

S.Ct. 1443 (1945) (quoting <u>Ng Fung Ho v. White</u>, 259 U.S. 276, 42 S.Ct. 492 (1927)). As the Supreme Court has stated:

> Though deportation is not technically a criminal proceeding, it visits a great deal of hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted.

<u>Id</u>. at Exh. 154.

The balance of hardships clearly tips sharply in Petitioner's favor. Petitioner's removal to Mexico would cause him and his three United States citizen children irreparable harm. If Petitioner is forced to leave the United States, the BIA will lose jurisdiction over his motion to reopen and, thus, the BIA will dismiss his motion to reopen without addressing the merits of his claim to residency. . Additionally, if Petitioner were deported, he would not be able to return to this country through consular processing because he has more than one year of unlawful presence in the United States. 8 U.S.C. §§1182(a)(9)(B)(i)(II); INA §§212(a)(9)(B)(i)(II). He would not be eligible for a waiver of unlawful presence because he does not have a qualifying relative. 8 U.S.C. §§1182(a)(9)(B)(v); INA §§212(a)(9)(B)(v). Yet, if he is allowed to remain here and have his adjustment application decided in this country, his path to permanent residency would be a clear and straightforward.

If Petitioner were deported, he would be forced to leave his three United States citizen children, his employer, his home, and the community in which he has invested himself for the last 14 years. Petitioner shares a close relationship with his children and extended family in the United States, and they would be devastated if he were deported to Mexico. Dec. MVDH at Exh.15 (Exhibit I-A).

Petitioner's oldest son, Bryan, has been diagnosed with ADHD, a learning disability, recognized as such under federal legislation. Dec. MVDH at Exh. 5 (Exhibits V-D). Petitioner has been active in assisting his oldest child in his struggle to compensate for his disability and has been integral in Bryan's ability to excel in school despite the obstacle of his disability. <u>Id</u>. at Exh. 5 (Exhibit V-D-1). Bryan also receives special attention in school to enable him to compensate for his disability and Petitioner's participation in his son's therapy is key to Bryan's success. However, the institutional assistance that enables Petitioner to facilitate his son's

1   progress is not available in Mexico and Petitioner's son would not be able to continue his current

2   therapy if Petitioner were removed to Mexico. Id.

3       For children as young as Petitioner's three U.S. citizen children, remaining in the U.S.

4   without the necessary presence of their father in their lives would be unthinkably cruel to

5   children who depend upon the kind of irreplaceable support Petitioner has provided to them.

6   Similarly, being forced to relocate to a country where none of these children has ever even

7   visited, would be unbearable for all three of Petitioner's children.  Id. at Exh. 5 (Exhibit I-A)

8   And, in addition to the incredible hardship Petitioner's three United States children would face if

9   their father were deported, Petitioner's entire community – from his employer, FullBloom

10  Baking Company, to the many charities Petitioner supports, would suffer tremendously if

11  Petitioner were removed from the United States.  Id. at Exh. 5 (Exhibits III-M through IV-AR).

12      Petitioner has submitted letters from community leaders who recognize the impact his

13  removal from the community would have upon the community as a whole.  U.S. Congressional

14  Representative Anna Eshoo writes of Petitioner: "Mr. Lopez-Urenda is an exemplary, decent

15  man who has contributed to our community and our economy in positive ways, making him an

16  excellent candidate for relief from removal."  Dec. MVDH, at 5 (Exhibit III-M).  Congressman

17  Tom Lantos echoes these sentiments in his letter of support for Petitioner.   Auth. Dec. MVDH

18  in Support of TRO at Exh. 1.  Congressman Sam Farr writes "[Petitioner] is an outstanding

19  individual who is well respected by many."  Id. at Exh. 2.  Additionally, U.S. Senator Barbara

20  Boxer, President Pro Tempore of the California State Senate John Burton, State Senator Patrick

21  Leahy, and U.S. Congressman Pete Stark have written letters in support of Petitioner's case.  Id.

22  at Exhs. 3 - 5 and 7.  Petitioner's commitment to and involvement in his community is evident in

23  the letters written on his behalf as well as the amount of time he has devoted to community

24  organizations and charitable events and activities. Dec MVDH at Exh. 15 (Exhibits IV-AF

25  through IV-AQ).

26      Petitioner's priest, Reverend Father Jose Antonio Medina wrote a letter of support for

27  Petitioner stating that Petitioner:

28          is a very active member in our parish community since 2000.  He
            serves as Eucharistic Minister and Usher.  Javier L. Urenda is very
            committed to his responsibilities and faith.  Whenever we ask him

for support and participation he is always ready to help.  And I
know he brings the same support and readiness for social needs."

Auth. Dec. MVDH in Support of TRO at Exh. 6.

The extensive humanitarian factors present in this case coupled with the fact that

Petitioner is now the beneficiary of both an approved labor certification as well as an

unadjudicated I-140 petition filed on his behalf by his employer, clearly demonstrate that the

balance of hardships tip sharply in Petitioner's favor.  Dec. MVDH at Exh. 15 (Exhibits E-I and

K).

