

COMPREHENSIVE LIABILITY POLICY

No. C.L.2037

Covering all operations of

THE FLINTKOTE COMPANY OF CANADA LIMITED and/or
THE FLINTKOTE COMPANY (NFLD.) LIMITED and/or
THE FLINTKOTE MINES LIMITED and/or Subsidiary or
affiliated corporation or corporations now
existing or hereafter created as their respective
interests may appear.

Policy Period: JANUARY 1st, 1951 to JANUARY 1st, 1954.

---

GENERAL
ACCIDENT FIRE & LIFE
ASSURANCE CORPORATION LIMITED
OR PERTH, SCOTLAND.

CANADIAN HEAD OFFICE  –  TORONTO, ONTARIO, CANADA.

Exhibit _____ A

Page _____ 1

Dockets.Justia.com

8 0 2 2 0 1 1 2 8 6

# D E C L A R A T I O N S

Item 1. Name of Insured: The Flintkote Company of Canada Limited and/or
The Flintkote Company (Nfld.) Limited and/or
The Flintkote Mines Limited and/or Subsidiary
or Affiliated corporation or corporations now
existing or hereafter created as their respec-
tive interests may appear.

    Address:            30 Rockefeller Plaza, New York City, N.Y. U.S.A.

Item 2. Business of the Insured: Consists principally of Asbestos Mining
and Milling, Wood Preserving, Manufacturers
of Road Surfacing and Waterproofing
Materials, Asphalt and Asbestos Products.

Item 3. No Insurer has cancelled any similar insurance issued to the
Insured except as herein stated:  No

Item 4. Estimated Premium : $4,247.99, payable : $4,247.99 in advance,
subject to Conditions 2 and 3.

Item 5. The Minimum Annual Premium for this portion of the policy shall
be : $40.50

Item 6. Policy Period: From 12.01 A.M. JANUARY 1st,1951 to 12.01 A.M.
JANUARY 1st,1954, standard time at the address of the Insured
as stated herein.

Item 7. It is agreed that $888.11 of the estimated advance premium is
not subject to adjustment.

It is further agreed that $3,359.88 of the estimated advance
premium is subject to adjustment.

It is further agreed that Computation and adjustment of earned
premium shall be made at the end of each annual period, that
one-third of the three year estimated advance premium subject
to adjustment shall be applied each year against the earned
premium.

AGENT: MARSH & McLENNAN, IRISH & MAULSON LTD.   507 PLACE D'ARMES, MONTREAL.
8519-1

Exhibit ___A___
Page ___2___

COMPREHENSIVE LIABILITY POLICY

No. C.L.2037



GENERAL
ACCIDENT FIRE AND LIFE
ASSURANCE CORPORATION
LIMITED
OF PERTH, SCOTLAND.

Head Office for Canada — TORONTO

(Herein called the Insurer)

Agrees with the Insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the exclusions and conditions of this policy:

INSURING AGREEMENTS

Coverage A - Bodily Injury Liability.

To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract, for damages because of bodily injury (including death at any time resulting therefrom) sustained during the policy period by any person or persons.

Coverage B - Property Damage Liability.

To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract, for damages because of injury to or destruction of property, sustained during the policy period and caused by accident. *(including loss of use thereof)*

I. Defense.

To defend in his name and on his behalf any suit against the Insured alleging bodily injury (including death at any time resulting therefrom) or injury to or destruction of property, and seeking damages on account thereof, even if such suit is groundless, false or fraudulent.

2. Supplementary Payments.

To pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit (but without any obligations to apply for or furnish such bonds), all costs taxed against the Insured in any such suit, all expenses incurred by the Insurer, all interest accruing after entry of judgment until the Insurer has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the Insurer's liability thereon, and, in the event of bodily injury,

expenses incurred by the Insured for such immediate medical and
surgical relief to others as may have been imperative at the time
of the occurrence.

3.  Reimbursement.

To reimburse the Insured for all reasonable expenses, other
than loss of earnings, incurred at the Insurer's request.
The amounts incurred under these additional Insuring Agreements
shall be payable in addition to the applicable limit of liability
of this policy.

## ADDITIONAL INSURED

(A)  This policy shall insure each subsidiary, affiliated or associated
company in the same manner and to the same extent as if a separate
policy had been issued to each.

(B)  This policy shall cover as additional Insured any partner, execu-
tive officer, employee, director or stockholder thereof while
acting within the scope of his duties as such.

## AUTOMATIC COVER

This policy shall cover additional elevators acquired during the
policy period without prior notice to the Insurer but for the purpose
of inspection only the Insured shall within sixty days of their
acquisition give written notice to the Insurer.

## EXCLUSIONS

THIS POLICY DOES NOT APPLY to liability imposed upon the Insured
by law, or assumed by him under contract, if such liability arises
from :

1. bodily injury sustained by any employee of the Insured
   while engaged in his duties, except in any case where
   with relation to such employee the Insured has assumed
   liability therefor under contract;

2. except with respect to operations performed by indepen-
   dent contractors, to the ownership, maintenance, opera-
   tion or use (including loading and unloading) by or on
   behalf of the Insured of any of the following, including
   their equipment :

> Any motor vehicle, trailer or semi-trailer
> obligated by law to carry a license, air-
> craft or watercraft.

