# EXHIBIT 1

Dockets.Justia.com

MONSTER CABLE PRODUCTS, INC.,       )
                                    )
            Plaintiff,              )
                                    )
      v.                            )
                                    )          Civil Action No:
                                    )            C 03 3250
DISCOVERY COMMUNICATIONS, INC.,     )
                                    )
            Defendant.              )
_____ )

## EXPERT REPORT OF JEFFREY M. SAMUELS

1. This Expert Report is prepared pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) in connection with the above-referenced matter. I have been retained as an expert in the above-captioned case by counsel for Defendant Discovery Communications, Inc. to offer expert opinions regarding various trademark issues raised in the instant matter.

2. In reaching my opinions I have had the benefit of reviewing the materials identified in Exhibit A to this report.

3. I have been involved in the field of intellectual property law, with a primary concentration in trademark and unfair competition law, since 1976. Attached as Exhibit B to my report is a copy of the most current version of my curriculum vitae (including a list of my publications during the past ten (10) years), which further describes my professional experience and qualifications. I note that, from November 1987 until January 1993, I was an Assistant Commissioner of

Patents and Trademarks -- the head of the trademark division of the United States Patent and Trademark Office (the "USPTO"). As such, I was actively involved in, and responsible for, the USPTO's trademark operations and all facets of the administration of the federal registration system, including implementation of the provisions of the Trademark Law Revision Act of 1988 ("TLRA"). During my tenure at the PTO as Assistant Commissioner of Patents and Trademarks, I oversaw the examination of hundreds of thousands of applications for registration of marks and established and implemented policies and procedures relating to the federal registration system. My responsibilities also included general oversight and management of the operation of the Trademark Trial and Appeal Board. The Board's jurisdiction includes the review of adverse determinations regarding the registrability of a mark. I served as a statutory member of the Board and participated in and authored several major opinions. In July 2003, U.S. Secretary of Commerce Donald L. Evans appointed me to a three-year term as Chair of the Trademark Public Advisory Committee of the United States Patent and Trademark Office.

I am currently the David L. Brennan Professor of Law and Director of the Center for Intellectual Property Law and Technology at The University of Akron School of Law. I teach courses in trademark and unfair competition law and international intellectual property law, as well as a survey

course that covers all aspects of intellectual property law. I am also currently engaged in the private practice of law, specializing in the area of trademark and unfair competition law. Prior to joining the faculty at The University of Akron School of Law, I served as an adjunct professor of law at George Washington University School of Law and George Mason University School of Law.

I have authored or co-authored over thirty articles in the area of intellectual property law, am the editor of the publication "Patent, Trademark, and Copyright Laws," and have made numerous presentations to professional, educational, and other organizations (including the House Judiciary Subcommittee on Courts and Intellectual Property) on trademark and other intellectual property law issues. I was the Associate Editor of the well-known treatise Trademark Protection and Practice by Jerome Gilson (Matthew Bender & Co.) from 1993 to December 1998. I also serve as a panelist under the ICANN (Internet Corporation of Assigned Names and Numbers) Uniform Domain Name Dispute Resolution Policy and as an arbitrator/mediator of trademark and related unfair competition matters under programs sponsored by The International Trademark Association/Center for Public Resources and the U.S. District Court for the Northern District of Ohio.

4. Attached as Exhibit C to my report is a list of the cases

in which I have either testified at trial or been deposed during the past four (4) years.

5. I will be compensated at the rate of $425 per hour. My compensation does not depend upon the outcome of this litigation, and I have no financial interest in the outcome of this litigation.

6. In this action, Plaintiff asserts, in part, that Defendant's use of the marks MONSTER GARAGE and MONSTER HOUSE is likely to cause confusion with Plaintiff's alleged family of MONSTER marks, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a). The complaint indicates that the USPTO has registered in Plaintiff's name 48 MONSTER-related marks, including MONSTER CABLE and MONSTER, for goods ranging from original audio cables, to clothing and music-related products, to automotive products and video products, to computer products and internet services, to electrical cables, connectors and devices, to wireless telephone products, to batteries and battery charging devices, and photographic accessories.

7. The evidence indicates that, subsequent to the issuance to Plaintiff of the above-referenced MONSTER marks, Defendant filed with the USPTO a large number of applications seeking registration of the marks MONSTER GARAGE, MONSTER GARAGE and DESIGN, and MONSTER HOUSE, as used or intended to be used in connection with cable TV series relating to the reconstruction of cars and home renovation and improvement,

**4**

as well as on a wide variety of goods, including motion picture films, games, picture frames, flashlights, clothing items, bedding, wallets, mugs, air fresheners, floor mats for cars, etc.

8. I have reviewed the USPTO files and records relating to Defendant's applications to register its MONSTER GARAGE and MONSTER HOUSE marks. Based on such review, it is clear that, in the opinion of the USPTO, there is no likelihood of confusion between the parties' marks, as used or intended to be used on or in connection with music CDs, clothing, accessories, and automotive products.