Additionally, there has been an outpouring of community support from people who have

benefitted from Petitioner's involvement in the community.  The letter from Rosa G. Perez,

President of Cañada College, for example, states:

> I have known Javier through his work as an education advocate
> and community leader for the past ten years...Under [Javier's]
> leadership and encouragement, Fullbloom Baking Company has
> launched parent education and college scholarship programs that
> are impacting a wide range of families...Javier's absence would be
> a tremendous loss to the many college students he is mentoring at
> my institution alone.  He is also an active organizer of a special
> program we host for low income kindergartners."

Id. at Exh. 15 (Exhibit IV-AF).  Similarly, John A. Balano, Head Strength and Conditioning

Coach at City College of San Francisco states, "I have known Javier Lopez-Urenda for over 12

years.  Javier served as a volunteer assistant track and field coach on my staff at Washington

High School.... His honesty, trustworthiness, and caring for each individual made sometimes

difficult workout sessions meaningful to the young people.... [He] volunteers for a transition

station for the annual Providian Relay, which supports organ donation.... [He] assists in feeding

the homeless...." Id.at Exh. 15 (Exhibit IV-AG).  Susan G. Freundlich, Vice President of the

Women's Foundation of California, writes: "I have had the pleasure of knowing Mr. Urenda, a

volunteer of the Women's Foundation of California, personally for the past three years.  Javier is

not only fulfilling tremendous needs within his community, he is exceeding them."  Id. at Exh.

15 (Exhibit IV-AH).

Well over a dozen members of the business community have also written letters in

support of Petitioner.  All letters highlight his integrity, dedication, and commitment to

excellence. Id. at Exh. 15 (Exhibits IV-AF through IV-AO).

Petitioner is continually described as "irreplaceable" and "invaluable" by numerous members of his community as well as his colleagues at FullBloom Baking Company. Id. at Exh. 15 (Exhibits III-O-R; III-U-AA: III-AE).   Mary Renaud, President of FullBloom Baking Company states "[Javier] was responsible for my initial training at the bakery. ... He continues to teach me. ... Today I am the President of FullBloom. ... The bakery simply could not run without him." Id. at Exh. 15 (Exhibit III-R).  Loring Sagan, President of Sagan Pechota Architecture wrote, "Javier has played an integral role in the growth of FullBloom Bakery.... [T]here are exceptions...that arise in which the laws, while necessary, require a variance for exceptional and unique circumstances.  Javier is one of these exceptions. ...  He is a leader among coworkers and friends, exhibiting a hard working ethic and joyful spirit, integrity, and commitment." Id. at Exh. 15 (Exhibit III-AA).

In addition to these overwhelming humanitarian factors, Petitioner's case presents further exceptional humanitarian factors.  Petitioner is the sole financial provider for his wife and three United States citizen children. Id. at Exh. 15 (Exhibit I-A).  He has worked at the same company since 1990 and is highly regarded by his employer. Id. at Exh. 15 (Exhibit III-O,P,R).  Karen Trilevsky, founder of FullBloom Baking Company states in her declaration, "In my professional opinion, there is no one in the industry with the skill sets that Javier brings to my company." Id. at Exh. 15 (Exhibit III-O).  Leaving this job and losing the financial security he and his family have acquired, as well as the health insurance and benefits that they have come to depend upon would certainly result in the frustration and destruction of their "American Dream" as well as put in immediate danger their health and well being.  All of these things further tip the balance of hardships in favor of Petitioner.

The hardships faced by Petitioner clearly outweigh those of Respondents'.  The forced separation from family and loved ones, the loss of considerable community involvement in the United States, and the loss of a position in the community and in his employment that he has spent over a decade earning, combined with the economic and emotional hardship Petitioner will certainly face if he is forced to go to Mexico, tip the scales significantly in Petitioner's favor.

1       No one will be benefitted from destroying the lives of Petitioner and his family.  The

2  government will suffer no hardship in allowing Petitioner to remain in the United States while he

3  awaits the final resolution of his case before this Court.  Indeed, it is in the government's best

4  interest that Petitioner remain and defend his claim.  Meaningful judicial redress affords the

5  government systemic integrity.

6

7  IV.    <u>CONCLUSION</u>

8       For all of the above reasons, this Court should find that Petitioner raises serious legal

9  questions, and that the balance of hardships tips sharply in his favor, and stay his removal to

10  Mexico during the pendency of his petition for writ of habeas corpus and complaint for

11  declaratory and injunctive relief before this Court

12

13

14

  Dated: May 24, 2004                 Respectfully submitted,

15

16                                      _____/s/_____

                                       Marc Van Der Hout

17                                       Stacy Tolchin

18                                       Attorneys for Petitioner

19

20

21

22

23

24

25

26

27

28