This exclusion shall not apply to motor vehicles having
no apparatus for the load, and which are equipped for
purposes of construction, repairs or maintenance, for
which reduced license fees have been established by
Order in Council No.91 dated February 3, 1949, nor to
motor vehicles which are not intended to circulate on
the public highways, for which special fees have been

- 3 -

established by Order in Council No.125, dated February 10, 1949.

3. "products" as defined herein:

4. occurrences or accidents occurring outside the Dominion of Canada or the United States of America, its territories or possessions;

5. injury to or destruction of :

    (a) property owned or occupied by, or leased to Insured;
    (b) any other property used by or in the care, custody or control of the Insured, except with respect to liability assumed under contract and the use of elevators or escalators;
    (c) goods or products manufactured, sold, handled, or distributed by the Insured.
    (d) property arising out of Stevedoring operations and it is further agreed that payrolls of Stevedoring operations shall not be declared to the Insurer under the property damage section of this policy.

## LIMITS OF LIABILITY

(A) The liability of the Insurer for loss or damage resulting from bodily injury to or the death of any one person shall be limited to the sum of $100,000.00; and subject to such limit the liability of the Insurer for loss or damage resulting from bodily injury to or death of two or more persons in any one occurrence shall be limited to $200,000.

(B) The liability of the Insurer for loss or damage because of injury to or destruction of property in any one accident shall be limited to the sum of $20,000.00.

(C) It is agreed, however, that in consideration of the reduced Property Damage rate charged in respect of the Insured's Asbestos Mining and Milling operations at Thetford Mines, Quebec, the liability of the Insurer for loss or damage because of injury to or destruction of property in any one accident shall be limited to the sum of $1,000.00.

The foregoing limits of liability shall apply separately to each elevator insured by this policy.

Inclusion herein of more than one Insured shall not operate to increase the limits of the Insurer's liability.

## DEFINITIONS

1. "BODILY INJURY" shall be construed to include sickness, disease and mental anguish.

2. When used as a basis for premium computation:
    (a) "PREMISES" shall mean each 100 square feet of floor area and each

- 4 -

linear foot of street frontage of buildings and grounds owned or operated;

(b) "COSTS" shall mean total cost of work performed for the Insured by independent contractors (including cost of labour and material used in the execution of such work);

(c) "RECEIPTS" shall mean the gross amount of money, including taxes, charged by the Insured or by others for such of the Insured's operations as are rated on a receipts basis;

(d) "PAYROLL" shall mean the entire remuneration (but excluding payments under a profit sharing plan where such payments form no part of the contract of employment) earned during the policy period by all employees other than drivers of teams or automobiles, subject to a maximum fixed amount of $2,500.00 per employee per annum.

(e) "SALES" shall mean the gross amount of money, including taxes, charged (a) for all goods and products sold or distributed during the policy period by the Insured or, (b) for construction operations entered into during the policy period by the Insured.

3. "CONTRACT" shall mean a written agreement covering a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack agreement, or elevator or escalator maintenance agreement, or any other written agreement provided copy of such agreement is submitted to the Insurer within sixty (60) days after having been received by the Insurance Department of the Insured and for the purpose of establishing the premium to be charged.

4. "RAILWAY TANK CARS" shall mean railway tank cars owned or leased, hired or borrowed during the policy period.

5. "PRODUCTS" shall mean:
   (a) the handling or use of, the existence of any condition in or a warranty of, goods or products manufactured, sold, handled or distributed by the Insured, other than equipment rented to or located for use of others but not sold, if the occurrence or accident on which the claim is founded arises after the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured;
   (b) the construction operations of the Insured, if the occurrence or accident on which the claim is founded arises after such operations have been completed or abandoned at the place of such occurrence and away from premises owned, rented or controlled by the Insured, provided operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement.

6. "ELEVATOR" shall mean hoisting and lowering mechanism equipped with a car or platform which moves in guides in a substantially

Exhibit _____ A
Page _____ 6

8 0 2 2 0 1 1 2 7 2

- 5 -

vertical direction, including its shaft, hoistway, equipment
and operating machinery.

7. "ESCALATOR" shall mean a moving, inclined, continuous stairway
or runway used for raising or lowering passengers or freight.


CONDITIONS


I.  Investigation of Claims.

The Insurer shall have the right to make such investigation,
negotiation and settlement of any claim or suit as may be deemed
expedient by the Insurer.


2.  Premium

(a) The premium stated in the declarations is an estimated
premium. Upon termination of this policy, the earned premium
shall be computed in accordance with the Insurer's rules, rates,
rating plans, premium and minimum premiums applicable. If the
earned premium thus computed exceeds the estimated advance
premium paid, the Insured shall pay the excess to the Insurer;
if less, the Insurer shall return to the Insured the unearned
portion paid by such Insured.

(b) The Insured shall maintain and furnish the Insurer either
at the end of the policy period or at such times as the Insurer
may direct with a record of all premises, costs, receipts, pay-
roll, sales, contracts, elevators, escalators, number of drivers
and bicycles, on forms submitted by the Insurer to permit of
computing such earned premium for hazards assumed under the
policy.