9. Before commenting specifically on Defendant's pending applications, some general comments with respect to the practices and procedures of the USPTO in examining an application for federal registration of a mark may be helpful. The USPTO is the administrative agency entrusted with sole and specific responsibility for determining whether a mark is registrable. Those who wish to obtain federal registration for their marks must file an application with the USPTO. The USPTO is the repository of all trademark applications and registrations, which are available to the public for searching.

10. Each application for registration of a mark is reviewed by a Trademark Examining Attorney. Trademark Examining Attorneys, all of whom are members of a state bar, receive

particular and detailed training throughout their tenure with the agency with respect to the many substantive and procedural issues that arise during the examination of an application. Every applied-for mark undergoes analysis by a Trademark Examining Attorney to determine whether the mark so resembles a previously registered or applied for mark as to be likely, when used on or in connection with the goods or services of the applicant, to cause a likelihood of confusion. If the Trademark Examining Attorney determines that such a likelihood of confusion exists, the mark in issue will be refused registration under Section 2(d) of the Lanham Act, 15 U.S.C. §1052(d). Thus, each of Defendant's MONSTER GARAGE or MONSTER HOUSE marks was reviewed to determine whether they would cause a likelihood of confusion with any federally registered mark. Plaintiff's registered and applied-for marks would have been part of the computerized database that the Trademark Examining Attorney would have searched in determining whether any of Defendant's applied-for marks - MONSTER GARAGE, MONSTER GARAGE and DESIGN, and MONSTER HOUSE - created a likelihood of confusion.

11. If, upon review of an application, a Trademark Examining Attorney determines that the applied-for mark is not registrable for any reason, he/she will issue an Office action in which he/she sets forth the basis for any refusal or requirement. The applicant then has six months within which to respond to the Office action. Upon review of any

response, the Trademark Examining Attorney will either make any refusal to register "final" or withdraw the refusal. Any final refusal may be appealed to the Trademark Trial and Appeal Board. If no response or appeal is filed with the six-month response period, the application will be declared "abandoned." If the application is declared "abandoned," the applicant may file a Petition to Revive. The petition will be granted if it is timely filed (i.e., filed within two months of the issue date of the notice of abandonment) and the failure to respond within the six-month period is deemed "unintentional." See 15 U.S.C §1062(b).

12. Once the Examiner determines that the mark is registrable, the USPTO will issue a Notice of Publication indicating that the applied-for mark has been approved for publication in the *Trademark Official Gazette*. Upon publication and within certain time limits, any person may oppose registration of the mark. If the mark is not opposed and the mark is in use in commerce, a registration will then issue. If the mark is not opposed and the mark has not yet been used in commerce (i.e., the application was based on intent to use (ITU)), a Notice of Allowance will issue. Upon issuance of the Notice of Allowance, an applicant has three years within which to commence use and provide evidence of such use to the USPTO through the filing of a so-called "Statement of Use." Upon proof of such use, the USPTO will

issue a registration to the intent-to-use applicant.

13. The evidence indicates that Defendant has filed numerous ITU applications seeking registration of MONSTER GARAGE, MONSTER GARAGE and DESIGN, and MONSTER HOUSE, as intended to be used on a wide variety of goods and services, including music CDs, clothing, accessories, and automotive products. Such applications include Serial No. 76/442,577 (MONSTER GARAGE, for motion picture films, pre-recorded video disks and audio-visual recordings, pre-recorded videotapes, pre-recorded compact discs, DVDs an CD-ROMS, all of the above goods featuring subject matter related to the TV series of the same name that features the reconstruction of automobiles into unique motor vehicle devices); Serial No. 76/510,686 (MONSTER GARAGE, for flashlights); Serial No. 76/510,685 (MONSTER GARAGE, for clothing items); Serial No. 76/510,457 (MONSTER GARAGE, for floor mats for vehicles); Serial No. 76/510,679 (MONSTER GARAGE, for jewelry, necklaces, bracelets, tie racks, etc.); Serial No. 76/510,687 (MONSTER GARAGE, for picture frames, novelty pillows, etc.); Serial No. 76/510,677 (MONSTER GARAGE, for mugs, drinking classes, etc.); Serial No. 76/510,684 (MONSTER GARAGE, for sheets, pillowcases, pillow shams, etc.); Serial No. 76/510,683 (MONSTER GARAGE, for wallets, key cases, duffle bags, etc.); Serial No. 76/510,458 (MONSTER GARAGE, for removable tattoos, notebooks, calendars, books, etc.); Serial No. 76/510,678 (MONSTER GARAGE, for mud flaps for vehicles, vehicle seat

covers, etc.); Serial No. 76/510,361 (MONSTER GARAGE, for embroidered patches for clothing, etc.); Serial No. 76/510,402 (MONSTER GARAGE, for games, board games, toys, etc.); Serial No. 76/510,682 (MONSTER GARAGE, for air fresheners); Serial No. 76/510,681 (MONSTER GARAGE, for metal key fobs, etc.); Serial No.76/513,142 (MONSTER GARAGE and DESIGN, for entertainment services); Serial No. 76/502,239 (MONSTER HOUSE, for entertainment services in the nature of a TV series concerning home renovation and home improvement); Serial No. 76/442,576 (MONSTER GARAGE, for entertainment services in the nature of a TV series regarding the reconstruction of automobiles into unique motor vehicle devices); Serial No. 76/510,459 (MONSTER GARAGE, for sunglasses, etc.); Serial No. 76/442,499 (MONSTER GARAGE and DESIGN, for entertainment services in the nature of a TV series regarding the reconstruction of automobiles into unique motor vehicle devices); Serial No. 76/447,661 (MONSTER GARAGE, for wearable decorative pins, etc.); Serial No. 76/459,176 (MONSTER GARAGE, for wearable decorative pins, key chains, etc.); and Serial No. 76/442,146 (MONSTER GARAGE, for motion picture films, pre-recorded video discs, etc.).