3.  Inspection and Audit.

The Insurer shall be permitted to inspect the Insured's pre-
mises, operations and elevators and to examine and audit the In-
sured's books and records as far as they relate to the premium
basis or the subject matter of this insurance at any time during
the policy period and any extension thereof and within one year
after the final termination of this policy.

Notice is hereby received and accepted that the Insured's
books and records are kept in the Flintkote Company's plant at
West Rutherford, New Jersey, U.S.A.


4.  Notice of Occurrence or Accident.

When an occurrence or accident on which a claim may be founded
takes place, notice shall be given by or on behalf of the Insured
to the Insurer or any of its authorized agents as soon as prac-
ticable. Such notice shall contain particulars sufficient to
identify the Insured, and also complete information respecting
the time, place and circumstances of the occurrence or accident,
the names and addresses of the injured, and particulars of the
damaged property, and the names and addresses of all witnesses.

5.  Notice of Claim or Suit.

   If a claim is made or suit is brought against the Insured, the
Insured shall immediately forward to the Insurer every demand,
notice, summons or other process received by him or his repre-
sentative.

6.  Assistance and Co-operation of the Insured.

   The Insured shall co-operate with the Insurer, and, upon the
Insurer's request, shall attend hearings and trials and shall
assist in effecting settlements, securing and giving evidence,
obtaining the attendance of witnesses and in the conduct of suits,
The Insured shall not, except at his own cost, voluntarily make
any payment, assume any obligation or incur any expense other
than for such immediate medical and surgical relief to others as
may have been imperative at the time of the occurrence.

7.  Other Insurance.

   If the Insured has other insurance against a loss covered by
this policy, the Insurer shall not be liable for a greater pro-
portion of such loss  than the applicable limit of liability
bears to the total applicable limit of liability of all valid
and collectible insurance against such loss.

8.  Subrogation.

   In the event of any payment under this policy, the Insurer
shall be subrogated to all the Insured's rights of recovery
therefor against any person or organization and the Insured
shall execute and deliver instruments and papers and do what-
ever else is necessary to secure such rights. The Insured shall
do nothing after loss to prejudice such rights.

9.  Changes.

   Notice to any agent or knowledge possessed by any agent or by
any other person shall not effect a waiver or a change in any
part of this policy or estop the Insurer from asserting any right
under the terms of this policy; nor shall the terms of this policy
be waived or changed, except by endorsement issued to form a part
of this policy, signed by its Manager for Canada and countersigned
by a duly authorized representative of the Insurer.

10. Assignment.

   Assignment of interest under  this policy shall not bind the
Insurer until its consent is endorsed hereon.

   If the Insured shall die or be adjudged bankrupt or insolvent
this policy unless cancelled shall for a period of sixty days
thereafter cover the Insured's legal representative in the same
manner and to the same extent as the named Insured, but the
policy shall lapse at the expiration of such period unless prior

notice in writing of such death or adjudication shall have been given to and accepted by the Insurer.

Bankruptcy and Insolvency of the Insured or of the Insured's estate shall not relieve the Insurer of any of its obligations previously incurred hereunder.

## 11. Cancellation.

This policy may be cancelled by the Insured by mailing to the Insurer written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Insurer by mailing to the Insured at the address shown in this policy written notice by registered mail stating when, not less than thirty days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Insurer shall be equivalent to mailing.

If the Insured cancels, the earned premium shall be computed in accordance with the Insurer's short rate table and procedure. If the Insurer cancels, the earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Insurer's cheque or the cheque of its authorized representative, mailed or delivered as aforesaid, shall be a sufficient tender of any refund of premium due to the Insured.

## 12. Action Against Insurer.

No action shall lie against the Insurer unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the Insurer as a co-defendant in any action against the Insured to determine the Insured's liability.

## 13. Terms of Policy to Conform to Statute.

Terms of this policy which are in conflict with the statutes of the Province wherein this policy is issued are hereby amended to conform to such statutes.

Exhibit A
Page 9

- 8 -

## 14.  Gender and Number.

The personal pronoun herein used to refer to the Insured shall apply regardless  of gender and number.

## 15.  Declarations.

By acceptance of this policy the Insured agrees that the statements in the declarations are his agreements and re-presentations, that this policy is issued in reliance upon the truth of such representations and that this policy em-bodies all agreements existing between himself and the In-surer or any of its agents relating to this insurance.

IN WITNESS WHEREOF THE GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION LIMITED has caused this Policy to be signed by its Manager for Canada but this Policy shall not be binding upon the In-surer until countersigned by a duly authorized representative of the Insurer.

Countersigned:

_JA Redpath_
Authorized Representative.

_Douglas H Hall_

MANAGER FOR CANADA.

ENDORSEMENT No.1


In consideration of a return premium of FORTY-FIVE -
- - - 00/100 Dollars ($45.00), it is agreed that the Bodily
Injury estimated premium for Railway Tank Cars is changed to
read $472.50 and not $517.50 as shown in the Classification
of Operations.


Nothing herein contained shall vary, alter or extend any
provision, or condition of the Policy other than as above stated.