14. In no instance involving any of the applications noted in the preceding paragraph did the Trademark Examining Attorney cite any of Plaintiff's MONSTER-related marks as a bar to registration. In other words, in no case did the Trademark

9

Examining Attorney conclude that there is a likelihood of confusion between the parties' marks, as used on the parties' respective goods and/or services, including music CDs, clothing, accessories, and automotive products. Notices of Publication and Notices of Allowance have been issued by the USPTO covering most of Defendant's marks.

15. I have also reviewed the USPTO files with respect to Plaintiff's applications to register the marks MONSTER MINTS, for candy mints (Serial No. 78/019915); MONSTER, for clothing items (Serial No. 75/325907); and MONSTER MARKET, for computerized online ordering service in the field of video and entertainment products (Serial No. 75/929644).

16. With respect to the MONSTER MINTS mark, the evidence indicates that the Trademark Examining Attorney, in an Office action of January 8, 2001, refused registration under Section 2(d) of the Lanham Act in view of a registration for the mark MONSTER MALTS for candy. Plaintiff's attorney filed a response to the Office action arguing against the refusal. The Trademark Examining Attorney, however, in an Office action of May 29, 2002, continued the refusal and also entered a new Section 2(d) refusal in view of a registration for MONSTER KOOKIES, for confectionery items. Plaintiff's attorney again responded to the Office action, but the Trademark Examining Attorney made the refusals "final" in an Office action of May 22, 2003. Thereafter, Plaintiff both filed an appeal with the Trademark Trial and Appeal Board as

well as a Request for Reconsideration. Further action on the appeal has been suspended for consideration of the reconsideration request.

17. In the Request for Reconsideration, Plaintiff argued that its MONSTER MINTS mark is "distinct in appearance, sound, connotation, and commercial impression" as compared to MONSTER MALTS and MONSTER KOOKIES. Plaintiff contended that "[t]he appearance of the proposed mark MONSTER MINTS is dissimilar in its entirety compared to the appearance of each of the registered marks as the entire impression of the first cited mark is that MONSTER modifies KOOKIES and the entire impression of the second cited mark is that MONSTER modifies MALTS. Finally the registered marks MONSTER KOOKIES and MONSTER MALTS do not sound like the proposed mark MONSTER MINTS. Thus, the proposed mark does not have the same appearance or sound as the cited marks." Plaintiff, in its reconsideration request, also contended that the channels of trade for the goods that are the subject of the cited marks are "distinct" from the channels of trade where the proposed mark will be marketed or sold. More specifically, Plaintiff maintained that "[t]he products bearing the proposed mark MONSTER MINTS will be advertised and sold as a promotional item for potential/prospective consumers of the owner of the mark, i.e., Monster Cable Products, Inc., which sells high-end entertainment products including video, audio and multi-

media products and services. Specifically, the proposed mark MONSTER MINTS will be directed not to the general public, but will be marketed to *careful, sophisticated purchasers of high end, expensive video, audio, and multi-media products who would impulsively purchase candy* that is a fraction of the cost of their electronic purchase for their own consumption, as a gift, or for their children."

18. With respect to the MONSTER mark, the evidence indicates that the Trademark Examining Attorney, in an Office action of August 3, 1998, refused registration under Section 2(d) in view of a registration for MONSTER WEAR, for clothing items. Applicant's attorney, in his February 3, 1999, response to the Office action, argued against the refusal. The response noted that "Applicant's goods are not sold at retail stores; they are goods used for promotion of their main product line, namely, electrical and musical signal transmitting cable and connectors and the like at commercial and industrial trade shows. The goods may also be provided as promotional items at special occasions such as introduction of new products, media promotions, and the like. Thus, the goods are distributed primarily to adults at adult occasions even if they are sold at those occasions or via Internet." The Trademark Examining Attorney later maintained the refusal. In that same response, Plaintiff's attorney also noted that Plaintiff had entered into a settlement agreement with the owner of the earlier-filed application to register the mark MONSTER, for belts for

motors and engines, ships, boats, clothing articles, etc., in which the parties to the agreement "agree[d] that there is no likelihood of confusion. Ultimately, Plaintiff was successful in obtaining a registration for its MONSTER mark.