THIS ENDORSEMENT attached to Policy No. C.L.2037 issued to THE FLINTKOTE
COMPANY OF CANADA LIMITED ET AL of NEW YORK CITY, N.Y. U.S.A. when signed
by the Manager and countersigned by a duly authorized representative of
the Company shall be valid and form part of said Policy and shall come
into force at 12.01 A.M. on the 1st day of January, 1951, standard time
at the Insured's address contained in the Declarations of said Policy.


Executed on behalf of GENERAL ACCIDENT FIRE AND LIFE ASSURANCE
CORPORATION LIMITED by

Countersigned:

_Douglas B Hall_

_JA Redpath_

MANAGER FOR CANADA

Authorized Representative.

LB.

Exhibit ___A___
Page ___11___

ENDORSEMENT No.2

It is agreed that the policy is extended to cover Property Damage Liability on Stevedoring operations, it being understood, however, that advance notice will be given the Insurer if the regular shipments to Newfoundland are contemplated in the future.

It is further agreed that the rates shown under Item 7 – Stevedoring of the Classification of Operations are changed to read as follows :

### Rate per $100. of payroll

| Bodily Injury | Property Damage |
|---------------|-----------------|
| .284 | .93 |

Nothing herein contained shall vary, alter or extend any provision, or condition of the Policy other than as above stated.

THIS ENDORSEMENT attached to Policy No. C.L.2037 issued to THE FLINTKOTE COMPANY OF CANADA LIMITED ET AL of NEW YORK CITY, N.Y. U.S.A. when signed by the Manager and countersigned by a duly authorized representative of the Company shall be valid and form part of said Policy and shall come into force at 12.01 A.M. on the 26th day of April, 1951, standard time at the Insured's address contained in the Declarations of said Policy.

Executed on behalf of GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION LIMITED by

Countersigned :

*Douglas B Hall*

MANAGER FOR CANADA

*JA Redpath*
Authorized Representative.

LB.

Exhibit ___A___
Page ___12___

ENDORSEMENT NO. 3

It is agreed that the words "sustained during the policy period" shown in Insuring Agreement - Coverage A Bodily Injury Liability are deleted and substituted by the following "caused by events which occur during the policy period".

It is further agreed that Insuring Agreement Coverage B-Property Damage Liability is deleted in its entirety and substituted by the following:

COVERAGE B - PROPERTY DAMAGE LIABILITY

To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract, for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident during the policy period.

It is further agreed that the policy is extended to include dition 16 to read as follows:
dition 16. CROSS LIABILITY CLAUSE

Insurance as is afforded by this policy shall apply with respect to any action brought against any one Insured by any other Insured or any employee of such other Insured.

Nothing herein contained shall vary, alter or extend any provision, or condition of the Policy other than above stated.

THIS ENDORSEMENT attached to Policy No. C.L. 2037 issued to THE FLINTKOTE COMPANY OF CANADA LIMITED ET AL of NEW YORK CITY, N.Y. U.S.A. when signed by the Manager and countersigned by a duly authorized representative of the Company shall be valid and form part of said Policy and shall come into force at 12.01 A.M. on the 1st day of May, 1951, standard time at the Insured's address contained in the Declarations of said Policy.

Executed on behalf of GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION LIMITED by

Countersigned :

*Douglas B Hall*

*JN Redbeth*
Authorized Representative
DR.

MANAGER FOR CANADA

Exhibit  A
Page  13

80220112 79

ENDORSEMENT No. 4

It is agreed that the Newfoundland Workmen's Compensation insurance provided on Page Two of the Employers Liability Cover of this policy is hereby cancelled.

Nothing herein contained shall vary, alter or extend any provision, or condition of the Policy other than as above stated.

THIS ENDORSEMENT attached to Policy C.L.2037 issued to THE FLINTKOTE COMPANY OF CANADA LIMITED ET AL of NEW YORK CITY, N.Y. U.S.A. when signed by the Manager and countersigned by a duly authorized representative of the Company shall be valid and form part of said Policy and shall come into force at 12.01 A.M. on the 1st day of April, 1951, standard time at the Insured's address contained in the Declarations of said Policy.

Executed on behalf of GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION LIMITED by

Countersigned :

*Douglas B Hall*

MANAGER FOR CANADA

_Authorized Representative._

LB.

Exhibit __A__
Page __14__

ENDORSEMENT No. 5

CONTINGENT EMPLOYERS LIABILITY COVER

In consideration of an additional premium of TWO HUNDRED
AND FORTY-NINE - - - - 87/100 Dollars ($249.87), it is agreed that
Exclusion 1 of the General Liability policy is hereby deleted
and replaced with the following :

EXCLUSION 1.
This policy does not apply to any liability imposed
upon or assumed by the Insured under any Workmen's
Compensation Statute, Law or Plan.

Nothing herein contained shall vary, alter or extend any
provision, or condition of the Policy other than above stated.

THIS ENDORSEMENT attached to Policy C.L. to THE FLINTKOTE COMPANY
OF CANADA LIMITED ET AL of NEW YORK CITY, N.Y. U.S.A. when signed
by the Manager and countersigned by a duly authorized representative
of the Company shall be valid and form part of said Policy and shall
come into force at 12.01 A.M. on the 3rd day of July, 1951, standard
time at the Insured's address contained in the Declarations of said
Policy.