19. With respect to the MONSTER MARKET mark, the evidence indicates that the Trademark Examining Attorney, in an initial Office action of September 11, 2000, indicated that there may be a likelihood of confusion between MONSTER MARKET and the mark MONSTER TALENT MARKET, for employment listing and recruiting services, which was the subject of an earlier-filed application that had not yet matured into a registration. (The USPTO will not enter a likelihood of confusion refusal unless and until the cited mark has registered.) Applicant's counsel argued that there is no likelihood of confusion between MONSTER MARKET and MONSTER TALENT MARKET. After the MONSTER TALENT MARKET was registered, the Trademark Examining Attorney entered a formal refusal to register under Section 2(d). Applicant's attorney argued against the refusal, contending that "[t]he appearance and the sound of MONSTER MARKET is distinct from MONSTER TALENT MARKET." The refusal to register was later made "final." Plaintiff has abandoned this application.

20. The opinions stated in this written report are based on my education, background, knowledge and experience in trademark law and my review of the information currently

available to me. I plan to continue my study of the matters discussed herein, including a review of documents that may yet be produced, court papers, reports of other experts, rebuttal reports of experts, and testimony. Accordingly, as noted above, I reserve the right to expand upon or modify my opinions as my studies continue and to supplement my opinions in response to any additional information that becomes available to me in connection with any matters raised by Plaintiff and/or to any opinions provided by the experts retained by Plaintiff.

I declare and state under penalty of perjury that the entirety of this Expert Report is true and correct to the best of my knowledge and understanding.

Date: 7/22/04

Jeffrey M. Samuels

<u>EXHIBIT A</u>

<u>LIST OF DOCUMENTS REVIEWED</u>

1.  Complaint for Injunction and Damages

2.  Defendant's Answer to Complaint for Injunction and Damages, Counterclaim and Third-Party Complaint

3.  Order Granting In Part and Denying In Part Defendant's Motion to Dismiss

4.  Documents (including applications, filing receipts, Office actions, Notices of Publication, Notices of Allowance, and Amendments to Allege Use) relating to Defendant's applications to register MONSTER GARAGE, MONSTER GARAGE and DESIGN, and MONSTER HOUSE marks bearing the following Serial Numbers:

    76/447661
    76/442499
    76/510682
    76/510681
    76/510459
    76/510458
    76/510683
    76/510687
    76/510677
    76/510684
    76/510686
    76/510678
    76/510679
    76/510685
    76/510361
    76/510457
    76/510402
    76/502239
    76/513142
    76/442577
    76/442576
    76/459176
    76/442146

5.  Documents relating to Plaintiff's trademark applications bearing the following Serial Numbers:

    78/019915 (MONSTER MINTS)

75/325907 (MONSTER)
75/929644 (MONSTER MARKET)

# JEFFREY M. SAMUELS

**Phone (330) 972-7898 Fax (330) 258-2343 E-mail: JeffreyMSamuels@aol.com**

## EMPLOYMENT

**David L. Brennan Professor of Law and Director, Center for Intellectual Property Law and Technology,** University of Akron School of Law, Akron, Ohio. August 1998 to present. Serve as primary contact between law school and intellectual property law bar and community and Center Advisory Council. Develop and implement curriculum, including proposed Master of Laws in Intellectual Property. Coordinate and organize annual intellectual property law symposium, continuing legal education and guest lectures. Courses taught: Trademark and Unfair Competition Law, Introduction to Intellectual Property Law, International Intellectual Property Law, Current Issues in Intellectual Property Law, Patent Law. Member, Curriculum, Admissions and Library Committees.

**Chair, Trademark Public Advisory Committee of the United States Patent and Trademark Office (USPTO),** three year term commencing July 2003. Chair committee and advise the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office on matters relating to the policies, goals, performance, budget, and user fees of the trademark operation.

**Jeffrey M. Samuels, Esq.** January 1999 – present; **Law Office of Jeffrey M. Samuels, P.C.,** June 1996 – August 1998. Practice trademark and related unfair competition law, including expert witnessing, consulting, alternative dispute resolution, prosecution and litigation. Government relations manager for the International Trademark Association, November 1994-July 1997 (directed the introduction, consideration and enactment of "The Federal Trademark Dilution Act of 1995"). Panelist: ICANN's Uniform Domain Name Resolution Policy; International Trademark Association and the Center for Public Resources' ADR Program; ADR Neutrals for the U.S. District Court for the Northern District of Ohio; National Arbitration Forum's Intellectual Property Arbitration Panel.

**Professorial Lecturer in Law,** 1993 – 1998. The George Washington University Law School. 1998. George Mason University School of Law. Taught trademark law and provided support for the program. Guest lecturer on international intellectual property law, intellectual property law legislation, ongoing. Lecturer Intellectual Property law program for Taiwanese attorneys and government officials.

**Partner,** Spencer & Frank, March 1993 - June 1996. Practiced trademark and related unfair competition law and copyright law, including prosecution, expert witnessing, consulting and litigation.

**Assistant Commissioner of Patents and Trademarks,** October 1987 - January 1993. Head of the trademark division of the U.S. Patent and Trademark Office.

Established and implemented policy, procedures and strategy on all facets of trademark operations: legal and legislative issues, international cooperation, external relations, rulemaking, budget, personnel, automation, labor/management issues, statutory Member, Trademark Trial and Appeal Board (TTAB). May 1992 - January 1993. Assigned additional responsibilities to oversee activities of the Offices of the Assistant Commissioner for Information Systems and the Assistant Commissioner for Public Services and Administration and to serve as principal liaison to the Department of Commerce's Office of Inspector

General.