Executed on behalf of GENERAL ACCIDENT FIRE AND LIFE ASSURANCE
CORPORATION LIMITED by

Countersigned :

**Authorized Representative**

**MANAGER FOR CANADA**

LB.

Exhibit _A_
Page _15_

8 0 2 2 0 1 2 6 1

ENDORSEMENT NO. 6

EMPLOYERS LIABILITY COVER

It is agreed that Item 4 of the Declarations Estimated Premium is changed to read $150.00

It is further agreed that Item 5 of the Declarations The Minimum Annual Premium is changed to read $50.00

Nothing herein contained shall vary, alter or extend any provision, or condition of the Policy other than above stated.

THIS ENDORSEMENT attached to Policy C.L. 3027 to THE FLINTKOTE COMPANY OF CANADA LIMITED ET/AL of NEW YORK CITY, N.Y., U.S.A. when signed by the Manager and countersigned by a duly authorized representative of the Company shall be valid and form part of said Policy and shall come into force at 12.01 A.M. on the 5th day of September, 1951, standard time at the Insured's address contained in the Declarations of said Policy.

Executed on behalf of GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION LIMITED by

Countersigned :

_____
Authorized Representative

MANAGER FOR CANADA

SG

Exhibit ___A___
Page ___16___

ENDORSEMENT No. 7

CONTRACTUAL LIABILITY

It is agreed that this policy is extended to cover the Insureds liability arising out of contract dated October 1, 1951 between the Canadian Pacific Railway Company, hereinafter called the "Railway Company", and the Montreal Transportation Commission, hereinafter called the "Applicant", wherein The Flintkote Company of Canada Limited guarantees and becomes security for the obligations contracted by the Applicant. Excerpts are as follows :

In consideration of the convenants and conditions herein contained and on the part of the Applicant to be performed and observed the Railway Company hereby grants to the Applicant the right to place and maintain one (1) steel pole on a portion of the lands of the Railway Company at Mileage 0.6 North Bank Branch, in the Town of St.Pierre aforesaid, at the location shown in red on the plan here-to attached, dated the Nineteenth day of July, 1951, bearing No. 1346-3A, prepared by the Railway Company, which is hereby declared to be part of this agreement, said plan being signed by the parties hereto for identification.

The Applicant hereby undertakes to release the Railway Company from all liability in the event of any damage being caused to the said Pole, no matter how caused.

The said pole shall be placed and maintained on the property of the Railway Company in a manner satisfactory to the Railway Company and upon the termination of this agreement the Applicant shall forthwith remove the said pole.

The Applicant hereby undertakes to indemnify and save harmless the Railway Company from all claims, loss or damage that may be caused by, result from, or be attributable to the presence of the said pole on the property of the Railway Company, including all loss or damage that would not have happened had the said pole not been placed on the property of the Railway Company.

Nothing herein contained shall vary, alter or extend any provision, or condition of the Policy other than above stated.

THIS ENDORSEMENT attached to Policy C.L.3027 to THE FLINTKOTE COMPANY OF CANA LIMITED ET AL of NEW YORK CITY, N.Y. U.S.A. when signed by the Manager and countersigned by a duly authorized representative of the Company shall be val and form part of said Policy and shall come into force at 12.01 A.M. on the 24th day of October, 1951, standard time at the Insured's address contained the Declarations of said Policy.

Executed on behalf of GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATIO LIMITED by

Countersigned :

*Douglas B Hall*

MANAGER FOR CANADA

Exhibit ___A___
Page ___17___

8 0 2 2 0 1 1 2 8 3

ENDORSEMENT No.8


It is agreed that the name of the Insured shown under Item 1 of the Declarations of this policy is amended to read as follows and not as heretofore :

Name of Insured :  THE FLINTKOTE COMPANY OF CANADA LIMITED and/or THE FLINTKOTE MINES LIMITED and/or Subsidiary or affiliated corporation or corporations now existing or hereafter created as their respective interests may appear.




Nothing herein contained shall vary, alter or extend any provision, or condition of the Policy other  than as above stated.

THIS ENDORSEMENT attached to Policy No. C.L.2037 issued to THE FLINTKOTE COMPANY OF CANADA LIMITED ET AL of NEW YORK CITY, N.Y. U.S.A. when signed by the Manager and countersigned by a duly authorized representative of the Company shall be valid and form part of said Policy and shall come into force at 12.01 A.M. on the 1st day of January, 1953, standard time at the Insured's address contained in the Declarations of said Policy.


Executed on behalf of GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION LIMITED by



Countersigned :

*Douglas B Hall*

*J Redpath*
Authorized Representative.            MANAGER FOR CANADA
LB.