**Acting Assistant Secretary of Commerce and Commissioner of Patents and Trademarks**, November 1989 - March 1990 and as needed 1987 - 1993.

Responsible for overall management of the U.S. Patent and Trademark Office, including congressional and other external relations.

## SIGNIFICANT ACCOMPLISHMENTS IN GOVERNMENT SERVICE

- Implemented "Trademark Law Revision Act of 1988."
- Headed U.S. delegation to the World Intellectual Property Organization's Working Group meetings on implementation of the Madrid Protocol on the International Registration of Marks and on Harmonization of the Laws Relating to Trademarks.
- Implemented quality improvement initiatives, including creation of Office of Trademark Quality Review and total quality management program.
- Author of major TTAB policy decisions relating to amendments to identifications of goods and services and examiner reconsideration.

**Managing Editor**, May 1982 - October 1987; **Legal Editor**, August 1976 - April 1982. BNA's Patent, Trademark & Copyright Journal; **Founder**, World Intellectual Property Report; **Chair**, Professional Conferences; The Bureau of National Affairs, Inc.

# EDUCATION, BAR MEMBERSHIPS AND ORGANIZATIONS

Albany Law School, Doctor of Jurisprudence, May 1975.

Colgate University, Bachelor of Arts with Honors, May 1972.

Ohio State Bar (1999); District of Columbia Bar (1978); Virginia State Bar (1977); New York State Bar (1976); U.S. Court of Appeals for the Federal Circuit (1996); U.S. District Court for the Eastern District of Virginia (1997).

American Intellectual Property Law Association, Chair, Committee on Trademark Legislation 1999-2000; Vice-Chair, Committee on Trademark and Trade Identity Unfair Competition Law 1994-1995; Chair, Trademark Office Subcommittee 1997-2000; Staff Editor, AIPLA Quarterly Journal 1996-2000, authored congressional testimony on legislation to amend federal dilution statute 2002.

The International Trademark Association, Government Relations Manager 1995-1997; Member, Brief Amicus Committee 1997-1999, Member, Meetings Committee 2000-2002.

American Bar Association Section of Intellectual Property Law, Chair, Federal Trademark Legislation Committee 1994-1995; Chair, Sovereign Immunity Subcommittee, 2002-2004; Chair, Intent-to-Use Subcommittee 1997-98; Chair, Trade Dress Subcommittee 1998-99.

Cleveland Intellectual Property Law Association, President-Elect 2003-2004; Program Chair 1999-2002; Board Member, 2001-2002.

Advisory Board Member, BNA's Patent, Trademark & Copyright Journal.

Advisory Board Member, <u>World Intellectual Property Report</u>.

## CONGRESSIONAL TESTIMONY

House Judiciary Subcommittee on Courts and Intellectual Property:
"Abrogation of States Eleventh Amendment Immunity From Patent Infringement," February 1990. Cited by the Supreme Court of the United States in <u>Florida Prepaid v. College Savings Bank</u>, 527 U.S. 627, n.6 at 641 (1999).
"Computers and Intellectual Property," March 1990.
"Copyright Protection for Architectural Works," March 1990.
"Madrid Protocol Implementation Act of 1993," May 1993.
"Federal Trademark Dilution Act of 1995," July 1995.
"H.R. 3163, The 'Trade Dress Protection Act'," February 1998.
"Hearing on Dilution and Anticounterfeiting Bills," May 1998.

House Appropriations Subcommittee on Commerce, State, Justice, the Judiciary and Related Agencies:
"1991 Budget Request of U.S. Patent and Trademark Office," February 1990.

## PUBLICATIONS (Excluding Proceedings and Course Books)

"Patent Trademark and Copyright Laws" (BNA: 1983, 1984, 1985, 1987, 1989, 1991, 1992 Supp., 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004).

"US Finally Joins Madrid Protocol," JAMS (Journal of the Academy of Marketing Science, Vol. 32, pp. 104-5 (Winter 2004), co-author.

"Key Trademark Decisions Relating to PTO Practice," <u>Journal of the Patent and Trademark Office Society</u>, in press co-author.

"Internet Domain Names: The Uniform Dispute Resolution Process," <u>American Business Law Journal</u>, Vol. 40, No. 4, Summer 2003, pp. 885-904, co-author.

"Notable Court Decisions Affecting PTO Trademark Practice, " <u>Journal of the Patent and Trademark Office Society</u>, Vol. 85, No. 3, Mar. 2003, pp. 191-218, co-author.

"Trademark Decisions Affecting PTO Practice in 2001," <u>Journal of the Patent and Trademark Office Society</u>, Vol. 84, No. 4, April 2002, pp. 310-330, co-author, reprinted in Japanese version of AIPPI Journal, 2002; translated into Japanese and reprinted <u>Journal of the Japanese Group A.I.P.P.I</u>, Vol. 47, No. 9, pp. 18-30.