Exhibit ___A___
Page ___18___

| CLASSIFICATION OF OPERATIONS | Estimated 3 Yr.Payroll | Rate per $100. of Payroll B.I. | P.D. | Estimated Premium B.I. | P.D. |
|---|---|---|---|---|---|
| **1. Street or Road Paving or repairing,surfacing,resurfacing or scraping.** | | | | | |
| Canada other than Nfld. | $65,000.00 | .52 | .40 | $338.00 | $260.00 |
| Newfoundland | If any | | | | |
| **2. Colas Mfg.and Wood Preserving including all Warehouse employees.** | | | | | |
| Canada other than Nfld. | 250,000.00 | .047 | .057 | 117.50 | 142.50 |
| Newfoundland | 125,000.00 | .047 | .057 | 58.75 | 71.25 |
| **3. Brick or Clay Products Mfrg.including Colasmix Mfrg.** | | | | | |
| Canada other than Nfld. | 450,000.00 | .046 | .013 | 207.00 | 58.50 |
| Newfoundland | If Any | | | | |
| **4. Asbestos Mining & Milling.** | | | | | |
| Canada other than Nfld. | 725,000.00 | .094 | .046 | 681.50 | 333.50 |
| Newfoundland | If Any | | | | |
| **5. Contractors – Construction of buildings excluding demolition work and structural iron and steel erection.** | | | | | |
| Canada other than Nfld. | 10,000.00 | .236 | .172 | 23.60 | 17.20 |
| Newfoundland | If Any | | | | |
| **6. Iron and Steel Erection** | | | | | |
| Canada other than Nfld. | If Any | .945 | .574 | – | – |
| Newfoundland | If Any | | | | |
| **7. Stevedoring** | | | | | |
| Canada other than Nfld. | If Any | | | | |
| Newfoundland | 2,000.00 | .284 | nil | 5.68 | – |
| **8. Outside Salesmen,Collectors, Messengers and Clerical Office.** | | | | | |
| Canada other than Nfld. | 385,000.00 | .018 | .015 | 69.30 | 57.7 |
| Newfoundland | 20,000.00 | .018 | .015 | 3.60 | 3.0 |
| Railway Tank Cars | 105 cars | 4.50 Rate per car 3.75 | | 517.50 | 393.7 |
| | | | | 393.75 | |
| | | | | 511.25 | |
| **Owners Protective – work sublet to others during the policy period.** | | Rate per $100.Of Contract Price. | | | |
| Canada other than Nfld. | If Any | .018 | .011 | | |
| Newfoundland | If Any | | | | |

| Cl  SIFICATION OF OPERATIONS | Estimated 3 Yr.Payroll | Rates per $100. of Payroll B.I.    P.D. | Estimated Premium B.I.    P.D. |
|---|---|---|---|
| Railway Locomotive<br>Newfoundland | | Flat Charge | $ 35.00    $ 45.00 |
| Plant Manager's Residence<br>Newfoundland | | Flat Charge | 12.40    7.65 |
| 2 Sidetrack Agreements at<br>Ville St.Pierre,Que. | | Flat Charge ) | |
| 1 Sidetrack Agreement at<br>Brantford,Ont. | | Flat Charge ) | 252.00    183.60 |
| 1 Sidetrack Agreement at<br>Longbranch,Ont. | | Flat Charge ) | |
| 1 Agreement of lease at<br>Ville St.Pierre,Que. | | Flat Charge | 16.87    9.57 |
| 1 Agreement - Shell Oil Clear<br>Vision Pump and 500 gal.<br>storage tank, Toronto.Ont.Plant | | Flat Charge | 15.75    19.12 |
| 1    ling Agreement<br>St.Catharines,Ont. | | Flat Charge | 63.00    45.90 |
| 1 Siding Agreement<br>Thetford Mines,Que. | | Flat Charge | 37.80    22.95 |
| 1 Land Lease Agreement<br>Thetford Mines,Que. | | Flat Charge | 37.80    22.95 |
| 1 Siding Agreement<br>Lloydminster, Sask. | | Flat Charge | 37.80    22.95 |

Total Estimated Premium     $2530.85   $1717.14

```
17 17 14
2 47.9 9
3,359 88
3 3 14 88
```

Exhibit _____ A _____

Page _____ 20 _____



COMPREHENSIVE LIABILITY POLICY

## No. C.L.2037

### EMPLOYERS LIABILITY COVER

of

**THE FLINTKOTE COMPANY (NFLD.) LIMITED AND/OR
THE FLINTKOTE COMPANY OF CANADA LIMITED AND/OR
SUBSIDIARY OR AFFILIATED CORPORATION OR COR-
PORATIONS NOW EXISTING OR HEREAFTER CREATED AS
THEIR RESPECTIVE INTERESTS MAY APPEAR.**

POLICY PERIOD :  JANUARY 1st,1951 to JANUARY 1st,1954.

---

GENERAL
ACCIDENT FIRE & LIFE
ASSURANCE CORPORATION LIMITED
OF PERTH,SCOTLAND.

CANADIAN HEAD OFFICE       —       TORONTO, ONTARIO, CANADA

Exhibit A
Page 21

8 0 2 2 0 1 1 2 9 4

# DECLARATIONS

**Item 1. Name of Insured:** The Flintkote Company (Nfld.) Limited and/or
The Flintkote Company of Canada Limited and/or
subsidiary or affiliated corporation or corpora-
tions now existing or hereafter created as their
respective interests may appear.

**Address:** 30 Rockefeller Plaza, New York City,N.Y. U.S.A.

**Item 2. Location of premises:** Clarenville,Newfoundland and elsewhere in
Newfoundland, also Salesmen in the Provinces
of Manitoba and Alberta, Canada.