"Recent Court Opinions Affecting USPTO Practice: The Year in Review, " <u>Journal of the Patent and Trademark Office Society</u>, Vol. 83, No.9, Sept. 2001, pp. 619-639, co-author.

"Trade Dress Undressed: Wal-Mart v. Samara, " <u>AIPLA Quarterly Journal</u>, Vol. 29, No. 1, Winter 2001, pp. 43-63, co-author, Selected for reprinting in <u>Intellectual Property Law Review 2002</u> (West Publishing Co.).

"Supreme Court Makes Protection of Product Design Trade Dress More Difficult," <u>Journal of the Academy of Marketing Science</u>, Vol.29 No. 1, Winter 2001, pp. 108-109, co-author.

"Trade Dress Protection: The Issue of Distinctiveness and Potential Conflicts," <u>Northern Kentucky Law Review</u>, Symposium Issue – Intellectual Property Law: Issues in the New Millennium, Vol. 27 No. 5, Fall 2000, pp. 1041-54.

"Highlights of Opinions Affecting PTO Practice," <u>Journal of the Patent and Trademark Office Society</u>, Vol. 82, No. 5, May 2000, pp. 311-335, co-author.

<u>Trademark Registration Practice</u> by James E. Hawes (West). Primary contributor to 1999 and 2000 updates.

"Principal Opinions Affecting PTO Trademark Practice," <u>Journal of the Patent and Trademark Office Society</u>, Vol. 82 No. 4, April 1999, pp. 281-302, co-author.

"The Madrid Protocol and Trademark Harmonization," in Kenneth L. Port et al., <u>Cases and Materials in International Intellectual Property</u>, Carolina Academic Press 1999, forthcoming.

"Significant Trademark Decisions," <u>Journal of the Patent & Trademark Office Society</u>, Vol. 80 No. 7, July 1998, pp. 453-468, co-author.

"Noteworthy PTO Trademark Decisions," <u>Journal of the Patent & Trademark Office Society</u>, Vol. 80 No. 4, April 1998, pp. 231-240, co-author.

<u>Trademark Protection and Practice</u> by Jerome Gilson (Matthew Bender & Co.). Associate Editor of treatise, 1993–1998.

<u>Trade Marks, Trade Names and Unfair Competition, World Law and Practice</u> by John Olsen and Spyros Manlatis (FT Law and Tax, London). Contributor of section of treatise relating to U.S. trademark law and practice, 1994-present.

"Formulating an Effective Association Intellectual Property Program," <u>ASAE Association Law and Policy</u> and <u>ASAE Law Compendium</u>, co-author, 1997.

"Recent Developments in Trademark Law and Practice," <u>Journal of the Patent & Trademark Office Society</u>, Vol. 79, March 1997, pp. 181-190, co-author.

"The Trademark Office as a Government Corporation," <u>Fordham Intellectual Property, Media & Entertainment Law Journal</u>, Vol. 7, Autumn 1996, pp. 137-145, co-author. Cited in <u>Senate Report</u> 105-42 on the "Omnibus Patent Act of 1997," 105th Congress, First Session, July 1, 1997, p.45.

"Recordal of Fastener Insignia Under the Fastener Quality Act," <u>American Fastener Journal</u>, Vol. 13, No. 6, Nov./Dec. 1996, pp. 4, 10, co-author, reprinted <u>World Intellectual Property Report</u>, Vol. 11, pp. 24-25, January 1997, co-author.

"Color Trademarks: Protection Under U.S. Law," <u>Journal of Public Policy and Marketing</u>, Vol. 15, No. 2, Fall 1996, pp. 305-307, co-author.

"Famous Marks Now Federally Protected Against Dilution," <u>Journal of Public Policy and Marketing</u>, Vol. 15, No. 2, Fall 1996, pp. 306-310, co-author.

"Protection For Color Under U.S. Trademark Law," <u>AIPLA Quarterly Journal</u>, Vol. 23, No. 1, Winter 1995, pp. 129-152, co-author.

"The Community Trademark," <u>World Intellectual Property Report</u>, April 1996, pp. 114-116, co-author.

"The Madrid Protocol to Enter into Force April 1," <u>World Intellectual Property Report</u>, March 1996, pp. 86-87, co-author.

"The Changing Landscape of International Trademark Law," <u>George Washington Journal of International Law and Economics</u>, Vol. 27, No. 2 & 3, 1994, pp. 433-455, co-author. Excerpted in Goldstein, <u>Copyright, Patent and Related State Doctrines: Cases and Materials on Intellectual Property Law</u> (Foundation Press, 1999), pp. 1045-1048; excerpted in Dinwoodie et al. <u>International Intellectual Property Law and Policy</u> (Lexis, 2001); excepted in Dinwoodie et al. <u>International and Comparative Trademark and Unfair Competition Law</u> (Lexis, 2002 forthcoming). Selected as finalist for the Ladas Award sponsored by the Brand Names Education Foundation.

"The Madrid Protocol From the U.S. Perspective," <u>Journal of Japan Trademark Association</u>," Vol. 21, 1994, pp. 23-30 (in Japanese), <u>Proceeding</u>, pp. 99-113 (in English).