**Item 3.** No insurer has cancelled any similar insurance issued to the Insured
except as herein stated :      No

**Item 4.** Estimated Premium : $5,810.87, payable $5,810.87 in advance, subject
to Conditions 2 and 3.

**Item 5.** The Minimum Annual Premium for this portion of the policy shall
be : $75.00

**Item 6.** Policy Period : From 12.01 A.M. JANUARY 1st,1951 to 12.01 A.M.
JANUARY 1st,1954, standard time at the address of the Insured
as stated herein.

AGENT: MARSH & McLENNAN,IRISH & MAULSON LIMITED    507 PLACE D'ARMES.MONTREAL.



COMPREHENSIVE LIABILITY POLICY

No. C.L. 2037


GENERAL
ACCIDENT FIRE & LIFE
ASSURANCE CORPORATION LIMITED
OF PERTH, SCOTLAND.

HEAD OFFICE FOR CANADA – TORONTO

(Herein called the Insurer)


Agrees with the Insured named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the exclusions and conditions of this policy :

## INSURING AGREEMENTS

**Coverage A – Bodily Injury Liability.**

   To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, for damages because of bodily injury (including death at any time resulting therefrom) sustained during the policy period by any person or persons, employed by the Insured, while engaged in the Insured's business within or upon the premises or while engaged elsewhere wherever such employees may be temporarily sent, in the Dominion of Canada or the United States (exclusive of Hawaii, Porto Rico and Alaska) in the performance of their duties.

## EXCLUSIONS

THIS POLICY DOES NOT APPLY to liability imposed upon the Insured by law, if such liability arises from :

   (1)  Any liability assumed by the Insured under contract expressed or implied.
   (2)  Any liability in respect of bodily injury or death caused wholly or in part (a) By any person employed in violation of Law as to age, or under the age of 14 years in any event or by any convict or prison labour. (b) By the making of any structural additions, structural alterations or repairs (ordinary maintenance or minor repairs excepted) unless specifically included in the classification of operations.(c) By the demolition of any building or structure. (d) By aircraft travel or operation or the performance of any duty in connection with aircraft. (e) Liability under any Workmen's Compensation Law, Plan or Agreement which has been enacted or which may hereafter be enacted in any Province.

- 2 -

## LIMITS OF LIABILITY

1) The liability of the Insurer for loss  or damage resulting from bodily injury to or the death of any one person shall be limited to the sum of $10,000.00; and subject to such limits the liability of the Insurer for loss or damage resulting from bodily injury to or death of two or more persons in any one occurrence shall be limited to $50,000.00.

Inclusion herein of more than one Insured shall not operate to increase the limits of the Insurer's liability.

## NEWFOUNDLAND WORKMEN'S COMPENSATION

IN CONSIDERATION OF THE PREMIUM charged, it is agreed that the reference made in Exclusion (2)E - "Liability under any Workmen's Compensation Law, Plan or Agreement" is hereby deleted in respect to the Insured's operations in Newfoundland and the policy is extended to cover as follows :-

> "To pay all sums which the Insured shall become liable to pay as damages by reason of the liability imposed by law upon the Insured by the Newfoundland Workmen's Compensation Act as at present, or as may hereinafter be enacted excluding, however, any liability imposed upon or assumed by the Insured under any Workmen's Compensation Act, Plan or Agreement enacted or hereinafter enacted by any other Province or State."

THE VOLUNTARY COMPENSATION INSURANCE shall only apply in respect to the Insured's salesmen in the Provinces of Manitoba and Alberta, Canada.

## VOLUNTARY COMPENSATION INSURANCE
## with Specified Benefits

In consideration of the premium provided in the policy the Insurer further agrees that upon the happening of an accident arising out of and in the course of employment, causing bodily injury to an employee (including death resulting therefrom), whether such accident gives rise to any liability imposed by Law upon the employer; TO PAY VOLUNTARILY THE BENEFITS herein set out to such employee, or in the event of his death, to his dependents as herein set out.

### PROVIDED HOWEVER

1. That such payment shall only be made if the accident occurred while the employee was engaged in duties which come within the scope of the classification of operations specified in the policy.

2. That a full legal release of all claims of such employee or any person claiming by, through or under him, against the employer is executed and delivered and that any rights of such employee or person against anyone other than the employer be subrogated and assigned in full to the Insurer.

3. That the Insurer shall in no event be liable hereunder,

- 3 -

for any claims arising from hernia, however caused.

## SCHEDULE OF BENEFITS

1. The Insurer will pay in each case, the necessary medical, surgical, pharmaceutical and hospital charges in accordance with the scale of charges, provided under authority of the Workmen's Compensation Act of the Provinces of Manitoba and Alberta, Canada and not to exceed in all, in any event, the sum of FIVE HUNDRED - - - 00/100 Dollars ($500.00), during a period not exceeding twenty-six (26) weeks from the date of the accident.

2. In the event of death resulting from such injury within a period of six months from the date of the accident, the Insurer will pay the actual funeral expenses, not exceeding, however, One Hundred and Twenty-five Dollars ($125.00).

3. The Insurer will also pay any charges for the supplying or normal renewing of prosthetic or orthopedic appliances as may be necessary for the period of fifty-two (52) weeks from the date of the accident.