"The Madrid Protocol and Harmonization of Trademark Laws," <u>Canadian Intellectual Property Review</u>, Vol. 10, No. 3, May 1994, pp. 667-668.

"European Community Trademark: What Every U.S. Owner and Practitioner Should Know," <u>Trademarks America</u>, June 1994, pp. 9-11.

"Patent and Trademark Office Practice," <u>The Journal of Proprietary Rights</u>, (Part I) Vol. 5, No. 9, September 1993; (Part II) Vol. 5, No. 10, October 1993; (Part III) Vol. 5, No. 11, November 1993; (Part IV) Vol. 5, No. 12, December 1993.

"House Panel Holds Hearing on Madrid Protocol," Dinwoodey Center Journal, The George Washington University National Law Center, September 1993, pp. 3-4.

"U.S. Perspective on the Madrid Protocol," <u>European Intellectual Property Review</u>, Vol. 15, November 1993, pp. 418-25, co-author.

"Reflections on Management of the PTO," <u>Journal of the Patent and Trademark Office Society</u>, April 1993, pp. 247-256, co-author.

"Color Trademarks: Shades of Confusion," <u>The Trademark Reporter</u>, Vol. 83, August 1993, pp. 554-570, co-author.

"Letter To The Editor" [regarding "The Madrid Protocol - Some Reflections"], <u>The Trademark Reporter</u>, Vol. 82, September - October 1992, pp. 810-813.

"Questions and Answers on Intent to Use," <u>Patent and Trademark Office Society</u>, Vol. 71, No. 8, August 1989, pp. 585-599, co-author.

"Analysis of Trademark Law Revision Act of 1988," <u>World Intellectual Property Report</u>, February 1989, pp. 34-35.

"New Developments in Copyright Protection of Computer Software," <u>International Journal of Legal Information</u>, October - December 1987, pp. 195-200, co-author.

"Semiconductor Chip Protection Act of 1984: An Analytical Commentary," <u>American Business Law Journal</u>, Winter 1986, pp. 601-616, co-author.

"The Patentability of Computer-Related Inventions," <u>Corporation Law Review</u>, Spring 1983, pp. 144-155, co-author.

"Contributory Infringement: Relief For the Patent Owner," <u>Corporation Law Review</u>, Fall 1981, pp. 332-345, co-author.

## SELECTED PRESENTATIONS

Akron Kiwanis Club, January 2002.
Agency for International Development, July 1998.
ALI-ABA Video on the Trademark Law Revision Act, December 1989.
All Ohio Intellectual Property Law Conference, September 1995, September 2000; September 2003.
American Bar Association Section on Intellectual Property Law, March 1988, April 1994, June 1999, April 2002; March 2003, June 2003.
American Intellectual Property Law Association Trademark and Unfair Competition Law Committee, October 1988; January and October 1989; October 1990; January 1993, May 1996, January 1998, April 1999.
American Intellectual Property Law Association, May 1997, October 1999, October 2000.
American Law Institute - American Bar Association Continuing Legal Education Spring Program, April 1992; April 1993.
American Society of Association Executives, October 1997.
Annual Meeting of The United States Trademark Association, May 1988; May 1991; May 1992.
Arter & Hatten, September 1997.
Asian Pacific Legal Institute, July 1996; July 1997.
Association of the Bar of the City of New York Section on Unfair Competition, March 1990.
Bar Association of District of Columbia Patent, Trademark & Copyright Section, December 1988; February 1993.
Bar Association of Metropolitan St. Louis, April 2002.
BNA's 12th Annual Patent Law Conference, November 1988.
Brooklyn Law School Symposium for Business Lawyers, February 1989.
Carolina Patent, Trademark and Copyright Law Association, April 1989; November 1989.
Chicago Bar Association, June 1988; May 1989; June 1990; May 1991; May 1992.
Civic Forum of the Air, July 2003.
Cleveland Intellectual Property Law Association, February 1993, November 1998, November 1999, November 2001, January 2003.
European Community Trademark Conference, March 1995.
Executive Management Institute, January 1990.

Federal Circuit Bar Association, May 1996.

Federal Judicial Center Russian Judges Conference, November 1995.

Florida State Bar Intellectual Property Law Section, November 1999, November 2002.

Forum on the Trademark Law Revision Act of 1988, The United States Trademark Association, February; March; June 1989.

George Mason University School of Law Intellectual Property Law Program, March 1998, March 1999, March 2000.

George Washington University Intellectual Property Law Program, February 1993, November 1994; March 1995, October 1995, March 1996, October 1997, March 1998, October 1998, March 1999, October 2000, October 2001.

Government Patent Lawyers Association, March 1989.

Indiana Patent Law Association, July 1989.

Insight Intellectual Property Program, November 1997, April 1999, November 1999.

Intellectual Property Owners/PTO Day Program, December 1989; December 1990; December 1991; December 1992, December 1996, December 1997, December 1998, December 1999, December 2000, December 2002, December 2003..

Intellectual Property Owners Annual Meeting, November 1999.

Intellectual Property Section of the State Bar of California, October 1988; November 1990; September 1992, April 1994, October 1994.