4. The Insurer will also pay, except where an incapacity lasts less than seven days, an amount equal to two-thirds of such employee's weekly wage as it was at the time of the accident, subject to the maximum limit of Twenty Dollars ($20.00)per week, under any one of the following paragraphs:

(a) If the injury results in any of the incapacities hereinafter listed in the "Schedule of Incapacities" the Insurer will pay the said amount, for the number of weeks shown opposite the incapacity in the said schedule, in addition and subsequent to any sums paid under Clause (b), (i) or (ii) hereunder:

(b) If the injury results in total incapacity :

(i) Any such total incapacity lasts seven days or more but less than six weeks, the Insurer will pay the said amount for the period commencing on the 8th day after such accident, to the date of termination of the incapacity.
    or
(ii) Where such total incapacity lasts six weeks or more, the Insurer will pay the said amount for the period commencing from the date of the accident to the termination of the incapacity or for twenty-six weeks, whichever is the lesser period.
    or
(iii) Where such total incapacity is deemed, permanent by medical evidence, satisfactory to the Insurer, the Insurer will pay the said amount for the period commencing from the date of the accident to the termination of the incapacity or for one hundred and twenty-six weeks, whichever is the lesser period.

Exhibit __A__
Page __25__

8 0 2 2 0 1 1 2 9 1

- 4 -

(c) If the injury results in death within a period of six months
from the date of the accident, the Insurer will pay to the
deceased employee's dependents, while resident in Canada who
were wholly dependent upon him, the said amount for a period
of one hundred weeks, in addition to any payment made under
Paragraph (b) hereof.

### SCHEDULE OF INCAPACITIES

LOSS or TOTAL LOSS of USE of:                              No. of WEEKS

| | | No. of WEEKS |
|---|---|---|
| Arm at shoulder ...............................(Right | 100 |
| (Left | 90 |
| Arm between shoulder and elbow .................(Right | 100 |
| (Left | 90 |
| Arm below elbow or hand at wrist ..............(Right | 80 |
| (Left | 70 |
| Thumb .........................................(Right | 25 |
| (Left | 20 |
| Index Finger ..................................(Right | 20 |
| (Left | 15 |
| Any finger other than index finger ............(Right | 15 |
| (Left | 10 |

First Phalange of Finger except of Thumb and of
    Index Finger ..... 50% of the period granted for whole finger.
First Phalange of Thumb or of Index Finger.......
                75% of the period granted for whole finger.
More than one Phalange of Finger or of Thumb ....
                100% of the period granted for whole finger,
                                                or thumb.
Multiple Finger Injuries ..................... Period equal to the
                    sum of the periods for each finger,
                    but not to exceed 75 weeks.
Note: The preceding Schedule of Incapacities does not apply to a left-
    handed person. In the event of the injured employee being left-
    handed the word "right" shall be read where the word "left"
    appears and vice versa.

LOSS OR TOTAL LOSS OF USE OF                              No. of WEEKS

Leg at hip ........................................       100
Leg between hip and knee ..........................        95
Leg at knee .......................................        90
Foot at ankle .....................................        75
Great Toe .........................................        15
Any other Toe .....................................        10
One Eye ...........................................        50
Both Ears (hearing) ...............................       100
One Ear or hearing of One Ear .....................        25
First Phalange of Toe .......... 50% of period granted for whole toe.
More than one Phalange of Toe ..100% of period granted for whole toe.
Multiple Toe Injuries ..........Period equal to sum of periods payable
                    for each toe but not to exceed 30 weeks.

Exhibit        A
Page        26

8 0 2 2 0 1 1 2 9 2

- 5 -

Subject otherwise to all the terms, definitions and conditions of
the policy of which this forms a part.


    IN WITNESS WHEREOF The General Accident Fire and Life Assurance
Corporation Limited has caused this Policy to be signed by its
Manager for Canada but this Policy shall not be binding upon the
Insurer until countersigned by a duly authorized representative of
the Insurer.

MANAGER FOR CANADA

Countersigned:

Authorized Representative.

| CLASSIFICATION OF OPERATIONS | Estimated 3 Yr.Payroll | Rate per $100. of Payroll | Estimated Premium |
|---|---|---|---|
| "Colas" Manufacturing (Classified as Paint Manufacturing) excluding Lead Manufacturing. | $ 40,000.00 | $2.237 ✓ | $894.80 |
| Stevedoring | 2,000.00 | 16.41 ✓ | 328.20 |
| Wood Preserving (Impregnation of wood with creosote under pressure) | 80,000.00 | 5.667 ✓ | 4,533.60 |
| Clerical Office Force | 16,000.00 | .11 ✓ | 17.60 |
| Contractors – Erection of Plant at Clarenville, Newfoundland | If any | 5.989 | - |
| Outside Salesmen, Collectors and Messengers (wherever engaged) who do not deliver merchandise. | | | |
| Newfoundland | 19,000.00 | .193 | 36.67 |
| Canada other than Nfld. | If Any | .40 ✓ | - |
| Drivers and their Helpers. | If Any | 2.237 | - |
| Chauffeurs and their Helpers | If Any | 1.752 | - |

Estimated advance premium     $5,810.87