International Intellectual Property Alliance, March 2003.

International Trademark Association Annual Meeting, May 2002; Trademark Basics Program, December 2002.

International Trademark Association Forum, March 1995.

Iowa Intellectual Property Law Association, October 1990; September 2003.

Japan Intellectual Property Association, October 1995.

Japanese Trademark Association, February 1994, June 1995, September 1996.

Kent State University Business Students, November 2001.

Lawcast Audiotape on Federal Trademark Dilution Act of 1995, January 1996.

Lexis/Nexis Program on Trademark Law, April 2003.

Los Angeles Intellectual Property Law Association, September 1992, June 1994.

Minnesota Patent Law Association, September 1989.

National Council of Intellectual Property Law Associations, October 1988; October 1989; April 1992; September 1998, September 2000.

New Jersey Intellectual Property Law Association, October 1995.

New York Patent, Trademark and Copyright Law Association, November 1989; February 1990; November 1990, March 1996.

Northern Virginia Chapter of Federal Bar Association, September 1988.

International Intellectual Property Society, March 2003.

Oliff & Berridge CLE Seminar, April 1995, May 1998.

Orange County (California) Patent Law Association, October 1988.

Patent and Trademark Office Trademark Examiners, January 1999, February 2000.

Patent and Trademark Office Program on Patent Law Reform, January 1999.

Patent and Trademark Law Institute of Canada, October 1993.

Patent and Trademark Office Society, February 1993.

Patent Club of Washington and Maryland Patent Law Association, April 1989.

Patent Depository Library Conference, May 1990.

Patent, Trademark and Copyright Law Section of State Bar of Georgia, June 1989.

Patent, Trademark and Copyright Section of District of Columbia Bar Association, April 1989.

Patent, Trademark and Copyright Section of Washington State Bar Association, April 1988.

Philadelphia Public Library Bicentennial Anniversary of First Patent and Copyright Laws, July

1990.

Philadelphia Public Television, July 1990.

Pittsburgh Intellectual Property Law Association, October 1994.

Practising Law Institute, June 1991; June 1992; July 1992; June 1993; July 1993, April 1994, July 1994, July 1995.

San Francisco Intellectual Property Law Association, May 1990, September 1994.

State Bar of Wisconsin, January 1990.

Taiwan Economic and Cultural Office, August 1997.

Trade-Mark Agents Institute, London, March 1990; March 1993.

Trademark and Copyright Committee of Pharmaceutical Manufacturers Association, March 1989.

Trademark Law for Trade Associations, October 1989.

UCLA Law School, September 1992.

The United States Trademark Association Forum on Trademark Basics, September 1991.

The United States Trademark Association Pacific Rim Workshop, September 1992.

The United States Trademark Association Paralegal Forum, September 1988.

University of Akron Annual Intellectual Property Conference, March 1999, March 2000, March 2002.

University of Akron School of Engineering, November 1998.

University of Strasbourg, France, Center for Industrial Property Studies, May 2003.

Virginia State Bar Intellectual Property Law Section, February 1993, June 1994.

Voice of America, June 1989.

Washington State and Oregon Patent Law Associations, March 1992, April 1998.

Worldnet TV, June 1988.

Youngstown, Ohio Inventors Group, October 1999.

02/20/04

**EXHIBIT C**

<u>LIST OF CASES IN WHICH I HAVE BEEN DEPOSED OR TESTIFIED</u>
<u>AT TRIAL DURING THE PAST FOUR YEARS</u>

1. <u>Harvard Pilgrim Health Care, Inc. v. President and Fellows of Harvard College</u> (D. Mass.)  Civil Action No. 00cv-10491-RCL.

2. <u>The Swatch Group (U.S.) Inc. v. Movado Corp.</u> (S.D.N.Y.) Civil Action No. 01 Civ 0286 .

3. <u>Purebred Co., Inc. v. Star-Kist Foods, Inc.</u> (D. Colo.)  Civil Action No. 00 D 665.

4. <u>AM General Corp. v. DaimlerChrysler Corp.</u> (N.D. Ind.)  Civil Action No. 3:01CV134RM .

5. <u>Clark Capital Management Group, Inc. v. Annuity Investors Life Insurance Co.</u> (E.D. Pa) Civil Action No. 00-CV-1959.

6. <u>Todhunter International, Inc. v. Fabrica de Licores y Alcoholes de Antoquia</u> (S.D. Fla.) Civil Action No. 01-3582 .

7. <u>The Dream Merchant Company, LLC v. Cirque, Inc.</u> (D. Nev.) Civil Action No. CV-S-99-1767-LDG-RLH.

8. <u>Sears, Roebuck & Co. v. Menard's Inc.</u> (N.D. Ill.) Civil Action No.01-9843.

9. <u>Inverizon International, Inc. v. Verizon Communications, et al.</u> (Mo. Cir. Ct. Case No. 002-07999).

10. <u>The Hoover Co. v. Oreck Holdings LLC</u> (N.D. Ohio Case No. 5:02 CV 548).

11. <u>Quantum Capital Corp. et al. v. MBNA America Bank, N.A.</u> (N.D. Ga. Case No. 02-CV-0370).